UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RALPH SCHOENMAN,

    Plaintiff,

    v.

FEDERAL BUREAU OF
INVESTIGATION, *et al.*,

    Defendants.

Civil Action No. 04-2202 (CKK)

**MEMORANDUM OPINION**
(March 31, 2006)

    Plaintiff Ralph Schoenman, a longtime political activist and author, filed this action on

December 20, 2004, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000

& Supp. II 2002), and the Privacy Act of 1974, 5 U.S.C. § 552a (2000), seeking access to an array

of records pertaining to himself, Lord Bertrand Russell, and six particular organizations from a total

of ten different named agencies and an unknown number of unnamed agencies.  Plaintiff's

Complaint names as Defendants:  the Federal Bureau of Investigation ("FBI"); the Central

Intelligence Agency ("CIA"); the Defense Intelligence Agency; the Department of the Air Force

("Air Force"); the Department of Justice ("DOJ"); the Department of the Army ("Army"); the

Department of the Navy ("Navy"); the Department of State ("State Department"); the National

Archives and Records Administration ("NARA"); the National Security Agency ("NSA"); and

"John Doe Agencies 1-10," defined as "agencies of the United States Government to whom another

agency has, or will, refer documents or information for a determination as to its releasability."  *See*

Compl. at 1 & ¶ 13.

Currently before the Court is a Motion for Partial Dismissal filed on June 13, 2005 by a subsection of the Defendants – specifically, Defendants CIA, NARA, NSA, Air Force, Army, and Navy (collectively, "Defendants" for the purposes of this motion) move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that the Court lacks jurisdiction over their subject matter.  Plaintiff has filed an Opposition to this motion, and Defendants have filed a subsequent Reply.  Upon a searching examination of these filings, the attached affidavits and exhibits, the relevant case law, and the entire record herein, the Court shall grant Defendants' Motion for Partial Dismissal.

## I: BACKGROUND

For the purposes of organizational clarity, the Court's Background section shall discuss Plaintiff's actions with respect to each of the seven relevant Defendants in separate subsections.

A.     *The United States Department of the Navy*

By letter dated August 26, 2001, Plaintiff, through counsel, filed a FOIA and Privacy Act request with the main FOIA office of the Navy for access to records pertaining to a variety of subjects, including himself, Lord Bertrand Russell, and six named organizations.  *See* Decl. of Jason L. Jones, Lieutenant, Assistant Staff Judge Advocate to the Director, Naval Criminal Investigative Service ("NCIS"), Department of the Navy ("Jones Decl.) ¶ 3 & Ex. A (Pl.'s 8/26/01 FOIA Req. to the Navy).  By letter dated September 18, 2001, the Chief of Naval Operations forwarded Plaintiff's request to NCIS for direct response.  *Id.* ¶ 4 & Ex. B (9/18/01 Letter to Pl.'s Counsel from Doris Lama, Head, DON PA/FOIA Policy Branch Referring to NCIS).

By letter dated October 19, 2001, NCIS informed Plaintiff that it found no records responsive to his request.  *Id.* ¶ 4 & Ex. C (10/9/01 Letter to Pl.'s Counsel from Linda M. Riddle, Information and Privacy Coordinator with NCIS).  NCIS informed Plaintiff of his right to appeal

that decision.  *Id.*  However, Plaintiff did not appeal this decision prior to filing his suit in this action.  *See id.*; *see also* Decl. of Alexander W. Whitaker IV, Captain, Deputy Assistant Judge Advocate General ("JAG") (General Litigation), Office of JAG, Department of the Navy ("Whitaker Decl.") ¶ 3; Pl.'s Opp'n at 3 ("Schoenman's fail to appeal these NCIS decisions . . . ."); Decl. of James H. Lesar, Counsel for Plaintiff ("Lesar Decl.") ¶ 5.

Additionally, the FBI referred two (2) pages of records responsive to Plaintiff's FOIA request made to it, for records concerning the Bertrand Russell Peace Foundation, to the Department of Defense ("DoD") on March 25, 2002.  *See* Jones Decl. ¶ 5 & Ex. D (3/25/02 Referral from John M. Klesko, Jr., FOIPA Section, Office of Public and Congressional Affairs to H. J. McIntyre, Director of the Directorate for Freedom of Information and Security Review at the DoD).  These pages were directed to NCIS on May 22, 2002 for direct response to Plaintiff.  *Id.* & Ex. E (5/22/02 Letter from Lama to Pl.'s Counsel).  By letter dated July 25, 2002, NCIS released these two pages in part with redactions made pursuant to Exemption 7(C) of the FOIA, 5 U.S.C. § 552(b)(7)(C).  *Id.* & Ex. F (7/25/02 Letter from Zoe S. Kugeares, Lt. JAGC, USNR, Staff Attorney, to Pl.'s Counsel).  NCIS informed Plaintiff of his right to appeal this decision.  Once again, Plaintiff failed to appeal this decision prior to the filing of his Complaint in this case.  *Id.*; Whitaker Decl. ¶ 3; Lesar Decl. ¶ 5 & Ex. 5 (7/12/05 Schoenman Appeal of Navy Decision).

Following Defendants' Motion to Dismiss in this case, Plaintiff did submit an appeal regarding the NCIS's October 19, 2001 determination on July 12, 2005.  *See* Lesar Decl. ¶ 5 & Ex. 5 (7/12/05 Schoenman Appeal of Navy Decision).[1]  Plaintiff's appeal notes that:

Initially you informed my client, Ralph Schoenman, that you had no records

---

[1] Plaintiff's Opposition to Defendants' Motion to Dismiss was filed on the same day, July 12, 2005.

3

pertaining to him or Lord Bertrand Russell.  Subsequently, however, the FBI referred two pages regarding the Bertrand Russell Peace Foundation to your unit.  This makes it clear that either NCIS did not search Item 2(a) of Mr. Schoenman's request, which was for records pertaining to the Bertrand Russell Peace Foundation, or it did conduct such a search without locating the document referred to it by the FBI, thus raising questions to the adequacy of its search.

Accordingly, we now appeal your October 19, 2001 determination.

*See* Lesar Decl., Ex. 5 (7/12/05 Schoenman Appeal of Navy Decision).

B.       *United States Department of the Air Force*

Plaintiff claims in his Complaint that he sent a FOIA and Privacy Act request to the Air

Force on August 26, 2001.  *See* Compl. ¶ 36.  However, the Air Force office responsible for

processing requests for records from the Office of the Secretary of the Air Force, Bolling Air Force

Base, and other Headquarters Air Force offices has found no record of this FOIA request from

Plaintiff or from Plaintiff's counsel.  *See* Decl. of John M. Espinal, Chief Documentation

Information and Services Branch, Headquarters Air Force, Information Management Operations

Branch, Department of the Air Force ("Espinal Decl.) ¶¶ 2, 4-5.  According to the Declaration of

James H. Lesar, Plaintiff's counsel, as to the Air Force, NARA, and NSA:

I drafted the requests to each of these agencies and I have a high degree of certainty that I mailed them. The requests were typed on a computer at my home and are contained in a file on that computer which preserves each of the FOIA requests which I submitted to a federal agency on Mr. Schoenman's behalf.  Copies of these requests are attached hereto as Exhibits 1-3.

Lesar Decl. ¶ 2 & Ex. 1 (Draft of Air Force Req. from Lesar's Computer dated 8/26/01).

Additionally, the FBI referred four pages of records responsive to Plaintiff's FOIA request

made to it, for records concerning the International War Crimes Commission, to the Air Force Office

of Special Investigations ("AFOSI") for direct response to Plaintiff.  *See* Decl. of Anne C. Costa,

Information Release Branch for Headquarters, Air Force Office of Special Investigations,

Department of the Air Force ("Costa Decl.") ¶ 3.  By letter dated February 26, 2004, AFOSI

released these four pages with redactions made pursuant to Exemptions 6 and 7(C) of the FOIA, 5

U.S.C. § 552(b)(6), (7)(C).  *See id.* ¶ 5 & Ex. A (2/26/04 Letter from Costa to Pl.'s Counsel).  The

AFOISA informed Plaintiff of his right to appeal this decision.  Costa Decl. ¶ 5.  However, the

AFOISA has no record documenting Plaintiff's appeal of this decision.  *Id.*  According to the

Declaration of James H. Lesar, Plaintiff's counsel,

> The Air Force also claims that Schoenman did not appeal a determination which its
> Office of Special Investigations made with respect to four pages.  However, my
> computer file on Schoenman's administrative correspondence contains the March 16,
> 2004 appeal which I sent the Air Force.  *See* Exhibit 4.

Lesar Decl. ¶ 3 & Ex. 4 (Draft of AFOISA Appeal from Lesar's Computer dated 3/16/04).

      *C.*      *The Central Intelligence Agency*

      By letter dated July 24, 2001, Plaintiff, through counsel, filed a FOIA and Privacy Act

request with the CIA for records on the same variety of subjects, including himself, Lord Bertrand

Russell, and six named organizations.  *See* Decl. of Scott A. Koch, Chief, Public Information

Programs Division, Information Management Services, Directorate of Support, CIA ("Koch Decl.")

¶ 4 & Ex. A (Pl.'s 7/24/01 FOIA Req. to CIA).  The CIA opened two request files, one regarding

Plaintiff and one regarding the other subjects of his request.  *Id.* ¶ 5.

      By letter dated March 17, 2003, the CIA addressed the latter request (i.e., the request

directed at the other subjects) by informing Plaintiff that search fees could exceed $900.00 and that

the CIA needed a commitment from Plaintiff to pay fees before proceeding with his request.  *Id.* ¶ 6

& Ex. C (3/17/03 Letter from Kathryn I. Dyer, Information and Privacy Coordinator with the CIA,

to Pl.'s Counsel).  By letter dated March 29, 2003, Plaintiff's counsel informed the CIA that he

would commit to pay up to $300.00 for a search on only two of the seven subjects:  (1) Lord

Bertrand Russell, and (2) the International War Crimes Tribunal. *Id.* ¶ 7 & Ex. D (3/29/03 Resp. of Pl.'s Counsel to Dyer).

By letter dated July 17, 2003, the CIA acknowledged receipt of Plaintiff's letter limiting his third-party request, and further informed Plaintiff that its records showed many previous requests on these subjects. *Id.* ¶ 8 & Ex. E (7/17/03 Acknowledgment of Receipt by Dyer). The CIA advised Plaintiff that records released in response to these previous requests were available to Plaintiff at a charge of $0.10 per page. *Id.* The CIA enclosed lists of records responsive to Plaintiff's request, and instructed Plaintiff to mark the documents that he would like to receive copies of and to return the lists to the CIA. *Id.* However, the CIA received no further correspondence regarding this third-party aspect of his FOIA request. *Id.* ¶ 9.

> Plaintiff's counsel admits that no response was sent, noting:
>
> Plaintiff's counsel sent the CIA's letter and its list to his client and requested that he advise him as to which of the listed records he wished to obtain. When preparing the response to defendant's motion for partial dismissal, plaintiff's counsel was unable to find any response from Mr. Schoenman to his inquiry. Mr. Schoenman spent several hours searching his files and was unable to locate either a copy of counsel's letter or the CIA's list. Additionally, although counsel was able to find a copy of the CIA's July 17th letter in his files, he did not find the list which was enclosed in it. As a result, Plaintiff's counsel has requested that the CIA again provide a copy of the list which accompanied its July 17th letter, and he has been assured by the CIA's counsel that it will be provided to him. When it is received, Schoenman will submit a supplemental filing regarding his response to the letter.

Pl.'s Opp'n at 5.

### D.     The National Archives and Records Administration

Plaintiff claims in his Complaint that he sent a FOIA and Privacy Act request to NARA on March 31, 2003, for records related to the Who Killed Kennedy Committee and the Citizen's Commission of Inquiry. *See* Compl. ¶ 47. NARA searched its relevant databases and found no record of receiving this request from Plaintiff or from Plaintiff's counsel. *See* Decl. of David

Mengel, Chief, Special Access and FOIA Staff, NARA ("Mengel Decl.") ¶¶ 2-4.

According to the Declaration of James H. Lesar, Plaintiff's counsel, as to the Air Force,

NARA, and NSA:

> I drafted the requests to each of these agencies and I have a high degree of certainty
> that I mailed them.  The requests were typed on a computer at my home and are
> contained in a file on that computer which preserves each of the FOIA requests
> which I submitted to a federal agency on Mr. Schoenman's behalf.  Copies of these
> requests are attached hereto as Exhibits 1-3.

Lesar Decl. ¶ 2 & Ex. 3 (Draft of NARA Req. from Lesar's Computer dated 3/31/03).

> E.    *Department of the Army*

By letter dated July 27, 2001, Plaintiff, through counsel, filed a FOIA and Privacy Act

request with the Army for records of the same variety of subjects, including himself, Lord Bertrand

Russell, and six named organizations.  *See* Decl. of Bruno C. Leuyer, Chief, Department of the

Army FOIA Staff ("Leuyer Decl.") ¶ 4 & Ex. A (Pl.'s 7/27/01 FOIA Req. to Army).

By letter dated September 24, 2001, the Army informed Plaintiff that it had located no

records responsive to his request for records about himself, Bertrand Russell, or the six

organizations.  *Id.* ¶ 7 & Ex. B (9/24/01 Letter from Rose Marie Christensen, Chief, FOIA/Privacy

Office to Pl.'s Counsel).  The Army informed Plaintiff of his right to appeal this determination.  *Id.*

However, the Army has received no response to its letter and has uncovered no evidence indicating

that Plaintiff ever appealed this determination.  *Id.*

According to James H. Lesar, Plaintiff's counsel:

> The Department of the Army says that by letter dated September 24, 2001, it advised
> Schoenman that it had located no responsive records pertaining to him, Lord
> Bertrand Russell, or six organizations listed in the request.  I do not recall having
> seen this letter and an extensive search of my files has turned up no evidence that I
> ever received this letter.

Lesar Decl. ¶ 5.

Further, the Army also forwarded Plaintiff's FOIA request to its Intelligence and Securty

Command ("ISC") for a search by that office as well.  *See* Decl. of Susan Butterfield, Director,

FOIA/Privacy Office, ISC, Department of the Army (Butterfield Decl.) ¶ 2.  By letter dated

November 13, 2001, ISC informed Plaintiff that it found no records responsive to his request for

records about himself, Bertrand Russell, or the six organizations.  *Id*. ¶ 4 & Ex. A (11/13/01 Letter

from Russell A. Nichols, Chief, FOIA/Privacy Office to Pl.'s Counsel).  ISC informed Plaintiff of

his right to appeal this determination.  *Id*. ¶ 6.  However, the ISC has received no response to its

letter and has uncovered no evidence indicating that Plaintiff ever appealed this determination.  *Id*.

According to James H. Lesar, Plaintiff's counsel:

> The Army also states that by letter dated November 13, 2001, the Army Intelligence
> and Security Command sent me a letter stating that it had found no records
> responsive to his request.  Once again, I have no recollection of ever having received
> this letter and an extensive search of my files has not located any such letter.

*Id*. ¶ 6.

E.    *The National Security Agency*

Finally, Plaintiff claims in his Complaint that he sent a FOIA and Privacy Act request to

NSA on August 26, 2001.  *See* Compl. ¶ 51.  NSA searched its relevant databases and found no

record of receiving this request from Plaintiff or from Plaintiff's counsel.  *See* Decl. of Louis F.

Giles, Director of Policy, NSA ("Giles Decl.") ¶ 3.

According to the Declaration of James H. Lesar, Plaintiff's counsel, as to the Air Force,

NARA, and NSA:

> I drafted the requests to each of these agencies and I have a high degree of certainty
> that I mailed them.  The requests were typed on a computer at my home and are
> contained in a file on that computer which preserves each of the FOIA requests
> which I submitted to a federal agency on Mr. Schoenman's behalf.  Copies of these
> requests are attached hereto as Exhibits 1-3.

8

Lesar Decl. ¶ 2 & Ex. 2 (Draft of NSA Req. from Lesar's Computer dated 7/24/01).

## II: LEGAL STANDARDS

A.      *Motion to Dismiss Pursuant to Rule 12 of the Federal Rules of Civil Procedure*

1.      Rule 12(b)(1)

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Rule

12(b)(1).  In general, a motion to dismiss under Federal Rule of Civil Procedure 12(b) should not

prevail "unless plaintiffs can prove no set of facts in support of their claim that would entitle them to

relief." *Kowal v. MCI Commun. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Conley v.

Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  A court may appropriately dispose

of a case under 12(b)(1) for standing, and may "consider the complaint supplemented by undisputed

facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's

resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198

(D.C. Cir. 2003) (citations omitted); *see also Artis v. Greenspan*, 223 F. Supp. 2d 139, 152 n.1

(D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to

dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction."); *Vanover v.

Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("where a document is referred to in the complaint

and is central to plaintiff's claim, such a document attached to the motion papers may be considered

without converting the motion to one for summary judgment") (citing *Greenberg v. The Life Ins.

Co. of Virginia*, 177 F.3d 507, 515 (6th Cir. 1999)).  At the stage in litigation when dismissal is

sought, the plaintiff's complaint must be construed liberally, and the plaintiff should receive the

benefit of all favorable inferences that can be drawn from the alleged facts.  *EEOC v. St. Francis

Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  In spite of the favorable inferences

that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject

matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*,

121 F. Supp. 2d 84, 90 (D.D.C. 2000).

          2.    <u>Rule 12(b)(6)</u>

      In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, unlike resolving

a motion under Rule 12(b)(1), the court must construe the complaint in a light most favorable to the

plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual

allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914,

915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The

complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of

all inferences that can be derived from the facts alleged.").  While the court must construe the

Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such

inferences are not supported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276.

Moreover, the court is not bound to accept the legal conclusions of the non-moving party. *See*

*Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).  The court is limited to considering facts

alleged in the complaint, any documents attached to or incorporated in the complaint, matters of

which the court may take judicial notice, and matters of public record. *See St. Francis Xavier Sch.*,

117 F.3d at 624; *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C.

Cir. 1993).  Factual allegations in briefs of memoranda of law may not be considered when deciding

a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the

complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v.*

*Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (when a motion to dismiss is

based on the complaint, the facts alleged in the complaint control).

        B.      *Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56*

       A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted).

       Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. 2505 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be

11

granted." *Liberty Lobby*, 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted).  "Mere

allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper

motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The

adverse party must do more than simply "show that there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986).  Instead, while the movant bears the initial responsibility of

identifying those portions of the record that demonstrate the absence of a genuine issue of material

fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is

a *genuine issue for trial*.'" *Id.* at 587, 106 S.Ct. 1348 (citing Fed. R. Civ. P. 56(e)) (emphasis in

original).

      *C.*     *FOIA*

      Congress enacted FOIA for the purpose of introducing transparency to government

activities.  *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984).  Congress

remained sensitive, however, to the need to achieve balance between this objective and the

vulnerability of "legitimate governmental and private interests [that] could be harmed by release of

certain types of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975

F.2d 871, 872 (D.C. Cir. 1992); *see also Summers v. Dep't of Justice*, 140 F.3d 1077, 1079 (D.C.

Cir. 1998).  Accordingly, FOIA provides nine exemptions pursuant to which an agency may

withhold requested information.  *See* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9).

      The Court reviews an agency's refusal to disclose requested documents *de novo*.  *See* 5

U.S.C. § 552(a)(4)(B) (2000).  Generally, when summary judgment is requested in a FOIA matter,

the agency bears the burden of showing that a FOIA exemption applies.  *Smith v. Dep't of Justice,*

251 F.3d 1047, 1050 (D.C. Cir. 2001).  To satisfy this burden, the agency may provide a plaintiff

"with a *Vaughn* index, which must adequately describe each withheld document, state which

exemption the agency claims for each withheld document, and explain the exemption's relevance."

*Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir. 2002); *see also Vaughn v.*

*Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).  In addition, the agency's accompanying affidavits or

declarations must describe "the justifications for nondisclosure with reasonably specific detail,

demonstrate that the information withheld logically falls within the claimed exemption, and are not

controverted by either contrary evidence in the record nor evidence of agency bad faith."  *Military*

*Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  These affidavits may be submitted by

an official who coordinated the search, and need not be from each individual who participated in the

search.  *See SafeCard Servs. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

There is no set formula for a *Vaughn* index; so long as the agency provides the Court with

materials providing a "reasonable basis to evaluate the claim of privilege," the precise form of the

agency's submission -- whether it be an index, a detailed declaration, or a narrative -- is immaterial.

*Gallant v. Nat'l Labor Relations Bd.*, 26 F.3d 168, 173 (D.C. Cir. 1994) (internal citations

omitted).  While *Vaughn* indexes are generally discretionary, affidavits alone may not suffice once it

is established that records and documents are in a governmental agency's possession.  *Miscavige v.*

*Internal Revenue Serv.*, 2 F.3d 366, 368 (11th Cir. 1993) (citing *Stephenson v. Fed. Bureau of*

*Investigation*, 629 F.2d 1140, 1144-45 (5th Cir. 1980)).  Therefore, it is in a governmental

agency's best interest to provide a *Vaughn* index when claiming privilege, should it seek to satisfy

its disclosure burden.  Typically, *Vaughn* indexes are most useful in cases involving thousands of

pages of documents, when only a sampling of the documents is practical.  When dealing with

voluminous records, a court will sanction an index or agency declaration that describes only a representative sample of the total number of withheld documents.  *See Bonner v. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991); *Meeropol v. Meese*, 790 F.2d 942, 956-57 (D.C. Cir. 1986); *Washington Post v. Dep't of Def.*, 766 F. Supp. 1, 15 (D.D.C. 1991).  The parties may determine the method for selecting the sample documents to be included in the index for they are in the best position to do so.  *See Washington Post*, 766 F. Supp. at 16.  The Court should only interfere with the parties determinations of privilege if and when necessary.  *Id.*

Courts must "accord substantial weight" to an agency's affidavit regarding FOIA exemptions.  5 U.S.C. § 552(a)(4)(B) (2004); *see also Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), *cert. denied*, 513 U.S. 823, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994) ("Affidavits submitted by an agency are 'accorded a presumption of good faith.'") (quoting *Safecards Servs., Inc.*, 926 F.2d at 1200).  Indeed, since FOIA exemptions are narrowly construed, should an agency correctly show that the FOIA does not apply to withheld material, the Court's review of the agency's decision is limited to determining whether the agency abused its discretion.  *Mead Data Cent. Inc. v. Dep't of Air Force*, 566 F.2d 242, 259 (D.C. Cir. 1977).  Therefore, should an exemption correctly apply, an agency's justification for withholding information need not allude to a specific injury.  *See id.* at 258-59 (permitting the agency to rely upon the explanation that disclosure "would impair the deliberative process . . . by impairing the free and frank exchange of ideas among [agency] personnel").

Moreover, the agency must detail what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document.  *Mead Data Cent. Inc.*, 566 F.2d at 261.  Any non-exempt information that is reasonably segregable from the requested

records must be disclosed.  *Oglesby v. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996).  In

addition, district courts are required to consider segregability issues even when the parties have not

specifically raised such claims.  *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d

1022, 1028 (D.C. Cir. 1999).

In opposing a motion for summary judgment, a plaintiff must offer more than conclusory

statements.  *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001)

(citing *Laningham*, 813 F.2d at 1241).  Indeed, a plaintiff pursuing an action under FOIA must

establish that either:  (1) the *Vaughn* index does not establish that the documents were properly

withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency

has failed to segregate and disclose all non-exempt material in the requested documents.  *See Perry-

Torres v. Dep't of State*, 404 F. Supp. 2d 140, 142 (D.D.C. 2005); *Twist v. Ashcroft*, 329 F. Supp.

2d 50, 53 (D.D.C. 2004) (citing *Piper & Marbury, LLP v. U.S. Postal Serv.*, Civ. No. 99-2383,

2001 WL 214217, at *2 (D.D.C. Mar. 6, 2001)).

### III: DISCUSSION

The Court shall begin its analysis by first examining the principle that a plaintiff must

exhaust his/her administrative remedies before proceeding with a FOIA-related suit in federal court.

The Court shall then turn to the Air Force, NARA, and the NSA – the three agencies that claim

Plaintiff and/or his counsel failed to file FOIA requests with their offices.  Following this discussion,

the Court shall move to Plaintiff's FOIA requests made to the Navy and Army, and the Air Force's

referral of an aspect of Plaintiff's FOIA request originally directed to the FBI.  These agencies

contend that following their release of information to Plaintiff, Plaintiff failed to appeal their

decisions within the required time frame.  Finally, the Court shall investigate the CIA's claim that

Plaintiff failed to perfect his third-party request to them, thereby waiving his rights.

15

A.    *FOIA's Exhaustion of Administrative Remedies Requirement*

"Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby*, 920 F.2d at 61 (citation omitted); *see also* 5 U.S.C. § 552(a)(6)(A)(I), (ii).  While the exhaustion requirement is not jurisdictional because FOIA does not unequivocally make it so, *see Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258 (D.C. Cir. 2003), "as a jurisprudential doctrine, failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar," *id.* at 1259 (citing *Oglesby*, 920 F.3d at 61).  This Circuit has held that "FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review" and that allowing parties to pursue judicial review under FOIA would undercut the purposes of exhaustion. *Id.* (finding that the plaintiff's failure to appeal "did not and could not place the substance" of the redactions under Exemption 6 under administrative review).  Accordingly, it has been repeatedly held within this jurisdiction that exhaustion of administrative remedies is required before a party can seek judicial review of a FOIA-related withholding.  *See, e.g.*, *Spannaus v. Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987); *Dettman v. Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986); *Stebbins v. Nationwide Ins. Co.*, 757 F.2d 364, 366 (D.C. Cir. 1984); *see also Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir. 1995) (holding that a plaintiff "may generally seek judicial review of his FOIA request only after he has exhausted all administrative remedies"); *Taylor v. Appleton*, 30 F.3d 1365, 1367-68 & n.3 (11th Cir. 1994) (concluding that exhaustion, although not jurisdictional, is "condition precedent" to filing suit).

16

The exhaustion of administrative remedies is a condition precedent to filing suit that is intended to allow an agency to exercise its discretion and expertise on the matter and "correct or rethink initial misjudgments or errors." *Taylor*, 30 F.3d at 1369; *Oglesby*, 920 F.2d at 61, 64 (to permit a plaintiff to avoid administrative exhaustion "would cut off the agency's power to correct or rethink initial misjudgments or errors"); *Dettman v. Dep't of Justice*, 802 F.2d 1472, 1476 n.8 (D.C. Cir. 1986) (applying exhaustion requirement because "it would be both contrary to 'orderly procedure and good administration' and unfair 'to those who are engaged in the tasks of administration' to decide an issue which the FBI never had a fair opportunity to resolve prior to being ushered into litigation") (quoting *United States v. L.A. Trucker Truck Lines*, 344 U.S. 33, 36-37, 73 S.Ct. 67, 97 L.Ed.2d 54 (1952)).

FOIA specifically provides for an administrative appeal process following an agency's denial of a FOIA request. After receiving a FOIA request, an agency is required to:

> (i) determine whether 20 days (excepting Saturdays, Sundays, and legal public holidays) . . . whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons thereof, and of the right of such person to appeal to the head of the agency any adverse determination; and

> (ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

5 U.S.C. § 552(a)(6)(A)(i)-(ii). If the agency fails to comply with these time limits, the person making the request "shall be deemed to have exhausted his administrative remedies." 5 U.S.C. § 552(a)(6)(C). However, where an agency has entirely failed to respond to a request within the statutory deadlines, if the agency replies before the requester files suit, the exhaustion requirement still applies. *See Judicial Watch v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) (citing

17

*Oglesby*, 920 F.2d at 64-65).

       B.     *No FOIA Request Received – the Air Force, NARA, and the NSA*

      As discussed in the Background section of this Memorandum Opinion, Defendants NARA,

the Air Force, and the NSA all unequivocally contend that they never received FOIA requests from

Plaintiff, and that a thorough review of their records confirmed this conclusion. *See* Espinal Decl.

¶¶ 2, 4-5 (the Air Force did not receive Plaintiff's alleged FOIA request); Mengel Decl. ¶¶ 2-4

(NARA did not receive Plaintiff's alleged FOIA request); Giles Decl. ¶ 3 (NSA did not receive

Plaintiff's alleged FOIA request). Plaintiff response is two-fold. First, Plaintiff's counsel

equivocates, stating that he has "a high degree of certainty that [he] mailed [these FOIA requests]."

Lesar Decl. ¶ 2. In support of this contention, Plaintiff's counsel attaches draft copies of these

requests that he located on his home computer. *Id.* & Exs. 1-3. Second, Plaintiff notes that his

Complaint "avers that such letters were sent to the respective agencies," and that – in considering a

motion to dismiss – the district court must accept this pleading as true. *See* Pl.'s Opp'n at 1-2

(citing *Hammie v. Soc. Sec. Admin.*, 765 F. Supp. 1224, 1226 (E.D.Pa. 1991) (district court

assumed that the agency received plaintiff's FOIA requests despite the fact that it denied such

receipt)).

      At least two courts in this Circuit have dismissed FOIA actions where a plaintiff cannot

establish that the agency actually received the relevant FOIA request. In *Hutchins v. Dep't of*

*Justice*, Judge Henry H. Kennedy, Jr., granted the agency's motion to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(6) in a situation where the plaintiff showed that he mailed a FOIA

request but provided no evidence in the record establishing its receipt. *See Hutchins v. Dep't of*

*Justice*, Civ. No. 00-2349(HHK), 2005 WL 1334941, at *2 (D.D.C. June 6, 2005). According to

Judge Kennedy, "[w]ithout any showing that the agency received the request, the agency has no obligation to respond to it." *Id.* In an unpublished decision in *Marrera v. Dep't of Treasury*, Judge Thomas F. Hogan similarly granted the agency's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) where there was no record of the FOIA/Privacy Act request located by the agency. *See Marrera v. Dep't of Treasury*, Civ. No. 84-3731(TFH), slip. op. at 1-2 (D.D.C. Apr. 23, 1985).

While the end result of these decisions may well be accurate, one central problem exists in this case because Defendants have crafted their dispositive motion as a "motion to dismiss" rather than a Rule 56 motion for summary judgment. *See Williams v. McCausland*, Civ. Nos. 90-7563(RWS), 91-7281(RWS), 1994 WL 18510, at *4-*6 (S.D.N.Y. Jan. 18, 1994) (granting defendant's motion for summary judgment where plaintiff could no produce proof that the letters in question were actually received). Under a typical Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the reviewing court could certainly consider affidavits introduced by a defendant, as the Court can "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion*, 333 F.3d at 198 (citations omitted); *see also Artis*, 223 F. Supp. 2d at 152 n.1 ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction."). However, the D.C. Circuit's conception of a FOIA plaintiff's pre-filing administrative requirements in *Hidalgo* ensures that this dispute does not cleanly fit within the parameters of Rule 12(b)(1). In contrast to some language hinted at in earlier decisions, *see Dettman*, 802 F.2d at 1477, the *Hidalgo* court found that the exhaustion of administrative remedies requirement in FOIA was a jurisprudential doctrine establishing a condition precedent to a successful lawsuit; however,

19

exhaustion was "not jurisdictional because the FOIA does not unequivocally make it so." *Hidalgo*, 344 F.3d at 1258 (citation omitted). Because exhaustion is not jurisdictional, Plaintiff's arguments do not fit within Rule 12(b)(1); under Rule 12(b)(6), in contrast, courts do not usually consider supplemental materials outside of the facts alleged in the complaint. *See St. Francis Xavier Sch.*, 117 F.3d at 624.

There appear to be two ways around this problem, both of which were unfortunately overlooked by the *Hammie* decision relied upon by Plaintiff. First, in an oft-cited case, *Vanover v. Hantman*, 77 F. Supp. 2d 91 (D.D.C. 1999), Judge Thomas A. Flannery noted that "where a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Id.* at 98 (citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)). Under this theory, the *Vanover* court considered materials cited to and relied upon in the plaintiff's complaint, later attached in its opposition papers, without converting a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment. Here, because Plaintiff's FOIA action against Defendants the Air Force, NARA, and the NSA depends on their receipt and neglect of his FOIA requests, *see* Compl. ¶¶ 36, 47, 51, the Court can look to the actual existence – or non-existence – of these requests in the Rule 12(b)(6) motion to dismiss context because those documents are referred to in Plaintiff's Complaint and integral to his claims. As such, no conversion of Defendants' motion to dismiss would be necessary.

Second, a court could take up the suggestion offered in Rule 12(b) of the Federal Rules of Civil Procedure, which provides that

> [i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated

20

as one for summary judgment and disposed of as provided in Rule 56, and all parties
shall be given reasonable opportunity to present all material made pertinent to such a
motion by Rule 56.

*See* Fed. R. Civ. P. 12(b).  In this case, such a step would probably be most prudential.  Here,

through the declaration and attached exhibits provided by Plaintiff's counsel, as well as through the

Espinal, Mengel, and Giles declarations and attached exhibits provided by Defendants, the Court

essentially has before it all factual information, record evidence, and argument that could ever be

proffered surrounding this argument.  *See Williams*, 1994 WL 18510, at *4-*6 (resolving a similar

issue in the Rule 56 context).

Such debate is rendered academic by the plain language of the FOIA statute itself.

Fundamentally, an agency's obligations under FOIA are not established by the averred mailing of a

FOIA request, which is – at most – all that the Lesar Declaration and the attached drafts found in

files on his computer assert and show in this case.  Rather, the plain language of the statute states

that "[e]ach agency, upon any request for records made under paragraphs (1), (2), or (3) of this

subsection, shall determine with twenty days . . . after *receipt* of any such request to comply with

such request." 5 U.S.C. § 552(a)(6)(A)(I) (emphasis added).  This court has likewise determined

that "[a]n agency's obligations commence upon receipt of a valid request."  *Dale v. Internal*

*Revenue Serv.*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002); *see also Giamo v. Internal Revenue Serv.*,

Civ. No. 94-2463, 1996 WL 249362, at *2 (E.D. Mo. Feb. 23, 1996) ("Defendant's duty to process

a request is clearly conditioned upon receipt of such a request.").

The *Williams* court recognized this "burden shifting" in the FOIA exhaustion context, as (1)

a FOIA plaintiff must make a showing sufficient to establish the existence of an element essential to

his case (i.e., proper filing and receipt) to survive dipositive motions, and (2) the FOIA plaintiff

would bear the ultimate burden of proof at trial.  *Williams*, 1994 WL 18510 at *6.  Without placing

the burden of establishing proper filing and receipt on the plaintiff, the *Williams* court noted that

> the exhaustion doctrine would be a nullity.  If a party could avoid the exhaustion requirement merely by asserting that they had pursued all available administrative relief, administrative agencies would be placed in the position of having to prove the negative[.]

*Id.* at *4.  Indeed, placing the burden of proof "on the person seeking disclosure also comports with the principle of forensic procedure that when a 'defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service.'" *Id.* (quoting *Blue Ocean Lines v. Universal Process Equip.*, Civ. No. 93-1722(SS), 1993 WL 403961, at *4 (S.D.N.Y. Oct. 7, 1993)).

Here, Plaintiff has provided no proof that the draft FOIA requests on his computer were ever mailed to and received by the Air Force, NARA, and the NSA.  At best, Plaintiff's counsel avers that he has "a high decree of certainty that [he] mailed them."  Lesar Decl. ¶ 2.  Without a copy of a stamped envelope showing the mailing of the request, or a returned receipt certifying the actual receipt of the request by the agency, Plaintiff cannot meet the statutory requirements under FOIA requiring an agency's "receipt" to begin the production process.  *See Hutchins*, 2005 WL at 1334941 at *2 ("Without any showing that the agency received the request, the agency has no obligation to respond to it.").  Because Plaintiff cannot establish an essential element of a FOIA action with respect to the Air Force, NARA, and the NSA (i.e., the mailing and receipt of a FOIA request), the Court shall grant Defendants' motion and dismiss without prejudice the relevant counts against Defendants the Air Force, NARA, and the NSA.[2]

---

[2] The Court does note that should Plaintiff wish to obtain the information listed in his draft FOIA requests to the Air Force, NARA, and the NSA, he could simply (re)submit them, ensure receipt, and properly begin the process (anew).  Depending on the outcome of these requests, Plaintiff could certainly file another FOIA-related lawsuit against these agencies.

C.    *No Appeal Received – the Navy, the Air Force, and the Army*

1.    <u>The Navy</u>

According to the Navy, it made two determinations that Plaintiff failed to appeal.  First, in this case, the Navy received Plaintiff's August 26, 2001 FOIA/Privacy Act request for records held by the Navy relating to himself, Lord Bertrand Russell, and six named organizations.  *See* Jones Decl. ¶ 3.  Upon searching its files, the NCIS found no records responsive to Plaintiff's request, and informed Plaintiff on October 9, 2001 of this fact and his right to appeal its determination.  *Id*. ¶ 4 & Ex. C (10/9/01 Letter to Pl.'s Counsel from Linda M. Riddle, Information and Privacy Coordinator with NCIS).  However, the Navy has no record indicating that Plaintiff ever appealed this determination prior to the instigation of this lawsuit.  *Id*.  Second, upon referral of two pages of Plaintiff's FOIA request made to the FBI, NCIS released these pages to Plaintiff with redactions made pursuant to Exemption 7(C) of the FOIA, 5 U.S.C. § 552(b)(7)(C), on July 25, 2002.  *Id*. ¶ 5 & Ex. F (7/25/02 Letter from Zoe S. Kugeares, Lt. JAGC, USNR, Staff Attorney, to Pl.'s Counsel).  Once again, the Navy has no record indicating that Plaintiff appealed this decision prior to the instigation of this lawsuit.  *Id*. ¶ 9; *see also* Whitaker Decl. ¶ 3.

Here, Plaintiff admits that he failed to appeal the Navy's October 9, 2001 and July 25, 2002 determinations at the time.  Indeed, Plaintiff admits that he cannot challenge the redactions made by NCIS in the two pages provided by the FBI on July 25, 2002.  *See* Pl.'s Opp'n at 3 ("While Schoenman's failure to appeal the NCIS's action on the FBI referral means he cannot contest the withholdings asserted by the Navy regarding those two pages, it is not grounds for dismissing the entire action.").  However, Plaintiff contends that he can still dispute the October 9, 2001 determination, because following Defendants' Motion to Dismiss in this case, he did submit an appeal of this determination on July 12, 2005.  *See* Lesar Decl. ¶ 5 & Ex. 5 (7/12/05 Schoenman

23

Appeal of Navy Decision).  Plaintiff's appeal notes that:

> Initially you informed my client, Ralph Schoenman, that you had no records
> pertaining to him or Lord Bertrand Russell.  Subsequently, however, the FBI referred
> two pages regarding the Bertrand Russell Peace Foundation to your unit.  This
> makes it clear that either NCIS did not search Item 2(a) of Mr. Schoenman's request,
> which was for records pertaining to the Bertrand Russell Peace Foundation, or it did
> conduct such a search without locating the document referred to it by the FBI, thus
> raising questions to the adequacy of its search.
>
> Accordingly, we now appeal your October 19, 2001 determination.

*See* Lesar Decl., Ex. 5 (7/12/05 Schoenman Appeal of Navy Decision).

The Navy has two responses to Plaintiff's recent appeal.  First, it contends that concerns

regarding the adequacy of its search should have been addressed in an appeal shortly following its

October 9, 2001 determination.  *See* Defs.' Reply at 6.  According to the Navy, because Plaintiff's

recent appeal is "well outside the sixty-day time frame for administrative appeals established by

Navy regulations," *id.* at 6-7 (citing 32 C.F.R. § 701.12(1)-(2)), Plaintiff's July 12, 2005 appeal

must be dismissed as untimely.  *Id.*  Second, citing various cases for this principle, the Navy argues

that jurisdiction must be made based on the facts as they existed as of the date upon which Plaintiff's

appeal was filed; given that Plaintiff had not filed this appeal at that point, Plaintiff had failed to

exhaust his administrative remedies at that point and subsequent attempts must be rejected.  *Id.* at 7

n.4.

Two potential problems exist with the Navy's contentions.  First, as set out in *Hidalgo* and

reaffirmed in *Wilbur*, the rule that a plaintiff must exhaust his administrative remedies in a FOIA

action before proceeding to federal court is a jurisprudential doctrine, not a jurisdictional one.  *See,*

*e.g.*, *Wilbur*, 355 F.3d at 677-78.  While the Navy is correct that jurisdiction is determined as of the

date that a complaint is filed, because exhaustion is not a jurisdictional matter, the fact that Plaintiff

failed to file an appeal by the date of his Complaint in this action is not determinative.

Second, it could be possible to read the D.C. Circuit's recent decision in *Wilbur v. Central Intelligence Agency*, 355 F.3d 675 (D.C. Cir. 2004), as ensuring that Plaintiff's claim against the Air Force with respect to its October 9, 2001 determination is not totally barred because Plaintiff actually filed an appeal, albeit late.[3]  In *Wilbur*, the D.C. Circuit dealt with a plaintiff who had filed his administrative appeal late – four (4) years after the regulatory deadline.  *See id.* at 677 (citing 32 C.F.R. § 1900.42) (the CIA's administrative regulations required that appeals be received within forty-five (45) days of the agency's initial decision, with additional thirty (30) days available upon a showing of good cause).  Despite the fact the plaintiff had totally ignored the CIA's administrative appeal deadlines, the D.C. Circuit found that the plaintiff was not barred from bringing suit under an exhaustion argument because "the CIA accepted the appeal, processed it, reviewed the initial determination, and issued a final decision upholding the agency's prior determination."  *Id.* at 677.

One (ultimately incorrect) reading of *Wilbur* would favor Plaintiff.  Such a reading would essentially follow this logic.  First, the *Wilbur* plaintiff waited until four (4) years after receipt to file his appeal.  *Id.*  Nevertheless, the D.C. Circuit refused to bar the plaintiff's FOIA claim based on his failure to comply with the CIA's FOIA deadline because the plaintiff did ultimately appeal and exhaust his administrative requirements.  *Id.*  As such, by correctly recognizing that the exhaustion requirement in the FOIA context is jurisprudential, not jurisdictional, *Wilbur* eviscerates agency appeal deadlines in general.  Rather, *Wilbur* stands for the proposition that because exhaustion is prudential, it does not matter *when* as much as *if* a FOIA plaintiff actually files an administrative appeal.  Here, because Plaintiff actually filed an administrative appeal, though in the middle of this suit after Defendant's Partial Motion to Dismiss, Plaintiff has met his *Wilbur* burden.  Because

---

[3] Plaintiff did not raise *Wilbur* in his Opposition, but the Court raises it *sua sponte* here because the decision does lack clarity to a certain extent and could be asserted upon appeal.

Plaintiff has actually appealed the October 19, 2001 determination, and apparently the Navy has taken no action as to that appeal, Plaintiff has constructively exhausted his administrative remedies as to that determination, and can now seek review in this Court.  *See* 5 U.S.C. § 552(a)(6)(C); *Oglesby*, 920 F.2d at 61.  Dismissal is therefore improper.

The Court considers such a reading flawed.  Importantly, in *Wilbur*, the D.C. Circuit stressed that:

> the CIA *accepted* the appeal, processed it, *reviewed* the initial determination and *issued* a final decision upholding the agency's prior determination.  Wilbur then availed himself of the right to seek judicial review *as the CIA told him he could.  In these circumstances*, the policies underlying the exhaustion requirement have been served.

*Wilbur*, 355 F.3d at 677 (citations omitted) (emphasis added).  As such, what *Wilbur* really seems to stand for is the fact that by (1) accepting the appeal, despite the fact that it was late by four years, (2) reviewing its initial determination, and (3) issuing a final decision, the CIA waived any objection to the plaintiff's untimely appeal.  Indeed, by emphasizing "[i]n these circumstances," the D.C. Circuit stepped back from eviscerating all administrative appeals deadlines.  *Id.*  As such, *Wilbur* stands for the much more narrow proposition that such deadlines can be overlooked by a court only where the agency actually accepted the late appeal and issued a final decision, thereby implicitly telling the plaintiff that he could seek judicial review through its tacit actions.

In contrast to *Wilbur*, there is no evidence in this record as to whether the Navy actually accepted Plaintiff's late appeal filed on July 12, 2005.  Indeed, by filing a Reply brief that explicitly rejects any kind of tolling argument, *see* Defs.' Reply at 5-7, the Navy appears to be explicitly rejecting – rather than accepting – Plaintiff's late appeal.  Moreover, in contrast to the *Wilbur* plaintiff, who brought suit only after he filed his late appeal and it was processed and denied by the

agency, Plaintiff here waited until after bringing this suit and after being faced with dismissal at the hands of Defendants' motion to attempt to correct his failure by filing an appeal almost four (4) years after the fact.  The Court simply declines to read *Wilbur* as (1) eviscerating all administrative appeal deadlines, (2) allowing FOIA plaintiffs to file appeals after they have commenced suit, and (3) enabling a court to force a recalcitrant agency to accept an appeal that would otherwise violate its timeliness regulations.

Indeed, when faced with a situation somewhat analogous to this one after *Wilbur* was handed down, Judge Richard W. Roberts, in *Bestor v. Central Intelligence Agency*, followed reasoning identical to the analysis followed by this Court in Section III(B), and dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) a plaintiff's FOIA claim where the plaintiff had appealed an agency determination but "provided no information regarding the acceptance status or outcome of his appeal regarding reference number F-2005-00305."  *Bestor v. Cent. Intelligence Agency*, Civ. No. 04-2049(RWR), 2005 WL 3273723, at *3 (D.D.C. Sept. 1, 2005).  Citing *Williams*, 1994 WL 18510, at *4, Judge Roberts reaffirmed that a FOIA plaintiff "carries the burden to show exhaustion," and found that his plaintiff – by providing no evidence as to the result of his (timely) appeal – had "failed to meet his burden."  *Bestor*, 2005 WL 3273723 at *4.

Ultimately, the Court is in agreement with the more narrow reading of *Wilbur*, and reaffirms the "burden-shifting" framework set forth in *Williams*, *Bestor*, and Section III(B).  Here, Plaintiff was required to appeal the Navy's October 9, 2001 determination that it held no responsive records within the agency's deadline period – i.e., within sixty (60) days.  Plaintiff waited almost four years to file an appeal, which was finally submitted after the commencement of his suit and after he was faced with Defendants' Partial Motion to Dismiss.  The Navy, by its continued opposition, has clearly refused to accept this late filing.  As such, Plaintiff has failed to meet his burden to show that

he has administratively exhausted his claims as to the Navy's determination in a timely manner, and his claims against the Navy are therefore dismissed.

### 2.   The Air Force

As noted above, *see supra* Section III(B), a portion of Plaintiff's FOIA claim against the Air Force has been dismissed, given that Plaintiff cannot show that he actually mailed or that the Air Force actually received his FOIA request.  However, the FBI also referred four pages of records responsive to Plaintiff's FOIA request made to it, for records concerning the International War Crimes Commission, to the AFOSI for direct response to Plaintiff.  *See* Costa Decl. ¶ 3.  By letter dated February 24, 2004, AFOSI released these four pages with certain redactions that it contended were appropriate to FOIA Exemptions 6 and 7(C).  *See id.* ¶ 5 & Ex. A (2/26/04 Letter from Costa to Pl.'s Counsel).  The AFOISA informed Plaintiff of his right to appeal this decision.  Costa Decl. ¶ 5.  However, the AFOISA has no record documenting Plaintiff's appeal of this decision.  *Id.*

According to the Declaration of James H. Lesar, Plaintiff's counsel,

The Air Force also claims that Schoenman did not appeal a determination which its Office of Special Investigations made with respect to four pages.  However, my computer file on Schoenman's administrative correspondence contains the March 16, 2004 appeal which I sent the Air Force.  *See* Exhibit 4.

Lesar Decl. ¶ 3 & Ex. 4 (Draft of AFOISA Appeal from Lesar's Computer dated 3/16/04).

The statutory scheme of the FOIA provides for an administrative appeal process following an agency's initial response to a request.  *See* 5 U.S.C. § 552(a)(6)(A)(i), (ii).  Similarly, the Air Force regulations contain established procedures for an administrative appeal process, *see* 32 C.F.R. § 806.21 (2004) (Air Force), as do Army and Navy regulations, *see id.* §§ 518.14 (Army), 701.12 (Navy).  As the D.C. Circuit has stressed, an agency's response "is sufficient for purposes of requiring an administrative appeal if it includes:  the agency's determination of whether or not to

comply with the request; the reasons for its decision; and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse." *Oglesby*, 920 F.2d at 65. As the *Oglesby* court emphasized, if an "agency's initial response complies with these requirements, the FOIA requester must appeal to the head of the agency." *Id.* Upon a review of the Air Force's response, *see* Costa Decl., Ex. A (2/26/04 Letter from Costa to Pl.'s Counsel), it is clear that these requirements were met; consequently, Plaintiff was required to file an administrative appeal before seeking judicial review.

Once again, Plaintiff contends that he did appeal the Air Force's February 26, 2004 determination in an appeal dated March 16, 2004. *See* Lesar Decl. ¶ 3 & Ex. 4 (Draft of AFOISA Appeal from Lesar's Computer dated 3/16/04). Plaintiff provides a draft of this appeal from his counsel's computer in an attempt to support his claim. *Id.* Once again, Plaintiff runs into the same problem discussed in Section III(B). Namely, the plain language of the statute states that an agency's obligation to respond to an appeal is predicated upon receipt by the agency. *See* 5 U.S.C. § 552(a)(6)(A)(ii); *see also Williams*, 1994 WL 18510, at *4-*6. Here, the Air Force has demonstrated by its declaration that no appeal letter was ever received, *see* Costa Decl. ¶ 5, and Plaintiff provides no evidence to the contrary to actually establish *receipt*. The *Williams* court was faced with this identical situation, and found:

> Since [Plaintiff] Williams has produced no proof that the letters in question were actually received by the EEOC, and the record search of the EEOC indicates that they were not so received, Williams has not borne his burden of proof that he has, within 30 days of its receipt, appealed the denial of his FOIA request to the Commission's Office of Legal Counsel. Since he has not borne his burden that he made a proper appeal, he has failed to demonstrate that he has exhausted his administrative remedies with regard to his FOIA request to the EEOC, as he is required to do.

*Williams*, 1994 WL 18510 at *6; *see also Borer*, 2005 WL 32373723 at *4 ("Plaintiff carries the

burden to show exhaustion, and he has failed to meet his burden.").

Pursuant to the reasoning set forth in *Williams*, *Borer*, and the burden-shifting under FOIA discussed *supra* Section III(B), the Court shall dismiss Plaintiff's claim against the Air Force with respect to its February 26, 2004 determination regarding redactions made to released records pertaining to the International War Crimes Commission.

3.    The Army

_____In this case, the Army received Plaintiff's July 27, 2001 FOIA/Privacy Act request for records relating to himself, Lord Bertrand Russell, and six named organizations. *See* Leuyer Decl. ¶ 4.  However, according to the Army, the agency made two determinations that Plaintiff failed to appeal.  First, by letter dated September 24, 2001, the Army informed Plaintiff that it had found no records responsive to his request for records about himself, Bertrand Russell, or the six named organizations. *Id.* ¶ 7 & Ex. B (9/24/01 Letter from Rose Marie Christensen, Chief, FOIA/Privacy Office to Pl.'s Counsel).  Despite informing Plaintiff of this determination, the Army contends that it received no appeal on behalf of Plaintiff. *Id.*  Second, the Army also forwarded Plaintiff's FOIA request to the ISC for a search by that office. *See* Butterfield Decl. ¶ 2.  By letter dated November 13, 2001, ISC informed Plaintiff that it found no records responsive to his request. *Id.* ¶ 4 & Ex. A (11/13/01 Letter from Russell A. Nichols, Chief, FOIA/Privacy Office to Pl.'s Counsel).  Despite informing Plaintiff of this determination, the Army contends that it received no appeal on behalf of Plaintiff. *Id.* ¶ 6.  Upon a review of the Army's response, *see* Leuyer Decl., Ex. B (9/24/01 Letter from Rose Marie Christensen, Chief, FOIA/Privacy Office to Pl.'s Counsel); Butterfield Decl., Ex. A (11/13/01 Letter from Russell A. Nichols, Chief, FOIA/Privacy Office to Pl.'s Counsel), it is clear that the *Oglesby* requirements for when a response requires an appeal were met; consequently, Plaintiff was required to file an administrative appeal before seeking judicial review.

30

In response, Plaintiff's counsel avers as to each letter from the Army, "I do not recall having seen th[ese] letter[s] and an extensive search of my files has turned up no evidence that I ever received th[ese] letter[s]."  Lesar Decl. ¶¶ 5-6.  According to Plaintiff, because he did not receive these letters, he could not have appealed these decisions, and dismissal of his claims is therefore unwarranted.[4]

While the Court sympathizes with Plaintiff's position, three points undermine Plaintiff's case and warrant dismissal of his claim against the Army.  First, Plaintiff's counsel's declaration notably does not affirmatively state that he did not receive the Army's two determination letters dated September 24, 2001 and November 13, 2001; rather, his counsel merely emphasizes that he does "not recall" or "have [any] recollection" of receiving the Army's two letters.  *See* Lesar Decl. ¶¶ 5-6.  In contrast, the Army has submitted declarations that affirmatively state that responses were provided to Plaintiff on September 24, 2001 and November 13, 2001.  *See* Leuyer Decl. ¶ 7 & Ex. B (9/24/01 Letter from Rose Marie Christensen, Chief, FOIA/Privacy Office to Pl.'s Counsel); Butterfield Decl. ¶ 4 & Ex. A (11/13/01 Letter from Russell A. Nichols, Chief, FOIA/Privacy Office to Pl.'s Counsel).  Second, the Supreme Court has emphasized that in FOIA cases, courts "generally accord Government records and official conduct a presumption of legitimacy."  *Dep't of State v. Ray*, 502 U.S. 164, 179, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991); *see also Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 159, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004) ("When the presumption of legitimacy accorded to the Government's official conduct is applicable, clear evidence is usually required to replace it.").  Here, Plaintiff has made no showing that counters the

---

[4] Plaintiff's Complaint does not allege that the Army took no action, and makes no reference to any alleged failure to respond.  *See* Compl. ¶ 38.  Rather, it refers the reader to another paragraph, which simply states "Plaintiff has exhausted the administrative remedies."  *Id.* ¶ 21.

presumption of legitimacy of government action, and has cited no authority supporting his position. Third, it is uncontested that Plaintiff submitted his FOIA request to the Army on July 27, 2001. *See* Leuyer Decl. ¶ 4. However, Plaintiff took no further action with respect to this request until December 20, 2004 – the date Plaintiff filed his Complaint in this action. *See* Compl. at 1. As such, for a period of roughly three and a half years, Plaintiff took no action to contact the Army and inquire about the status of his allegedly "forgotten" request, nor did Plaintiff seek relief in any other forum. Moreover, around this same time, i.e., the Fall of 2001, it is uncontested that Plaintiff did receive a response from another agency, the Navy, yet admittedly failed to respond or appeal. This history of inaction and unresponsiveness provides further circumstantial evidence to undercut Plaintiff's claim.

Accordingly, in considering the specificity and content of the relevant declarations, the presumption of good faith afforded to Government declarants in this context, Plaintiff's failure to provide clear evidence to the contrary, and circumstantial evidence undercutting Plaintiff's claim, the Court concludes that Plaintiff has failed to meet his burden to establish exhaustion of administrative remedies. Plaintiff has simply failed to show that he did not receive the Army's determinations, and therefore can be excused from his failure to appeal. The Court shall therefore dismiss Plaintiff's FOIA claims against the Army flowing from its September 24, 2001 and November 13, 2001 determinations.

D.      *Plaintiff Failed to Perfect His FOIA Request – CIA*

Finally, Defendants claim that "plaintiff has failed to exhaust his administrative remedies because he failed to respond to the CIA's correspondence offering to allow him to reformulate his request to avoid search fees" when dealing with his third-party request for information relating to Bertrand Russell and six named organizations. Defs.' Mot. to Dismiss at 15-16. According to the

32

CIA, on July 17, 2003, it acknowledged receipt of Plaintiff's March 29, 2003 letter limiting the scope of his request to (1) Lord Bertrand Russell and (2) the International War Crimes Tribunal, and further informed Plaintiff that its records showed that there had been many previous requests on these two subjects. *See* Koch Decl. ¶ 8 &  Ex. E (7/17/03 Acknowledgment of Receipt by Dyer). The CIA then advised Plaintiff that records released in response to these previous requests were available to Plaintiff at a charge of $0.10 per page. *Id.*  The CIA enclosed lists of records responsive to Plaintiff's request, and instructed Plaintiff to mark the documents for which he would like to receive copies and to return the lists to the CIA. *Id.*  However, the CIA received no further correspondence regarding this third-party aspect of his FOIA request. *Id.* ¶ 9.

Plaintiff's counsel does not contest these facts. *See* Pl.'s Opp'n at 5.  Rather, he spends a full page detailing how he sent a copy of the CIA's July 17, 2003 response to his client and that he has no record of receiving any response from his client; he also claims that he can no longer locate a copy of the document list forwarded to him by the CIA. *Id.*  Plaintiff's counsel states that he "has requested that the CIA again provide a copy of the list which accompanied its July 17th letter, and he has been assured by the CIA's counsel that it will be provided to him.  When it is received, Schoenman will submit a supplemental filing regarding his response to the letter." *Id.*[5]

Ultimately, Plaintiff's efforts have no bearing on the issues before the Court as they relate to the third-party aspect of his FOIA request to the CIA.  Whether it was due to disorganization, apathy, or some other reason, it is uncontested that Plaintiff failed to respond in any way to the CIA's July 17, 2003 offer to streamline the handling of his third-party request and save him money. *See* Koch Decl. ¶ 9.  Despite his failure to respond, Plaintiff took the step of filing a lawsuit in

---

[5] Defense counsel did provide this letter. *See* Defs.' Reply at 9 n.6.

federal court against the CIA based on his own inaction.  Such a claim is without foundation.  Here,

Plaintiff is left with an unperfected request upon the CIA that was not administratively exhausted.  If

Plaintiff's argument to the contrary were to prevail (i.e., Plaintiff could just ignore the agency's

helping hand, refuse to respond, fail to exhaust his administrative remedies, and bring suit), it would

discourage agencies from pursuing a course that tries to aid the requester and reduce fees – a

position in accordance with the 1996 Amendments to the FOIA.  *See* 5 U.S.C. § 552(a)(6)(B)(i)

(authorizing an agency to offer the requester the opportunity "to limit the scope of the request").

Courts have refrained from accepting legal arguments that would create disincentives for agencies to

take actions that would benefit requesters overall.  *See, e.g.*, *Mehl v. Envtl. Prot. Agency*, 797 F.

Supp. 43, 47 (D.D.C. 1992) (refusing to accept an argument that "would create an incentive against

voluntary disclosure of information"); *see also Military Audit Project v. Casey*, 656 F.2d 724, 754

(D.C. Cir. 1981) (reasoning that an agency should not be penalized for releasing documents during

litigation; otherwise, there would be "a disincentive for an agency to reappraise its position, and

when appropriate, release documents previously withheld"); *Greenberg v. Dep't of Treasury*, 10 F.

Supp. 2d 3, 23-24 (D.D.C. 1998) ("Penalizing agencies by holding that they waive their exhaustion

defense if they make a discretionary document release after the time for an administrative appeal had

expired would not advance the underlying purpose of the FOIA – the broadest possible responsible

disclosure of government documents.").

Here, Plaintiff had responded to the CIA's previous correspondence with his March 29,

2003 letter.  *See* Koch Decl. ¶ 7 & Ex. D (3/29/03 Resp. of Pl.'s Counsel to Dyer).  The agency

therefore expected Plaintiff would respond to its July 17, 2003 response.  Plaintiff failed to do so

before the filing of this suit.  Instead, Plaintiff left his third-party request to the CIA dangling, with

no indication as to what he wanted the agency to do and with no exhaustion of his administrative

remedies against the agency.  It is simply not prudential to reach the merits of Plaintiff's third-party

request claim against the CIA given these failings.  As such, because Plaintiff has clearly failed to

exhaust his administrative remedies against the CIA with respect to his third-party request for

documents relating to Bertrand Russell and six named organizations before filing this suit,

Defendants' Partial Motion to Dismiss is granted on this point.[6]

## IV: CONCLUSION

For the reasons set forth above, the Court shall grant Defendants' Partial Motion to Dismiss.

An Order accompanies this Memorandum Opinion.


Date:   March 31, 2006


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[6] As indicated by Defendants, Plaintiff certainly may seek to obtain any third-party
documents on the list provided to him (once again) by the CIA during the course of this litigation.
*See* Defs.' Reply at 9 n.6.  "If [P]laintiff wishes to obtain documents from that list, he of course may
make a new request to the CIA to obtain the documents," but not within the contours of this suit, "as
the CIA has properly closed his FOIA request that is the subject of this litigation."  *Id*.