UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RALPH SCHOENMAN,

    Plaintiff,

     v.

FEDERAL BUREAU OF INVESTIGATION,
*et al.*,

    Defendants.

Civil Action No. 04-2202 (CKK)

**MEMORANDUM OPINION**
(June 5, 2006)

Plaintiff Ralph Schoenman, a longtime political activist and author, filed this action on
December 20, 2004, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000
& Supp. II 2002), and the Privacy Act of 1974, 5 U.S.C. § 552a (2000), seeking access to an array
of records pertaining to himself, Lord Bertrand Russell, and six particular organizations from a total
of ten different named agencies and an unknown number of unnamed agencies. Plaintiff's
Complaint names as Defendants: the Federal Bureau of Investigation ("FBI"); the Central
Intelligence Agency ("CIA"); the Defense Intelligence Agency; the Department of the Air Force
("Air Force"); the Department of Justice ("DOJ"); the Department of the Army ("Army"); the
Department of the Navy ("Navy"); the Department of State ("State Department"); the National
Archives and Records Administration ("NARA"); the National Security Agency ("NSA"); and
"John Doe Agencies 1-10," defined as "agencies of the United States Government to whom another
agency has, or will, refer documents or information for a determination as to its releasability." *See*
Compl. at 1 & ¶ 13.

Currently before the Court is a Motion for Partial Dismissal filed on January 20, 2006 by a subsection of the Defendants; specifically, Defendants FBI and State Department (collectively, "Defendants" for purposes of this motion) move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that the Court lacks jurisdiction over their subject matter. Plaintiff filed an Opposition to this motion on March 20, 2006, and Defendants filed a subsequent Reply on April 28, 2006.  Upon a searching examination of these filings, the attached affidavits and exhibits, the relevant case law, and the entire record herein, the Court shall grant-in-part and deny-in-part Defendants' Motion for Partial Dismissal.

## I: BACKGROUND

For the purposes of organizational clarity, the Court's Background section shall discuss Plaintiff's actions with respect to Defendant agencies and requests in separate subsections.

A.      *Requests to the FBI's Paris Legat*

By letter dated July 27, 2001, Plaintiff, through counsel, filed a FOIA and Privacy Act request with the Paris Legat of the FBI for access to records pertaining to a variety of subjects including himself, Lord Bertrand Russell, and six named organizations.  *See* Decl. of David M. Hardy, Section Chief of Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD") at FBI Headquarters ("Hardy Decl.") ¶ 5 & Ex. A (Pl.'s 8/27/01 FOIA Req. to FBI Paris Legat).  By letter dated July 31, 2001, the Paris Legat notified Plaintiff, through counsel, that it had forwarded his request to the FBI headquarters office ("FBIHQ").  *See id.* ¶ 6 & Ex. B (9/31/01 Letter to Pl's counsel from H. Enrique Ghimenti, Legal Attache, United States Embassy, Paris, France, referring FOIA request to FBIHQ).  FBIHQ opened a separate request for each subject as discussed below.

1.    FBI Request Number 948768 (re: Bertrand Russell Peace Foundation)

By letter dated August 21, 2001, FBIHQ acknowledged receipt of Plaintiff's FOIA request and assigned FOIPA Request Number 948768 to Plaintiff's request for documents concerning the Bertrand Russell Peace Foundation. *See id.* ¶ 9 & Ex. E (8/21/01 Letter to Pl's Counsel from John Kelso, Section Chief, FOIPA Section, Office of Public & Congressional Affairs, FBI, Department of Justice regarding request).  By letter dated March 25, 2002, FBIHQ informed Plaintiff that it had located 372 pages responsive to his request and was releasing 270 of those pages, with redactions made pursuant to FOIA exemptions 5 U.S.C. §552(b)(1), (2), (3), (7)(C), and (7)(D). *See id.* ¶ 10 & Ex. F (3/25/02 Letter to Pl's Counsel from John Kelso).  FBIHQ further informed Plaintiff that referrals of certain records had been made to other agencies, that his request for a fee waiver had been denied, and he was being assessed $17 in duplication fees. *Id.*  FBIHQ also informed Plaintiff of his right to appeal the decision. *Id.*

By letter dated May 25, 2002, Plaintiff appealed FBIHQ's decision as to its withholdings as well as the fee waiver denial to the Office of Information and Privacy ("OIP"), as directed in the FBIHQ letter of March 25, 2002. *See id.* ¶ 12 & Ex. G (Pl.'s 5/25/02 FOIA Appeal to OIP).  By letter dated November 18, 2003, OIP made a supplemental release of additional portions of six pages, affirmed the other withholdings, and affirmed FBIHQ's denial of a fee waiver. *See id.* ¶ 14 & Ex. I (11/18/03 Letter to Pl.'s counsel from Richard Huff, Co-Director, OIP, Department of Justice).  OIP's letter also indicated that Plaintiff may seek judicial review if dissatisfied with the present decision, in accordance with 5 U.S.C. §552(a)(4)(B). *See id.*

2.    FBI Request Number 948771 (re: Who Killed Kennedy Committee)

By letter dated September 19, 2001, FBIHQ assigned FOIPA Request Number 948771 to Plaintiff's request for documents from the Paris Legat concerning the Who Killed Kennedy

Committee. *See* Hardy Decl. ¶ 15 & Ex. J (9/19/01 Letter to Pl's Counsel from John Kelso, Section Chief). In the same letter, FBIHQ informed Plaintiff that it found no records responsive to his request and informed Plaintiff of his right to appeal the decision. *See id.*

> Plaintiff has not appealed the decision. *Id.* According to James H. Lesar, Plaintiff's counsel,
>
> Defendants state that by letter dated September 19, 2001, it advised Schoenman that its Paris Legat had no records responsive to his request for records on the Who Killed Kennedy Committee. I have searched high and low for any record of this request and have not found it. I do not believe I ever received it.

Decl. of James H. Lesar, Counsel for Plaintiff ("Lesar Decl.") ¶ 8.

> 3.      FBI Request Number 948773 (re: Citizens Commission of Inquiry)

FBIHQ assigned FOIPA Request Number 948773 to Plaintiff's request for records from the Paris Legat concerning the Citizens Commission of Inquiry ("CCI"). *See* Hardy Decl. ¶ 16. By letter dated June 14, 2002, FBIHQ informed Plaintiff that 336 of 360 responsive pages were being released, with redactions made pursuant to FOIA exemptions 1, 2, 7(C), and 7(D). *See id.* & Ex. K (6/14/02 Letter to Pl.'s Counsel from Robert Moran, Acting Section Chief, FOIPA Section, Records Management Division, FBI, Department of Justice). FBIHQ also informed Plaintiff of referrals made to other agencies, the denial of his request for a fee waiver, the charging of $23.60 in duplication fees, and his right to appeal the decision. *Id.* Plaintiff has not appealed this decision nor paid the assessed duplication fees. *Id.* Plaintiff accepts that the Court does not have jurisdiction over this matter, admitting that misplacement of records "apparently explains why no appeal was lodged." *See* Pl.'s Opp'n at 4.

Additionally, FBIHQ referred 27 pages of material responsive to Plaintiff's FOIA request for records pertaining to the CCI to the Department of the Army ("Army"). *See* Hardy Decl. ¶ 17. By letter dated June 24, 2002, the Army released 21 pages of the material to Plaintiff, with

redactions made by the Army pursuant to FOIA exemption 1 and other redactions made by the FBI

pursuant to FOIA exemptions 1, 2, and 7(C).  *See id*. & Ex. L (6/24/02 Letter to Pl.'s Counsel from

Russell Nichols, Chief, Freedom of Information/Privacy Office, Department of the Army).  The

Army further informed Plaintiff that he could appeal the redactions made by the FBI to OIP.  *See id.*

The FBI has no record documenting Plaintiff's appeal of these redactions.  *Id*.  According to

the Declaration of James Lesar, Plaintiff's counsel,

> Defendants say that Schoenman never appealed the redactions made in documents
> which the FBI referred to the Army and were re-leased by it on June 24, 2002.
> However, I located copies of appeals both to the Army and the FBI [on my
> computer].

Lesar Decl. ¶ 10 & Ex. 1 & 2 (Drafts of FOIA Appeal to OIP, dated 7/1/02, and to Army

dated 7/17/02, from Lesar's Computer).  Having learned as a consequence of Defendants'

motion that OIP and the Army never received Plaintiff's appeals, Plaintiff indicates that he

has now (re)submitted the appeals.  *See* Pl.'s Opp'n at 4.

B.       *Requests to the FBI's Los Angeles Field Office*

By letter dated July 24, 2001, Plaintiff, through his counsel, filed a FOIA and Privacy Act

request with the FBI's Los Angeles Field Office ("LAFO") for access to records pertaining to a

variety of subjects including himself, Lord Bertrand Russell, and six named organizations. *See*

Hardy Decl. ¶ 18 & Ex. M (Pl.'s 7/24/01 FOIA Request to LAFO).  The LAFO assigned Request

Number 190-C2-E-1451 to this request.  *See id*.  By letter dated August 14, 2001, LAFO informed

Plaintiff that, upon initial review, no records were found responsive to his request and that proof of

death was needed before a search could be conducted regarding Lord Russell.  *See id*. ¶ 19 & Ex. N

(8/14/01 Letter to Pl.'s Counsel from Luis G. Flores, Acting Assistant Director in Charge, Chief

Division Counsel, FBI, Department of Justice).  Plaintiff's counsel subsequently appealed LAFO's

"no records" response to OIP by letter dated September 22, 2001. *See id*. ¶ 20 & Ex. O (9/22/01

Letter of Appeal from Pl.'s Counsel to OIP).

By letter dated January 16, 2002, LAFO informed Plaintiff that records regarding the

Plaintiff and Lord Russell had been located and were being forwarded to FBIHQ for processing, and

also that no records responsive to the other subjects of the request had been located. *See id*. ¶ 23 &

Ex. R (1/16/02 Letter from Ronald Iden, Assistant Director in Charge, Chief Division Counsel, FBI,

Department of Justice to Pl.'s Counsel).

### 1.   FBIHQ Request Number 954762 (re: Bertrand Russell)

By letter dated January 29, 2002, FBIHQ acknowledged receipt of Plaintiff's FOIA request

from the LAFO and indicated that his request for records concerning Lord Russell had been assigned

FOIPA Request Number 954762. *See id*. ¶ 24 & Ex. S (1/29/02 Letter from John Kelso to Pl.'s

Counsel). By letter dated August 13, 2002, FBIHQ informed Plaintiff that it was releasing 334 of

340 pages responsive to his request regarding Lord Russell, with redactions made pursuant to

exemptions 1, 2, 3, 7(C), and 7(D) of the FOIA. *See id*. ¶ 28 & Ex. W (8/13/02 Letter to Pl.'s

Counsel from David Hardy). FBIHQ further informed Plaintiff that referrals were made to other

agencies, that his fee waiver request was denied, that he was being charged $23.40 in duplication

fees, and could appeal the decision to OIP. *Id*. Plaintiff has not appealed the decision nor has he

paid the duplication fees. *Id*.

> According to Plaintiff's Counsel,
>
> The files of plaintiff's counsel indicate that he did receive this release of documents
> but failed to appeal the determinations made in connection therewith. As a result, this
> Court does not presently have jurisdiction over the fee waiver issue or the validity of
> the exemptions claimed.

Pl.'s Opp'n at 5.

Furthermore, FBIHQ referred one document responsive to this request to the State Department. *See id*. ¶ 29.  By letter dated May 1, 2003, The State Department released the document with redactions made by the FBI pursuant to FOIA exemption 7(C) and informed Plaintiff of his right to appeal the redactions made by the FBI to OIP.  *See id*. & Ex. X (5/1/03 Letter to Pl.'s Counsel from Margaret Grafeld, Director, Office of IRM Programs & Services, State Department). Plaintiff has not appealed these redactions.  *Id*.

However, Plaintiff's counsel maintains that while the FBI's August 13, 2002 letter references referrals having been made to multiple other government agencies, FBIHQ has accounted for only one referral to the State Department; as such, he contends that the Court still has jurisdiction over any undisclosed referrals.  *See* Pl's Opp'n at 5.

2.     FBIHQ Request Number 954768 (re: Ralph Shoenman)

By letter dated January 29, 2002, FBIHQ also acknowledged receipt of Plaintiff's request from LAFO regarding records pertaining to himself and assigned the request number 954768. *See id*. ¶ 25 & Ex. T (1/29/02 Acknowledgement of receipt by John Kelso).  Plaintiff informed FBIHQ that he agreed to pay the estimated duplication costs of $45.00 associated with the request. *See id*. ¶ 26 & Ex. U (2/6/02 Letter from John Kelso acknowledging Pl.'s willingness to pay costs).  In an undated letter, FBIHQ informed Plaintiff that 552 of 752 pages responsive to the request were being released with redactions made pursuant to exemptions 1, 2, 7(C), and 7(D) of the FOIA, and that he was being charged $45.20 in duplication costs. *See id*. ¶ 30 & Ex. Y (Undated letter from David Hardy regarding release of requested records).

Furthermore, by letter dated November 29, 2005, FBIHQ informed Plaintiff that an additional three pages were being released after consultation with the Army, with redactions made by the FBI pursuant to exemptions 1, 2, 6, 7(C), and 7(D) of FOIA and j(2) of the Privacy Act. *See*

*id*. ¶ 31 & Ex. Z (11/29/05 Letter from David Hardy indicating further release of documents).  By a second letter also dated November 29, 2005, FBIHQ informed Plaintiff that another ninety pages responsive to the request were being released after consultation with the State Department, and with redactions made by the FBI pursuant to the aforementioned exemptions.  *See id*. ¶ 32 & Ex. AA (11/29/05 Letter from David Hardy indicating subsequent release of records).

Plaintiff indicates that the previously mentioned undated letter – releasing records pertaining to the Plaintiff himself – was in fact dated April 27, 2005.  *See* Lesar Decl. ¶ 11 & Ex. 4 (4/27/05 Letter from FBIHQ indicating release of documents pertaining to request).  He indicates that because he did not receive a timely response to his FOIA request, he had "constructively exhausted his administrative remedies" by the time he filed this action.  *See* Pl.'s Opp'n at 6. Defendants have now acknowledged that the undated letter was sent on April 27, 2005.  *See* Defendants' Reply to "Plaintiff's Response to Defendants' Motion for Partial Dismissal" ("Defs.' Reply") at 10.

C.   *Request to the FBI's New York Field Office*

By letter dated July 24, 2001, Plaintiff, through counsel, filed a FOIA and Privacy Act request with the FBI's New York Field Office ("NYFO") for access to records pertaining to a variety of subjects including himself, Lord Bertrand Russell, and six named organizations.  *See* Hardy Decl. ¶ 33 & Ex. B(Pl.'s 7/24/01 FOIA request to NYFO).  NYFO assigned request number 190-NY-282257 to this inquiry.  *See id*.  By letter dated May 21, 2002, the NYFO informed Plaintiff that records were located regarding himself and the CCI and were being forwarded to FBIHQ for processing; the NYFO also informed Plaintiff that no records were found responsive to the other subjects in the request.  *See id*. ¶ 34 & Ex. CC (5/21/02 Letter to Pl.'s Counsel from Kevin Donovan, Assistant Director in Charge, NYFO indicating search results).  The letter also informed

Plaintiff of his right to appeal the "no records" determination.  *See id.*

However, Plaintiff has not appealed the decision.  *See id.*  According to James Lesar,

Plaintiff's Counsel:

> The FBI cites a May 21, 2002 letter which advised Schoenman that it had located no
> records on all subjects of this request to the New York field office except Schoenman
> and the CCI. I could locate no copy of this letter in my files. I noticed, moreover, that
> the copy of it which is attached as Exhibit CC contains a
> typographical error giving my address as 1003 K Street, N.W., Suite 104, rather
> than Suite 204 . . . There is no "Suite 101" [sic] in the 1003 K Street, N.W. building
> because the entire ground floor is occupied by The Souvenir Shop.

Lesar Decl. ¶ 12.

D.     *Department of State (re: Bertrand Russell Peace Foundation)*

By letter dated March 25, 2002, FBIHQ referred four documents that were responsive to

Plaintiff's request made to the Paris Legat for documents concerning the Bertrand Russell Peace

Foundation, under FBI Request Number 948768 discussed above, to the State Department for direct

response to Plaintiff.  *See* Decl. of Margaret P. Grafeld, U.S. Department of State's Information and

Privacy Coordinator and Director of Office of Information Programs and Services ("Grafeld Decl.")

¶ 4 & Ex. A (3/25/02 Letter from John Kelso, FBI, to Margaret Grafeld directing review and

disclosure of documents to Pl.).  The State Department assigned this request control number

200201178.  *See id.*

By letter dated May 8, 2002, the State Department released three documents in full, released

one document with excisions made pursuant to exemption 6 of the FOIA, and informed Plaintiff of

his right to appeal the State Department decision to the Appeals Review Panel.  *See id.* & Ex. B

(5/8/02 Letter from Margaret Grafeld to Pl.'s Counsel indicating release and redaction of

documents).  Furthermore, the State Department informed Plaintiff that the FBI had redacted the one

document pursuant to exemption 7(C) of the FOIA and indicated that he had a right to appeal the

redactions made by the FBI to the OIP.  *See id.* ¶ 6.

Plaintiff has not filed an appeal to either appellate authority.  *See id.* ¶ 5.  According to

James Lesar, Plaintiff's Counsel:

> Defendants say that by letter dated May 8, 2002, the State Department released four
> documents that had been referred to it by the FBI, and that Shoenman did not appeal
> the redactions. This is correct. This Court lacks jurisdiction over these four
> documents as released by the State Department on May 8, 2002.

Pl.'s Opp'n at 7.

## II: LEGAL STANDARDS

*A.     Motion to Dismiss Pursuant to Rule 12 of the Federal Rules of Civil Procedure*

1.     <u>Rule 12(b)(1)</u>

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Rule

12(b)(1).  In general, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) should not

prevail "unless plaintiffs can prove no set of facts in support of their claim that would entitle them to

relief."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Conley v.

Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  A court may appropriately dispose

of a case under 12(b)(1) for standing, and may "consider the complaint supplemented by undisputed

facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's

resolution of disputed facts."  *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198

(D.C. Cir. 2003) (citations omitted); *see also Artis v. Greenspan*, 223 F. Supp. 2d 139, 152 n.1

(D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to

dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction."); *Vanover v.

Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("where a document is referred to in the complaint

and is central to plaintiff's claim, such a document attached to the motion papers may be considered

without converting the motion to one for summary judgment") (citing *Greenberg v. The Life Ins. Co. of Virginia*, 177 F.3d 507, 515 (6th Cir. 1999)).  At the stage in litigation when dismissal is sought, the plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts.  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence.  *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

2.   Rule 12(b)(6)

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, unlike resolving a motion under Rule 12(b)(1), the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged.").  While the court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff if such inferences are not supported by the facts set out in the complaint."  *Kowal*, 16 F.3d at 1276. Moreover, the court is not bound to accept the legal conclusions of the non-moving party.  *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).  The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.  *See St. Francis Xavier Sch.*,

117 F.3d at 624; *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C.

Cir. 1993).  Factual allegations in briefs of memoranda of law may not be considered when deciding

a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the

complaint.  *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v.

Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (when a motion to dismiss is

based on the complaint, the facts alleged in the complaint control).

> B.        *Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits

demonstrate that there is no genuine issue of material fact in dispute and that the moving party is

entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638

(D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, bears the

"initial responsibility of informing the district court of the basis for [its] motion, and identifying

those portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of

material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986).  Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [his]

own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific

facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary

judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d

202  (1986).  To be material, the factual assertion must be capable of affecting the substantive

outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible

-12-

evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. 2505 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted).  "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment."  *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. 1348 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).[1]

### III: DISCUSSION

The Court shall begin its analysis by first examining the principle that a plaintiff must exhaust his/her administrative remedies before proceeding with a FOIA-related suit in federal court. The Court shall then discuss Defendants' contentions that Plaintiff failed to appeal several decisions

---

[1] Pursuant to the Court's previous discussion of exhaustion of administrative remedies as a jurisprudential, rather than a jurisdictional, doctrine, *see Schoenman v. Fed. Bureau of Investigation*, Civ. Action No. 04-2202 (CCK), 2006 WL 1126813, at *9-11 (D.D.C. Mar. 31, 2006), the Court will treat Defendants' motion as either a Rule 12(b)(6) motion for failure to state a claim or as a motion for summary judgment under Rule 56 – either treatment will generate the same legal conclusions.

rendered as to his FOIA requests.  Finally, the Court shall consider the two claims for which the

Plaintiff properly exhausted his administrative remedies and for which the Defendants have

withdrawn their claim that dismissal is warranted.

      A.     *FOIA's Exhaustion of Administrative Remedies Requirement*

      "Exhaustion of administrative remedies is generally required before filing suit in federal

court so that the agency has an opportunity to exercise its discretion and expertise on the matter and

to make a factual record to support its decision."  *Oglesby v. Dep't of the Amry*, 920 F.2d 57, 61

(D.C. Cir. 1990) (citation omitted); *see also* 5 U.S.C. § 552(a)(6)(A)(i), (ii).  While the exhaustion

requirement is not jurisdictional because FOIA does not unequivocally make it so, *see Hidalgo v.*

*Fed. Bureau of Investigation*, 344 F.3d 1256, 1258 (D.C. Cir. 2003), "as a jurisprudential

doctrine, failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the

'particular administrative scheme' support such a bar," *id.* at 1259 (citing *Oglesby*, 920 F.3d at 61).

This Circuit has held that "FOIA's administrative scheme favors treating failure to exhaust as a bar

to judicial review" and that allowing parties to pursue judicial review under FOIA would undercut

the purposes of exhaustion.  *Id.* (finding that the plaintiff's failure to appeal "did not and could not

place the substance" of the redactions under exemption 6 under administrative review).

Accordingly, it has been repeatedly held within this jurisdiction that exhaustion of administrative

remedies is required before a party can seek judicial review of a FOIA-related withholding.  *See,*

*e.g.*, *Spannaus v. Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987); *Dettman v. Dep't of Justice*,

802 F.2d 1472, 1477 (D.C. Cir. 1986); *Stebbins v. Nationwide Ins. Co.*, 757 F.2d 364, 366 (D.C.

Cir. 1984); *see also Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir. 1995) (holding that a

plaintiff "may generally seek judicial review of his FOIA request only after he has exhausted all

administrative remedies"); *Taylor v. Appleton*, 30 F.3d 1365, 1367-68 & n.3 (11th Cir. 1994)

(concluding that exhaustion, although not jurisdictional, is "condition precedent" to filing suit).

The exhaustion of administrative remedies is a condition precedent to filing suit that is

intended to allow an agency to exercise its discretion and expertise on the matter and "correct or

rethink initial misjudgments or errors."  *Taylor*, 30 F.3d at 1369; *Oglesby*, 920 F.2d at 61, 64 (to

permit a plaintiff to avoid administrative exhaustion "would cut off the agency's power to correct or

rethink initial misjudgments or errors"); *Dettman*, 802 F.2d at1476 n.8 (applying exhaustion

requirement because "it would be both contrary to 'orderly procedure and good administration' and

unfair 'to those who are engaged in the tasks of administration' to decide an issue which the FBI

never had a fair opportunity to resolve prior to being ushered into litigation") (quoting *United States

v. L.A. Trucker Truck Lines*, 344 U.S. 33, 36-37, 73 S.Ct. 67, 97 L.Ed.2d 54 (1952)).

FOIA specifically provides for an administrative appeal process following an agency's

denial of a FOIA request.  After receiving a FOIA request, an agency is required to:

> (i) determine within 20 days (excepting Saturdays, Sundays, and legal public
> holidays) . . . whether to comply with such request and shall immediately notify the
> person making such request of such determination and the reasons thereof, and of the
> right of such person to appeal to the head of the agency any adverse determination;
> and
>
> (ii) make a determination with respect to any appeal within twenty days (excepting
> Saturdays, Sundays, and legal public holidays) after the receipt of such appeal.  If on
> appeal the denial of the request for records is in whole or in part upheld, the agency
> shall notify the person making such request of the provisions for judicial review of
> that determination under paragraph (4) of this subsection.

5 U.S.C. § 552(a)(6)(A)(i)-(ii).  If the agency fails to comply with these time limits, the person

making the request "shall be deemed to have exhausted his administrative remedies."  5 U.S.C. §

552(a)(6)(C).  However, where an agency has entirely failed to respond to a request within the

statutory deadlines, if the agency replies before the requester files suit, the exhaustion requirement

still applies. *See Judicial Watch v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) (citing

*Oglesby*, 920 F.2d at 64-65).

      B.      *No FOIA Appeal Received - FBI Paris Legat, LAFO, NYFO, State Department*

          1.     FBI Paris Legat

              a.     FBI Request Number 948771 (re: Who Killed Kennedy Committee)

As discussed in the Background section of this Memorandum Opinion, Defendants contend

that they rendered several decisions that Plaintiff failed to appeal, and therefore Plaintiff should be

barred from litigating these claims. For instance, upon Plaintiff's request to the FBI's Paris Legat

for records concerning the Who Killed Kennedy Committee, assigned request number 948771,

FBIHQ informed Plaintiff that it found no records responsive to his request and informed him of his

right to appeal the decision to OIP. *See* Hardy Decl. ¶ 15. However, the FBI has no record

indicating that Plaintiff ever appealed this decision. *Id*. Plaintiff responds that after a thorough

search of his records, he is confident that he never received the letter that communicated the FBI's

decision on his FOIA request, and therefore could not file an appeal. *See* Lesar Decl. ¶ 8.

Therefore, he contends that he properly exhausted his administrative remedies and the claim should

not be dismissed. *Id*.

While the Court sympathizes with Plaintiff's predicament, three points undermine Plaintiff's

position and warrant dismissal without prejudice of this claim against the FBI. First, the declaration

of Plaintiff's counsel does not unequivocally state that he did not receive the FBI's correspondence

dated September 19, 2001. Rather, his counsel merely states that he searched "high and low for any

record of this request" and because he could not locate it, he believes that he never received it. *See*

Lesar Decl. ¶ 8. In contrast, the FBI submitted a declaration, along with a copy of the actual letter,

which affirmatively state that a response to his FOIA request was provided to Plaintiff on the

aforementioned date.  *See* Hardy Decl. ¶ 15 & Ex. J (9/19/01 Letter to Pl's Counsel from John

Kelso, Section Chief).

Second, the Supreme Court has emphasized that in FOIA cases, courts "generally accord

Government records and official conduct a presumption of legitimacy." *Dep't of State v. Ray*, 502

U.S. 164, 179, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991); *see also Nat'l Archives & Records Admin.*

*v. Favish*, 541 U.S. 157, 159, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004) (holding that "when the

presumption of legitimacy accorded to Government's official conduct is applicable, clear evidence is

usually required to replace it.").  In this instance, Plaintiff has failed to counter the good faith

presumption accorded government action, and has cited no contrary authority to support his

position.

Third, while it is uncontested that Plaintiff submitted his FOIA request to the FBI on July

27, 2001, *see* Hardy Decl. ¶ 5, there is no evidence that Plaintiff took any further action with respect

to this request until December 20, 2004 – the date Plaintiff filed his Complaint in this action, *see*

Compl. at 1.  For a period of time exceeding three years, Plaintiff did not attempt to contact the FBI

Paris Legat or FBIHQ to determine the status of his request, nor did Plaintiff seek relief in any other

forum.  Moreover, during this same period of time, Plaintiff does not contest that he received

responses for several of his other FOIA requests from the FBI and the State Department, yet

admittedly failed to respond or appeal those determinations. *See* Pl.'s Opp'n at 4-7.  Such history of

inaction and unresponsiveness provides further circumstantial evidence to undermine Plaintiff's

claim that he never received the FBI's letter.  Upon an analysis of the totality of these considerations,

the Court shall dismiss without prejudice the Plaintiff's FOIA claim against the FBI Paris Legat for

records flowing from its September 19, 2001 determination.

b.      FBI Request Number 948773 (re: Citizens Commission of Inquiry)

Upon Plaintiff's request for records to the FBI Paris Legat regarding the CCI, assigned

request number 948773, FBIHQ released a majority of records responsive to the request, with

certain redactions made pursuant to FOIA exemptions 1, 2, 7(C), and 7(D).  *See* Hardy Decl. ¶ 16.

FBIHQ further indicated that Plaintiff's request for a fee waiver was denied and informed Plaintiff

of his right to appeal the decision to OIP.  *See id*.  Plaintiff admits that no appeal was ever lodged in

response to the FBI's decision and accepts that he may not challenge the redactions in these

materials and the fee waiver issue.  *See* Pl.'s Opp'n at 4.  Therefore, the Court will dismiss without

prejudice the relevant claim against the FBI flowing from its determination of June 14, 2002.

Additionally, pursuant to this request to the Paris Legat for records pertaining to the CCI,

FBIHQ referred 27 pages of material responsive to Plaintiff's FOIA request to the Army.  *See*

Hardy Decl. ¶ 17.  Thereafter, by letter dated June 24, 2002, the Army released 21 pages of material

that both the FBI and the Army had redacted.  *Id*.  Defendants contend that although the Army

communicated to Plaintiff his right to appeal the redactions made by the FBI to OIP, there is no

record of such appeal having been filed, and therefore Plaintiff's claim against the FBI should be

dismissed for failure to exhaust all administrative remedies.  *See id*.  In response, Plaintiff indicates

that

> counsel's files show that Schoenman timely appealed both the Army's and the FBI's
> redactions in the materials withheld from the June 24, 2002 release. Accordingly,
> this Court does have jurisdiction over these issues.

Pl.'s Opp'n at 4.  In support of this contention, Plaintiff's Counsel attaches draft copies of these

appeals that he located on his home computer.  *See* Lesar Decl. ¶ 10 & Ex. 1 & 2 (Drafts of FOIA

Appeal to OIP & to Army from Lesar's Computer).  Furthermore, Plaintiff indicates that upon

learning that OIP never received the appeal, Plaintiff has now resubmitted the appeal.  *See* Pl.'s

Opp'n at 4.

The Court will first address Plaintiff's argument that he did originally submit an appeal to the FBI in response to the June 24, 2002 release of documents.  The statutory scheme of FOIA provides for an administrative appeal process following an agency's initial response to a request. *See* 5 U.S.C. § 552(a)(6)(A)(i), (ii).  As the D.C. Circuit has emphasized, an agency's response "is sufficient for purposes of requiring an administrative appeal if it includes:  the agency's determination of whether or not to comply with the request; the reasons for its decision; and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse." *Oglesby*, 920 F.2d at 65.  As such, if an agency's initial response to a FOIA request satisfies these elements, the requestor must first appeal the decision to the proper agency authority prior to seeking judicial review.  *Id*.  Here, upon a review of the FBI and Army responses, *see* Hardy Decl. ¶ 17 & Ex. L (6/24/02 Letter from Nichols to Pl.'s Counsel), it is evident that these requirements were met; consequently, Plaintiff was required to file an administrative appeal before bringing suit.

The plain language of the statute states that an agency is required to "make a determination with respect to any appeal within twenty days . . . after the *receipt* of such appeal." 5 U.S.C. § 552(a)(6)(A)(ii) (emphasis added).  In a situation somewhat analogous to this one, Judge Richard Roberts, in *Bestor v. Central Intelligence Agency*, wrote that:

> The burden of producing evidence of a proper appeal is on the person requesting documents under the FOIA. Otherwise, the exhaustion doctrine would be a nullity. If a party could avoid the exhaustion requirement merely by asserting that they had pursued all available administrative relief, administrative agencies would be placed in the position of having to prove the negative.

*Bestor v. Cent. Intelligence Agency*, No. Civ. A 04-2049(RWR), 2005 WL 3273723, at *4 (D.D.C. Sept. 1, 2005) (quoting *Williams v. McCausland*, Civ. Nos. 90-7563(RWS), 91-7281(RWS), 1994 WL 18510, at *4 (S.D.N.Y. Jan. 18, 1994)).

Here, Plaintiff has produced no evidence to support his argument that the FOIA appeals on his computer were ever mailed to and received by the FBI OIP.  At most, Plaintiff's counsel contends that he "located copies" of the appeals on his computer.  *See* Lesar Decl. ¶ 10.  In contrast, the FBI has unequivocally declared that no appeal letter was ever received.  *See* Hardy Decl. ¶ 17. Without a copy of a stamped envelope showing the mailing of the appeals, or a returned receipt certifying the actual receipt of the request by the agency, Plaintiff cannot establish an essential element of the statutory requirements under FOIA requiring an agency's actual receipt of the appeal as a precursor to exhausting all administrative remedies.

Moreover, concerning Plaintiff's statement that he has now resubmitted the appeal to the FBI, Plaintiff alleges that dismissal of the claim is precluded.  Defendants, citing 28 C.F.R. § 16.9(a) (2005), argue in response that the re-submission is "of no consequence" given that the time period in which to submit an appeal has long passed.  *See* Defs.' Reply at 6 (indicating that appeal must be made within sixty days of determination of initial request).

The D.C. Circuit's recent decision in *Wilbur v. Central Intelligence Agency*, 355 F.3d 675 (D.C. Cir. 2004) provides guidance in this situation, as it suggests that Plaintiff's untimely appeal at this juncture does not necessarily preclude dismissal of his claim.  In *Wilbur*, the D.C. Circuit dealt with a plaintiff who filed his administrative appeal four years after the regulatory deadline.  *See id.* at 677.  Although the Plaintiff had disregarded the CIA's administrative appeal deadline, the D.C. Circuit held that the plaintiff was not barred from bringing suit under an exhaustion argument because "the CIA accepted the appeal, processed it, reviewed the initial determination, and issued a final decision upholding the agency's prior determination."  *Id.* at 677.

In the present situation, however, neither side advances evidence to suggest that the FBI accepted, processed, reviewed, or issued a final decision regarding the initial determination.  In fact,

by explicitly rejecting the appeal in its Reply, Defendants are clearly indicating a refusal to accept the tardy appeal.  Moreover, in contrast to the *Wilbur* plaintiff, who brought suit only after he filed his late appeal and it was processed and denied by the agency, Plaintiff here waited almost four years until being faced with dismissal upon Defendants' motion before attempting to correct the failure to file an appeal.  In accordance with a narrow reading of *Wilbur*, the Court holds that Plaintiff was required to appeal the June 24, 2002 determination within the agency's deadline period of sixty days.  Instead, Plaintiff waited almost four years to submit an appeal, which the FBI, by its continued opposition, has clearly refused to accept.  As such, Plaintiff has failed to meet his burden to show that he has administratively exhausted his claim in a timely manner, and Plaintiff's claim against the FBI flowing from its June 24, 2002 determination is therefore dismissed without prejudice.

            2.      FBI Los Angeles Field Office (re: Lord Bertrand Russell)

        Upon Plaintiff's FOIA request to the FBI LAFO for documents regarding Lord Bertrand Russell, assigned request number 954762, FBIHQ released the majority of records responsive to the request to Plaintiff and informed him that his fee waiver request had been denied.  *See* Hardy Decl. ¶ 28.  In its letter, dated August 13, 2002, FBIHQ also indicated that referrals were made to other agencies for review of some of the material prior to release.  *See id*.  Plaintiff admits that he did receive the documents released by FBIHQ but failed to appeal the determinations made in connection therein. Pl.'s Opp'n at 5.  As such, he accepts that he may not challenge the decisions over the fee waiver or the validity of the redactions made by the FBI.  *Id*.  The Court shall therefore dismiss Plaintiff's claim against the FBI arising from this request without prejudice.

        Plaintiff nonetheless maintains that the Court may review the decisions rendered by the "other agencies" mentioned in the FBI's letter that accompanied the release of documents since only

the State Department is specified as having rendered a decision while the other agencies are

undisclosed.  *See id*.  The FBI's letter to Plaintiff which inspired the foregoing argument contained

checked boxes that read:

> Document(s) were located which originated with, or contained information
> concerning other Government agency(ies) [OGA]. This information has been:
> referred to the OGA for review and direct response to you.

Ex. W (8/13/02 Letter from David Hardy, FBI to Pl.'s Counsel).  Plaintiff alleges that this language

suggests that referrals were made to multiple agencies, while he was only informed of a referral to

the State Department, and therefore the Court may review the decisions of undisclosed agencies.

*See* Pl.'s Opp'n at 5.  Plaintiff does not advance any evidence to support his contention that the FBI

referred his FOIA request to agencies other than the State Department.

In opposition, the FBI affirmatively states that "there was, in fact, only one referral made by

the FBI in processing request number 954762, and that referral was to the Department of State." *See*

Hardy Decl. ¶ 29.  Indeed, Defendants contend that the "plural referrals" language was simply

"boilerplate" and that the FBI's only referral in response to this FOIA request was the one made to

the State Department; as such, Defendants maintain that Plaintiff cannot establish exhaustion of

administrative remedies since he admits that no appeal was brought for the findings of either the FBI

or State Department.  *See* Defs.' Reply at 9.

Upon an examination, the Court finds Defendants' position more persuasive considering that

government actors are accorded the presumption of legitimacy, as discussed in Section B(1)(a), and

Defendants have unequivocally rejected Plaintiff's allegation that plural referrals occurred.  *See id*.

Additionally, the plain language of the August 13, 2002 correspondence does not clearly indicate

that multiple referrals were made, but only provides a boilerplate template through which

government agencies communicate with FOIA requesters.  Finally, other than reference to this

boilerplate language, Plaintiff has introduced no evidence to the contrary that would show that such alleged plural referrals actually occurred.  Given these considerations, the Court shall dismiss without prejudice Plaintiff's claim against Defendants flowing from the August 13, 2002 decision.

3.      FBI New York Field Office

In response to Plaintiff's request to the FBI NYFO for access to records pertaining to a variety of subjects including himself, Lord Russell, and six named organizations, assigned request number 190-NY-282257, FBIHQ informed Plaintiff that it had located responsive records pertaining to himself and the CCI, but that no records were found for other topics of his FOIA inquiry.  *See id.* ¶ 34 & Ex. CC (5/21/02 Letter to Pl.'s Counsel from Kevin Donovan, Assistant Director in Charge, NYFO indicating search results).  Though Defendants contend that they informed Plaintiff of his right to appeal the "no records" finding, Defendants indicate that Plaintiff has not appealed the decision. *See id.*

In response, Plaintiff admits that no appeal of the "no records" determination was filed, but avers that he never received the FBI's decision letter. *See* Pl.'s Opp'n at 6.  Here, Plaintiff's counsel supports this position by arguing that due to a typographical error on the FBI's letter, dated May 21, 2002, which listed his suite number as 104 instead of 204, the correspondence was likely routed to a different address.  *See* Lesar Decl. ¶ 12.  Hence, Plaintiff contends, he did not receive the decision prior to filing the lawsuit and dismissal of his related claims is unwarranted.  *See id.*  Defendants respond by citing case law suggesting that a minor variation from the correct address would not prevent the postal service from delivering to the proper addressee.  *See* Defs.' Reply at 11.  Additionally, Defendants contend that because Plaintiff did, at a later date, receive another letter improperly sent to a former address in the same building, his argument is a "transparently weak attempt" to prevent dismissal of the claim.  *See id.* at 13.

Plaintiff's newest argument is not determinative in the eyes of the Court.  The D.C. Circuit, in a case dealing with proper notice of a class action suit, held that "we are not prepared to say as a matter of law that the omission of [Plaintiff's] apartment number and zip code rendered the notices not 'reasonably calculated under all the circumstances' to notify him." *Peters v. Nat'l. R.R. Passenger Corp.*, 966 F.2d 1483, 1486-87 (D.C. Cir. 1992).  Other circuits, in cases also dealing with proper notice of suits, have similarly found that a slightly imprecise or incorrect address is unlikely to result in non-delivery. *See Akey v. Clinton County, N.Y.*, 375 F.3d 231, 235 (2d Cir. 2004) (finding that Postal Service would still deliver a letter to the correct street address even if zip is improper); *United States v. Palmer*, 864 F.2d 524, 527 (7th Cir. 1988) (concluding that the Postal Service will attempt to deliver to the addressee regardless of an incorrect address, and, if unable to do so, will return the item to the sender).  Here, there is no evidence to suggest that Defendants letter was ever returned to the FBI due to a failure to locate Plaintiff, and therefore it is reasonable to assume that the Postal Service did deliver the letter to Plaintiff.  In circumstances quite similar to the present situation, the Louisiana Court of Appeals found it reasonable to assume that a letter "properly addressed except for the error in box number, 3326 instead of 3328," would have reached the intended box holder. *S. Sanitation Co. v. City of Shreveport*, 308 So. 2d 848, 850-51 (La. App. 1975).

Several factors guide the Court toward granting Defendants' motion to dismiss with respect to this request to the FBI NYFO.  First, the specificity and content of the relevant declarations provided by Defendants contrast favorably with the uncertain statements of Plaintiff's counsel.  Second, the presumption of legitimacy afforded government declarants further encourages resolution in Defendants' favor.  Third, Plaintiff's failure to advance any contrary case law to support his position marginalizes his argument.  Fourth, considering that the only addressee on the first floor of

the building to which the FBI erroneously addressed its letter was a souvenir shop and there was a very slight variation in the box number, it is likely that the Postal Service would have realized the mistake and properly delivered the letter notwithstanding.  Fifth, Plaintiff once again failed to take steps that a reasonable individual would have followed; Defendants' letter relating to Plaintiff's request was apparently mailed on May 21, 2002, yet Plaintiff failed to take any further action with respect to this request for over two and a half more years, upon the filing of his Complaint.

Finally, while the Court does not necessarily accept Defendants' argument that since Plaintiff later received a correspondence sent to his old address in the same building, he must have also received the correspondence in question as well, it is nonetheless likely that the Postal Service had a forwarding address for mail sent to Plaintiff, and thus would have located him regardless of the error.  The minor typographical error does not alter the Court's view that Plaintiff did not exhaust his administrative remedies in failing to follow-up regarding his FOIA request, and therefore, Plaintiff's claim against the FBI arising from its May 21, 2002 determination is dismissed without prejudice.

### 4.    Department of State (re: Bertrand Russell Peace Foundation)

Pursuant to Plaintiff's request for records from the FBI Paris Legat concerning the Bertrand Russell Peace Foundation, assigned request number 948768, FBIHQ referred four documents to the State Department for direct response to Plaintiff.  *See* Grafeld Decl. ¶ 4.  The State Department assigned this request control number 200201178.  *See id*.  Upon release of the documents, the State Department informed Plaintiff that redactions had been made by the FBI and he could appeal such excisions to OIP.  *See id*. ¶ 6.  Plaintiff admits that no appeal was ever filed concerning these documents released by the State Department.  *See* Pl.'s Opp'n at 7.  In light of the fact that the State Department properly informed Plaintiff of his right to appeal, Plaintiff accepts that he has failed to

state a claim with respect to the withholding because he failed to appeal the decision. *Id*. The Court

shall therefore dismiss without prejudice Plaintiff's FOIA claim against the State Department and

the FBI flowing from the May 8, 2002 decision.

      C.    *Proper Exhaustion of Administrative Remedies*

          1.    <u>FBI Paris Legat (re: Bertrand Russell Peace Foundation)</u>

With respect to Plaintiff's FOIA request to the FBI Paris Legat for documents concerning the

Bertrand Russell Peace Foundation, assigned request number 948768, FBIHQ informed Plaintiff by

letter dated March 25, 2002 that it was releasing a majority of the records responsive to the request

and would assess $17 in duplication fees; the letter went on to inform Plaintiff that his request for a

fee waiver had been denied and that he had a right to appeal the decision to OIP. *See* Hardy Decl. ¶

10 & Ex. F. Plaintiff appealed FBIHQ's decision, *see id*., and thereafter, by letter dated November

18, 2003, OIP made a supplemental release of records and affirmed the denial of a fee waiver, *see*

*id*. ¶ 14 & Ex. I. In light of Plaintiff's proper appeal of the FBI's decision, Defendants have

subsequently withdrawn their motion to dismiss the claims related to Plaintiff's fee waiver denial in

FBI request number 948768. *See* Defs.' Reply at 7 n.2. Accordingly, the Court need not consider

this request in the context of Defendants' motion to dismiss, as Defendants have withdrawn their

present challenge.

          2.    <u>FBI Los Angeles Field Office (re: Ralph Shoenman)</u>

Defendants have also withdrawn their motion to dismiss Plaintiff's claim regarding FBI

request number 954768, for records requested from the FBI LAFO concerning Plaintiff himself.

*See id*. at 9. Plaintiff submitted his FOIA request on January 29, 2002 but did not receive a

response regarding a decision made as to the substantive content of the request until November 29,

2005. This response time far exceeded the deadlines established by 5 U.S.C. § 552(a)(6)(A)(i),

which requires a response within twenty days of receiving a FOIA request.  Furthermore, the

response was sent almost eleven months after Plaintiff brought this suit.  Therefore, Plaintiff

properly exhausted his administrative remedies and the Court has jurisdiction to hear this claim.

Accordingly, the Court need not consider this request in the context of Defendants' motion to

dismiss, as Defendants have withdrawn their present challenge.

## IV: CONCLUSION

For the reasons set forth above, the Court shall grant-in-part and deny-in-part Defendants'

Motion for Partial Dismissal.  An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge


Date:   June 5, 2006