UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RALPH SCHOENMAN,

    Plaintiff,

     v.

        Civil Action No. 04-2202 (CKK)

FEDERAL BUREAU OF INVESTIGATION,
*et al.*,

    Defendants.

**MEMORANDUM OPINION**
(August 25, 2008)

Plaintiff, Ralph Schoenman, a political activist and author, filed the above-captioned

action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy

Act of 1974 ("Privacy Act" or "PA"), 5 U.S.C. § 552a, seeking access to an array of records

pertaining to himself, Lord Bertrand Russell, and six organizations, from a total of ten different

named agencies and a number of unnamed agencies to which the named agencies might refer

documents for a determination as to releasability (identified as "John Doe Agencies 1-10" in

Plaintiff's Complaint).  Plaintiff's Complaint named as Defendants: the Federal Bureau of

Investigation ("FBI"), the Central Intelligence Agency ("CIA"), the Defense Intelligence Agency

("DIA"), the Department of the Air Force ("Air Force"), the Department of Justice ("DOJ"), the

Department of the Army ("Army"), the Department of the Navy ("Navy"), the Department of

State ("State Department"), the National Archives and Records Administration "NARA"), the

National Security Agency ("NSA"), and John Doe Agencies 1-10.  Compl. at 1 & ¶ 13.

1

In a Memorandum Opinion and Order dated March 31, 2006, the Court dismissed Plaintiff's Complaint against Defendants CIA, NARA, NSA, Air Force, Army, and Navy because Plaintiff either could not show that the agencies had received his FOIA/PA requests or could not show that he had exhausted his administrative remedies as to the agencies. *See generally Schoenman v. FBI*, Civ. A. No. 04-2202, 2006 WL 1126813 (D.D.C. Mar. 31, 2006). By Memorandum Opinion and Order dated June 5, 2006, the Court dismissed without prejudice certain portions of Plaintiff's Complaint against the FBI and the State Department. *See generally Schoenman v. FBI*, Civ. A. No. 04-2202, 2006 WL 1582253 (D.D.C. Jun. 5, 2006). The Defendants with remaining obligations to process documents in response to Plaintiff's request did so. Those Defendants, along with the agencies to whom they have referred documents for releasability determinations, have now begun moving for summary judgment, and Plaintiff has filed cross-motions for summary judgment. This Memorandum Opinion addresses only the Motion for Summary Judgment filed on behalf of the DIA, the Air Force, the Army, the Navy, and the Criminal Division of the DOJ ("Criminal Division") (collectively, the "Five Defendants"), as well as Plaintiff's Cross-Motion for Summary Judgment. *See* Mem. of Pts. and Auths. in Support of Mot. for Summ. J. on Behalf of Five Defs. (hereinafter "Five Defs.' MSJ"); Mem. of Pts. and Auths. in Support of Pl.'s Cross-Mot. for Summ. J. and in Opp'n to the Pending Mots. for Summ. J. by Defs. Dep'ts. Army, Air Force, Navy, and the DIA (hereinafter "Pl.'s Cross-MSJ"). Other motions for summary judgment either are not yet ripe, or will be addressed separately in subsequent opinions. As to the subject of this Memorandum Opinion–the cross-motions for summary judgment pending with respect to the Five Defendants–Plaintiff's Cross-Motion withdraws his request for the one document referred to the Criminal Division, the

information that the DIA has withheld under FOIA Exemption 3, and the information that the

Navy has withheld under FOIA Exemption 2. *See* Pl.'s Cross-MSJ at 1, 6. As such, the Court

does not consider those withholdings in this Memorandum Opinion, and shall GRANT the Five

Defendants' Motion for Summary Judgment insofar as it pertains to the Criminal Division.

With respect to the remaining issues, the Court concludes that Defendants DIA, Army,

and Air Force have met their obligations under the FOIA and the Privacy Act. In light of the

Court's previous partial dismissal of Plaintiff's Complaint, of the Five Defendants, only the DIA

had an independent obligation to comply with Plaintiff's FOIA/PA request, and the DIA has

shown that it conducted an adequate search for documents. The Army and Air Force were

referred documents for releasability determinations by other Defendant agencies and they, along

with the DIA, have shown that they have properly withheld material under various exemptions to

the FOIA and have released all reasonably segregable material. Defendant Navy was also

referred documents for review by the DIA and the FBI; however, the Court cannot reach a

determination on the cross-motions for summary judgment as to the Navy because the Navy has

not established the application of FOIA Exemption 7(C) to information withheld from one

document. Accordingly, the Court shall GRANT-IN-PART the Five Defendants' [39] Motion

for Summary Judgment insofar as it relates to the Criminal Division, DIA, Air Force, and Army,

and shall DENY-IN-PART Plaintiff's [43] Cross-Motion for Summary Judgment as to those

same Defendants. Further, the Court shall HOLD-IN-ABEYANCE both the Five Defendants'

Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment, insofar as

each relates to the Navy, and shall order the Navy to provide additional factual support for its

invocation of FOIA Exemption 7(C), consistent with the discussion below and the accompanying

Order.  If the Navy does not provide such additional factual support, the Court shall grant

Plaintiff's Cross-Motion for Summary Judgment as to the Navy, and shall deny the Five

Defendants' Motion for Summary Judgment as it relates to the Navy.

## I: BACKGROUND

In the interest of clarity, the Court discusses the relevant factual background with respect

to of the Five Defendants in a separate subsection.  As Plaintiff has withdrawn his request for the

document referred to the Criminal Division, *see* Pl.'s Cross-MSJ at 1, the Court does not discuss

the facts relevant to that withholding.  Instead, the Court focuses on the other four Defendants at

issue in the pending cross-motions for summary judgment.

### A.        *The Defense Intelligence Agency*

The DIA is a component of the Department of Defense, and its "mission is to collect,

analyze, and provide intelligence on the military capabilities of foreign military forces to the

Secretary of Defense, the Joint Chiefs of Staff, and the other components of the Department of

Defense."  *See* Decl. of Brian S. Kinsey, Chief of the FOIA Staff, DIA (hereinafter "Kinsey

Decl."), filed in support of Five Defs.' MSJ, ¶ 3.[1]   According to Mr. Kinsey, in light of its

mission, "the vast majority of [DIA] records are classified in the interests of national security in

accordance with Executive Order 12958, as amended."  *Id.*

---

[1] Mr. Kinsey has served as the Chief of the FOIA Staff for the DIA since October 2004. Kinsey Decl. ¶ 1.  Prior to that, he served as an administrative officer processing FOIA requests at the DIA from May 1992.  *Id.*  Mr. Kinsey supervises the branch of the DIA's Public Access Branch (DAN-1A) that receives, processes, and responds to requests for DIA records under the FOIA and the Privacy Act, and is the initial denial authority for the DIA.  *Id.*  Mr. Kinsey avers that "[i]n the course of [his] official duties at DIA, [he] has become personally familiar with the FOIA requests submitted to DIA by [Plaintiff]," *id.*, and that the statements in his Declaration "are based upon [his] personal knowledge, information made available to [him] in [his] official capacity, and upon determinations made by [him] in accordance therewith," *id.* ¶ 2.

By letter dated August 26, 2001, Plaintiff, through counsel, submitted a FOIA/PA request to the DIA for all records pertaining to himself, Lord Bertrand Russell, and several organizations that Plaintiff and Russell were associated with.  Kinsey Dec. ¶  4 & Ex. A.  The DIA sent an acknowledgment of its receipt of Plaintiff's request to his counsel on August 30, 2001.  *Id.* ¶ 4. In December 2001, the DIA initiated a search for responsive records in its research and reference resource library, as well as in other offices within the DIA that the agency concluded might hold responsive records.  *Id.* ¶ 5.[2]  These included the offices of Security (DAC), Inspector General (IG), Human Resources (HC), Joint Military Intelligence College (MC), and Directorate of Operations (DO).  *Id.*  The DIA searched all electronic databases dating back to 1987, searched the database to hardcopy files dating from 1965 to 1987, and searched the database of finished intelligence products from 1965 to the present.  *Id.* ¶ 6.

In performing its search, the DIA used the following search terms: Ralph Schoenman, Bertrand Russell; American Foundation for Social Justice; Atlantic Peace Foundation; Studies in the Third World; Campaign of Nuclear Disarmament; Committee of 100; The Vietnam Solidarity Campaign; The Spokesman; The "Save Greece Now" Committee; American Workers and Artists

---

[2] The facts included herein are taken from the sworn declarations provided by the Five Defendants in support of their Motion for Summary Judgment.  The Five Defendants have also provided, as required by Local Civil Rules 56.1 and 7(h), a Statement of Material Facts as to Which There is No Genuine Issue, however that Statement simply summarizes the various declarations proffered by the Five Defendants, and the Court therefore cites directly to those declarations in the interest of clarity.  *See generally* Five Defs.' Stmt.  Plaintiff has responded to the Five Defendants' Statement with a responsive Statement as well as a Statement of Material Facts Not in Dispute.  *See* Pl.'s Resp. Stmt. and Pl.'s Stmt.  With respect to a number of the Five Defendants' factual assertions drawn from the various declarations, Plaintiff states that he "is without information or knowledge sufficient to admit or deny and therefore denies," *see e.g.*, Pl.'s Resp. Stmt. ¶¶ 9-15.  However, Plaintiff's bare assertions are not supported by facts contradicting the Five Defendants' declarations; and the Court therefore accepts the factual assertions in the Five Defendants' declarations as uncontroverted and relies upon them.

for Solidarity; The Committee for Artistic and Intellectual Freedom of Iran; The Committee in

Defense of the Palestinian Campaign; The Week; The Council of Human Needs; Bertrand

Russell Peace Foundation; Bertrand Russell Peace Foundation, New York; International War

Crimes Tribunal; Who Killed Kennedy Committee; Bertrand Russell Research Center; and

Citizens Commission of Inquiry.  *Id.* ¶ 7.[3]  The DIA's search methods varied by database and

both boolean and key words were used to search the databases.  *Id.* ¶ 8.  The DIA searched

databases with indexed listings for each holding electronically using the key terms noted above.

*Id.*  When a search registered a "hit," the DIA examined the corresponding hardcopy document to

determine its responsiveness to Plaintiff's request.  *Id.*  In addition, the DIA ordered some

documents from The Washington National Records Center, a facility that provides records

management services to headquarters and field offices of Federal agencies located in the District

of Columbia, Maryland, Virginia, and West Virginia, and reviewed those records for

responsiveness.  *Id.*

The DIA initially identified 139 documents (consisting of 816 pages) as responsive to

Plaintiff's request, none of which pertained to Plaintiff himself.  *See id.* ¶ 11 & Tab A (DIA

*Vaughn* Index); Five Defs.' Stmt. ¶ 12.  The searches conducted by DIA elements DAC, IG,

DAH, MC, and DO produced no documents responsive to Plaintiff's request, and each element

provided a negative response.  Kinsey Decl. ¶ 10.  The DIA's review of the 139 documents

identified as responsive to Plaintiff's request revealed that only two documents (consisting of six

pages) were DIA records.  *Id.* ¶ 11.  The remaining 137 documents were referred to the following

---

[3] The organizations used as search terms by the DIA were identified by Plaintiff in his
FOIA/PA request to the DIA.  *See* Kinsey Decl., Ex. A.

agencies on June 30, 2005: the Air Force; the U.S. Army Intelligence and Security Command (USAINSCOM); the Navy; the State Department; and the CIA.  *Id.*  The CIA subsequently determined that one of the documents referred to it by the DIA duplicated another referred document, and that a second referred document duplicated a document included in the CIA's response to Plaintiff's request.  *Id.*  Accordingly, the DIA now identifies the total number of responsive documents as 137, including the two DIA documents and 135 documents referred to other agencies.  *Id.*

By letter dated October 14, 2005, the DIA sent Plaintiff's attorney a partial release of records.  *See id.* ¶ 12 & Ex. B.  The DIA advised Plaintiff that it had not located any responsive records regarding Plaintiff himself, but had located 139 documents responsive to the other subjects of Plaintiff's request, and had referred 137 of those documents to other government agencies for review and direct response to Plaintiff.  *Id.* ¶ 12.  The DIA also provided Plaintiff with a partial release of the two DIA documents, withholding portions of the documents under FOIA Exemptions 1, 2, and 3, 5 U.S.C. §§ 552(b)(1), (b)(2), and (b)(3).  *Id.*  As noted above, Plaintiff has withdrawn his request for the information that the DIA withheld under FOIA Exemption 3, and the Court therefore does not describe that withholding herein.

According to Mr. Kinsey's Declaration, the first DIA document, DIA Document Number One, was classified as CONFIDENTIAL, falls under the responsibility of the Directorate for Human Intelligence (DH), and was therefore "reviewed by an individual from that directorate who possesses the requisite classification authority."  *Id.* ¶ 13.  The second DIA document, DIA Document Number Two, is UNCLASSIFIED, and was also reviewed by the DH as it falls under that directorate's responsibility.  *Id.*  The DIA supports its withholding of information from DIA

Document Number One with the Declaration of William B. Huntington, Deputy Director for

Human Intelligence for the DIA (hereinafter "Huntington Declaration").  Mr. Huntington avers

that he has served with the DIA in various positions since 1979, that "[h]aving worked in U.S.

intelligence for over 25 years, [he] can identify classified material related to U.S. intelligence

activities," and that he is "responsible for complying with Executive Branch and departmental

policies for classifying and safeguarding national security information."  Huntington Decl. ¶ 2.

He specifically avers that he "exercise[s] Original Classification Authority under the provisions

of Section 1.3 of Executive Order 12958, as amended by Executive Order 13292," and that this

authority was delegated to him by the Director of the DIA.  *Id.*  Mr. Huntington's conclusion that

the DIA properly classified and withheld portions of DIA Document Number One pursuant to

Executive Order 12,958 and FOIA Exemption 1 are addressed in the discussion section below.

In addition to withholding information from Document Number One under FOIA

Exemption 1, the DIA withheld portions of DIA Documents Numbers One and Two under FOIA

Exemption 2.  Kinsey Decl. ¶ 21.  The withheld information includes "office symbols, internal

document or messaging codes, routing directions and telephone identifiers of U.S. government

agencies and offices engaged in the collection of foreign intelligence information," as well as the

"intelligence information report (IIR) number and administrative number assigned to the preparer

of the IIR."  *Id.* ¶ 21.  Mr. Kinsey avers that "[a]ll reasonably segregable portions" of DIA

Document Number One and Document Number Two were released to Plaintiff on October 14,

2005.  *Id.* ¶¶ 19, 21, 24.

B.      *Department of the Air Force*

As noted above, by letter dated June 30, 2005, the DIA referred two documents

(consisting of five pages) to the Air Force Office of Special Investigations ("AFOSI").  *See*

Second Decl. of Anne C. Costa, Chief of the Info. Release Branch for Headquarters, AFOSI

(hereinafter "Costa Decl."), submitted in support of Five Defs.' MSJ, ¶ 5 & Ex. 1.[4]  "AFOSI is

the Air Force's major investigative service," and "provides professional investigative service to

commanders of all Air Force activities and reports to the Inspector General, Office of the

Secretary of the Air Force."  *Id.* ¶ 1.  According to Ms. Costa, "AFOSI's primary responsibilities

are criminal investigations and counterintelligence services."  *Id.*

Ms. Costa's Declaration describes the two documents referred to AFOSI by the DIA: Air

Force Document Number One is a three-page DoD Intelligence Information Report dated

December 5, 1966, while Air Force Document Number Two is a two-page DoD Intelligence

Information Report dated December 28, 1966.  *Id.* ¶ 4.  According to Ms. Costa, these documents

originated with AFOSI, but were destroyed in 1982 pursuant to AFOSI's then retention period of

15 years for counterintelligence briefing records.  *Id.* ¶ 5.  Ms. Costa explains that the DIA

initially referred the documents to the FOIA Office at the 11th Communications Squadron, The

Pentagon, Washington, DC, which, in turn, referred the documents to AFOSI.  *Id.*

Ms. Costa then referred Air Force Document Number One to HQ AFOSI Directorate of

---

[4] Ms. Costa has held the position of Chief of the Information Release Branch for
Headquarters, AFOSI, since June 13, 2004 and was the Acting Chief of the Branch from
November 24, 2003 to June 12, 2004.  Costa Decl. ¶ 1.  Ms. Costa explains that her
"responsibilities include oversight of the processing of [FOIA] requests within AFOSI," and that
she is "familiar with Air Force and Department of Defense (DoD) requirements for processing
requests made pursuant to the FOIA."  *Id.* ¶ 2.  Ms. Costa explains that she is "also the Initial
Denial Authority for AFOSI" and that, as a result, she is "the appropriate person from AFOSI to
submit a *Vaughn* index explaining why information requested under the FOIA was not provided
to a requester."  *Id.* ¶ 3.  Ms. Costa submits her "declaration to serve as a *Vaughn* index with
respect to two documents (five pages total) that originated from AFOSI."  *Id.* ¶ 4.

Operations ("HQ AFOSI/XO") for a declassification review because it was classified CONFIDENTIAL.  *Id.* ¶ 6.  In its initial review, HQ AFOSI/XO determined that Air Force Document Number One was still classified CONFIDENTIAL, and the Air Force therefore withheld Air Force Document Number One in its entirety in its initial March 21, 2007 response to Plaintiff.  *Id.* & Ex. B.  In that same response, the Air Force released in part Air Force Document Number Two to Plaintiff, withholding the names of four Air Force members, along with the Air Force serial numbers for two of them and the off-base home address and assignment for one of them, pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. §§ 552(b)(6) and (b)(7)(C). *Id.* ¶ 10 & Ex. B.

HQ AFOSI/XO subsequently reviewed Air Force Document Number One in order to prepare a declaration explaining the classification and determined that, with the exception of one sentence, Air Force Document Number One could be declassified.  *Id.* ¶ 7.  The Air Force therefore provided Plaintiff with a supplemental release of Air Force Document Number One by letter dated August 16, 2007.  *Id.* & Ex. 3.  The Air Force continued to withhold one remaining classified sentence from Air Force Document Number One pursuant to FOIA Exemption 1, 5 U.S.C. § 552(b)(1), *id.* ¶¶ 7-8, and also withheld the names of three Air Force members, pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. §§ 552(b)(6) and (b)(7)(C), *id.* ¶ 9.  The Air Force's justifications for its withholdings–provided in Ms. Costa's Declaration as well as the Declaration and Second Declaration of Michael L. Bietsch, the Deputy Director of Operations for Headquarters, AFOSI–are addressed in the discussion section below.  Finally, in her Declaration, Ms. Costa avers that AFOSI has "released all reasonably segregable portions of [Air Force Document Number One and Air Force Document Number Two] to plaintiff."  Costa Decl. ¶ 11.

C.      *Department of the Navy*

As noted above, by letter dated June 30, 2005, the DIA referred one three-page document

to the Navy for review.  *See* Decl. of Lieut. Comm. Nieva M.S. Brock, Judge Advocate General's

Corps, United States Navy (hereinafter "Brock Decl."), submitted in support of Five Defs.' MSJ,

¶ 4.[5]  Lieutenant Commander Brock explains that Navy Document Number One originated with

NCIS, and that the three pages of the Document are numbered 143 through 145.  *Id.*

The history of the Navy's withholding of information from Navy Document Number One

is tortured,[6] and ultimately irrelevant, because Plaintiff has withdrawn his request for the

---

[5] Lieutenant Commander Brock is currently on active duty and serving as Staff Judge
Advocate to the Director, NCIS, Department of the Navy.  Brock Decl. ¶ 1.  Lieutenant
Commander Brock explains that the Secretary of the Navy designated the Director of NCIS as
the initial denial authority and custodian responsible for all FOIA and PA requests for documents
held by NCIS, and that the Director of NCIS in turn delegated the responsibility to Lieutenant
Commander Brock.  *Id.* ¶ 2.

[6] Navy Document Number One was initially classified as SECRET, Brock Decl. ¶ 4, and
was therefore sent to the NCIS Collection and Field Support Division for declassification review
and partially declassified.  *Id.* ¶¶ 4-5.  Plaintiff was provided with a partial release of Navy
Document Number One by letter dated January 9, 2007: Page 143 was released in full, Page 144
was released in part, with information withheld pursuant to FOIA Exemptions 1 and 7(D)
because it was deemed to pertain to an FBI source; and Page 145 was withheld in part pursuant to
Exemption 2.  *Id.* ¶¶ 6, 11-13 & Ex. 1.

On subsequent review, the NCIS FOIA unit determined to release in part the information
previously withheld from Page 145 under FOIA Exemption 2.  *Id.* ¶¶ 6, 10, 13.  The Navy
therefore provided Plaintiff with a supplemental release of Page 145 by letter dated August 13,
2007, withholding only two internal NCIS telephone numbers used to discuss classified
information.  *Id.* ¶ 10 & Ex. 3.  Plaintiff has since withdrawn his request for the withheld
telephone numbers.  *See* Pl.'s Cross-MSJ at 6.  As to Page 144 of Navy Document Number One,
in the Five Defendants' Opposition/Reply, the Navy indicated that the FBI would be addressing
the withholding of information because it related to an FBI source.  *See* Five Defs.' Opp'n/Reply
at 18-19.  The Navy subsequently discovered that the source had been mischaracterized, and on
May 14, 2008, informed the Court of its error and requested the opportunity to file a
supplemental motion for summary judgment regarding Navy Document Number One.  *See*
Notice, Docket No. [60].  With the Court's permission, the Navy filed its Supplemental Motion

information withheld from the Document.  *See* Pl.'s Resp. to Def. Dept. of Navy's Suppl. Mot.

for Summ. J., Docket No. [69]; Pl.'s Cross-MSJ at 6.  The Court therefore does not consider the

propriety of the Navy's withholding of information from Navy Document Number One in this

Memorandum Opinion.

On February 8, 2007, the FBI referred a three-page document, entitled "FBI FOI/PA #

963707 Re: Citizens Commission of Inquiry," to the Navy for review.  *Id.* ¶ 7.  As Navy

Document Number Two was classified as CONFIDENTIAL, it was forwarded to an NCIS Lead

Investigations Review Specialist for declassification review.  *Id.*  The declassification review was

completed on June 21, 2007, and Navy Document Number Two was partially declassified.  *Id.* ¶

8.  By letter dated August 13, 2007, the Navy provided Plaintiff with a partial release of Navy

Document Number Two, withholding information pursuant to FOIA Exemptions 1 and 7(C), 5

U.S.C. §§ 552(b)(1) and (b)(7)(C).  *Id.* ¶¶ 7, 9 & Ex. 2.  In particular, on the first page of Navy

Document Number Two, the Navy withheld the name of the individual who prepared the

investigative report under Exemption 7(C), *id.* ¶ 15, and redacted the "Comment" section to

protect the identity of an NCIS special agent, *id.*  On the second page of Navy Document Number

Two, the Navy withheld an entire paragraph pursuant to FOIA Exemptions 1 and 7(C) to protect

the identity of a confidential informant for the FBI.  *Id.* ¶ 16.  Finally, on the last page of Navy

Document Number Two, the Navy withheld personal identifiers of the individuals who wrote,

_____

for Summary Judgment on June 12, 2008, *see* Docket No. [66], and on July 3, 2008, Plaintiff
filed a Response to the Navy's Supplemental Motion, in which he withdrew his request for the
information withheld from Page 144 and indicated that the Navy's Supplemental Motion was
moot as a result, *see* Docket No. [69].  The Court therefore does not consider the Navy's
withholding of information from Navy Document Number One pursuant to FOIA Exemptions 1
and 7(D) in this Memorandum Opinion.

reviewed, and approved the investigative report.  *Id.* ¶ 17.

NCIS subsequently conducted another review of Navy Document Number Two and

determined that FOIA Exemption 1 is no longer applicable to the document.  Suppl. Decl. of Lt.

Comm. Brock, submitted in support of Five Defs.' Opp'n/Reply, ¶ 9.  Accordingly, the Navy

provided Plaintiff with a supplemental release of Navy Document Number Two that included all

information previously withheld under FOIA Exemption 1.  *Id.* & Ex. 3.  The Navy continues to

withhold information from Navy Document Number Two under FOIA Exemption 7(C),

including the name of an of NCIS Special Agent and the names of the individuals who prepared,

reviewed, and approved the investigative report at issue; however, this is the only remaining

withholding by the Navy.  *Id.* ¶ 9.

      D.    *Department of the Army*

The Army processed four sets of documents related to Plaintiff's FOIA/PA request: (1) a

request dated July 17, 2002 for a "copy of the Army's notification to the President required by

E.O. 12958" (referred to as USAINSCOM CASE NUMBER 816F-02); (2) a four-page referral

from the DIA dated June 30, 2005 (referred to as USAINSCOM CASE NUMBER 834F-05); (3)

a twenty-seven page referral from the FBI dated June 13, 2002 (referred to as USAINSCOM

CASE NUMBER 705F-02, hereinafter the "First FBI Referral"); and (4) a twenty-two page

referral from the FBI dated February 8, 2007 (referred to as USAINSCOM CASE NUMBER

237F-07, hereinafter the "Second FBI Referral").  *See* Decl. of Susan J. Butterfield (hereinafter

"Butterfield Decl."), submitted in support of Five Defs.' MSJ, ¶¶ 2, 3, 6, 8, 14.[7]

---

[7] Ms. Butterfield is a civilian employee of the Army who is currently assigned to the
Freedom of Information/Privacy Office (FOI/PO), USAINSCOM.  Butterfield Decl. ¶ 1.  Ms.
Butterfield avers that has served as the Acting Director, FOI/PO, since September 16, 2003, and

By letter dated July 17, 2002, Plaintiff requested a "copy of the Army's notification to the President required by E.O. 12958." *Id.* ¶ 3 & Ex. 1.  The FOI/PO of USAINSCOM located a twenty-two page document in response to this request, and the Army provided Plaintiff with a final response on September 9, 2002. *Id.* ¶ 3 & Ex. 2.  Initially, the Army released in full one page to Plaintiff, and withheld twenty-one pages in their entirety pursuant to FOIA Exemption 2. *Id.* ¶ 4.  Thereafter, on August 29, 2007, USAINSCOM conducted a second review of the withheld pages and, as a result, the Army released all of the previously withheld pages in full to Plaintiff.  *Id.* ¶ 5 & Ex. 3.  As such, no issue remains as to this request.

By letter dated June 30, 2005, the DIA referred four pages to the FOI/PO of USAINSCOM.  *Id.* ¶ 6 & Ex. 4.  Ms. Butterfield avers that, in accordance with Executive Order 12,958, USAINSCOM conducted a mandatory declassification review of the four pages and determined that the responsive information no longer required security classification protection. *Id.* ¶ 7.  Accordingly, by letter dated September 7, 2005, the Army released the responsive information to Plaintiff in its entirety and informed Plaintiff that the remaining information was considered non-responsive to his request.  *Id.* ¶¶ 6-7.  Again, no issue remains as to this referral.

By letter dated June 13, 2002, the FBI referred twenty-seven (27) pages of records pertaining to the Citizens Commission of Inquiry (the "First FBI Referral") to the FOI/PO of USAINSCOM.  *Id.* ¶ 8; Ex. 6.  Ms. Butterfield's Supplemental Declaration avers that a mandatory declassification review of the First FBI Referral was conducted.  Butterfield Suppl.

---

as Director, FOI/PO since October 3, 2004.  *Id.*  In her Supplemental Declaration submitted in support of the Five Defendants' Opposition/Reply, Ms. Butterfield further avers that she has been delegated Original Classification Authority under Executive Order 12,958, as amended, "for purposes of conducting classification reviews of documents requested under the FOIA." Butterfield Suppl. Decl. ¶ 4.

Decl. ¶¶ 2, 4.  By letter dated June 24, 2002, the Army provided Plaintiff with a partial release of

the First FBI Referral, releasing in full fourteen (14) pages.  Butterfield Decl. ¶¶ 8-9 & Ex. 9.  Of

the remaining thirteen (13) pages, the Army released in part seven (7) pages, and withheld in full

six (6) pages, pursuant to FOIA Exemption 1 on the grounds that the withheld information would

reveal intelligence activities (including special activities) or intelligence sources or methods.  *Id.*

Ms. Butterfield's Declaration explains the specific reasons for the Army's invocation of FOIA

Exemption 1, and avers that a line-by-line review of the First FBI Referral was conducted and

that all nonexempt, reasonably segregable information was released to Plaintiff.  *Id.* ¶¶ 12-14.

By letter dated July 17, 2002, Plaintiff appealed the Army's withholdings from the First

FBI Referral.  *Id.* ¶ 8 & Ex. 1.  The FOI/PO of USAINSCOM acknowledged receipt of Plaintiff's

appeal on August 8, 2002, and informed Plaintiff that his appeal had been forwarded to the

Army's Office of the General Counsel for adjudication.  *Id.* ¶ 8 & Ex. 8.  By letter dated May 11,

2004, the Army's Office of the General Counsel affirmed USAINSCOM's withholdings pursuant

to FOIA Exemption 1.  *Id.* ¶ 8 & Ex. 9.  USAINSCOM conducted a second review of the First

FBI Referral on November 27, 2007.  Suppl. Butterfield Decl. ¶ 6.  As a result of this review, the

Army released segregable portions of pages 23 and 25 through 27 of the First FBI Referral to

Plaintiff by letter dated December 3, 2007.  *Id.* & Ex. A.

By letter dated February 8, 2007, the FBI referred an additional twenty-two pages of

records pertaining to the Citizens Commission of Inquiry (the "Second FBI Referral") to the

FOI/PO of USAINSCOM.  Butterfield Decl. ¶ 14 & Ex. 11.  On February 22, 2007, the Army

provided Plaintiff with a partial release of the Second FBI Referral, releasing in full six (6) pages.

*Id.* ¶¶ 14-15 & Ex. 12.  The Army withheld in part thirteen (13) pages under FOIA Exemptions 1

15

and 6, and withheld in full three pages pursuant to FOIA Exemption 1.  *Id.* ¶ 15-19 & Exs. 12-13.

Ms. Butterfield's Declaration avers that the information withheld under Exemption 1 would

reveal intelligence activities (including special activities) or intelligence sources or methods, *id.*

¶¶ 17-18, and that the information withheld under FOIA Exemption 6 includes the names of

United States government personnel and third parties along with other identifying information,

including social security numbers and birthdates.  *Id.* ¶ 19.  Ms. Butterfield avers that

USAINSCOM conducted a line-by-line review of the Second FBI Referral and released all

nonexempt, reasonably segregable information.  *Id.* ¶¶ 20021.  She further avers that, for the

three pages withheld in full from the Second FBI Referral, "the information was so inextricably

intertwined that releasing any portions of these three pages would disclose information that

needed protecting."  *Id.* ¶ 21.

Finally, in her Supplemental Declaration, Ms. Butterfield explains that USAINSCOM

conducted a second review of the Second FBI Referral on November 27, 2007.  Butterfield

Suppl. Decl. ¶ 11.  As a result of that review, the Army declassified Page 8 of the Second FBI

Referral and released it in its entirety to Plaintiff via letter dated December 3, 2007.  *Id.* & Ex. A.

E.      *Procedural History*

Plaintiff filed his Complaint in this matter on December 20, 2004.  As noted above, in

opinions dated March 31, 2006 and June 5, 2006, the Court dismissed Plaintiff's Complaint

against Defendants CIA, NARA, NSA, Air Force, Army, and Navy, *see generally Schoenman*,

2006 WL 1126813, as well as certain portions of Plaintiff's Complaint against the FBI and the

State Department, *see generally Schoenman*, 2006 WL 1582253.  The Five Defendants at issue in

this Memorandum Opinion–the Criminal Division, the DIA, the Air Force, the Army, the

16

Navy–filed their Motion for Summary Judgment on October 1, 2007.[8]  Plaintiff filed his Cross-

Motion for Summary Judgment and Opposition to the Five Defendants' Motion on November 9,

2007, and the Five Defendants filed their Opposition to Plaintiff's Cross-Motion/Reply in

support of their own Motion on December 14, 2007.  Plaintiff did not file a Reply in support of

his Cross-Motion for Summary Judgment.  As referenced above, after briefing on the cross-

motions was ripe, the Navy brought to the Court's attention its mischaracterization of

information withheld from one document and filed a Supplemental Motion for Summary

Judgment as to that information.  As further referenced above, Plaintiff has since withdrawn his

request for the information at issue in the Navy's Supplemental Motion, and the Court shall

therefore DENY the Navy's [66] Supplemental Motion for Summary Judgment as moot.  The

parties' cross-motions for summary judgment regarding Defendants are thus ripe for review.

## II: LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, depositions, and affidavits

demonstrate that there is no genuine issue of material fact in dispute and that the moving party is

entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638

(D.C. Cir. 1994).  Under the summary judgment standard, Defendants, as the moving parties,

bear the "initial responsibility of informing the district court of the basis for [its] motion, and

identifying those portions of the pleadings . . . together with the affidavits which [it] believe[s]

demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  Plaintiff, in response to Defendant's motion, must "go beyond the pleadings

---

[8] Cross-motions for summary judgment relating to the State Department are currently ripe
and will be addressed in a separate Memorandum Opinion. Motions for summary judgment
relating to the CIA and FBI have also been filed but are not yet ripe for review.

and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251. "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

In reviewing a motion for summary judgment under the FOIA, the Court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B). In the FOIA context, "*de novo* review requires the court to 'ascertain whether the agency has sustained its burden of demonstrating that the documents requested are not "agency records" or are exempt from disclosure under the FOIA.'" *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)). Under the FOIA, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, summary judgment is only appropriate where an agency proves that it has fully discharged its FOIA obligations. *Moore v. Aspin*, 916 F. Supp 32, 35 (D.D.C. 1996) (citing *Weisberg v. DOJ*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).

As an initial matter, an agency seeking summary judgment must show that it "has conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. DOJ*,

18

23 F.3d 548, 552 (D.C. Cir. 1994) (internal quotation marks and citation omitted).  The relevant question is "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant."  *SafeCard Servs., Inc., v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  The agency affidavits offered to establish the adequacy of a search "must be . . . 'relatively detailed and non-conclusory, and . . . submitted in good faith.'"  *Id.* at 1200 (quoting *Grounds Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (citations and quotation marks omitted)).

Congress enacted the FOIA for the purpose of introducing transparency to government activities.  *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984).  Congress remained sensitive, however, to the need to achieve balance between this objective and the vulnerability of "legitimate governmental and private interests [that] could be harmed by release of certain types of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992); *see also Summers*, 140 F.3d at 1079.  Accordingly, the FOIA provides nine exemptions pursuant to which an agency may withhold requested information, *see* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9), and an agency must demonstrate the validity of any exemption that it asserts, *see id.*; *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) ("[c]onsistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents").

To satisfy this burden, the agency may provide a plaintiff "with a *Vaughn* index, which must adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance."  *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir. 2002); *see also Vaughn v. Rosen*, 484 F.2d 820, 827

(D.C. Cir. 1973).  In addition, summary judgment may be granted on the basis of the agency's accompanying affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  These affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search.  *See SafeCard Servs.*, 926 F.2d at 1200.  Courts must "accord substantial weight" to an agency's affidavits regarding FOIA exemptions.  5 U.S.C. § 552(a)(4)(B) (2004); *see also Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) ("Affidavits submitted by an agency are 'accorded a presumption of good faith.'") (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1200).  Moreover, there is no set formula for a *Vaughn* index; so long as the agency provides the Court with materials providing a "reasonable basis to evaluate the claim of privilege," the precise form of the agency's submission–whether it be an index, a detailed declaration, or a narrative–is immaterial.  *Gallant v. NLRB.*, 26 F.3d 168, 173 (D.C. Cir. 1994) (internal citations omitted).

Finally, in seeking summary judgment, the agency must detail what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document.  *Mead Data Cent. Inc. v. Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).  Any non-exempt information that is reasonably segregable from the requested records must be disclosed.  *Stolt-Nielsen Transp. Group, Ltd. v. United States*, --- F.3d ---, Nos. 07-5191, 07-5192, 2008 WL 2853214, *3 (D.C. Cir. Jul. 25, 2008).  As "the focus of FOIA is information, not documents, [] an agency cannot justify withholding an entire document simply by showing that it contains some

exempt material." *Id.* (quoting *Mead Data*, 566 F.2d at 260). Further, "before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Id.* at *4 (quoting *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). District courts are required to consider segregability issues *sua sponte* even when the parties have not specifically raised such claims. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In opposing a motion for summary judgment or cross-moving for summary judgment, a FOIA plaintiff must offer more than conclusory statements. *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham v. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)). Indeed, a plaintiff pursuing an action under FOIA must establish that either: (1) the *Vaughn* index does not establish that the documents were properly withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all nonexempt material in the requested documents. *See Perry-Torres v. State Dep't*, 404 F. Supp. 2d 140, 142 (D.D.C. 2005); *Twist v. Ashcroft*, 329 F. Supp. 2d 50, 53 (D.D.C. 2004) (citing *Piper & Marbury, LLP v. U.S. Postal Serv.*, Civ. No. 99-2383, 2001 WL 214217, at *2 (D.D.C. Mar. 6, 2001)).

C.     *The Privacy Act*

The Privacy Act of 1974 regulates the collection, maintenance, use, and dissemination of an individual's personal information by agencies within the federal government. *See* 5 U.S.C. § 552a(e). The Act provides that any agency that retains a system of records "shall maintain . . . only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or executive order of the President." 5

U.S.C. § 552a(e)(1).  To provide for openness and accountability, the Act ensures that "upon

request by any individual to gain access to his record or to any information pertaining to him

which is contained in the system," the agency shall provide the individual with access to review

such records.  5 U.S.C. § 552a(d)(1).  Finally, subject to certain exceptions, the Privacy Act

states that disclosure of records shall be limited. 5 U.S.C. § 552a(b) ("[n]o agency shall disclose

any record which is contained in a system of records by any means of communication to any

person, or to another agency, except pursuant to a written request by, or with the prior written

consent of, the individual to whom the record pertains").  One of these exceptions, however, is

that an agency shall disclose such records that would be required to be disclosed pursuant to

FOIA.  5 U.S.C. § 552a(b)(2).  In actions seeking documents under both FOIA and the Privacy

Act, a defendant agency must show that the information is properly subject to both FOIA and

Privacy Act exemptions.  *See Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C.

Cir. 1987).

### III:  DISCUSSION

As with the Background section, in the interest of organizational clarity, the Court shall

discuss each relevant agency's response to Plaintiff's FOIA/PA request in turn.

A.     *The Defense Intelligence Agency*

1.     *The DIA Has Met the Standard for Summary Judgment By Conducting An Adequate Search for Records*

In determining the adequacy of a FOIA search, the Court is guided by principles of

reasonableness.  *Ogelsby v. Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  To obtain summary

judgment on the issue of the adequacy of the records search, an agency must show "viewing the

facts in the light most favorable to the requester, that . . . [it] has conducted a 'search reasonably calculated to uncover relevant documents.'" *Steinberg*, 23 F.3d at 551 (quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  To meet its burden, the agency may submit affidavits or declarations that explain both in reasonable detail and in a non-conclusory fashion the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA.  *Id.* at 127.  An agency must show that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Ogelsby*, 920 F.2d at 68; *see Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998).  An agency's search need not be exhaustive, merely reasonable.  *See W. Ctr. for Journalism v. Internal Revenue Serv.*, 116 F. Supp. 2d 1, 8 (D.D.C. 2000) (citing *Shaw v. State Dep't*, 559 F. Supp. 1053, 1057 (D.D.C. 1983)).

As discussed above, Mr. Kinsey's Declaration describes in non-conclusory terms the efforts the DIA undertook in searching for documents responsive to Plaintiff's request.  Plaintiff does not challenge the adequacy of the DIA's search in his Cross-Motion/Opposition.  Nevertheless, because summary judgment is only appropriate where an agency proves that it has fully discharged its FOIA obligations, *Moore*, 916 F. Supp at 35, the Court briefly recounts those facts in Mr. Kinsey's Declaration that establish the adequacy of the DIA's search.  Mr. Kinsey specifically explains that the DIA searched for responsive records not only in its research and reference resource library, but also in other offices that the DIA concluded might hold responsive records: the offices of Security (DAC), Inspector General (IG), Human Resources (HC), Joint Military Intelligence College (MC), and Directorate of Operations (DO).  Kinsey Decl. ¶ 5.  In

doing so, the DIA searched all electronic databases dating back to 1987, searched the database to

hardcopy files dating from 1965 to 1987, and searched the database of finished intelligence

products from 1965 to the present.  *Id.* ¶ 6.  Moreover, as set forth above, the DIA specifically

searched for terms identified in Plaintiff's request, including Ralph Schoenman, Bertrand

Russell, and the various organizations with which Plaintiff was involved, using both boolean and

keyword searches.  *Id.* ¶¶ 7-8.

For databases with indexed listings, when a search registered a "hit," the DIA examined

the corresponding hardcopy document to determine its responsiveness to Plaintiff's request.  *Id.* ¶

8.  In addition, the DIA ordered some no longer actively used documents from The Washington

National Records Center, and reviewed those records for responsiveness.  *Id.*  The Court has little

difficulty concluding that the DIA made a "good faith effort to conduct a search for the requested

records, using methods which can be reasonably expected to produce the information requested."

*Ogelsby*, 920 F.2d at 68.  As such, the Court finds that the DIA conducted an adequate search for

records responsive to Plaintiff's request.

### 2.  *The DIA Has Carried Its Burden as to FOIA Exemptions 1 and 2*

As noted above, the DIA did not locate any records pertaining to Plaintiff himself.  *See*

Kinsey Decl. ¶ 12.  As such, because the Privacy Act only regulates the collection, maintenance,

use, and dissemination of an individual's personal information by agencies within the federal

government, *see* 5 U.S.C. § 552a(e), the DIA did not consider the Privacy Act when processing

the records responsive to Plaintiff's search.  *See* Five Defs.' MSJ at 6 n.6.  The Court therefore

turns to considering the FOIA exemptions invoked by the DIA: Exemptions 1 and 2.

a.      *FOIA Exemption 1*

Pursuant to FOIA Exemption 1, the statute's disclosure provisions do not apply to information that is "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  The DIA invoked FOIA Exemption 1 in withholding certain material from DIA Document Number One, relying upon Executive Order 12,958, as amended.  *See* 60 Fed. Reg. 19,825.  To show that it has properly withheld information under FOIA Exemption 1, the DIA must show both that the information was classified pursuant to the proper procedures, and that the withheld information substantively falls within the scope of Executive Order 12,958.  *See Salisbury v. United States*, 690 F.2d 966, 971-72 (D.C. Cir. 1982).  Although Plaintiff contests the DIA's showing in each respect, the Court finds that the DIA declarations, which are afforded "substantial weight," *Halperin v. Cent. Intelligence Agency*, 629 F.2d 144, 148 (D.C. Cir. 1980), establish that the DIA has properly withheld information from DIA Document Number One pursuant to FOIA Exemption 1.

In his Declaration, Mr. Kinsey avers that DIA Document Number One, which was classified as CONFIDENTIAL, was "reviewed by an individual from [the DIA Directorate for Human Intelligence] who possesses the requisite classification authority."  Kinsey Decl. ¶ 13. Plaintiff's Cross-Motion/Opposition, however, argued that Mr. Kinsey's Declaration was insufficient to establish that the material withheld from DIA Document Number One was properly classified procedurally.  *See* Pl.'s Cross-MSJ at 2-5.  Accordingly, along with their Opposition/Reply, the Five Defendants proffered the declaration of William B. Huntington, Deputy Director for Human Intelligence for the DIA, who avers that he "exercise[s] Original

Classification Authority under the provisions of Section 1.3 of Executive Order 12958, as amended by Executive Order 13292."  Huntington Decl. ¶ 2.  Mr. Huntington further avers that he has personally reviewed DIA Document Number One, and it "is properly marked 'CONFIDENTIAL' because it contains classified national security information related to the roles and activities of the [DIA]."  *Id.* ¶ 5.  While Mr. Huntington's Declaration could stand to be more specific as to the procedural requirements of Executive Order 12,958, in light of the "presumption of good faith" accorded to agency affidavits in FOIA cases, Plaintiff's speculation that DIA Document Number One may not have been properly marked is insufficient to establish that the document was not properly classified procedurally.  *See SafeCard Servs.*, 927 F.2d at 1200.[9]

The Court also rejects Plaintiff's challenge to the substantive classification of the information withheld from DIA Document Number One.  Mr. Huntington describes DIA Document Number One as "an intelligence report issued on June 24, 1994, concerning the appointment of a new Deputy Minister of Defense in South Africa," Huntington Decl. ¶ 3, and avers that "it is [his] opinion that public release of Document Number 1 in its entirety would cause damage to the national security of the United States," *id.* ¶ 6.  Mr. Huntington continues to correctly state that, pursuant to Executive Order 12,958, as amended, an Original Classification

---

[9] Plaintiff's Cross-Motion/Opposition argues that "[f]ailure to adhere strictly to [the procedural] requirements [of Executive Order 12,958] undermines confidence in the classification process and, particularly in an age of terrorism, presents an unacceptable risk to national security which can only be countered by demonstrating that there are consequences to such failures."  Pl.'s Cross-MSJ at 3.  The Court agrees that compliance with the procedural requirements of Executive Order 12,958 is of great importance.  However, the Court cannot agree with Plaintiff that his pure speculation as to the DIA's procedural compliance is sufficient to establish that the information withheld from DIA Document Number One should be produced to Plaintiff–i.e., essentially declassified– notwithstanding its substantively correct classification.

Authority may classify information owned, produced, or controlled by the United States government if it reveals, *inter alia*, "intelligence activities (including special activities), intelligence sources or methods, or cryptology." *Id.* ¶ 7 (citing EO 12,958 Sections 1.1 and 1.4). Information is classified at the Confidential level if unauthorized disclosure would reasonably be expected to cause damage to national security. *Id.* ¶ 8 (citing EO 12,958 Section 1.2).

Mr. Huntington continues to generally describe the manner in which the disclosure of intelligence sources can cause damage to national security, explaining that "DIA relies on various intelligence sources to collect foreign intelligence critical to our national security," but that "[i]ntelligence sources can be expected to furnish information only when confident that they are protected from retribution by the absolute secrecy surrounding their relationship to the U.S. government." *Id.* ¶ 9.  In particular, Mr. Huntington avers that DIA Document Number One "contains information received from human sources, as well as identifiable information on the sources themselves.  It further contains deliberative descriptions, commentary and analysis on the South African government and defense establishment which, if disclosed, could damage the working relationships between the United States and the South African governmental personnel and the capability of the U.S. intelligence community to effectively collect foreign intelligence." *Id.* ¶ 12.  Mr. Huntington also generally describes the manner in which "the release of information about U.S. intelligence activities can cause serious damage to national security." *Id.* ¶ 13.  As Mr. Huntington explains, one such intelligence activity "is obtaining candid assessments of the strengths and weaknesses of foreign military and political leaders and the sharing of that sensitive intelligence information with allies." *Id.*  However, if the "specific nature of U.S. cooperation with certain foreign partners [was] publicly known, the effectiveness

27

of our efforts and those of partner nations' intelligence collection efforts could be compromised." *Id.* Mr. Huntington avers that in light of such considerations, the information withheld from DIA Document Number One "is currently and properly classified CONFIDENTIAL under EO 12958, as amended, and the redacted portions of Document Number 1 cannot be disclosed in any greater detail." *Id.*

Mr. Huntington's Declaration sufficiently establishes that the information withheld from DIA Document Number One is properly classified as CONFIDENTIAL. Significantly, as the D.C. Circuit recently noted, "the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified," such that a court must accord "substantial weight" "to an agency's affidavit concerning the details of the classified status of the disputed record." *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) (quoting *Military Audit Project*, 656 F.2d at 738). Mr. Huntington's Declaration certainly provides a "plausible assertion" that the information withheld from DIA Document Number One is properly classified.[10] Indeed, as the DIA correctly notes, courts have repeatedly found information that would identify an intelligence source or methods to be exempt from disclosure under FOIA Exemption 1. *See, e.g., Wolf v. Cent. Intelligence Agency*, 473 F.3d 370, 375-76 (D.C. Cir. 2007). As such, the Court concludes that the DIA has established that it properly invoked FOIA Exemption 1 to withhold information from DIA Document Number One.

---

[10] In his Cross-Motion/Opposition, Plaintiff argues that Mr. Kinsey's Declaration–offered by the DIA in support of its Motion for Summary Judgment–failed to establish that the information withheld from DIA Document Number One was properly classified substantively because it does not demonstrate that an original classification authority determined that disclosure of the information "reasonably could be expected to cause damage to the national security." Pl.'s Cross-MSJ at 5. Plaintiff's arguments are irrelevant, however, in light of Mr. Huntington's Declaration.

b.     *FOIA Exemption 2*

The DIA also withheld information from both DIA Document Number One and DIA

Document Number Two pursuant to FOIA Exemption 2.  Kinsey Decl. ¶ 21.  According to Mr.

Kinsey's Declaration and the DIA's *Vaughn* index, the withheld information includes "office

symbols, internal document or messaging codes, routing directions and telephone identifiers of

U.S. government agencies and offices engaged in the collection of foreign intelligence

information," as well as the "intelligence information report (IIR) number and administrative

number assigned to the preparer of the IIR."  *Id.* ¶ 21 & Tab A.

FOIA Exemption 2 protects information "related solely to the internal personnel rules and

practices of an agency."  5 U.S.C. § 552(b)(2).  The D.C. Circuit has held that FOIA Exemption2

applies to material that is "used for predominantly internal purposes," and that this constitutes a

"threshold test" for the Exemption's application.  *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C.

Cir. 1992) (quoting *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1073

(D.C. Cir. 1981)).  Once this test is met, "an agency may withhold the material 'by proving that

either [1] disclosure may risk circumvention of agency regulation, or [2] the material relates to

trivial administrative matters of no genuine public interest.'"  *Id.* (quoting *Schwaner v. Air Force*,

898 F.2d 793, 794 (D.C. Cir. 1990) (citations omitted).  In the instant case, the DIA asserts that

the material withheld from DIA Documents Numbers One and Two is of the latter variety,

known as "low 2" material.  Five Defs.' MSJ at 24 (citing Kinsey Decl. ¶¶ 20-21); *see also*

*Schiller*, 964 F.2d at 1207 (describing "high 2" and "low 2" material).

Plaintiff's Cross-Motion/Opposition argues that the DIA fails to meet the threshold

"predominantly internal" test because the withheld information–message routing data, IIR report

numbers, and administrative numbers assigned to the preparers of the IIRs–"all relate to the

collection of information," and "enable[] researchers and scholars to track the dissemination of

information."  Pl.'s Cross-MSJ at 7.  As the D.C. Circuit has explained, however, because "any

'internal personnel rule and practices of an agency' have some effect on the public-at-large,"

material is considered predominantly internal where it "was designed to establish rules and

practices for agency personnel and [] involve[s] no 'secret law' of the agency."  *Schiller*, 964

F.2d at 1207 (quoting *Crooker*, 670 F.2d at 1073).  The information the DIA has withheld here

relates to the "agency's practices as to its internal routing and distribution," *Schwaner*, 898 F.2d

at 796, and does not constitute "secret law" of the DIA.  Accordingly, it meets Exemption 2's

threshold "predominantly internal" test.

Despite Plaintiff's protestations to the contrary, the DIA's *Vaughn* Index and Mr.

Kinsey's Declaration also establish that the withheld material "relates to trivial administrative

matters of no public interest."  *Schiller*, 964 F.2d at 1207.  The withheld information identifies

specific DIA personnel and operating locations.  *See* Kinsey Decl. Tab. A at 1.  While it is not

the case that "all administrative handling instructions are *per se* routine internal matters of no

genuine public interest," *Founding Church of Scientology of Washington, D.C., Inc. v. Smith*,

721 F.2d 828, 831 n.4 (D.C. Cir. 1983), the D.C. Circuit has explained that "housekeeping

matters," such as those redacted by the DIA, are "appropriately withheld under exemption 2,"

*Schiller*, 964 F.2d at 1208.  As Judge Paul L. Friedman recently noted, cases in this District

"routinely include internal file or routing numbers as among the category of information that is

exempt from disclosure under the 'low 2' exemption."  *Long v. DOJ*, 450 F. Supp. 2d 42, 58

(D.D.C. 2006) (citing cases).  The Court agrees that the information withheld by the DIA in this

30

case falls within the "low 2" category.

In an attempt to avoid this conclusion, Plaintiff asserts that the withheld information would allow him and other researchers to "determine the extent and degree of [DIA Documents Numbers One and Two's] interest to government officials, and to determine who knew what when."  Pl.'s Cross-MSJ at 7.  The Court does not consider whether Plaintiff's asserted interest even constitutes a genuine public interest under the FOIA, *cf. DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989), however, because Plaintiff does not explain how the apparently trivial information withheld would shed any light on the DIA's activities with regard to Plaintiff, Lord Bertrand Russell, or any of the organizations at issue in Plaintiff's request.  *See contra* Five Defs.' Reply/Opp'n at 8-9 ("the release of this information would provide no needed insight into the substantive content of the records already released to plaintiff," and "would shed no light on the DIA's activities").  As such, the Court concludes that the DIA has properly withheld information pursuant to FOIA Exemption 2.

3.      *The DIA Has Released Reasonably Segregable, Nonexempt Information*

While Defendants may properly withhold certain materials under FOIA's enumerated exemptions, they must release "any reasonably segregable portions" of responsive documents once they have redacted the exempted information.  *See* 5 U.S.C. § 552(b).  The segregability requirement is of such great import that this Court has an affirmative duty to engage in its own segregability analysis, regardless of Plaintiff's pleadings.  *See Billington v. DOJ*, 233 F.3d 581, 586 (D.C. Cir. 2000).  While the segregability analysis is necessary, not all material is amenable to segregation, rather the D.C. Circuit has long held that nonexempt portions of a document need not be disclosed where they are "inextricably intertwined with exempt portions."  *Schiller*, 964

31

F.2d at 1209 (quoting *Mead Data*, 566 F.2d at 260).

In his Declaration, Mr. Kinsey avers that the DIA reviewed all responsive records to determine if any portion of the withheld information could be segregated and released, and that all reasonably segregable, nonexempt portions of the documents at issue were released to Plaintiff.  Kinsey Decl. ¶¶ 19, 21, 23.  Significantly, the DIA has not withheld either DIA Document Number One or DIA Document Number Two in its entirety due to the inclusion of exempt material therein.  *Cf. Stolt-Nielsen*, 2008 WL 2853214 at * 4.  Instead, the DIA has withheld only that information that it deemed exempt under FOIA Exemptions 1 and 2, and as set forth above, has established that that information was properly withheld.  Accordingly, the Court finds that the DIA has met its burden of showing that it released all reasonably segregable, nonexempt information to Plaintiff.

> B.      *The Department of the Air Force*

As discussed above, the Air Force did not have an independent obligation to respond to Plaintiff's FOIA/Privacy Act request because the Court dismissed Plaintiff's Complaint against the Air Force in its March 31, 2006 Memorandum Opinion.  Nevertheless, the DIA referred two documents to the AFOSI, *see* Costa Decl. ¶ 5 & Ex. 1, and the Air Force seeks summary judgment as to the information withheld from those documents.  In particular, the Air Force withheld one classified sentence from Air Force Document Number One pursuant to FOIA Exemption 1, *id.* ¶¶ 7-8, and withheld the names of three Air Force members from the same Document, pursuant to FOIA Exemptions 6 and 7(C), *id.* ¶ 9.  As for Air Force Document Number Two, the Air Force withheld the names of four Air Force members, along with the Air Force serial numbers for two of them and the off-base home address and assignment for one of

them, pursuant to FOIA Exemptions 6 and 7(C).  *Id.* ¶ 10 & Ex. B.

    1.    *The Air Force Properly Invoked FOIA Exemption 1*

Like the DIA, the Air Force withheld information from Air Force Document Number One

that it asserts was properly classified pursuant to the substantive and procedural criteria set forth

in Executive Order 12,958, as amended.  *See id.* ¶ 8.  The Air Force's justification of that

classification is set forth in the Declaration and Second Declaration of Michael L. Bietsch, which

the Court finds sufficient to establish that the Air Force has properly withheld information from

Air Force Document Number One under FOIA Exemption 1.  Mr. Bietsch describes Air Force

Document Number One as a three-page DoD Intelligence Information Report dated December 5,

1996.  Bietsch Decl. ¶ 4.  In his Second Declaration, Mr. Bietsch specifically avers that the

document "was classified by an original classification authority pursuant to a predecessor to

Executive Order 12958,  as amended."  Second Bietsch Decl. ¶ 3.  Mr. Bietsch also avers that he

personally "made certain that all procedural requirements of E.O. 12958, as amended, were

followed in order to ensure that the information was properly classified," and specifically

describes those procedural requirements.  *Id.* ¶ 4.  This sworn agency declaration thus sufficiently

establishes that the information withheld from Air Force Document Number One was properly

classified procedurally.

As to the substantive classification of the information withheld from Air Force Document

Number One, Mr. Bietsch's Second Declaration explains that "the portion of [the document that

he] determined continues to warrant classification concerns foreign government information and

intelligence activities (including special activities), intelligence sources or methods, or

cryptology."  *Id.* ¶ 5 (citations omitted).  Mr. Bietsch further avers that information withheld

33

from Air Force Document Number One is covered by Sections 1.4(b) and 1.4(c) of Executive

Order 12,958.  *Id.*  In particular, Mr. Bietsch explains that "an intelligence source that requires

continued classification is an individual who provided or is currently providing information that

pertains to national security matters, the disclosure of which could reasonably be expected to

result in serious damage to AFOSI's intelligence and counterintelligence gathering capabilities."

*Id.* ¶ 8.  Mr. Bietsch avers that the information withheld "pertain[s] to a classified intelligence

source [and] is likely to identify the source.  The withheld information and material provided by

or that pertains to that source is specific and, if disclosed, reasonably could be expected to reveal

the identity of the contributing source."  *Id.*

Mr. Bietsch continues to explain that "[d]isclosure of AFOSI sources, regardless of

whether they are active or inactive, alive or deceased, can reasonably be expected to jeopardize"

the safety of the source or his or her family.  *Id.* ¶ 9.  Further, according to Mr. Bietsch,

disclosure of a source  "could cause damage to national security by causing current intelligence

sources to cease providing information, and discourage potential intelligence sources from

cooperating with the AFOSI," thus severely hampering the AFOSI's law enforcement and

national security related efforts.  *Id.*  Mr. Bietsch avers that, in light of these considerations, he

determined that the source-identifying information in Air Force Document Number One "would

clearly and demonstrably cause damage to national security and intelligence activities."  *Id.* ¶¶

10-11.  Mr. Bietsch's Second Declaration–to which the Court must afford "substantial

weight"–thus provides a "plausible assertion" that the information withheld from Air Force

Document One is properly classified.  *Morley*, 508 F.3d at 1124 (quoting *Military Audit Project*,

656 F.2d at 738).  As such, the Court concludes that the Air Force has properly withheld

information from Air Force Document Number One pursuant to FOIA Exemption 1.[11]

> 2.    *The Air Force Has Properly Invoked FOIA Exemption 6, Which Covers the Information It Has Withheld Pursuant to FOIA Exemption 7(C)*

In addition to withholding information from Air Force Document Number One pursuant to FOIA Exemption 1, the Air Force withheld the names of three Air Force members from that Document pursuant to FOIA Exemptions 6 and 7(C), and withheld the names of four Air Force members, along with the Air Force serial numbers for two of them and the off-base home address and assignment for one of them, from Air Force Document Number Two pursuant to the same Exemptions.  Costa Decl. ¶¶ 9-10.  While the Air Force asserts that all of these withholdings were proper, the Court concludes that Ms. Costa's Declaration is insufficient to establish that  the Air Force properly invoked FOIA Exemption 7(C) because it does not establish the "law enforcement purpose" of the documents at issue.  Nevertheless, because the Air Force withheld the relevant information under Exemption 6 as well, and the Court finds that the Air Force properly invoked Exemption 6, the Court concludes that the Air Force has established that it is entitled to withhold the information at issue from Plaintiff.

FOIA Exemption 6 permits an agency to withhold information contained within "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6); *see NARA v. Favish*, 541 U.S. 157, 171 (2004); *Reporters Comm.*, 489 U.S. 749, 773-75, (1989).  The term "similar files" is

---

[11] In his Cross-Motion/Opposition, Plaintiff argued that Mr. Bietsch's first Declaration–offered by the Air Force in support of its Motion for Summary Judgment–was insufficient to establish that the information withheld from DIA Document Number One was properly substantively classified.  Pl.'s Cross-MSJ at 4.  Plaintiff's arguments are irrelevant in light of Mr. Bietsch's Second Declaration.

broadly interpreted, such that Exemption 6 protects from disclosure all information that "applies to a particular individual" in the absence of a public interest in disclosure.  *State Dep't v. Washington Post Co.*, 456 U.S. 595, 602 (1982) ("In sum, we do not think that Congress meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information.  Rather, the exemption was intended to cover detailed Government records on an individual which can be identified as applying to that individual.") (internal quotation and citation omitted).  Accordingly, it is not the nature of the files in which the information is contained, but rather the balance of public and private interests that determines the Exemption's scope. *Washington Post*, 456 U.S. at 599-600.

Pursuant to FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), an agency may withhold information within documents "compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C). A similar privacy interest versus public benefit calculation applies with respect to this Exemption.  However, the threshold requirement for FOIA Exemption 7(C) is that the document at issue must have been "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7). Plaintiff's Cross-Motion asserts that the Air Force has "set forth no facts upon which a finding that the information at issue was compiled for law enforcement purposes can be premised," Pl.'s Cross-MSJ at 9, and the Court agrees.  Ms. Costa's Declaration asserts that she determined to withhold information from Air Force Documents Numbers One and Two pursuant to FOIA Exemptions 6 and 7(C), and discusses the relevant privacy and public interests.  Costa Decl. ¶¶ 9-10.  Ms. Costa does not establish that Air Force Documents Numbers One and Two were compiled for law enforcement purposes.  As the D.C. Circuit has explained, where an agency

36

"specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference."

*Campbell*, 164 F.3d at 32 (citing *Pratt v. Webster*, 673 F.2d 408, 419 (D.C. Cir. 1982)).

Nevertheless, the "deferential" standard of review that the Court applies to this determination is

not "vacuous." *Id.*  Instead, the agency's declarations "must establish a rational 'nexus between

the investigation and one of the agency's law enforcement duties,' and a connection between an

'individual or incident and possible security risk or violation of federal law.'" *Id.* (quoting *Pratt*,

673 F.2d at 420-21).  Moreover, if the agency's declarations "'fail to supply facts' in sufficient

detail to apply the *Pratt* rational nexus test, then a court may not grant summary judgment for the

agency." *Id.* (citing *Quinon v. FBI*, 86 F.3d 1222, 1229 (D.C. Cir. 1996)).

Here, the Air Force points to the statements in Ms. Costa's Declaration that the

documents at issue originated from AFOSI, that AFOSI represents the Air Force's investigative

service, and that its "primary responsibilities are criminal investigations and counterintelligence

services."  Five Defs.' Opp'n Reply at 14 (citing Costa Decl. ¶¶ 1, 4).  Based on these statements,

the Air Force concludes "[c]learly such activities come within the parameters of a 'law

enforcement purpose.'"  *Id.*  Ms. Costa's Declaration may well establish that AFOSI generally

has a law enforcement purpose, but it does not additionally establish a "rational nexus" between

that law enforcement purpose and the documents at issue here.  *See Campbell*, 164 F.3d at 32;

*Pratt*, 673 F.2d at 421.  The D.C. Circuit rejected a similar argument in *Campbell*, finding that

DOJ's "position reduces to the long-rejected claim that anything in an FBI file pertains to an

exempt law enforcement purpose."  164 F.3d at 32 (citing *Pratt*, 673 F.2d at 415).  So too, here,

the Air Force's position is simply that because the AFOSI has a primarily law enforcement

purpose, the documents at issue must have been compiled for a law enforcement purpose.  Ms.

37

Costa's Declaration, however, does not permit the Court to assess the Air Force's truism by applying the *Pratt* rational nexus test.  As such, the Court must conclude that the Air Force has failed to demonstrate the threshold requirement for withholding documents pursuant to FOIA Exemption 7(C).  The Court therefore cannot determine that the Air Force properly withheld documents on the basis of Exemption 7(C).

This failing, however, is not necessarily fatal to the Air Force's withholding of information from Air Force Documents Numbers One and Two because in addition to invoking Exemption 7(C) to cover the withheld information, the Air Force has also invoked Exemption 6 with respect to the same information.  The Court therefore continues to consider the Air Force's invocation of FOIA Exemption 6.  As noted above, FOIA Exemption 6 broadly exempts disclosure of all information that "applies to a particular individual." *Washington Post Co.*, 456 U.S. at 602.  Here, the Air Force has invoked FOIA Exemption 6 to protect the names of Air Force members, along with the Air Force serial numbers for two of them, and an off-base home address and assignment for one of them.  Costa Decl. ¶¶ 9-10.  This information undoubtedly meets the threshold test for FOIA Exemption 6, and the Court therefore turns to balancing the privacy interest of those identified in the records against the public interest in disclosure.

Although FOIA Exemptions 6 and 7(C) are similar in requiring such balancing, they are not coterminous. *Beck*, 997 F.2d at 1491.  Rather, "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6." *Reporters Comm.*, 489 U.S. at 756. Specifically, "Exemption 6 requires that the invasion of privacy be 'clearly unwarranted,'" and that the disclosures "would constitute" an invasion of privacy, while Exemption 7(C) refers only to an "unwarranted" invasion and covers any disclosure that "could reasonably be expected to

38

constitute" an invasion of privacy.  *Id.*  Thus, although the D.C. Circuit has held "categorically

that, unless access to the names and addresses of private individuals appearing in files within the

ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the

agency is engaged in illegal activity, such information is exempt from disclosure," *SafeCard*,

926 F.2d at 1206, the same categorical conclusion does not necessarily apply under Exemption 6.

To the contrary, Exemption 6's stronger language "tilt[s] the balance (of disclosure

interests against privacy interests) in favor of disclosure," and creates a "heavy burden" for an

agency invoking Exemption 6.  *Morley*, 508 F.3d at 1128.  Ms. Costa's Declaration avers that she

withheld the names and serial numbers of Air Force members, as well as the off-base address and

assignment of one member, because the release of such information "could reasonably be

expected to constitute an unwarranted invasion of the personal privacy of the [] individuals," and

"would shed no light on how the Air Force performs its statutory duties or reveal anything about

the workings of the government."  Costa Decl. ¶¶ 9-10.  In turn, Plaintiff asserts that the Air

Force offers only conclusory assertions to justify its invocation of Exemption 6, and has failed to

demonstrate that the privacy interest at issue is more than *de minimis*.  Pl.'s Cross-MSJ at 12-

13.[12]

Plaintiff is correct that Ms. Costa's Declaration is terse, at best, and the Court notes that

the Air Force would better serve its interests by more explicitly explaining its invocations of

FOIA Exemption 6 in the future.  Nevertheless, the D.C. Circuit has recently explained that "[a]

substantial privacy interest is anything greater than a *de minimis* privacy interest," *Multi Ag*

---

[12] As Plaintiff offers no evidence that the information withheld in this case is already
publicly available, the Court need not address his assertion that a privacy interest is diminished
where the information at issue has been made available to the public.  *See* Pl.'s Cross-MSJ at 11.

*Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1230-31 (D.C. Cir. 2008), and–as the Five

Defendants stress–has previously found that "employees possess a legitimate privacy interest in

their names and addresses," *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).  This finding,

however, is tempered by the D.C. Circuit's recent reminder that "the disclosure of names and

addresses is not inherently and always a significant threat to the privacy of those listed; whether

it is a significant or a *de minimis* threat depends on the characteristic(s) revealed by virtue of

being on a particular list, and the consequences likely to ensue."  *Morley*, 508 F.3d at 1128.

   Here, the Air Force members whose names and other identifying information was

redacted from the Intelligence Information Reports have a significant–i.e., more than *de*

*minimis*–privacy interest in that information, particularly in light of a Department of Defense

policy change after the terrorist attacks of September 11, 2001.  As the Five Defendants explain,

prior to September 11th, the DoD disclosed names and other nonsensitive data  concerning most

of its service-members and civilian employees not actively assigned overseas, on board ship, or

to sensitive or routinely deployable units.  Five Defs.' MSJ at 32; *see also* DoD Director for

Admin. and Mgmt. Mem. (Nov. 9, 2001) at 1, *available at* http://www.defenselink.mil/pubs/foi/

withhold.pdf.  In contrast, since the attacks, as a matter of official policy, the DoD carefully

considers and limits the release of all names and other personal information concerning military

and civilian personnel, based on a conclusion that they "are at increased risk regardless of their

duties or assignment to such a unit."  DoD Mem. at 1.  This policy reflects "the heightened

interest in the personal privacy of DoD personnel that is concurrent with the increased security

awareness demanded in times of national emergency," *id.*, and Judge Henry H. Kennedy recently

relied upon this policy change in concluding that the public interest vs. privacy interest balance

"tip[ped] decidedly" in favor of withholding the names of DoD personnel under FOIA

Exemption 6, *see Kimmel v. DoD*, Civ. A. No. 04-1551(HHK), 2006 WL 1126812, * 3 (D.D.C.

Mar. 31, 2006).

      In light of this policy, the Court cannot agree with Plaintiff that the Air Force establishes

only a *de minimis* privacy interest in the withheld information.  Nor can the Court agree with

Plaintiff that there is a substantial public interest in the withheld information.  Plaintiff claims

that "there is a public interest in the disclosure of the identities withheld on privacy grounds in

this case," because "[s]uch information enables accounts of historical events to be more complete

and accurate than they would be without such information."  Pl.'s Cross-MSJ at 13.  Simply put,

the "public interest" Plaintiff identifies is not the public interest cognizable under FOIA

Exemption 6.  As the D.C. Circuit has explained, "[t]he public's interest in disclosure of

personnel files derives from the purpose of the [FOIA]–the preservation of 'the citizens' right to

be informed about what their government is up to.'"  *Beck*, 997 F.2d at 1492-93 (quoting

*Reporters Comm.*, 489 U.S. at 773 (internal quotation marks omitted)).  While FOIA's purpose

"is furthered by disclosure of official information that 'sheds light on an agency's performance of

its statutory duties,'" "[i]nformation that "reveals little or nothing about an agency's own

conduct' does not further the statutory purpose; thus the public has no cognizable interest in the

release of such information."  *Id.* at 1493 (quoting *Reporters Comm.*, 489 U.S. at 773).

      Plaintiff maintains that the names and other identifying information regarding Air Force

members that the Air Force has withheld from the Air Force Documents would make for more

accurate and detailed historical accounts.  He does not argue, nor does the Court find, that the

withheld information would shed any light on the Air Force's performance of its statutory duties.

As such, the Court concludes that there is no public interest in its disclosure.  Having already

concluded that the privacy interest at issue here is more than *de minimis*, the Court "need not

linger over the balance; something, even a modest privacy interest outweighs nothing every

time."  *National Ass'n of Retired Federal Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir.

1989); *see also Beck*, 997 F.2d at 1494.  As a result, the Court finds that the Air Force has

properly invoked FOIA Exemption 6 to withhold the names and other identifying information of

Air Force members from Air Force Documents Numbers One and Two.

> 3. *The Air Force Has Released All Reasonably Segregable Nonexempt Information*

As discussed above, "non-exempt portions of a document must be disclosed unless they

are inextricably intertwined with exempt portions."  *Schiller*, 964 F.2d at 1209 (quoting *Mead Data*, 566 F.2d at 260).  In her Declaration, Ms. Costa avers that she reviewed Air Force

Documents Numbers One and Two to determine if any portions of the withheld information

could be segregated and disclosed.  Costa Decl. ¶ 11.  Significantly, like the DIA, the Air Force

has not withheld either Air Force Document in its entirety due to the inclusion of exempt

material therein.  *Cf. Stolt-Nielsen*, 2008 WL 2853214 at * 4.  Rather, as discussed above, the Air

Force initially released some information to Plaintiff and then made a supplemental release of

Air Force Document Number One upon concluding that additional nonexempt information was

reasonably segregable.  *See* Costa Decl. ¶ 7 & Ex. 3.  This act of releasing additional information

evidences a good-faith effort on the Air Force's part to segregate nonexempt information where

possible.  In the end, Ms. Costa avers that the Air Force has withheld only that information that it

deemed exempt, and as set forth above, the Air Force has established that that information is

properly withheld under FOIA Exemptions 1 and 6.  Accordingly, the Court finds that the Air

Force has met its burden of showing that it released all reasonably segregable, nonexempt

information to Plaintiff.

> C.    *The Department of the Navy Has Not Justified Its Withholding of Information Under FOIA Exemption 7(C)*

Like the Air Force, the Navy had no independent obligation to respond to Plaintiff's

FOIA/PA request because the Court dismissed Plaintiff's Complaint against the Navy.  Instead,

the Navy seeks summary judgment as to its withholdings from documents referred by the DIA

and the FBI.  As explained above, the Navy's withholding of information from Navy Document

Number One is no longer at issue because Plaintiff has withdrawn his request for that

information.  *See* Pl.'s Resp., Docket No. [69]; Pl.'s Cross-MSJ at 6.  With respect to Navy

Document Number Two, although the Navy initially withheld information from the document

pursuant to FOIA Exemption 1, it has since concluded that the Exemption no longer applies, and

provided Plaintiff with a supplemental release of the information previously withheld under that

Exemption.  Suppl. Brock Decl. ¶ 9 & Ex. 3.[13]  The sole issue with respect to the Navy, then, is

its withholding of the name of an NCIS Special Agent and the names of the individuals who

prepared, reviewed, and approved Navy Document Number Two, pursuant to FOIA Exemption

7(C).  *Id.* ¶ 9.

The Navy argues that this information was withheld in order to protect the identities of

the individuals at issue, *see* Brock Decl. ¶¶ 15-17, and generally asserts that "[p]rotecting the

---

[13] The Navy's release of this information moots the issue previously raised by Plaintiff regarding the withholding of the name of a philosophy professor from Navy Document Number Two.  *See* Suppl. Brock Decl. ¶ 9 & Ex. 3.

43

identities of federal law enforcement personnel in investigatory files is appropriate under

Exemption 7(C)," Five Defs.' Opp'n/Reply at 18.  Courts in this Circuit have certainly approved

of withholding the names of individuals that appear in records of law enforcement investigations.

*See SafeCard*, 926 F.2d at 1206.  Here, however, the Navy has failed to establish that Navy

Document Number Two has a "rational nexus" to a law enforcement purpose, and therefore do

not demonstrate that it meets the threshold requirement for the application of Exemption 7(C).

*Pratt*, 673 F.2d at 421.  Lieutenant Commander Brock describes Navy Document Number Two

as an "investigative report" and it is clear that the NCIS is the Naval Criminal Investigative

Service.  *See* Brock Decl. ¶¶ 1, 9.  As discussed above, however, a claim that any Navy

Document inherently relates to a law enforcement purpose will not suffice.  *See Campbell*, 164

F.3d at 32.  As the D.C. Circuit explained in *Campbell*, "[t]he fact that information is stored in a

[document] with an official-sounding label is insufficient standing alone to uphold

nondisclosure;" "[a]t a minimum, the [agency] must demonstrate the relationship between a

record and its label and between the label and a law enforcement purpose."  *Id.*  Here, the Navy

has altogether failed to provide any evidence of Navy Document Number Two's alleged law

enforcement purpose, and the Court therefore cannot conclude that information was properly

withheld from that document pursuant to FOIA Exemption 7(C).

    As such, the Court cannot grant summary judgment as to the Navy's withholding of

information pursuant to FOIA Exemption 7(C).  However, because the Court also cannot

determine from the record or from Plaintiff's Cross-Motion that the Navy improperly invoked

FOIA Exemption 7(C)–i.e., that Navy Document Number Two does not actually have a law

enforcement purpose–the Court likewise cannot grant Plaintiff's Cross-Motion for Summary

Judgment.  The Court shall therefore HOLD IN ABEYANCE the pending cross-motions for summary judgment as to the Navy and, as set forth in the accompanying Order, shall give the Navy the opportunity to substantiate its invocation of FOIA Exemption 7(C) by submitting additional factual support in the form of another agency affidavit.

> D.       *The Department of the Army*

As discussed above, although the Army processed four sets of documents related to Plaintiff's FOIA/PA request, only two are at issue in the instant cross-motions for summary judgment: the First and Second FBI Referrals.  Specifically, of the twenty-seven (27) pages in the First FBI Referral, taking account of the Army's supplemental release of portions of four pages on December 3, 2007, the Army has released fourteen (14) pages in full to Plaintiff, and withheld two (2) pages in full and eleven (11) pages in part, all pursuant to FOIA Exemption 1.  *Id.* ¶ 9 & Ex. 10, Butterfield Suppl. Decl. ¶ 6 & Ex. A.  Of the twenty-two pages in the Second FBI Referral, taking account of the Army's supplemental release of one page in full on December 8, 2007, the Army has released seven (7) pages in full to Plaintiff, withheld thirteen (13) pages in part under FOIA Exemptions 1 and 6, and withheld two (2) pages in full under FOIA Exemption 1.  Butterfield Decl. ¶¶ 14-15 & Ex. 12; Butterfield Suppl. Decl. ¶ 11 & Ex. A.

> 1.       *FOIA Exemption 1*

The Army withholds information from the First and Second FBI Referrals under FOIA Exemption 1, asserting that the information was properly classified pursuant to the substantive and procedural criteria set forth in Executive Order 12,958, as amended.  The Army's justification of that classification is set forth in the Declaration and Supplemental Declaration of Susan J. Butterfield, which the Court finds sufficient to establish that the Army has properly

withheld information from the First and Second FBI Referrals.  As to the procedural

requirements, Ms. Butterfield's Supplemental Declaration explains that she has been delegated

Original Classification Authority under Executive Order 12,958.  Butterfield Suppl. Decl. ¶ 1.

Ms. Butterfield further avers that she has "personally reviewed the Army documents [at issue].

All procedural classification requirements were followed in accordance with Executive Order

(EO) 12958 . . . .  Each document was marked and stamped with the proper classification.  Each

document was marked to indicate which portions are classified."  *Id.* ¶ 2.  These assertions,

which are afforded "substantial weight" and a presumption of good faith, *SafeCard*, 926 F.2d at

1200, are sufficient to establish that the information withheld from the First and Second FBI

Referrals was properly classified procedurally.

      As to the substantive classification, Ms. Butterfield avers that the redacted and withheld

documents in both the First and Second FBI Referrals "contain information gathered through the

use of U.S. intelligence methodology," that the "release of the information withheld would reveal

a U.S. intelligence method of collection," and that, as a result, the "release of intelligence sources

or methods would cause damage to the national security interests of the United States."

Butterfield Suppl. Decl. ¶¶ 5-6.  Ms. Butterfield further explains that

> Disclosure of information the U.S. Government obtains through intelligence
> sources or methods, and in particular, information relating to intelligence methods
> or consideration of the utilization of government intelligence methods, reasonably
> could be expected to enable foreign authorities to identify U.S. intelligence
> activities, methods or sources and to take countermeasures . . . .  Furthermore,
> intelligence activities, sources and methods can only be fruitful when they fully
> can be expected to operate in secrecy and confidence.  Future targets of this
> intelligence collection method could easily change their means of communication.
> Loss of this method of intelligence collection could reasonably be expected to
> cause serious damage to the national security.

*Id.* As Ms. Butterfield's Supplemental Declaration thus provides a "plausible assertion" that the information withheld from the First and Second FBI Referrals is properly classified, *Morley*, 508 F.3d at 1124, the Court concludes that the Army has properly withheld that information pursuant to FOIA Exemption 1

### 2.    *FOIA Exemption 6*

The Army has also relied upon FOIA Exemption 6 in redacting the names, social security numbers, and birthdates of United States government personnel and other third parties from the Second FBI Referral.  Butterfield Suppl. Decl. ¶ 6.  This withheld information pertains to specific individuals, and thus meets the threshold requirement of FOIA Exemption 6.  *See Washington Post*, 456 U.S. at 602.  The Court therefore turns to balancing the privacy interest in the withheld information against the public interest in its disclosure.  As the Five Defendants' Opposition/Reply notes, Attachment A of to Plaintiff's Cross-Motion/Opposition contains a copy of all of the pages where the FOI/PO of USAINSCOM redacted information from the Second FBI Referral pursuant to FOIA Exemption 6.  Five Defs.' Opp'n/Reply at 24; *see also* Pl.'s Cross-MSJ, Attach. A.  The Court has reviewed those pages and finds that the privacy interest of the individuals whose names, social security numbers, and birthdates have been withheld is substantial.  The types of information withheld from the Second FBI Referral have been found by other courts in this District to give rise to a substantial privacy interest.  *See Voinche v. FBI*, 412 F. Supp. 2d 60, 67 (D.D.C. 2007) ("the individuals to whom this information [names and identifying information] pertains clearly have a right to keep it private for the sake of their safety and privacy"); *Judicial Watch, Inc. v. Dep't of Commerce*, 83 F. Supp. 2d 105, 112 (D.D.C. 1999) (finding birthdates and social security numbers properly withheld pursuant to FOIA

Exemption 6).  Further, as the particular records in the Second FBI Referral consist of agent

reports pertaining to subversion and espionage directed against the United States Army, *see* Pl.'s

Cross-MSJ, Attach A, the individuals concerned have an interest in preventing the disclosure of

their names and other identifying information in connection with the reports.  *See Morley*, 508

F.3d at 1128.  Moreover, to the extent that the Army has withheld the names and other

identifying information of military and civilian personnel, as discussed above, the privacy

interest inherent in such information forms the basis for the DoD's revised policy limiting the

release of such information.  *See* Five Defs.' Opp'n/Reply at 24-25 (citing DoD Mem. at 1-2).

As such, the Court concludes that the privacy interest at issue in the information the

Army withheld from the Second FBI Referral is substantial, and again finds that there is no

public interest–of the type cognizable under the FOIA–in the disclosure of this information.

Plaintiff's proffered public interest in the information is the same as that discussed above:

Plaintiff asserts that "[s]uch information enables accounts of historical events to be more

complete and accurate than they would be without such information."  Pl.'s Cross-MSJ at 13.

This assertion does not suggest that the withheld information would shed any light on the Army's

conduct, and the public thus has no cognizable interest in the information Plaintiff seeks.  *See

Beck*, 977 F.2d at 1492-93; *Reporters Comm.*, 489 U.S. at 773.  Accordingly, the Court "need not

linger over" balancing this nonexistent public interest against the privacy interest at stake,

because "something, even a modest privacy interest outweighs nothing every time."  *Horner*, 879

F.2d at 879.  (D.C. Cir. 1989); *see also Beck*, 997 F.2d at 1494.  The Court therefore concludes

that the Army has properly invoked FOIA  Exemption 6 to withhold the names, birthdates, and

social security numbers of government personnel and third parties from the Second FBI Referral.

3.      *The Army Has Released Reasonably Segregable, Nonexempt Information*

In her Declaration, Ms. Butterfield avers that the Army conducted a line-by-line review of both the First and Second FBI Referrals, and considered whether there was segregable information that could be released within each document.  Butterfield Decl. ¶¶ 12, 20.  She further avers that to the extent the documents included reasonably segregable, nonexempt information, such information was released.  *Id.* ¶¶ 12-13, 20-21.  Although Plaintiff challenges Ms. Butterfield's Declaration by pointing to two purported examples of the Army's failure to properly segregate, neither of Plaintiff's examples establishes such a failure.  *See* Pl.'s Cross-MSJ at 15.  First, Plaintiff notes that the Army withheld entire pages (Pages 8-10) of the Second FBI Referral with no description of the withheld content.  *Id.*  Plaintiff's argument as to Page 8 of the Second FBI Referral is now moot because the Army released that page in full upon a determination that it no longer merited classification.  *See* Butterfield Suppl. Decl. ¶ 11.  As to Pages 9 and 10, Plaintiff is correct that the deleted page sheet included in the Army's release does not provide information about the documents withheld under FOIA Exemption 1.  *See* Pl.'s Cross-MSJ, Attach. A at 8-10.  That information, however, is included in the Army's *Vaughn* index for the Second FBI Referral, which specifically lists the subject, date, and classification level for each page, *see* Butterfield Decl. Ex. 13, and as discussed above, Ms. Butterfield's Supplemental Declaration sufficiently establishes that those pages were properly withheld pursuant to FOIA Exemption 1.  Plaintiff's claim that the Army failed to properly segregate and provide information regarding pages withheld from the Second FBI Referral is thus meritless.

Similarly meritless is Plaintiff's claim that the Army "withheld extensive passages under Exemption 6 with no description of the content," Pl.'s Cross-MSJ at 15, which he supports by

49

pointing to Page 6 of the Second FBI Referral, *see id.*, Attach. A at 6.  As the Five Defendants'

Opposition/Reply explains, "Page 6 is part of a two-page witness statement that was completed

on March 24, 1970," and the so-called "extensive passage" missing from Page 6 is not

information withheld by the Army pursuant to Exemption 6, but rather a crossed-out area

"intended to indicate blank space that was not used by the witness in providing his statement.

Hence, the initialed 'Not Used' note placed next to the crossed-out space."  Five Defs.'

Opp'n/Reply at 26-27; *see also* Pl.'s Cross-MSJ, Attach. A at 5-6.  To the extent that the Army

withheld other information from the Second FBI Referral pursuant to FOIA Exemption 6, its

*Vaughn* index provides the classification level, date, and subject of each document at issue, and

specifically describes the information withheld.  *See* Butterfield Decl. Ex. 13.

 In short, Plaintiff's meritless "examples" fail to prove that the Army did not release

reasonably segregable, nonexempt information.  To the contrary, the Court's review of Ms.

Butterfield's Declaration and Supplemental Declaration, the Army's two *Vaughn* indices, *see*

Butterfield Decl. Exs. 10 and 13, and the document release provided by Plaintiff as Attachment

A to his Cross-Motion for Summary Judgment leads the Court to find that the Army has released

all reasonably segregable, nonexempt information, and has thus met its burden under the FOIA.

## IV:  CONCLUSION

 For the foregoing reasons, the Court shall GRANT-IN-PART the Five Defendants' [39]

Motion for Summary Judgment insofar as it relates to the Criminal Division, DIA, Air Force, and

Army, and shall DENY-IN-PART Plaintiff's [43] Cross-Motion for Summary Judgment with

respect to the same Defendants.  Further, the Court shall HOLD-IN-ABEYANCE the Five

Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary

Judgment, insofar as each relates to Defendant Navy, and shall order Defendant Navy to provide additional factual support for its invocation of FOIA Exemption 7(C), consistent with the discussion above and the accompanying Order.  If the Navy does not provide such additional factual support, the Court shall grant Plaintiff's Cross-Motion for Summary Judgment as to the Navy, and shall deny the Five Defendants' Motion for Summary Judgment as it relates to the Navy.  Finally, the Court shall DENY AS MOOT the Navy's [66] Supplemental Motion for Summary Judgment.  An appropriate Order accompanies this Memorandum Opinion.

Date:   August 25, 2008

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge