UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RALPH SCHOENMAN,

    Plaintiff,

     v.

                                            Civil Action No. 04-2202 (CKK)

FEDERAL BUREAU OF INVESTIGATION,
*et al.*,

    Defendants.

## MEMORANDUM OPINION
(September 1, 2008)

Plaintiff, Ralph Schoenman, a political activist and author, filed the above-captioned

action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy

Act of 1974 ("Privacy Act" or "PA"), 5 U.S.C. § 552a, seeking access to an array of records

pertaining to himself, Lord Bertrand Russell, and six organizations, from a total of ten different

named agencies and a number of unnamed agencies to which the named agencies might refer

documents for a determination as to releasability (identified as "John Doe Agencies 1-10" in

Plaintiff's Complaint).  Plaintiff's Complaint named as Defendants: the Federal Bureau of

Investigation ("FBI"), the Central Intelligence Agency ("CIA"), the Defense Intelligence Agency

("DIA"), the Department of the Air Force ("Air Force"), the Department of Justice ("DOJ"), the

Department of the Army ("Army"), the Department of the Navy ("Navy"), the Department of

State ("State Department"), the National Archives and Records Administration "NARA"), the

National Security Agency ("NSA"), and John Doe Agencies 1-10.  Compl. at 1 & ¶ 13.

In a Memorandum Opinion and Order dated March 31, 2006, the Court dismissed

Plaintiff's Complaint against Defendants CIA, NARA, NSA, Air Force, Army, and Navy because

Plaintiff either could not show that the agencies had received his FOIA/PA requests or could not

show that he had exhausted his administrative remedies as to the agencies.  *See generally*

*Schoenman v. FBI*, Civ. A. No. 04-2202, 2006 WL 1126813 (D.D.C. Mar. 31, 2006).  By

Memorandum Opinion and Order dated June 5, 2006, the Court dismissed without prejudice

certain portions of Plaintiff's Complaint against the FBI and the State Department.  *See generally*

*Schoenman v. FBI*, Civ. A. No. 04-2202, 2006 WL 1582253 (D.D.C. Jun. 5, 2006).  The

Defendants with remaining obligations to process documents in response to Plaintiff's request

did so.  Those Defendants, along with the agencies to whom they have referred documents for

releasability determinations, have now begun moving for summary judgment, and Plaintiff has

filed cross-motions for summary judgment.  This Memorandum Opinion addresses only the

Motion for Summary Judgment filed by the State Department and the Cross-Motion for Partial

Summary Judgment filed by Plaintiff.  The Court notes at the outset that the parties agreed to

brief these cross-motions based upon Plaintiff's selection of a sample of documents to be

included in a *Vaughn* index.  *See* 3/21/07 Joint Status Report, Docket No. [34] at 4; 7/11/07 Joint

Status Report, Docket No. [37] at 2.  The Court therefore resolves the pending cross-motions for

summary judgment on that basis, as well as upon the State Department's declarations regarding

the scope of its search, without opining on whether Plaintiff's selected sample is representative

of the information more generally withheld by the State Department.

The Court has conducted a searching review of the State Department's Motion for

Summary Judgment, Plaintiff's Cross-Motion for Partial Summary Judgment/Opposition, the

State Department's Reply/Opposition, Plaintiff's Reply, the exhibits attached to those filings, the relevant statutes and case law, and the entire record herein.  Based upon the foregoing, the Court shall GRANT-IN-PART the State Department's [52] Motion for Summary Judgment and shall DENY-IN-PART Plaintiff's [56] Cross-Motion for Partial Summary Judgment, insofar as each relates to the adequacy of the State Department's search, the State Department's segregation of non-exempt information, and the State Department's withholding of information from Documents P323 and P334.  The Court cannot ultimately resolve the parties' cross-motions as to Documents P143 and P319 on the current record because a discrete issue remains.  Specifically, the State Department has withheld the names of an FBI legal attaché and two FBI agents from those documents pursuant to FOIA Exemption 6 and 7(C) without indicating whether it made any efforts to determine whether those individuals are alive or dead before purporting to balance their privacy interests against any public interest in disclosure.  In the absence of this information, the Court cannot determine whether the State Department's invocation of the FBI legal attaché's and agents' privacy interests represented a reasonable response to Plaintiff's FOIA/PA request.  As such, the Court shall HOLD IN ABEYANCE the parties' cross-motions for summary judgment with respect to Documents P143 and P319 and–as set forth in the accompanying Order–shall require the State Department to indicate to the Court whether the FBI legal attaché and agents are alive or dead, so that the Court may consider the State Department's balancing under FOIA Exemptions 6 and 7(C).

## I: BACKGROUND

By letter dated July 27, 2001, Plaintiff, through counsel, submitted a request to the State Department pursuant to the FOIA and the Privacy Act.  *See* Second Decl. of Margaret P. Grafeld,

Director of the Office of Information Programs and Services ("IPS"), State Department

(hereinafter "Grafeld Decl."), submitted in support of the State Department's Motion for

Summary Judgment, ¶ 4 & Ex. 1.[1]  Plaintiff's request sought access to records pertaining to

himself, Lord Bertrand Russell, six organizations, and twenty-six other subject matters, as well as

all "index references" to the foregoing subjects, all previous FOIA requests pertaining to those

subjects, and all records used by the State Department in its searches in response to Plaintiff's

request.  *Id.*[2]  Along with his request, Plaintiff submitted a Privacy Act Authorization permitting

---

[1] Ms. Grafeld avers that she is the State Department's Information and Privacy Coordinator and the Director of IPS.  Grafeld Decl. ¶ 1.  She explains that IPS's core responsibilities include requests for access to records under the FOIA and the Privacy Act, as well as requests by members of Congress, other government agencies, and requests pursuant to judicial proceedings.  *Id.*  Ms. Grafeld submits her Declaration to address the State Department's handling of Plaintiff's FOIA/PA request, and to provide a *Vaughn* index of Plaintiff's selection of documents from which the State Department withheld information.  *Id.* ¶ 3.

[2] The facts included herein are taken from Ms. Grafeld's Declaration and the Supplemental Declaration she provided in support of the State Department's Opposition/Reply, *see* Third Decl. of Margaret P. Grafeld (hereinafter "Suppl. Grafeld Decl.").  The State Department has also provided, as required by Local Civil Rules 56.1 and 7(h), a Statement of Material Facts as to Which There is No Genuine Issue; however, because that Statement generally summarizes Ms. Grafeld's Declarations, the Court cites directly to Ms. Grafeld's Declarations.  *See generally* State Dep't Stmt.  Plaintiff has responded to the State Department's Statement with a responsive Statement as well as a Statement of Material Facts Not in Dispute. *See* Pl.'s Resp. Stmt. and Pl.'s Stmt.  In his responsive Statement, Plaintiff either admits the State Department's assertions or asserts that he "is without information or knowledge sufficient to admit or deny and therefore denies," *see e.g.*, Pl.'s Resp. Stmt. ¶¶ 6-11.  As these bare assertions are not supported by facts contradicting Ms. Grafeld's declarations, the Court accepts Ms. Grafeld's sworn statements–which are supported by the record of correspondence between the State Department and Plaintiff–as uncontroverted and relies upon them.
    As to Plaintiff's own Statement of Material Facts, the State Department correctly notes that it consists of verbatim portions of pages 16 through 20 of Plaintiff's Memorandum in support of his Cross-Motion for Partial Summary Judgment and in Opposition to the State Department's Motion (hereinafter "Pl.'s Cross-MSJ"), broken into paragraphs and supported by citations to Plaintiff's own Declaration.  *See* State Dep't Reply/Opp'n at 2 n.2; *compare* Pl.'s Cross-MSJ at 16-20 *with* Pl.'s Stmt. ¶¶ 1-23.  The State Department continues to correctly note that "plaintiff merely quoted direct legal arguments from his Memorandum," but incorrectly

the State Department to release records about him to his counsel.  *Id.*, Ex.1 at 4.

IPS acknowledged Plaintiff's request in two separate letters dated August 23, 2001, and advised Plaintiff that his request had been split administratively into two requests.  Grafeld Decl. ¶ 5 & Exs. 2-3.  Ms. Grafeld avers that "[t]his was done to streamline the administrative processing of material about plaintiff, which was potentially subject to the Privacy Act [versus] material solely subject to the FOIA."  *Id.* ¶ 5.  The State Department therefore created one file–the so-called "Schoenman Request"–for Plaintiff's request for records concerning himself, *see id.* Ex. 2, and another request file–the so-called "Russell Request"–for Plaintiff's request for records pertaining to Lord Bertrand Russell and the organizations identified by Plaintiff in his request letter, *see id.*, Ex. 3.  *See also* Grafeld Decl. ¶ 5.

In his initial FOIA/PA request, Plaintiff asserted that he was the author of numerous published books, as well as a representative of the news media, and therefore requested that the State Department waive all search fees and copying costs.  *Id.*, Ex. 1 at 3.  By letter dated August

---

concludes that, as a result, it need not "further address plaintiff's Statement of Material Facts." State Dep't Reply/Opp'n at 2 n.2. Local Civil Rules 56.1 and 7(h) specifically provide that "[i]n determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted unless such fact is controverted in the statement of genuine issues filed in opposition to the motion." *See* LCvR 7(h) and 56.1. In light of this requirement, Plaintiff asserts that "[b]ecause State has failed to controvert [] the facts set forth in [Plaintiff's] Statement of Material Facts, this Court should treat them as admitted." Pl.'s Reply at 2. The problem with Plaintiff's request is that, for the most part, the so-called "facts" included in his Statement are not facts at all, but rather legal arguments. *See, e.g.*, Pl.'s Stmt. ¶ 15 ("Because [Plaintiff] was a political dissident, there is a public interest in the disclosure of this information") (citing to Pl.'s Decl. ¶ 7 ("Particularly because I was a political dissident, there is a public interest in the disclosure of this information.")). Accordingly, while the State Department should have specifically responded to each so-called fact by noting that it consisted of legal argument, the Court cannot accept Plaintiff's legal arguments, dressed up as facts, as uncontroverted, and notes that Plaintiff's legal arguments do not create genuine issues of material fact.

23, 2001, the State Department informed Plaintiff that his request for a fee waiver had been

denied. *See* Grafeld Decl., Ex. 3. Schoenman appealed the denial of his fee waiver request by

letter dated September 16, 2001. *Id.*, Ex. 13. The State Department upheld the denial of

Plaintiff's fee waiver request by letter dated October 18, 2001. *Id.*, Ex. 15.

Nevertheless, Ms. Grafeld's Supplemental Declaration explains that because the State

Department does not charge requesters for processing Privacy Act requests, "all documents

regarding the 'Schoenman request' were released to plaintiff free of charge." Suppl. Grafeld

Decl. ¶ 4. Ms. Grafeld further explains that, although the State "Department initially denied

plaintiff's request for a fee waiver, no search fees or duplication costs were charged to plaintiff

for the processing of this request." *Id.* ¶ 5. Rather, "[a]ll documents concerning the 'Russell

request' were released to plaintiff free of charge." *Id.* Thus, Plaintiff has not been charged any

fees for the processing or release of documents in response to his FOIA/PA request.

A.     *The Schoenman Request*

In its letter of August 23, 2001, the State Department advised Plaintiff that it required

additional information before it could begin processing Plaintiff's request for records pertaining

to himself. *Id.* ¶ 6 & Ex. 2. Plaintiff provided that additional information by letters dated

September 15 and September 16, 2001. *Id.* ¶ 7 & Exs. 4, 14; *see also* State Dep't Stmt. ¶ 4. By

letter dated October 12, 2001, the State Department informed Plaintiff that the Schoenman

Request was being processed and that he would be notified when responsive material was

retrieved and reviewed. Grafeld Decl. ¶ 8 & Ex. 5. The State Department also advised Plaintiff

that State Department records predating 1975 were generally in the custody of NARA, and

suggested that Plaintiff submit a FOIA request directly to NARA for any State Department

6

records predating 1975. *Id.*

Ms. Grafeld avers that the State "Department's search for records responsive to plaintiff's request was designed to uncover all responsive records." *Id.* ¶ 21. As background, she explains that when the State Department receives a FOIA/PA request, "IPS evaluates the request and determines which offices, overseas posts, or other record systems within the [State] Department may reasonably be expected to contain the information requested . . . based on the description of records set forth in the request." *Id.* Ms. Grafeld continues to explain the manner in which the State Department's records are maintained, which includes both centralized and decentralized systems of records, and specifically describes the searches conducted of these various systems of records in response to Plaintiff's request. *Id.* ¶ 22. The State Department maintains a centralized records system–the Central Foreign Policy File, or "Central File"–which contains "documents of a substantive nature that establish, discuss, or define foreign policy, set precedents, or require action or use by more than one office." *Id.* The Central File includes "official record copies of almost all incoming and outgoing Departmental telegrams between the Department and Foreign Service posts" along with "other select substantive correspondence documents, including diplomatic notes, correspondence to and from the White House, members of Congress, and other federal agencies, position papers and reports, memoranda of conversations, and interoffice memoranda." *Id.*

The State Department uses an automatic interface, known as SAS (State Archiving System) to search the Central File. *Id.* SAS "searches the full text of approximately 30 million telegrams and the more recent of the other substantive correspondence documents in the Central File." *Id.* For those documents in the Central File that are not directly text searchable through

SAS (including older correspondence documents), SAS searches "the text of a customized index reference that directs a searcher to a full copy of the document." *Id.* As a result, "a SAS search will encompass all documents in the Central File." *Id.* With respect to the Schoenman Request, IPS conducted two searches of the Central File: the first ("Search A") to identify any documents relating to Plaintiff, and the second ("Search B") to identify documents relating to Plaintiff as well as the twenty-six subjects listed in his request letter. *Id.* ¶ 23.

For Search A, IPS conducted a search using variations of Plaintiff's name, "including, for example, a search for documents concerning the text 'Schoenman,' and a search for documents containing both 'Ralph' and 'Schoenman' in the same document." *Id.* ¶ 24. The date range for Search A was mid-1973 (the date of the earliest records in SAS) through the date the search was initiated." *Id.* By letter dated March 21, 2003, the State Department informed Plaintiff that its search of the Central File and the records of the Office of IRM Programs and Services (the former name of IPS) had been completed and yielded seven responsive documents, all of which the State Department released in full. *See id.* ¶¶ 9, 24 & Ex. 6. Subsequently, IPS reexamined the earlier results of Search A and discovered two additional responsive documents. *Id.* ¶ 24. One of these documents was withheld in full by letter dated January 23, 2008, *see id.* & Ex. 12, while the other was released in full by letter dated February 7, 2008, *see id.* ¶ 24 & Ex. 19.

For Search B, IPS conducted full text searches in SAS for documents containing the name "Ralph Schoenman" and each of the twenty-six subjects listed in Plaintiff's request letter. *Id.* ¶ 25 & Ex. 1.[3] For these searches, IPS used the time frames Plaintiff provided in his September

---

[3] Those subjects were: "American Foundation for Social Justice," "Atlantic Peace Foundation," "Studies in The Third World," "Campaign for Nuclear Disarmament," "Committee of 100," "Vietnam Solidarity Campaign," "The Week," "The Spokesman," "The Save Greece

16, 2001 letter, except where limited by the earliest date of records available in SAS (mid-1973).
*Id.* ¶ 25, *see also* Ex. 14.  These searches yielded no responsive records.  *Id.* ¶ 25.

In addition to the Central File, the State Department "has decentralized records systems
maintained both in the Department's domestic offices and at Foreign Service posts overseas,"
which "generally are concerned with specialized and unique activities and programs of the
Department rather than with general foreign policy issues."  *Id.* ¶ 28.  Ms. Grafeld explains that
"each office within the Department, as well as each Foreign Service post and mission, maintains
working files concerning foreign policy and other functional matters related to the daily
operations of that office, post, or mission," and that these working files "consist generally of
working copies of documents, information copies of documents maintained in the Central File,
[and] other specialized documents prepared by or furnished to the office, post, or mission."  *Id.*

Based on the information Plaintiff provided in his FOIA/PA request, the State
Department conducted searches for records maintained by the following offices: the Bureau of
Diplomatic Security (DS), the Office of the Legal Adviser (L), the Bureau of Intelligence and
Research (INR), IPS, the Office of Overseas Citizens Services (OCS), and the Office of Passport
Services (PPT).  *Id.* ¶ 30.  Ms. Grafeld avers that for each of these offices, "[t]horough searches
of these records systems were conducted by professional employees familiar with their contents

_____

Now Committee," "American Workers and Artists for Solidarity," "The Committee for Artistic
and Intellectual Freedom in Iran" (also searched as "CAIFI"), "The Committee in Defense of the
Palestinian and Lebanese Peoples," "The Palestinian Campaign," "The Council on Human
Needs," "The International Committee Against Repression," "The Fourth International," "The
Independent Marxist Group" (also searched as "IMG"), "The Socialist Workers Party" (also
searched as "SWP"), "Socialist Action," "Socialist Organizer," "The Organizer," "The Open
World Conference," "National Campaign in Support of Mumia Abu Jamal," "Permanent
Committee Against War and Exploitation," "Prevailing Winds," and "Covert Action Information
Bulletin."  Grafeld Decl. ¶ 25.

and organization, and those employees were provided with copies of plaintiff's letters." *Id.* ¶ 29.

Ms. Grafeld also explains the function of each of the offices searched and the State Department's

rationale in searching that office.

As she explains, DS maintains records relating to security matters, such as the protection

of the Secretary of State and U.S. missions abroad. *Id.* ¶ 33.  DS is also responsible for storing

and safeguarding classified information, and conducts investigative activities, such as

investigations of State Department personnel conduct. *Id.*  DS was searched in response to the

Schoenman Request because records identified during the search of PPT records indicated that

DS might maintain responsive records. *Id.*  The Office of the Legal Adviser is the State

Department's general counsel office. *Id.* ¶ 34.  It was searched in connection with the

Schoenman Request because Plaintiff's September 15, 2001 letter providing additional

information regarding his request noted that Plaintiff had been involved in passport-related

litigation with the Department. *Id.* ¶ 34; *see also* Ex. 4 (9/15/01 Letter).  INR "ensures that

intelligence activities support foreign policy and national security purposes, and serves as the

focal point in the Department for ensuring policy review of sensitive counterintelligence and law

enforcement activities."  Grafeld Decl. ¶ 35.  INR was searched in response to the Schoenman

Request because Plaintiff requested any references to himself in the "Covert Action Information

Bulletin." *Id.*  OCS and PPT are part of the Bureau of Consular Affairs. *Id.* ¶ 32.  PPT accepts,

examines, adjudicates and processes passport applications, issues passports to those determined

to be qualified under the provisions of United States immigration and nationality laws, and

amends, extends, and validates passports. *Id.*  PPT was searched in response to the Schoenman

Request because Plaintiff's September 15, 2001 letter indicated that he was denied a passport in

the 1950s and that his passport was seized in the 1960s.  *Id.* & Ex. 4.  OCS provides emergency

and non-emergency services to United States citizens residing or traveling abroad.  Grafeld Decl.

¶ 32.  OCS was searched in response to the Schoenman Request because the records identified in

the search of SAS indicated that OCS might maintain responsive records.  *Id.*

IPS maintains records of FOIA/PA requests submitted to the State Department through an

automatic case tracking system.  *Id.* ¶ 36.  This system is text searchable and contains

information on FOIA/PA requests received by IPS since the early 1980s.  *Id.*  In response to the

Schoenman Request, IPS searched the system for any previous request pertaining to Plaintiff, and

found no responsive records.  *Id.*  IPS also maintains an "antiquated" collection of index cards

that were created during the 1960s-1990s, which are arranged by names and topics, and used by

IPS researchers as "finding aids" to assist in locating documents by subject matter.  *Id.*  In

response to the Schoenman Request, IPS searched the "finding aids" and found no responsive

records.  *Id.*  IPS also searched retired or inactive files for the State Department's domestic

offices and foreign service posts.  *Id.* ¶ 37.  The State Department retires records when they are

no longer needed operationally–generally after two to three years–and stores them at an offsite

storage facility.  *Id.*  In response to the Schoenman Request, IPS examined the retired records

manifests for the foreign service posts in the countries that Plaintiff identified in his September

15, 2001 letter, based on the dates indicated in that letter.  *Id.* ¶ 39; *see also* Ex. 4 (9/15/01

Letter).  IPS found no responsive records in the retired records manifest.  Grafeld Decl. ¶ 39.  IPS

also "confirmed with NARA that permanent foreign service post records predating 1976 have

been transferred to the permanent custody of NARA," such that "[t]here is no reason to believe

that the [State] Department still possesses or controls any material retired by the foreign service

posts" described in Plaintiff's September 15, 2001 Letter.  *Id.*

By letter dated April 26, 2005, the State Department advised Plaintiff that its searches of the Office of the Legal Adviser, PPT, and DS had located 446 responsive documents.  *Id.* ¶ 10 & Ex. 7.  Of these 446 documents, the State Department released 338 in full, released 16 in part, and withheld 45 in full.  *Id.*  Information was withheld pursuant to PA Exemptions (d)(5) and (k)(2), as well as FOIA Exemptions 5 and 6.  *Id.*  The State Department's April 26, 2005 Letter also informed Plaintiff that 20 of the 446 documents identified required further inter- or intra-agency coordination before a final determination could be made, and that 27 of the 446 documents originated with other government agencies (the FBI, DOJ, the CIA, and the Department of Homeland Security (DHS)) and had therefore been referred to those agencies for review and direct response to Plaintiff.  *Id.*

By letter dated June 15, 2005, the State Department advised Plaintiff that the review of 6 of the 20 documents requiring inter- or intra-agency coordination was complete, and released all six documents in full to Plaintiff.  *Id.* ¶ 11 & Ex. 8.  By letter dated August 12, 2005, the State Department advised Plaintiff that the review of 13 of the 20 documents was complete, released 5 documents in full, and withheld 8 documents in part, pursuant to PA Exemptions (j)(1), (j)(2), and (k)(1), as well as FOIA Exemptions 1, 3, 6, and 7(C).  *Id.* ¶ 12 & Ex. 9.  By letter dated September 20, 2005, the State Department informed Plaintiff that the review of the last of the 20 documents was complete, and released the document in part, withholding information under FOIA Exemption 3.  *Id.* ¶ 13 & Ex. 10.  In the same letter, the State Department advised Plaintiff that DHS had returned the documents previously referred to DHS to IPS.  *Id.*  By letter dated October 4, 2005, the State Department advised Plaintiff that the review of these 3 documents had

been completed and released all 3 documents in full.  *Id.* ¶ 14 & Ex. 11.  Plaintiff was advised

that the State Department had completed the processing of the Schoenman Request.  *Id.* ¶ 14.

      *B.*      *The Russell Request*

      In its second letter of August 23, 2001, the State Department advised Plaintiff that it

required additional information in order to process the Russell Request.  *Id.* ¶ 16 & Ex. 3.

Plaintiff provided the requested information by letter dated September 16, 2001.  *Id.* ¶ 18 & Ex.

14.  By letter dated October 18, 2001, the State Department informed Plaintiff that it had begun

processing the Russell request and would notify him when responsive material was located and

processed.  *Id.* ¶ 19 & Ex. 15.  The State Department also advised Plaintiff that State Department

documents predating 1975 are generally in the custody of NARA and suggested that he submit a

FOIA request directly to NARA for any State Department documents predating 1975.  *Id.*

      The State Department then proceeded to conduct a search of the Central File using SAS.

*Id.* ¶ 26.  IPS conducted full text searches using variations of Bertrand Russell's name, with a

date range from mid-1973 to the date the search was initiated.  *Id.* ¶ 27.  No responsive records

were found.  *Id.*  The State Department also conducted searches of its decentralized records

systems, searching those offices that were viewed as likely to have responsive records.  *Id.* ¶ 31.

In particular, the State Department searched the records of the Bureau of Diplomatic Security

(DS), the Office of Visa Services (VO), and the Bureau of Intelligence and Research (INR).  *Id.*

VO handles all aspects of visa issuance to aliens, supports and advises foreign service posts on

visa matters, and maintains liaison with other government agencies on all aspects of US

immigration law.  *Id.* ¶ 32.  The State Department searched VO because Bertrand Russell was a

British citizen who may have applied for a visa in order to enter the United States at some point.

Grafeld Suppl. Decl. ¶ 8.  The State Department searched DS and INR, out of an abundance of caution, due to "the close association between Bertrand Russell and plaintiff, and the background information provided by plaintiff in connection with the 'Schoenman Request.'"  *Id.*  None of these searches located responsive records.  *Id.*

IPS also searched for previous FOIA requests as well as its "finding aids" pertaining to Bertrand Russell and the six organizations identified in Plaintiff's request letter.  Grafeld Decl. ¶ 36.  IPS did not locate any previous FOIA requests on Bertrand Russell or the six organizations, but did find one "finding aid" that appeared responsive to Plaintiff's request.  *Id.*  The State Department released this "finding aid" in full to Plaintiff by letter dated January 23, 2008, *id.* & Ex. 12, and Ms. Grafeld avers that "[t]he content of this finding aid does not indicate that any places should have been searched other than where the [State] Department had already searched," *id.* ¶ 36.  By letter dated February 28, 2002, the State Department informed Plaintiff that the Russell Request had been closed.  *Id.* ¶ 20 & Ex. 16.  The State Department explained to Plaintiff that the Russell Request sought records predating 1975, which were generally in the custody of NARA, and suggested that Plaintiff write directly to NARA to seek such records.  *Id.*

In his Cross-Motion/Opposition, Plaintiff seized upon this suggestion, and alleged that the State Department failed to search for records responsive to the Russell Request predating 1975.  *See* Pl.'s Cross-MSJ at 13.  Plaintiff asserted that "[i]f State still may have some records, the fact that others have been transferred to NARA does not exempt State from having to search for those that remain in its possession."  *Id.* at 13-14.  As a result, Ms. Grafeld's Supplemental Declaration provides a "clarification regarding the [State] Department's searches for records pre-dating 1975 in response to [the Russell Request]."  Grafeld Suppl. Decl. ¶ 6.  Specifically, Ms.

14

Grafeld clarifies that, although records more than 25 years old "are generally transferred to, and legally accessioned by" NARA, *id.* ¶ 7, the State Department does retain some records longer than 25 years, *id.* ¶ 8.  Ms. Grafeld avers that "in processing the 'Russell Request,' the [State] Department searched all its records systems with a reasonable likelihood of retaining any responsive records, whether pre-dating or post-dating 1975."  *Id.*  She further clarifies that the State Department searched Central File records dating back to mid-1973, and that the VO, DS, and INR–all of which the State Department searched in connection with the Russell Request–retain certain records longer than 25 years.  *Id.*  None of these searches, however, yielded responsive documents.  *Id.*  Further, the State Department located one "finding aid," created sometime between the 1960s and the 1990s, responsive to the Russell Request and released that document in its entirety to Plaintiff.  *Id.* ¶ 9.

C.      *Additional Searches*

By letters dated January 23, 2008 and February 7, 2008, the State Department informed Plaintiff that it had conducted additional searches of the Central File, INR, VO, and retired files regarding both the Schoenman Request and the Russell Request.  Grafeld Decl. ¶¶ 15-20 & Exs. 12, 19.  These searches located three documents, of which two were released in full and one was withheld in full pursuant to FOIA Exemptions 3 and 6.  *Id.*

In total, the State Department processed 456 documents.  *Id.* ¶ 76.  Of these documents, the State Department released 361 in full to Plaintiff, released 25 documents in part to Plaintiff, and withheld 46 documents in full.  *Id.*

C.      *Procedural History*

As noted above, the parties agreed to proceed with their cross-motions for summary

judgment based upon a sample–to be selected by Plaintiff–of the documents withheld in full or in part by the State Department.  *See* 3/21/07 Joint Status Report, Docket No. [34] at 4; 7/11/07 Joint Status Report, Docket No. [37] at 2.  By letter dated October 10, 2007, Plaintiff provided the State Department with a list of nine items to be the subject of the State Department's *Vaughn* index.  Grafeld Decl. ¶ 40 & Ex. 17.  In January 2008, Plaintiff withdrew one of his selected documents, thus leaving eight documents for inclusion in the State Department's *Vaughn* index. *Id.* ¶ 40 & Ex. 18.  As set forth above, after Plaintiff's selection of documents, the State Department conducted additional searches that located three responsive documents, of which one was withheld in full.  *Id.* ¶ 15.  The State Department included a description of that document, along with the eight identified by Plaintiff, in Ms. Grafeld's Declaration, which serves as the State Department's *Vaughn* index.  Her detailed explanations for each withholding are addressed in the discussion section below.

The State Department filed its Motion for Summary Judgment on February 8, 2008, and Plaintiff filed his Cross-Motion/Opposition on April 7, 2008.  The State Department filed its Reply/Opposition on May 7, 2008, and Plaintiff filed his Reply on May 19, 2008.  Accordingly, the parties' cross-motions for summary judgment are now ripe for review.

## II: LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, Defendants, as the moving parties, bear the "initial responsibility of informing the district court of the basis for [its] motion, and

identifying those portions of the pleadings . . . together with the affidavits which [it] believe[s]

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  Plaintiff, in response to Defendant's motion, must "go beyond the pleadings

and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324

(internal quotation marks omitted).  Although a court should draw all inferences from the

supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by

itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  To be material, the factual assertion must be capable of affecting the

substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient

admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.

*Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at

251.  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment

may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

　　　　In reviewing a motion for summary judgment under the FOIA, the Court must conduct a

*de novo* review of the record.  *See* 5 U.S.C. § 552(a)(4)(B).  In the FOIA context, "*de novo*

review requires the court to 'ascertain whether the agency has sustained its burden of

demonstrating that the documents requested are not "agency records" or are exempt from

disclosure under the FOIA.'" *Assassination Archives & Research Ctr. v. Cent. Intelligence

Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C.

Cir. 1998)).  Under the FOIA, all underlying facts and inferences are analyzed in the light most

favorable to the FOIA requester; as such, summary judgment is only appropriate where an agency

proves that it has fully discharged its FOIA obligations. *Moore v. Aspin*, 916 F. Supp 32, 35

17

(D.D.C. 1996) (citing *Weisberg v. DOJ*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).

As an initial matter, an agency seeking summary judgment must show that it "has conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994) (internal quotation marks and citation omitted). The relevant question is "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc., v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). The agency affidavits offered to establish the adequacy of a search "must be . . . 'relatively detailed and non-conclusory, and . . . submitted in good faith.'" *Id.* at 1200 (quoting *Grounds Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (citations and quotation marks omitted)).

Congress enacted the FOIA for the purpose of introducing transparency to government activities. *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984). Congress remained sensitive, however, to the need to achieve balance between this objective and the vulnerability of "legitimate governmental and private interests [that] could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992); *see also Summers*, 140 F.3d at 1079. Accordingly, the FOIA provides nine exemptions pursuant to which an agency may withhold requested information, *see* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9), and an agency must demonstrate the validity of any exemption that it asserts, *see id.*; *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) ("[c]onsistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents").

To satisfy this burden, the agency may provide a plaintiff "with a *Vaughn* index, which

18

must adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance." *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir. 2002); *see also Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).  In addition, summary judgment may be granted on the basis of the agency's accompanying affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  These affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search.  *See SafeCard Servs.*, 926 F.2d at 1200.  Courts must "accord substantial weight" to an agency's affidavits regarding FOIA exemptions.  5 U.S.C. § 552(a)(4)(B) (2004); *see also Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) ("Affidavits submitted by an agency are 'accorded a presumption of good faith.'") (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1200).  Moreover, there is no set formula for a *Vaughn* index; so long as the agency provides the Court with materials providing a "reasonable basis to evaluate the claim of privilege," the precise form of the agency's submission–whether it be an index, a detailed declaration, or a narrative–is immaterial.  *Gallant v. NLRB.*, 26 F.3d 168, 173 (D.C. Cir. 1994) (internal citations omitted).

Finally, in seeking summary judgment, the agency must detail what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document.  *Mead Data Cent. Inc. v. Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).  Any non-exempt information that is reasonably segregable from the requested records must be disclosed.

19

*Stolt-Nielsen Transp. Group, Ltd. v. United States*, --- F.3d ---, Nos. 07-5191, 07-5192, 2008 WL 2853214, *3 (D.C. Cir. Jul. 25, 2008).  As "the focus of FOIA is information, not documents, [] an agency cannot justify withholding an entire document simply by showing that it contains some exempt  material." *Id.* (quoting *Mead Data*, 566 F.2d at 260).  Further, "before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Id.* at *4 (quoting *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1116 (D.C. Cir. 2007).  District courts are required to consider segregability issues *sua sponte* even when the parties have not specifically raised such claims.  *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In opposing a motion for summary judgment or cross-moving for summary judgment, a FOIA plaintiff must offer more than conclusory statements.  *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham v. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)).  Indeed, a plaintiff pursuing an action under FOIA must establish that either: (1) the *Vaughn* index does not establish that the documents were properly withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all nonexempt material in the requested documents.  *See Perry-Torres v. State Dep't*, 404 F. Supp. 2d 140, 142 (D.D.C. 2005); *Twist v. Ashcroft*, 329 F. Supp. 2d 50, 53 (D.D.C. 2004) (citing *Piper & Marbury, LLP v. U.S. Postal Serv.*, Civ. No. 99-2383, 2001 WL 214217, at *2 (D.D.C. Mar. 6, 2001)).

C.      *The Privacy Act*

The Privacy Act of 1974 regulates the collection, maintenance, use, and dissemination of an individual's personal information by agencies within the federal government.  *See* 5 U.S.C. §

552a(e).  The Act provides that any agency that retains a system of records "shall maintain . . . only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or executive order of the President." 5 U.S.C. § 552a(e)(1).  To provide for openness and accountability, the Act ensures that "upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system," the agency shall provide the individual with access to review such records.  5 U.S.C. § 552a(d)(1).  Finally, subject to certain exceptions, the Privacy Act states that disclosure of records shall be limited. 5 U.S.C. § 552a(b) ("[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains").  One of these exceptions, however, is that an agency shall disclose such records that would be required to be disclosed pursuant to FOIA.  5 U.S.C. § 552a(b)(2).  In actions seeking documents under both FOIA and the Privacy Act, a defendant agency must show that the information is properly subject to both FOIA and Privacy Act exemptions.  *See Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).

### III:  DISCUSSION

In considering the parties' cross-motions for summary judgment, the Court first addresses Plaintiff's challenge to the State Department's denial of his request for a fee waiver and concludes that Plaintiff's claim in that respect is moot.  The Court then considers the adequacy of the State Department's search, as well as the specific FOIA and PA exemptions claimed by the State Department in withholding information.  Finally, the Court addresses the State

21

Department's segregation of withheld information.  Ultimately, the Court concludes that the

State Department has met its burden of showing that it properly complied with its obligations

under the FOIA and the PA.

     A.     *Plaintiff's Fee Waiver Claim is Moot*

 As noted above, Plaintiff's July 27, 2001 request letter to the State Department sought a

waiver of search fees and copying costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  *See* Grafeld

Decl. Ex. 1.  The State Department, however, denied Plaintiff's request for a fee waiver and

upheld that denial on appeal.  *See id.*, Exs. 3, 13, and 15.  Plaintiff devotes a significant portion

of his Cross-Motion to his argument that he is entitled to a waiver of search fees and copying

costs.  *See* Pl.'s Cross-MSJ at 2-11.  In response, the State Department asserts that Plaintiff's

claim regarding a fee waiver is "not at issue and merits no further attention" because the State

Department ultimately provided all releasable records to Plaintiff without assessing any search

fees or duplication costs.  State Dep't Reply/Opp'n at 3.  The State Department supports this

assertion with Ms. Grafeld's Supplemental Declaration, in which she explains that the State

Department does not charge requesters for processing Privacy Act requests, and that although the

State "Department initially denied plaintiff's request for a fee waiver [in connection with his

FOIA request], no search fees or duplication costs were charged to plaintiff for the processing of

this request."  Suppl. Grafeld Decl. ¶¶ 4-5.  Rather, "[a]ll documents concerning the 'Russell

request' were released to plaintiff free of charge."  *Id.* ¶ 5.

     Plaintiff's Reply nevertheless argues that the fee waiver issue is not moot because "(1)

State denied [Plaintiff] a fee waiver, and (2) never advised him that it had waived search fees and

copying costs.  These circumstances could lead to a situation in which State, if later required to

perform more searches or produce additional documents might start charging fees."  Pl.'s Reply

at 2.  To the contrary, Plaintiff's claim is moot because, as the United States District Court for

the District of Columbia Circuit recently found, "[an agency's] decision to release documents to

[a FOIA requester] without seeking payment from him moots [the requester's] arguments that [a]

denial of a fee waiver was substantively incorrect."  *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir.

2006).  Even assuming Plaintiff's claim that he was entitled to a fee waiver is well-founded,

Plaintiff has already "obtained everything that [he] could recover by a judgment of this court in

[his] favor."  *Id.* (quoting *Better Gov't Ass'n v. State Dep't*, 780 F.2d 86, 91 (D.C. Cir. 1986)).

To the extent that Plaintiff seeks a declaration from this Court that the State Department's initial

refusal to waive fees was incorrect, "such a declaration would be an advisory opinion which

federal courts may not provide."  *Better Gov't Ass'n*, 780 F.2d at 81.[4]

    The Court's conclusion is not altered by Plaintiff's suggestion that the State Department

may change its course and charge him fees if required to perform future searching or copying.

All though Plaintiff does not invoke the phrase, he appears to suggest that his fee waiver claim is

capable of repetition, yet evading review.  The D.C. Circuit explicitly rejected such a suggestion

in *Hall*, stating "[a]ssuming in [plaintiff's] favor that the matter is capable of repetition, we fail

to see how the issue has any tendency to evade review.  Denials of fee waivers do not seem

---

[4] The instant situation is distinguishable from that addressed in *Better Government Association*, where FOIA requesters "challenged not only the application of [an agency's fee waiver] guidelines . . . to their respective requests, but also the facial validity of these provisions."  *See Better Gov't Ass'n*, 780 F.2d at 90.  In that situation, the D.C. Circuit found that, while the requesters' as-applied challenges to the agency's fee waiver regulations were moot, their arguments concerning the facial validity of the regulations were not.  *Id.* at 91.  Here, Plaintiff challenges only the State Department's denial of *his* request for a fee waiver and as explained above, his claim in that respect is moot.

inherently of such short duration that they cannot ordinarily be fully litigated before their

cessation."  437 F.3d at 99 (citing *United States v. Weston*, 194 F.3d 145, 148 (D.C. Cir. 1999)).

Plaintiff offers no reason why this analysis should not apply equally in the instant case, and the

Court easily concludes that it does.  As such, the Court finds that Plaintiff's fee waiver claim is

moot and does not consider its merits herein.

> B.    *The State Department Has Met the Standard for Summary Judgment By*
>        *Conducting An Adequate Search for Records*

In determining the adequacy of a FOIA search, the Court is guided by principles of

reasonableness.  *Ogelsby v. Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  To obtain summary

judgment on the issue of the adequacy of the records search, an agency must show "viewing the

facts in the light most favorable to the requester, that . . . [it] has conducted a 'search reasonably

calculated to uncover relevant documents.'"  *Steinberg*, 23 F.3d at 551 (quoting *Weisberg v.*

*DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  To meet its burden, the agency may submit

affidavits or declarations that explain both in reasonable detail and in a non-conclusory fashion

the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir.

1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to

demonstrate an agency's compliance with the FOIA.  *Id.* at 127.  An agency must show that it

made a "good faith effort to conduct a search for the requested records, using methods which can

be reasonably expected to produce the information requested."  *Ogelsby*, 920 F.2d at 68; *see also*

*Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998).  An agency's search need not be exhaustive,

merely reasonable.  *See W. Ctr. for Journalism v. Internal Revenue Serv.*, 116 F. Supp. 2d 1, 8

(D.D.C. 2000) (citing *Shaw v. State Dep't*, 559 F. Supp. 1053, 1057 (D.D.C. 1983)).

Here, Ms. Grafeld's Declarations serve to establish the reasonableness and adequacy of the State Department's search in response to Plaintiff's FOIA/PA request. The complete details of that search are set forth above and not recounted here, but the Court particularly notes that the State Department searched both its centralized records system–the Central File–and its decentralized records maintained by those offices considered likely to have responsive records. In searching the Central File, the State Department used SAS to conduct two separate searches pertaining to the Schoenman Request and an additional search pertaining to the Russell Request. Grafeld Decl. ¶¶ 22-27. These searches were run based on variations on Plaintiff's name and that of Bertrand Russell, as well as the names of the six organizations and twenty-six other terms provided by Plaintiff in his FOIA/PA request. *Id.* All SAS searches covered the period from mid-1973 through the date that each search was initiated. *Id.*

As for decentralized records systems, the State Department identified the offices likely to maintain records responsive to Plaintiff's request based on the information he provided in response to the State Department's request for additional information. *Id.* ¶ 30. For the Schoenman Request, the State Department searched the records maintained by the Bureau of Diplomatic Security (DS), the Office of the Legal Adviser, the Bureau of Intelligence and Research (INR), IPS, the Office of Overseas Citizens Services, and the Office of Passport Services. *Id.* For the Russell Request, the State Department searched the records maintained by the DS, the INR, and the Office of Visa Services. *Id.* ¶ 31. The Court's discussion above recounts Ms. Grafeld's explanation of each of these offices' functions, as well as the State Department's reason for searching the office.

In addition to searching both centralized and decentralized records systems using a

25

variety of search terms, IPS searched for previous FOIA/PA requests pertaining to Plaintiff and Bertrand Russell, but did not find any such requests. *Id.* ¶ 36. IPS also searched its "finding aids" for documents responsive to both the Schoenman Request and the Russell Request, and produced the one record responsive to the Russell Request to Plaintiff. *Id.* Finally, IPS examined the retired records manifests for the foreign service posts Plaintiff identified in connection with the Schoenman Request and found no responsive records. *Id.* ¶ 39.

Ms. Grafeld's detailed and non-conclusory Declarations–which are afforded a presumption of good faith–serve to establish that the State Department conducted a "search reasonably calculated to uncover relevant documents." *Steinberg*, 23 F.3d at 551. Plaintiff nevertheless takes issue with the State Department's search, raising three specific arguments, each of which is ultimately unavailing. First, Plaintiff suggests that the State Department failed to search for pre-1975 Records regarding the Russell Request. As discussed above, however, Ms. Grafeld's Supplemental Declaration eliminates this suggestion because she avers that "in processing the 'Russell Request,' the [State] Department searched all its records systems with a reasonable likelihood of retaining any responsive records, whether pre-dating or post-dating 1975." Grafeld Suppl. Decl. ¶¶ 8. In particular, the State Department searched Central File records dating back to mid-1973, as well as records the VO, DS, and INR, all of which retain certain records longer than 25 years. *Id.* ¶ 8. None of these searches yielded responsive documents. *Id.* Further, the State Department located one "finding aid," created sometime between the 1960s and the 1990s responsive to the Russell Request, and released that document in its entirety to Plaintiff. *Id.* ¶ 9. Plaintiff does not press his claim regarding records predating 1975 in his Reply, and the Court concludes that Ms. Grafeld's Supplemental Declaration is

sufficient to establish that the State Department conducted a reasonable and adequate search for such records in connection with the Russell Request.

Plaintiff's second challenge to the adequacy of the State Department's search arises out of two documents included in the State Department's *Vaughn* index.  The first is Item 2 on Plaintiff's list of selected documents, which the State Department identifies as Document P143, and which Ms. Grafeld describes as a note discussing Plaintiff's eligibility to receive a passport. *See* Grafeld Decl. ¶ 45 & Ex. 17.  Plaintiff states that Document P143 "indicates that the Selective Service may have communicated an allegation" about Plaintiff "to the unidentified post" that generated Document P143, but that he "has not been provided with records showing this."  Pl.'s Cross-MSJ at 14.  Plaintiff apparently implies that the State Department's search is inadequate because the State Department has not located or released records corroborating the communication referenced in Document P143.  Plaintiff's suggestion is not well-founded.  As the State Department notes, it "is not the repository for records maintained by the Selective Service System, or . . . the FBI's legal attache's office," i.e., the entities most likely to have documents corroborating the communication referenced in Document P143.  State Dep't Reply/Opp'n at 8.  Thus, even if the type of corroborating documents that Plaintiff seeks actually exist, there is no reason to assume that they would be uncovered by the State Department's searches.

Moreover, the case law is clear that "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search." *Steinberg*, 23 F.3d at 552 (quoting *SafeCard*, 926 F.2d at 1201).  Instead, "[a]gency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims about the

27

existence and discoverability of other documents." *Ground Saucer Watch v. CIA*, 692 F.2d 770,

771 (D.C. Cir. 1981) (citing *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1979)).  The Court

therefore easily rejects Plaintiff's speculation regarding Document P143, in light of Ms.

Grafeld's Declarations establishing the adequacy of the State Department's search.

     The other document that Plaintiff focuses on in challenging the adequacy of the State

Department's search is Item 9, which the State Department refers to as Document P323, and

describes as a telegram "dated January 20, 1967 from Embassy Vientiane (Laos) to the

Department."  Grafeld Decl. ¶ 52 & Ex. 17.  Plaintiff notes that Document P323 "has a lengthy

list down the left-hand side which appears to indicate the State Department components and

other agencies to which the document was distributed, and to indicate that this particular copy

came from the files of the Passport Office."  Pl.'s Cross-MSJ at 14.  Plaintiff asserts that he does

not know the identity of some of the entities on the distribution list, and that "[b]ecause they each

may have copies of this and other relevant documents, he needs to take discovery to learn their

identities."  *Id.* at 14-15.  Plaintiff's request for discovery, however, is obviated by Ms. Grafeld's

Supplemental Declaration, which provides a list of the offices, bureaus, and other agencies

identified by the acronyms in Document P323 (with the exception of one acronym that could not

be identified).  Grafeld Suppl. Decl. ¶ 11.  Ms. Grafeld further explains that the organizations

identified by the acronyms in Document P323 "fall into three categories: a) non-State entities; b)

State entities that were searched in the Schoenman request; and c) State entities that would not

reasonably be expected to maintain responsive records, or whose records dating from 1967 would

have been destroyed or transferred to, and legally accessioned by, NARA according to approved

records disposition schedules."  *Id.* ¶ 12

Plaintiff responds to this explanation by arguing that the State Department's failure to identify which of the listed entities fit into each of the these categories "denies [Plaintiff] information which he needs in order to be able to challenge the adequacy of the search." Pl.'s Reply at 3.   Plaintiff's argument is flawed.  Ms. Grafeld's original Declaration–which is afforded a presumption of good faith–includes a detailed discussion of the State Department offices searched in response to Plaintiff's FOIA/PA requests and the State Department's rationale in searching those particular offices in light of the information Plaintiff himself provided about his request.  Grafeld Decl. ¶¶ 22-27.  This discussion supports the State Department's claim that it searched the offices that it concluded were reasonably likely to have responsive documents.  *See also* Grafeld Suppl. Decl. ¶ 8 ("in processing the 'Russell Request,' the Department searched all its records system with a reasonable likelihood of retaining any responsive records . . . .").[5]

In response, Plaintiff again offers only speculation that the list of entities included in Document P323 may have some bearing on the adequacy of the State Department's search.  As Ms. Grafeld points out in her Supplemental Declaration, "[t]he fact that an organization is on distribution to receive a document does not mean the organization necessarily would keep a copy in its own records."  Grafeld Suppl. Decl. ¶ 11.  As such, knowing precisely which entities fall into each of Ms. Grafeld's categories would not provide Plaintiff with a legitimate basis for challenging the adequacy of the State Department's search.  In short, given the detailed

---

[5] Although it appears that the names of some State Department components may have changed since 1967 (the date of Document P323), such that it is difficult to compare the list Ms. Grafeld provides with her description of the offices searched in response to Plaintiff's FOIA/PA request, the Court notes that the State Department searched at least three of the listed entities (the Office of the Legal Adviser, the Bureau of Intelligence and Research, and the Passport Office) in response to Plaintiff's request.  *See* Grafeld Suppl. Decl. ¶ 11; Grafeld Decl. ¶¶ 22-27.

information provided in Ms. Grafeld's sworn Declarations, the Court concludes that Plaintiff's claim regarding Document P323 does not raise a genuine issue of material fact as to the adequacy and reasonableness of the State Department's search.

Finally, Plaintiff challenges the adequacy of the State Department's search by noting that, although his FOIA/PA request sought copies of records documenting the State Department's search in response to his request, such materials have not been provided to him.  Pl.'s Cross-MSJ at 15.  The State Department explains its failure to provide such materials by noting that pursuant to State Department regulations, "[d]ocuments which are created after the date the search for responsive records is initiated[] are deemed outside the scope of plaintiff's FOIA request."  State Dep't Reply/Opp'n at 8-9 (citing 22 C.F.R. § 171.5(f)).  Indeed, 22 C.F.R. §171.5(f) provides that "[i]n determining which records are responsive to a request, the Department ordinarily will include only records in its possession as of the date the search for responsive documents is initiated, unless the requester has specified an earlier time frame."  *Id.*  In turn, Plaintiff argues that the State Department should not apply its "ordinary" policy in this case because, he speculates, the search records he seeks would be easy for the State Department to locate and might enable him to more easily challenge the adequacy of the State Department's search. Regardless of Plaintiff's personal beliefs concerning the merits of his request, the fact remains that State Department's failure to provide Plaintiff with records documenting its searches is consistent with State Department regulations.  *See Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 12 n.10 (D.D.C. 2004) (noting that agency documents "prepared after [the agency's] FOIA search began" were "not covered by [the FOIA] request.").

Moreover, Plaintiff's request for search records is inconsistent with Supreme Court

precedent holding that the FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created or retained." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980).  In asking the State Department to provide him with documentation that may or may not exist but which, in any event, was created during the course of searching for records responsive to Plaintiff's FOIA request, Plaintiff essentially seeks to have the State Department create or retain such documents. The Court declines to condone such a request.

Finally, Plaintiff argues that D.C. Circuit precedent supports his request for records documenting his search.  Plaintiff cites to *Public Citizen v. Department of State*, 276 F.3d 634, 643-44 (D.C. Cir. 2002), which he asserts "rejected State's claim of an initiation of search cut-off date in circumstances much more compelling than any justification that could be presented in this case."  Pl.'s Reply at 4-5.  Plaintiff's reliance on *Public Citizen* is misplaced.  That case concluded that the State Department's previous date-of-*request* cut-off policy was unreasonable both on its face and as applied, it did not reject a date-of-search cut-off policy.  *See* 276 F.3d at 637, 643-44.  To the contrary, in rejecting the date-of-request cut-off policy, the D.C. Circuit explicitly suggested that the State Department consider a "date-of-*search* cut-off," which is precisely what it applied in the instant case.  *Id.* at 644 (emphasis in original).  *Public Citizen* thus does not establish any infirmity in the State Department's current date-of-search cut-off policy or suggest that it should not have been applied to Plaintiff's request.

For all of the foregoing reasons, the Court concludes that the State Department's search was not deficient simply because Plaintiff was not provided with the search records he requested. Instead, the record demonstrates that the State Department made a "good faith effort to conduct a

31

search for the requested records, using methods which can be reasonably expected to produce the information requested." *Ogelsby*, 920 F.2d at 68.  As such, the Court finds that the State Department conducted an adequate search for records responsive to Plaintiff's request.

> C.      The State Department Has Demonstrated That It Properly Invoked FOIA and Privacy Act Exemptions For The Documents In Its *Vaughn Index*

As explained above, Plaintiff and the State Department agreed to brief their cross-motions for summary judgment based upon Plaintiff's selection of a sample of documents to be included in a *Vaughn* index.  *See* 3/21/07 Joint Status Report, Docket No. [34] at 4; 7/11/07 Joint Status Report, Docket No. [37] at 2.  In light of the parties' agreement, the Court considers the State Department's withholding of information from the nine documents included in its *Vaughn* index, without opining on whether the selected sample is representative of the information more generally withheld by the State Department.

> 1.      The Nature of the Information Withheld By the State Department

The State Department's descriptions of the basis for its withholdings is found in Ms. Grafeld's Declarations, and the Court initially notes a few explanatory matters as to the documents discussed therein.  First, the documents included in the State Department's *Vaughn* index, which comprise part of the State Department's response to the Schoenman Request, are covered by the Privacy Act.  Grafeld Decl. ¶ 42; State Dep't MSJ at 13.  Ms. Grafeld specifically notes that, as required, the State Department processed records responsive to the Schoenman Request under both the Privacy Act and the FOIA, Grafeld Decl. ¶ 42, and did not rely solely on a FOIA exemption to deny Plaintiff access to any record, State Dep't MSJ at 13-14.  *See* 5 U.S.C. § 552a(t)(2); *Martin*, 819 F.2d at 1184 ("If a FOIA exemption covers the documents, but a

Privacy Act exemption does not, the documents must be released under the Privacy Act; if a

Privacy Act exemption but not a FOIA exemption applies, the documents must be released under

FOIA.").

As Ms. Grafeld also explains, three of the documents that Plaintiff selected for inclusion

in the State Department's *Vaughn* index (Item 1/Document P107, Item 3/Document P244, and

Item 5/Document P334) contain information that originated with the CIA.  Grafeld Decl. ¶¶ 43-

44, 46, 48.  For each of these documents, the State Department invoked Privacy Act Exemptions

(j)(1) and (k)(1), as well as FOIA Exemptions 1 and 3, to withhold a single sentence from the

document on behalf of the CIA.  *Id.*  The State Department has referred these three documents to

the CIA for the CIA to include and defend in its own Motion for Summary Judgment, *id.* ¶ 43,

and in light of this referral, the State Department does not discuss Documents P107 and P244 in

its Motion for Summary Judgment, *see* State Dep't MSJ at 13 n.7.  Plaintiff does not challenge

this decision, and having confirmed that the CIA included Documents P107 and P244 in its

Motion for Summary Judgment, *see* CIA MSJ, Attach. 1 at 53-56, the Court accepts it.  The State

Department does, however, address its withholding of information on its own behalf (in addition

to that withheld on behalf of the CIA) from Document P334, and the Court discusses that

withholding below.

Turning now to the documents included in the State Department's *Vaughn* index, Ms.

Grafeld explains the contents of each in turn, as well as the Privacy Act and FOIA Exemptions

invoked by the State Department for each.  Item 1, identified as Document P107 is a telegram

dated July 29, 1964 from the Consulate General in Hong Kong to the State Department, which is

marked CONFIDENTIAL and consists of one paragraph discussing Plaintiff's entry into

33

communist China on July 7, 1963.  *Id.* ¶ 44.  The information withheld from Document P107 is

discussed and defended in the CIA's Motion for Summary Judgment.  Item 3, identified as

Document P244, is an operations memorandum dated November 9, 1967 from the Embassy in La

Paz to the Passport Office of the State Department, which is marked CONFIDENTIAL.  *Id.* ¶ 46.

The information withheld from Document P244 is likewise discussed and defended in the CIA's

Motion for Summary Judgment.

Item 2 or Document P143 is a note dated June 7, 1963 from H.M. Bailey to Mr. Weil,

Consul General, which discusses Plaintiff's eligibility to receive a passport.  *Id.* ¶ 46.  The State

Department withheld the name of an FBI legal attaché from Document P143 under FOIA

Exemptions 6 and 7(C), as well as PA Exemption (j)(2), and subsequently determined that PA

Exemption (k)(2) also applies to Document P143.  *Id.*  Item 4, identified as Document P319, is a

one-page document entitled "Request for Inspection of Passport File" that is blank except for the

signatures of two FBI agents and the date of those signatures.  *Id.* ¶ 37.  The State Department

withheld only the names of the two FBI agents from Document P319, pursuant to FOIA

Exemptions 6 and 7(C), as well as PA Exemption (j)(2), and subsequently determined that PA

Exemption (k)(2) also applies to Document P319.  *Id.*

Item 5, identified as Document P334, is a one-page document entitled "Operations

Memorandum" dated January 4, 1967 from the Embassy in London to the Legal Security Section

of the Passport Office of the State Department, which is marked CONFIDENTIAL.  *Id.* ¶ 48.  As

Ms. Grafeld describes, the "document consists of one paragraph noting that there has been a

summary report of the meetings in Hanoi between President Ho Chi-Minh, Prime Minister

P[h]am Van Dong, plaintiff and another personal representative of 'Bertram Russell.'"  *Id.*  The

State Department withheld information from Document P334 pursuant to FOIA Exemptions 1, 3, and 6, as well as PA Exemptions (j)(1) and (k)(1), on behalf of both itself and the CIA. *Id.* The withholdings on behalf of the CIA (made pursuant to FOIA Exemptions 1 and 3 and PA Exemptions (j)(1) and (k)(1)) are discussed and defended in the CIA's Motion for Summary Judgment. *Id.* On its own behalf, the State Department withheld in three instances the name of a third party under FOIA Exemption 6, and subsequently determined that FOIA Exemption 7(C) and PA Exemption (k)(2) also apply to the withheld name. *Id.*; Grafeld Suppl. Decl. ¶ 19.

Plaintiff withdrew his request as to Item 6, and it is therefore not included in the State Department's *Vaughn* index. Grafeld Decl. ¶ 49. Item 7, identified as Document P49, is a telegram dated August 31, 1966 from the State Department's Legal Office to the London and Paris embassies. *Id.* ¶ 50. Ms. Grafeld avers that Document P49 "is a two-page document drafted by an attorney in the Department's Legal Office discussing the possibility that plaintiff's passport revocation, for his unauthorized travel to North Vietnam, might become final within the following days." *Id.* The State Department withheld Document P49 in part pursuant to the attorney work product privilege under the auspice of FOIA Exemption 5 and PA Exemption (d)(5). *Id.* Ms. Grafeld explains that the "information withheld contains an opinion as to how the [State] Department's Board of Passport Appeals might rule, if plaintiff appeals the revocation decision," "discusses the potential legal consequences if plaintiff's passport is revoked," and "consists of requests from the author attorney for information from the two embassies in order to help identify the potential legal ramifications of plaintiff's passport revocation." *Id.*

Plaintiff does not challenge the State Department's withholding of this document in his Cross-Motion for Partial Summary Judgment. Nevertheless, the Court briefly notes that the State

Department has properly withheld information from Document P49 pursuant to FOIA Exemption

5 and PA Exemption (d)(5).  Privacy Act Exemption (d)(5) provides that "nothing in [the Privacy

Act] shall allow an individual access to any information compiled in reasonable anticipation of a

civil action or proceeding."  5 U.S.C. § 552a(d)(5).  Ms. Grafeld explains in her Declaration that

at the time Document P49 was drafted by an attorney in the Legal Office, "plaintiff had, through

his attorney, already contested the tentative revocation of his passport at a hearing at the Passport

Office on July 29, 1996," and further notes "that litigation ensued from these initial

administrative proceedings."  Grafeld Decl. ¶ 55.  The Court agrees with Ms. Grafeld that the

information redacted from Document P49 "was compiled in reasonable anticipation of civil

action and the continuation of ongoing (at the time) administrative proceedings," and thus

covered by Privacy Act Exemption (d)(5). *Id.*

FOIA Exemption 5 similarly provides that the statute's disclosure requirements do not

apply to "inter-agency or intra-agency memorandums or letters which would not be available by

law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  The Exemption

authorizes agencies to withhold documents "normally privileged in the civil discovery context."

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  As Document P49 was drafted by an

attorney in the State Department's Legal Office and addressed to the Paris and London

embassies, it qualifies as an "inter-agency or intra-agency memorandum."  *See Ryan v. DOJ*, 617

F.2d 781, 790 (D.C. Cir. 1980).  Further, the attorney work-product privilege–which the State

Department invokes in connection with Document P49–generally protects memoranda and other

documents prepared by an attorney in contemplation of litigation.  *See generally Hickman v.*

*Taylor*, 329 U.S. 495 (1947); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864-85

36

(D.C. Cir. 1980); *see also* Fed. R. Civ. P. 26(b)(3)(A).  Moreover, courts have found that the

attorney work-product privilege extends to documents prepared in anticipation of administrative

litigation, partially because "administrative litigation certainly can beget court litigation and may

in many circumstances be expected to do so."  *Exxon Corp. v. Dep't of Energy*, 585 F. Supp. 690,

700 (D.D.C. 1983).  Here, the Court finds that the information withheld from Document P49 was

created by an attorney in the context of an ongoing administrative proceeding that eventually

resulted in litigation, and was therefore properly withheld under FOIA Exemption 5.

  Item 8, identified as Document P439, is a telegram dated December 15, 1967 from the

Office of Passport Services to the Embassy in Stockholm, which Ms. Grafeld avers was drafted

by the Legal Security section within the Passport Office.  Grafeld Decl. ¶ 51.  According to Ms.

Grafeld, Document P439 states that the United States District Court has denied Plaintiff's

petition for the issuance of a passport.  *Id.*  The State Department released Document P439 in

part, withholding two sentences from the document pertaining to a Legal Security section

"request for a specific type of information in support of a possible future prosecution," pursuant

to FOIA Exemption 5 and PA Exemption (k)(2).  *Id.*  Plaintiff does not challenge the State

Department's withholding of information from Document P49, and the State Department's

invocation of Privacy Act Exemption (k)(2) is discussed below.  At this point, the Court simply

notes that the State Department has established that it properly withheld information from

Document P439 pursuant to FOIA Exemption 5 because the withheld information "expressly

relat[es] to the [State] Department's legal strategy in the event of a criminal prosecution," and

thus "pertains to deliberations undertaken in express contemplation of potential legal

proceedings."  *Id.* ¶ 61.  The Court agrees that the State Department has properly invoked FOIA

Exemption 5 in connection with Document P439.

As noted above, Item 9 or Document P323 is a one-page telegram dated January 20, 1967 from the Embassy in Vientiane (Laos) to the State Department, which Ms. Grafeld describes as "stating that plaintiff, along with two other individuals, boarded a courier flight at 'Phnom Penh' leaving for Hanoi." *Id.* ¶ 52.  The State Department initially withheld the names of the other two individuals from Document P323 pursuant to FOIA Exemption 6, and subsequently determined that PA Exemption (k)(2) also applies to the document.  *Id.*  One of the names initially withheld from Document P323 by the State Department was that of Wilfred Burchett, whom Plaintiff's Cross-Motion for Partial Summary Judgment indicated is now deceased.  Pl.'s Cross-MSJ at 19, Schoenman Decl. ¶ 11; *see also* Grafeld Suppl. Decl. ¶ 20.  Plaintiff had not previously provided the State Department with any indication that Mr. Burchett was deceased, Grafeld Suppl. Decl. ¶ 20, but upon learning as much, the State Department provided a new version of Document P323 to Plaintiff without Mr. Burchett's name redacted.  *Id.* & Ex. A.  As such, only one individual's name remains redacted from Document P323.

Finally, the document that the State Department identified after Plaintiff selected his sample for inclusion in the *Vaughn* index, Document I1, is a two-page telegram dated February 22, 1989 from the Embassy in Beijing to the State Department.  Grafeld Decl. ¶ 53.  The State Department withheld Document I1 in full pursuant to FOIA Exemption 3 (invoking Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f)) and FOIA Exemption 6.  *Id.* Ms. Grafeld explains that Document I1 "is a name check request pertaining to the visa application of an individual other than plaintiff," which "is only responsive to plaintiff's request to the extent that [it] mentions plaintiff once, in passing, as the sponsor of the visa applicant."  *Id.*

38

Plaintiff does not challenge the State Department's withholding of Document I1, and

FOIA Exemption 6 is discussed in great detail below.  At this point, however, the Court finds

that the State Department has properly withheld Document I1 pursuant to FOIA Exemption 3,

which provides that the statute does not apply to matters that are "specifically exempted from

disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from

the public in such a manner as to leave no discretion on the issue, or (B) establishes particular

criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. §

552(b)(3).  Pursuant to Section 222(f) of the Immigration and Nationality Act, State Department

records "pertaining to the issuance or refusal of visas or permits to enter the United States shall

be considered confidential and shall be used only for the formulation, amendment,

administration, or enforcement of the immigration, nationality, and other laws of the United

States," except in certain non-pertinent situations.  *Id.*  Ms. Grafeld avers that Document I1 fits

squarely within the terms of Section 222(f).  *Id.* ¶ 73.  The Court agrees, and finds that as a

result, the State Department properly withheld document I1 in full pursuant to FOIA Exemption

3.  *See Medina-Hincapie v. State Dep't*, 700 F.2d 737, 741-42 (D.C. Cir. 1983) (concluding that

Section 222(f) qualifies under both subsections of FOIA Exemption 3).

Plaintiff's Cross-Motion for Partial Summary Judgment only challenges the State

Department's withholding of information from Documents P134, P319, P323, and P334 pursuant

to FOIA Exemptions 6 and 7(C).  As the State Department also withheld information from those

documents pursuant to PA Exemption(k)(2), however, the Court briefly discusses that invocation

before turning to the contested invocation of FOIA Exemptions 6 and 7(C).  Privacy Act

Exemption (k)(2) provides that the head of any agency may promulgate rules to exempt any

system of records within the agency from the access provision of the Privacy Act if the system of records consists of "investigatory material compiled for law enforcement purposes," subject to a provision that does not apply to the instant case.  5 U.S.C. § 552a(j)(2); State Dep't MSJ at 20 n.8.  Here, Ms. Grafeld avers that Documents P143, P319, P323, and P334, as well as Document P439, are maintained within a system of records entitled Passport Records (STATE-26) that has been exempted from disclosure under Exemption (k)(2), pursuant to 22 C.F.R. § 171.36(b)(2). Grafeld Decl. ¶¶ 56-57.[6]  As such, the Court concludes that the State Department properly applied PA Exemption (k)(2) to Documents P143, P319, P323, P333, and P439.

> 2.   *The State Department Properly Invoked FOIA Exemptions 6 and 7(C) as to Documents P323 and P334*

FOIA Exemption 6 permits an agency to withhold information contained within "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6); *see NARA v. Favish*, 541 U.S. 157, 171 (2004); *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773-74 (1989).  The term "similar files" is broadly interpreted, such that Exemption 6 protects from disclosure all information that "applies to a particular individual" in the absence of a public interest in disclosure.  *State Dep't v. Washington Post Co.*, 456 U.S. 595, 602 (1982) ("In sum, we do not think that Congress meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information.  Rather, the exemption was intended to cover detailed Government records on an individual which can be identified as applying to that

---

[6] Although the State Department did not invoke PA Exemption (k)(2) with respect to Documents P143, P319, P323, and P334 at the administrative level, it is not barred from invoking the Exception in litigation. *See Gula v. Meese*, 699 F. Supp. 956, 959 n.2 (D.D.C. 1988).

individual.") (internal quotation and citation omitted).   Accordingly, it is not the nature of the

files in which the information is contained, but rather the balance of public and private interests

that determines the Exemption's scope.   *Washington Post*, 456 U.S. at 599-600.   In this case, the

State Department invoked FOIA Exemption 6 to withhold the names of an FBI legal attaché, two

FBI agents, and two third parties from Documents P143, P319, P334, and P323.   As this

withheld information "applies to a particular individual," it meets the threshold test for FOIA

Exemption 6.[7]

Pursuant to FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), an agency may withhold

information within documents "compiled for law enforcement purposes" that "could reasonably

be expected to constitute an unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(7)(C).

A similar privacy interest versus public benefit calculation applies with respect to this

Exemption; however, the threshold requirement for FOIA Exemption 7(C) is that the document

at issue must have been "compiled for law enforcement purposes."   5 U.S.C. § 552(b)(7).   Here,

the State Department invoked FOIA Exemption 7(C) to withhold the names from Documents

P143, P319, and P343.   In his Cross-Motion/Opposition, Plaintiff argues that Ms. Grafeld's

Declaration fails to establish that those records were compiled for law enforcement purposes.

Pl.'s Cross-MSJ at 16.   Ms. Grafeld's Supplemental Declaration demonstrates as much, however,

---

[7] The State Department also invoked FOIA Exemption 6 to withhold Document I1, which
concerns a name check request pertaining to the visa application of an individual other than
Plaintiff.   Grafeld Decl. ¶ 74.   This information clearly applies to a particular individual, and
involves a significant privacy interest.   Plaintiff does challenge the State Department's
withholding of Document I1, and there is no evidence of any public interest in the disclosure of
the Document.   Accordingly, the Court finds that the State Department properly withheld
Document I1 pursuant to FOIA Exemption 6 (in addition to FOIA Exemption 3 as explained
above).

and the Court therefore concludes that Documents P143, P319, and P343 meet the threshold test

for FOIA Exemption 7(C).

At the outset the Court notes that Exemption 7(C) "'covers investigatory files related to

enforcement of all kinds of laws,' including those involving 'adjudicative proceedings,'" and

administrative matters. *Jefferson v. DOJ, Office of Prof. Responsibility*, 284 F.3d 172, 178 (D.C.

Cir. 2002) (quoting *Rural Housing Alliance v. Dep't of Agriculture*, 498 F.2d 73, 81 n.46 (D.C.

Cir. 1974)). Further, "the FOIA makes no distinction between agencies whose principal function

is criminal law enforcement and agencies with both enforcement and administrative functions."

*Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002) (citing *Pratt v. Webster*, 673 F.2d 408, 416

(D.C. Cir. 1982)). "However, courts apply a more deferential standard to a claim that

information was compiled for law enforcement purposes when the claim is made by an agency

whose primary function involves law enforcement." *Id.* (citing *Pratt*, 673 F.2d at 418). Here, the

State Department is a mixed-function, rather than strictly law enforcement, agency and as a result

"the focus is on how and under what circumstances the requested files were compiled, and

'whether the files sought relate to anything that can fairly be characterized as an enforcement

proceeding.'" *Jefferson*, 284 F.3d at 176-77 (citing *Weisberg v. DOJ*, 489 F.2d 1195, 1202 (D.C.

Cir. 1973) and quoting *Aspin v. Dep't of Defense*, 491 F.2d 24, 27 (D.C. Cir. 1973)). Indeed,

D.C. Circuit precedent explicitly distinguishes between "two types of investigatory files that

government agencies compile: (1) files in connection with government oversight of the

performance of duties by its employees, and (2) files in connection with investigations that focus

directly on specific alleged illegal acts which could result in civil or criminal sanctions," and

stresses that "the purpose of the investigatory files 'is the critical factor'" *Id.* (quoting *Rural*

*Housing Alliance*, 498 F.2d at 81, 82).

Here, Ms. Grafeld's Supplemental Declaration explains that, pursuant to statute, the State Department is responsible for the issuance of passports to United States nationals.  Grafeld Suppl. Decl. ¶ 14 (citing 22 U.S.C. § 211a, 22 C.F.R. Part 51).  Further, "State Department regulations identify specific grounds upon which passports may be denied or revoked," and the "State Department is responsible for conducting any administrative proceedings available in cases of passport denials and revocations."  *Id.* (citing 22 C.F.R. §§ 51.60, 51.70-51.74).  Ms. Grafeld continues to explicitly state that the "names withheld in documents P143, P319, and P334, are part of the records compiled for the underlying investigation into plaintiff's passport eligibility, and the revocation of his passport during the 1960s."  *Id.* ¶ 15.

Ms. Grafeld's Supplemental Declaration thus clearly establishes that Documents P143, P319, and P334 were compiled "in connection with [an] investigation[] that focus[ed] directly on specific alleged illegal acts which could result in civil or criminal sanctions."  *Jefferson*, 284 F.3d at 177.  Further, in *Pratt*, the D.C. Circuit "set forth a two-part test whereby the government can show that its records are law enforcement records: the investigatory activity that gave rise to the documents is 'related to the enforcement of federal laws,' and there is a rational nexus between the investigation at issue and the agency's law enforcement duty."  *Id.* (quoting *Pratt*, 473 F.2d at 420, 421.  Ms. Grafeld's Supplemental Declaration demonstrates both that the investigatory activity underlying Documents P143, P319, and P334 was "related to the enforcement of federal laws," and that a rational nexus existed between that investigation and the State Department's statutory law enforcement functions.

Plaintiff, however, maintains in his Reply that "the State Department's efforts in this case

43

were in essence aimed at political objectives, not law enforcement." Pl.'s Reply at 5. Plaintiff

notes that the records at issue concern Plaintiff's travels to meet with leaders in Laos and North

Vietnam during the 1960s to discuss the United States' involvement in the war in that region, and

asserts that the "State Department monitored [Plaintiff's] travels so it could counter any impact

[he] might have and negate the effect of his activities." *Id.* The D.C. Circuit has instructed that a

burden-shifting framework applies when a FOIA requester contests an agency's proffered law

enforcement purpose: "[i]f the agency demonstrates that there was a legitimate basis for the

investigation, the burden shifts to the party requesting the documents to produce evidence that

the asserted law enforcement rationale was merely pretextual." *Quinon v. FBI*, 86 F.3d 1222,

1228 (D.C. Cir. 1996) (citing *Doe v. FBI*, 936 F.2d 1346, 1354 (D.C. Cir. 1991)). The Court

finds that Plaintiff fails to carry his burden under this framework because he does not "produce

evidence that the asserted law enforcement rational was merely pretextual." *Id.* In support of his

claim, Plaintiff offers only his own self-serving Declaration, which is insufficient to create a

genuine issue of material fact regarding the State Department's asserted law enforcement

purpose. *See, e.g. Hastie v. Potter*, Civ. No. 00-5423, 2001 WL 793715, at *1 (D.D.C. June 28,

2001) (finding no genuine issue of material fact where the sole evidence plaintiff provided was

"her own self-serving and conclusory statement"); *Saunders v. DiMario*, Civ. No. 97-1002, 1998

WL 525798, at *4 (D.D.C. Aug. 14, 1998) ("Plaintiff has otherwise offered the type of self-

serving allegations that are simply insufficient to establish pretext.").

     The State Department is undeniably correct that it is vested with statutory law

enforcement authority concerning the issuance and revocation of passports. Further, Plaintiff

himself admitted in his September 15, 2001 letter to the State Department that he traveled to

China, North Vietnam, Cuba, and East Germany between 1963 and 1967 "despite the fact that

the State Department interdicted travel to [those countries] during these years," and that

"[a]lthough the State Department would not renew his passport, he used it anyway."  Grafeld

Decl., Ex. 4 at 2.  Plaintiff's own letter thus provides significant evidence that the State

Department's investigation bore a rational nexus to its law enforcement duty.  In such

circumstances, Plaintiff's self-serving claim regarding the State Department's motivation does

not establish that its proffered law enforcement purpose is mere pretext.  Of course, "[t]he mere

existence of a plausible [law enforcement] reason to investigate would not protect the files of an

inquiry explicitly conducted, for example, for purposes of harassment."  *Quinon*, 86 F.3d at 1228

(quoting *Shaw v. FBI*, 749 F.2d 58, 63 (D.C. Cir. 1984)).  Plaintiff certainly does not show that

the State Department's inquiry was "explicitly conducted" for purposes of harassment, and does

not even create an issue of material fact as to Ms. Grafeld's description of the law enforcement

purpose behind Documents P143, P319, and P334.

    Having concluded that the State Department has met the threshold tests for FOIA

Exemption 6 and 7(C), the Court continues to consider the privacy interest versus public interest

balancing required by the Exemptions.  Although FOIA Exemptions 6 and 7(C) are similar in

requiring such balancing, they are not coterminous.  *Beck*, 997 F.2d at 1491.  For purposes of

FOIA Exemption 7(C), the D.C. Circuit applies a "categorical rule permitting an agency to

withhold information identifying private citizens mentioned in law enforcement records, unless

disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is

engaged in illegal activity.'"  *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003) (quoting

*SafeCard*, 926 F.2d at 1206)).  This categorical rule does not necessary apply with respect to

45

Exemption 6, however, because Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6." *Reporters Comm.* at 756.  Specifically, "Exemption 6 requires that the invasion of privacy be 'clearly unwarranted,'" and that the disclosures "would constitute" an invasion of privacy, while Exemption 7(C) refers only to an "unwarranted" invasion and covers any disclosure that "could reasonably be expected to constitute" an invasion of privacy.  *Id.*

Exemption 6's stronger language "tilt[s] the balance (of disclosure interests against privacy interests) in favor of disclosure," and creates a "heavy burden" for an agency invoking Exemption 6.  *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1128 (D.C. Cir. 2007).  Thus, in considering whether FOIA Exemption 6 applies, the Court must "first determine whether disclosure of the [information at issue] 'would compromise a substantial, as opposed to *de minimis*, privacy interest.'"  *Multi Ag Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1230 (D.C. Cir. 2008) (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)).   For this purpose, however, "[a] substantial privacy interest is anything greater than a *de minimis* privacy interest."  *Id.* at 1230-31.  In addition, for purposes of balancing, it is significant that "[t]he public's interest in disclosure of personnel files derives from the purpose of the [FOIA]–the preservation of 'the citizens' right to be informed about what their government is up to.'"  *Beck*, 997 F.2d at 1492-93 (quoting *Reporters Comm.*, 489 U.S. at 773 (internal quotation marks omitted)).  While FOIA's purpose "is furthered by disclosure of official information that 'sheds light on an agency's performance of its statutory duties,'" "[i]nformation that "reveals little or nothing about an agency's own conduct' does not further the statutory purpose; thus the public has no cognizable interest in the release of such information."  *Id.* at

1493 (quoting *Reporters Comm.*, 489 U.S. at 773).

> a.      Document P323

The State Department only invoked FOIA Exemption 6 to withhold from Document P323

the names of two third parties who traveled on the same flight to Hanoi as Plaintiff.  As noted

above, upon learning that one of the individuals is deceased, the State Department released a new

copy of Document P323 to Plaintiff without the redaction of that individual's name.  *See* Grafeld

Suppl. Decl. ¶ 20 & Ex. A.  The State Department nevertheless continues to withhold the name

of the second individual pursuant to Exemption 6.  *Id.*  In her Declaration, Ms. Grafeld explained

that in light of the "controversial nature of travel to North Vietnam during the war, [the]

individual[] [has] a strong privacy interest in the information."  Grafeld Decl. ¶ 68.  Plaintiff does

not contest this privacy interest, rather he speculates that he may know the identity of the

individual, and in the alternative argues that "[b]ecause [he] is uncertain who the second redacted

individual is, disclosure would assist him in the writing of his memoir revealing who

accompanied him on the trip in question."  Pl.'s Cross-MSJ.  These arguments are flawed for two

reasons.  First, even if Plaintiff is correct that he can guess the individual's identity, "the fact that

Plaintiff may deduce the identities of individuals through other means . . . does *not* diminish their

privacy interests."  *Shores v. FBI*, 185 F. Supp. 2d 77, 83 (D.D.C. 2002) (emphasis in original)

(citing *Weisberg*, 745 F.2d at 1491).  Second, the alleged public interest to which Plaintiff points

is simply not the public interest cognizable under FOIA Exemption, which "derives from the

purpose of the [FOIA]–the preservation of 'the citizens' right to be informed about what their

government is up to.'"  *Beck*, 997 F.2d at 1492-93 (quoting *Reporters Comm.*, 489 U.S. at 773

(internal quotation marks omitted)).  Accordingly, the Court "need not linger over the balance;

something, even a modest privacy interest outweighs nothing every time." *Horner*, 879 F.2d at

879.  Instead, the Court concludes that the State Department properly withheld the individual's

name from Document P323 under FOIA Exemption 6.

b.    *Document P334*

The State Department invoked FOIA Exemptions 6 and 7(C) to withhold the name of the

individual who traveled with Plaintiff to Hanoi during the Vietnam War to meet with President

Ho Chi-Minh and Prime Minister Pham Van Dong.  *See* Grafeld Suppl. Decl. ¶ 19.  Plaintiff

strenuously challenges this withholding, arguing that he knows the identity of the individual

whose name was withheld, and that "unlike the State Department's declarant, [he] personally

knew [the individual] and knows that he would not object to the release of his name."  Pl.'s

Cross-MSJ at 18-19.  Plaintiff supports this claim with his own Declaration to that effect.  The

fact that Plaintiff may know the individual's identity, however, does not diminish that

individual's privacy interest.  *See Shores*, 185 F. Supp. 2d at 83; *Weisberg*, 745 F.2d at 1491.

Moreover, Plaintiff's claim that he personally "knows" that the individual at issue would not

object to the release of his name is legally irrelevant.  As the State Department notes, its FOIA

regulations require either proof of death or a written waiver by affected individuals before third

parties can access information implicating the third parties' privacy interests, and Plaintiff has

provided neither.  State Dep't Reply/Opp'n at 17 (citing 22 C.F.R. § 171.12).  Plaintiff claims

that his Statement of Material Facts "establishes" the individual's identity and also "establishes"

that the individual would not object to the release of his name.  Pl.'s Reply at 5-6.  Plaintiff's

Statement, however, is only supported by his own Declaration, which is neither proof of death

nor a waiver by the individual in question.  As such, it does not "establish" the so-called "facts"

48

on which Plaintiff relies nor does it meet the requirements of the State Department's regulations.

Notwithstanding Plaintiff's claims to the contrary, Ms. Grafeld's Supplemental Declaration explains that there is a substantial privacy interest in withholding the individual's name from Document P334 "[b]ecause of the continuing controversial nature of travel to North Vietnam during the war and because this document is part of the records compiled for the underlying investigation into plaintiff's passport eligibility, and the revocation of his passport during the 1960s." Grafeld Suppl. Decl. ¶ 29. The Court agrees with Ms. Grafeld on this front. For his part, Plaintiff suggests that the individual at issue is a public figure, and thus entitled to diminished privacy protection, but again offers nothing other than his own Declaration to support this claim. *See* Pl.'s Reply at 6. Even if such a diminution in fact exists, *see Fund for Const. Gov't v. NARA*, 656 F.2d 856, 865 (D.C. Cir. 1981), Plaintiff has offered no factual support for his conclusory assertion that the individual at issue is a public figure. In any event, "the degree of intrusion occasioned by disclosure is necessarily dependent upon the character of the information in question," *id.*, and in this case Ms. Grafeld's Supplemental Declaration demonstrates that revealing the individual's name would associate him or her with a highly controversial act. Accordingly, the Court concludes that a more that *de minimis* privacy interest exists in the information at issue.

As for the public interest in the information, Plaintiff asserts that it "(1) reveals who the U.S. Government was keeping tabs on in its efforts to counter opposition to the Viet Nam war, and (2) it will help inform the public by confirming [Plaintiff's] account in his writings and speeches of his activities in Viet Nam." Pl.'s Cross-MSJ. Neither of these constitutes the type of public interest cognizable under the FOIA because neither "sheds light on [the State

Department's] performance of its statutory duties." *Beck*, 997 F.2d at 1493 (quoting *Reporters Comm.*, 489 U.S. at 773.  While Plaintiff may have a private interest in confirming his accounts of his travels to Vietnam, that interest is insufficient to overcome the clear privacy interest served by withholding the individual's name from Document P334.  The Court therefore concludes that the State Department properly invoked FOIA Exemptions 6 and 7(C) to withhold the individual's name from Document P334.

> 3.   *The Court Cannot Determine Whether the State Department Properly Invoked FOIA Exemptions 6 and 7(C) as to Documents P134 and P319*
>
> a.   *Document P143*

As noted above, the State Department has withheld the name of an FBI legal attaché from Document P143 pursuant to FOIA Exemptions 6 and 7(C).  Grafeld Decl. ¶¶ 45, 65, 70.[8] Plaintiff contests this withholding, asserting that the State Department has not substantiated the privacy interest at stake and that there is a public interest in the disclosure of the FBI legal attaché's name.  Generally speaking, "persons involved in FBI investigations–even if they are not the subject of the investigation– 'have a substantial interest in seeing that their participation remains secret.'" *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (quoting *King v. DOJ*, 830 F.2d 210, 233 (D.C. Cir. 1987)).  Indeed, as noted above, for purpose of FOIA Exemption 7(C), the D.C. Circuit has "adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in

---

[8] In his Cross-Motion, Plaintiff indicated that he was unable to read the full content of Document P143 due to poor copying.  *See* Pl.'s Cross-MSJ at 17.  The State Department has since alleviated this issue by providing Plaintiff with a new copy of Document P143.  *See* Grafeld Suppl. Decl. ¶ 21 & Ex. A.

illegal activity.'"   *Schrecker*, 349 F.3d at 661 (quoting *SafeCard*, 926 F.2d at 1206)).   However,

the D.C. Circuit also recognizes "that the privacy interest in nondisclosure of identifying

information may be diminished where the individual is deceased," and has explained that "[t]he

fact of death, therefore, while not requiring the release of information, is a relevant factor to be

taken into account in the balancing decision whether to release information."   *Id.* (quotation

omitted).

   Here, the record is devoid of any information as to whether the FBI legal attaché is alive

or dead.   Further, Plaintiff's Cross-Motion correctly mentions in passing that "Ms. Grafeld . . .

does not state that any effort was made to determine whether the [FBI legal attaché] is still

living."   Pl.'s Cross-MSJ at 16.   This failure precludes the Court from evaluating the State

Department's balancing of privacy interests versus public interests under FOIA Exemptions 6

and 7(C).   The D.C. Circuit has specifically instructed that "[i]n undertaking [such a] review [], a

court must assure itself that the Government has made a reasonable effort to ascertain life status."

*Schrecker*, 349 F.3d at 662.   Ms. Grafeld's Declarations simply do not indicate whether or not

the State Department undertook efforts to ascertain if the FBI legal attaché named in Document

P143 is alive or dead.   As such, the Court cannot determine "whether the [State Department's]

invocation of the privacy interest represented a reasonable response to the FOIA request.'"   *Davis*

*v. DOJ*, 460 F.3d 92, 95 (D.C. Cir. 2006) (quoting *Schrecker*, 349 F.3d at 662)).   Nor can the

Court ultimately determine whether the State Department properly concluded that the FBI legal

attaché's privacy interests outweighed any possible public interest in disclosure.   Accordingly, as

set forth in the accompanying Order, the Court shall require the State Department to provide a

Notice and supporting affidavit informing the Court of whether the FBI legal attaché whose name

has been withheld from Document P143 is alive or dead.

             *b.*       *Document P319*

      The Court reaches the same conclusion as to Document P319, from which the FBI

withheld the name of two FBI agents who signed an otherwise blank "Request for Inspection of

Passport File."  *See* Grafeld Decl. ¶¶ 47, 66, 70.  Again, Ms. Grafeld's Declarations do not detail

any efforts on the State Department's part to determine whether the FBI agents are alive or dead,

nor do they actually indicate whether the agents are alive or dead.  Accordingly, as set forth in the

accompanying Order, the Court shall require the State Department to provide a Notice and

supporting affidavit informing the Court of whether the FBI agents are alive or dead.

         D.      *The State Department Has Released All Reasonably Segregable Nonexempt*
               *Information*

      While agencies may properly withhold certain materials under FOIA's enumerated

exemptions, they must release "any reasonably segregable portions" of responsive documents

once they have redacted the exempted information.  *See* 5 U.S.C. § 552(b).  The segregability

requirement is of such great import that this Court has an affirmative duty to engage in its own

segregability analysis, regardless of Plaintiff's pleadings.  *See Billington v. DOJ*, 233 F.3d 581,

586 (D.C. Cir. 2000).

      In her Declaration, Ms. Grafeld avers that "[a]ll of the documents for which plaintiff

sought a *Vaughn* Index have been . . . carefully reviewed for reasonable segregation of non-

exempt information, and no segregation of meaningful information in the withheld documents

can be made without disclosing information warranting protection under the law."  Grafeld Decl.

¶ 76.  The parties do not address segregability in any detail in their briefs, but the Court

nevertheless considers it and concludes that the State Department has appropriately released all reasonably segregable portions of responsive documents.   Significantly, the State Department has not withheld the documents at issue in their entireties due to the inclusion of exempt material therein.  *Cf. Stolt-Nielsen*, 2008 WL 2853214 at *4.  Instead, for documents P143, P319, P323, and P334, the State Department has withheld only the names that it asserts are covered by FOIA Exemptions 6 and 7(C).  The State Department's proper segregation is further evidenced by the fact that, although the State Department might have withheld Documents P49 and P439 in full because the attorney work-product privilege covers factual information in addition to opinions and analysis, *see Judicial Watch v. DOJ*, 432 F.3d 366, 371 (D.C. Cir. 2005), it nevertheless released certain factual portions of those documents as a matter of administrative discretion.  *See* State Dep't MSJ at 19.  Finally, while the State Department withheld Document I1 in full, *see* Grafeld Decl. ¶¶ 71-73, as discussed above, it also established that its complete withholding was proper under FOIA Exemption 3.   As such, the Court concludes that the State Department has carried its burden of showing that it released all reasonably segregable, nonexempt information to Plaintiff.

## IV:  CONCLUSION

For the foregoing reasons, the Court shall GRANT-IN-PART the State Department's [52] Motion for Summary Judgment and shall DENY-IN-PART Plaintiff's [56] Cross-Motion for Partial Summary Judgment, insofar as each relates to the adequacy of the State Department's search, the State Department's segregation of non-exempt information, and the State Department's withholding of information from Documents P323 and P334.  As the Court cannot resolve the parties' cross-motions as to Documents P143 and P319 on the current record, the

Court shall HOLD IN ABEYANCE the parties' cross-motions for summary judgment with respect to those documents and shall require the State Department to indicate to the Court whether the FBI legal attaché and agents are alive or dead, so that the Court may consider the State Department's balancing under FOIA Exemptions 6 and 7(C).  An appropriate Order accompanies this Memorandum Opinion.

Date:   September 1, 2008


_/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge