UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RALPH SCHOENMAN,

    Plaintiff,

     v.

FEDERAL BUREAU OF INVESTIGATION,
*et al.*,

    Defendants.

Civil Action No. 04-2202 (CKK)

**MEMORANDUM OPINION**
(September 22, 2008)

This Memorandum Opinion addresses the discrete issue held in abeyance by the Court's

August 25, 2008 Memorandum Opinion: the Department of the Navy's ("Navy") withholding of

information from one document in response to Plaintiff's request pursuant to the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, ("Privacy Act" or

"PA"), 5 U.S.C. § 552a.  Plaintiff, Ralph Schoenman, a political activist and author, filed

FOIA/PA requests seeking access to an array of records pertaining to himself, Lord Bertrand

Russell, and six organizations, with a total of ten different named agencies and a number of

unnamed agencies to which the named agencies might refer documents for a determination as to

releasability (identified as "John Doe Agencies 1-10" in Plaintiff's Complaint).

The Court's August 25, 2008 Memorandum Opinion and Order addressed the Motion for

Summary Judgment brought by Defendants the Criminal Division of the Department of Justice

("Criminal Division"), the Defense Intelligence Agency ("DIA"), the Department of the Air

1

Force ("Air Force"), the Department of the Army ("Army"), and the Navy (collectively, the "Five Defendants"), as well as Plaintiff's Cross-Motion for Summary Judgment as to the Five Defendants' responses to his FOIA/PA request.  The Court's August 25, 2008 Memorandum Opinion granted-in-part the Five Defendants' Motion for Summary Judgment and denied-in-part Plaintiff's Cross-Motion for Partial Summary Judgment, insofar as each related to the Criminal Division, DIA, Air Force, and Army.   The Court found, however, that the Navy had failed to adequately justify its invocation of FOIA Exemption 7(C) to withhold the names of certain Navy personnel from Navy Document Number Two.  The Court therefore held in abeyance the parties' cross-motions for summary judgment with respect to the Navy and required the Navy to provide additional factual support for its invocation of FOIA Exemption 7(C).

The Navy has since provided that information via a Declaration by Joseph P. Ceglio, Lieutenant, Judge Advocate General's Corps, United States Navy, Assistant Staff Judge Advocate to the Director, Naval Criminal Investigative Service ("NCIS"), Department of the Navy (hereinafter "Ceglio Decl.").  In turn, Plaintiff has filed a motion to strike Lieutenant Ceglio's Declaration in part, asserting that it is not based upon person knowledge.  Plaintiff's Motion to Strike, however, misunderstands the personal knowledge requirement as it applies to affidavits supporting motions for summary judgment in FOIA cases.  The Court shall therefore DENY Plaintiff's [86] Motion to Strike.  Further, based upon Mr. Ceglio's Declaration, and particularly in light of the fact that Plaintiff has not identified a public interest in the disclosure of the names at issue that outweighs the privacy interests of the individuals involved, the Court concludes that the Navy has properly withheld the names from Navy Document Number Two. The Court shall therefore GRANT the Five Defendants' [39] Motion for Summary Judgment and

DENY Plaintiff's [43] Cross-Motion for Summary Judgment with respect to the Navy.

## I. BACKGROUND

The factual background of this case is extensively discussed in this Court's August 25, 2008 Memorandum Opinion regarding the Five Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment. *See Schoenman v. DOJ*, Civ. A. No. 04-2202, slip op. (D.D.C. Aug. 25, 2008) (hereinafter "Five Defs.' MSJ Op."). The Court does not repeat that discussion herein, but assumes familiarity with it and expressly incorporates it herein. As noted above, the Court's August 25, 2008 Memorandum Opinion granted the majority of the Five Defendants' Motion for Summary Judgment, and denied the majority of Plaintiffs' Cross-Motion for Summary Judgment. The Court only held-in-abeyance those motions as they pertained to the Navy's withholding of information from Navy Document Number Two. Specifically, the Court found that the Navy had not adequately explained the law enforcement purpose behind Navy Document Number Two, but that releasing the information withheld from the document was not appropriate because the Court could not "determine from the record or from Plaintiff's Cross-Motion that the Navy improperly invoked FOIA Exemption 7(C)–i.e., that Navy Document Number Two does not actually have a law enforcement purpose." Five Defs.' MSJ Op. at 43-45. The Court therefore gave the Navy the opportunity to substantiate its invocation of FOIA Exemption 7(C) by submitting additional factual support in the form of an agency affidavit describing the law enforcement purpose behind Navy Document Number Two. *See* Five Defs.' MSJ Order, Docket No. [77]. The Court also gave Plaintiff the opportunity to respond to the Navy's additional factual submission, but ordered that any such response be filed no later than September 10, 2008. *Id.*

On September 11, 2008, i.e., one day out of time, Plaintiff filed his Motion to Strike Lieutenant Ceglio's Declaration in part.  Plaintiff did not substantively respond to the factual assertions in Lieutenant Ceglio's Declaration, but rather requested that he be permitted to file his substantive response no later than seven days from the date of the Court's order regarding his Motion to Strike.  *See* Pl.'s Mot. to Strike, Docket No.[86].  On September 15, 2008, having reviewed Plaintiff's Motion to Strike, the Court issued another Order noting that Plaintiff's Motion correctly pointed out that neither Lieutenant Ceglio's Declaration nor the Navy's original declarations supporting its Motion for Summary Judgment indicated whether the Navy had made efforts to ascertain the life status of those individuals whose names it withheld from Navy Document Number Two.  *See* 9/15/08 Minute Order.  The Court therefore required that the Navy file a Declaration indicating its understanding of the individuals' life status, what efforts the Navy undertook to ascertain that information, and when such efforts were undertaken, no later than 5:00 p.m. on September 19, 2008.  *Id.*  In response, the Navy filed the Second Declaration of Lieutenant Ceglio.

## LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, the State Department, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings . . . together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*,

4

477 U.S. 317, 323 (1986).  Plaintiff, in response to Defendant's motion, must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

In reviewing a motion for summary judgment under the FOIA, the Court must conduct a *de novo* review of the record.  *See* 5 U.S.C. § 552(a)(4)(B).  All underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, summary judgment is only appropriate where an agency proves that it has fully discharged its FOIA obligations. *Moore v. Aspin*, 916 F. Supp 32, 35 (D.D.C. 1996) (citing *Weisberg v. DOJ*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).  Summary judgment may be granted on the basis of accompanying agency affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  These affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search.  *See SafeCard Servs., Inc., v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  Courts must "accord substantial weight" to an agency's affidavits regarding FOIA exemptions.  5 U.S.C. § 552(a)(4)(B) (2004); *see also Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) ("Affidavits submitted by an agency are 'accorded a presumption of good faith.'") (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1200).  Significantly, in opposing a motion for summary judgment or cross-moving for summary judgment, a FOIA plaintiff must offer more than conclusory statements.  *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham v. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)).

## II. DISCUSSION

Before turning to the substantive issue of the Navy's withholding of names from Navy

Document Number Two, the Court addresses Plaintiff's motion to strike in part Lieutenant

Ceglio's Declaration.

    A.      *Plaintiff's Motion to Strike*

Plaintiff moves to strike in part Lieutenant Ceglio's Declaration, arguing that it is not

based on personal knowledge and thus fails to comply with Federal Rules of Civil Procedure

Rule 56(e).  Pl.'s Mot. to Strike at 2-4.  According to Plaintiff, "[g]iven the fact that the

document in question is 38 years old, it is implausible that Ceglio has any personal knowledge of

the privacy concerns of the persons on whose behalf he has invoked Exemption 7(C)."  *Id.* at 3.

Plaintiff also notes that "Ceglio makes no claim that he was personally involved in the

document's creation or the underlying event it records."  *Id.* at 4.  Pursuant to Rule 56(e)

"'[s]upporting and opposing affidavits' on summary-judgment motions 'shall be made on

personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show

affirmatively that the affiant is competent to testify to the matters stated therein.'"  *Londrigan v.*

*FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (citing Fed. R. Civ. P. 56(e)).  Furthermore, as Rule

56(e)'s "requirement of personal knowledge by the affiant is unequivocal, and cannot be

circumvented," "[a]n affidavit based merely on information and belief is unacceptable."  *Id.*

Plaintiff's Motion to Strike misunderstands the personal knowledge requirements for

FOIA declarations.  Federal Rule of Civil Procedure 56(e) provides that a declaration "must be

made on personal knowledge, set out facts that would be admissible in evidence, and show that

the [declarant] is competent to testify on the matters stated."  Fed. R. Civ. P. 56(e).  Nevertheless,

6

a declarant in a FOIA case satisfies the personal knowledge requirement in Rule 56(e) "'if in his declaration, [he] attests to his personal knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question.'" *Madison Mech., Inc. v. Nat'l Aeronautics and Space Admin.*, No. 99-2854, 2003 U.S. Dist. LEXIS 4110 at *17 (D.D.C. Mar. 20, 2003) (quoting *Spannus v. DOJ*, 813 F.2d 1285, 1289 (4th Cir. 1987)).  In particular, FOIA declarants are not required to participate in the search for records.  *See Carter, Fullerton & Hayes LLC v. Federal Trade Commission*, No. 07-1041, 2007 U.S. Dist. LEXIS 78863 at *29 (D.D.C. Oct. 25, 2007) ("[t]he declaration of an agency official who is knowledgeable about the way in which information is processed and is familiar with the documents at issue satisfies the personal knowledge requirement").  Consistent with these requirements, hearsay in FOIA declarations is often permissible.  *See Brophy v. U.S. Dep't of Defense*, No. 05-360, 2006 U.S. Dist. LEXIS 11620, *13 (D.D.C. Mar. 8, 2006) ("[d]eclarations that contain hearsay in recounting searches for documents are generally acceptable").

Because a declarant is deemed to have personal knowledge if he has a general familiarity with the responsive records and procedures used to identify those records, the declarant is not required to independently verify the information contained in each responsive record as Plaintiff suggests.  The D.C. Circuit's opinion in *Londrigan* illustrates this principle.  *See generally* 670 F.2d 1164.  In that case, an FBI agent's affidavit (1) described his impressions of what various investigatory sources likely stated or thought during interviews with other FBI agents (which he did not observe), and (2) reported his "own observations upon review of documents."  *Id*. at 1167, 1174.  The D.C. Circuit held that the portions of his affidavit relating to his impressions of the sources' statements or thoughts were not appropriately included in his affidavit because he

lacked personal knowledge of the same, but that the portions of his affidavit based on his review

of the agents' files *were* appropriately included.  *Id.* at 1174.  Consequently, the agent properly

stated in his affidavit that "one of the sources whose identity was withheld by the FBI had

specifically requested confidentiality" because that information was contained in a record the

agent reviewed, even though the agent did not independently verify that the source had actually

requested confidentiality.  *Id.  See also Elliott v. Fed. Bureau of Prisons*, No. 04-1702, 2006 U.S.

Dist. LEXIS 94342 at *19-*20 (D.D.C. Oct. 17, 2006) (holding that a declaration met the

standard for personal knowledge because it was based, in part, on declarant's review of "official

files and records").

Here, Lieutenant Ceglio's Declaration explains that he serves as the Assistant Staff Judge

Advocate to the Director of NCIS.  Ceglio Decl. ¶ 1.  Lieutenant Ceglio further explains that he

has been delegated the initial denial authority and custodian responsibility for all FOIA and PA

requests for documents held by NCIS by the Director of NCIS.  *Id.* ¶ 3.  Lieutenant Ceglio

specifically states, "I have reviewed the Complaint filed in this civil action, and I have personal

knowledge of the documents at issue.  The statements contained in this declaration are based

upon my personal knowledge and upon information provided to me in my official capacity."

*Id.* ¶ 4.  Lieutenant Ceglio then continues to specifically describe NCIS Document Number Two

and to describe–based on the information contained in the document–its connection to a law

enforcement purpose.  The Court discusses the sufficiency of Lieutenant Ceglio's Declaration in

connection with the Navy's invocation of FOIA Exemption 7(C) below.  At this point, however,

the Court finds that Lieutenant Ceglio's Declaration meets the standard for personal knowledge

in a FOIA declaration because he is familiar with the NCIS' FOIA procedures, and because he

has reviewed Navy Document Number Two himself.

Accordingly, while Plaintiff is correct that Lieutenant "Ceglio makes no claim that he was personally involved in the document's creation or the underlying event it records," Pl.'s Mot. at 4, Lieutenant Ceglio is nevertheless competent to testify as to the information contained in Navy Document Number Two.  In reaching this conclusion, the Court notes that personal involvement is not the standard in FOIA cases in general, and would be particularly impractical in this case. As Plaintiff himself notes, Navy Document Number Two is 38 years old, and it is therefore unlikely that the Navy would be able to locate a declarant with personal involvement in the document's creation.  *Id.* at 3.  If Plaintiff were correct that a declarant could only explain the law enforcement purpose behind a document if he was personally involved in its creation, the Navy would often be unable to invoke FOIA Exemptions as to older documents.  Such a standard is therefore both legally incorrect and practically illogical.  For both reasons, the Court shall DENY Plaintiff's [86] Motion to Strike in part Lieutenant Ceglio's Declaration.

As noted above, the Court expressly afforded Plaintiff the opportunity to respond to the Navy's submission regarding the law enforcement purpose behind Navy Document Number Two, and required that any such response be filed no later than September 10, 2008.  *See* Five Defs.' MSJ Order, Docket No. [77].  Plaintiff moved to strike in part Lieutenant Ceglio's Declaration on September 11, 2008, i.e., one day out of time, and–rather than substantively responding to the factual assertions in Lieutenant Ceglio's Declaration–requested that he be permitted to file his substantive response no later than seven days from the date of the Court's order regarding his Motion to Strike.  *See* Pl.'s Mot. to Strike, Docket No.[86].  The Court declines to grant Plaintiff's request because it represents an inappropriate attempt to gain a second bite at the apple.  The

9

proper time for Plaintiff to make arguments regarding the Navy's withholding was in his original Cross-Motion for Summary Judgment/Opposition to the Five Defendants' Motion for Summary Judgment, which he filed on November 9, 2007.  However, because the Court required an additional factual submission from the Navy, it gave Plaintiff the opportunity to respond to that submission.  Plaintiff squandered that opportunity when he moved to strike in part Lieutenant Ceglio's Declaration rather than filing a substantive response.  Simply put, this case is not a game and Plaintiff's briefing should not be a moving target; Plaintiff is not permitted to continuously raise new arguments in additional filings, rather Defendants and the Court are entitled to a definitive statement of Plaintiff's arguments so that the Cross-Motions can finally be resolved.

Further, the Court sees no need for additional briefing from Plaintiff regarding the Navy's withholding of names from Navy Document Number Two.  As the Court noted in its September 15, 2008 Minute Order, in addition to arguing that Lieutenant Ceglio's Declaration did not meet the standard of Rule 56(e), Plaintiff's motion to strike raised one substantive point: the Navy's failure to explain what, if any, efforts it had undertaken to ascertain the life status of the individuals whose names it withheld from Navy Document Number Two.  As that information is key to assessing the Navy's invocation of FOIA Exemption 7(C), the Court required the Navy to provide that information via a further Declaration, and the Navy did so via the Second Declaration of Lieutenant Ceglio, filed on September 19, 2008.  Plaintiff has not responded to that Second Declaration, but it is clear that Plaintiff could not provide information regarding the Navy's efforts to ascertain the life status of the individuals whose names it withheld from Navy Document Number Two or the actual life status of those individuals.  Accordingly, the Court need not afford Plaintiff the opportunity to respond to Lieutenant Ceglio's Second Declaration before resolving

10

the pending motions for summary judgment as to the Navy.

       B.      *FOIA Exemption 7(C)'s Law Enforcement Purpose Requirement*

The Court turns now to considering whether Lieutenant Ceglio's Declaration suffices to establish that the Navy has properly invoked FOIA Exemption 7(C) in withholding the names of an NCIS agent and other employees from Navy Document Number Two. As the Court explained in its August 25, 2008 Memorandum Opinion, pursuant to FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), an agency may withhold information within documents "compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). As discussed below, to consider an agency's invocation of Exemption 7(C) the Court must balance privacy interests against the public interest in disclosure; however, the threshold requirement for FOIA Exemption 7(C) is that the document at issue must have been "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7).

Lieutenant Ceglio's Declaration provides the factual support required for the Navy's claim that Navy Document Number Two was compiled for a law enforcement purpose. At the outset the Court notes that, where an agency "specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference." *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998) (citing *Pratt v. Webster*, 673 F.2d 408, 419 (D.C. Cir. 1982)). Nevertheless, the "deferential" standard of review that the Court applies to this determination is not "vacuous." *Id.* Instead, the agency's declarations "must establish a rational 'nexus between the investigation and one of the agency's law enforcement duties,' and a connection between an 'individual or incident and possible security risk or violation of federal law.'" *Id.* (quoting *Pratt*, 673 F.2d at 420-21). As the D.C. Circuit explained in *Campbell*, "[t]he fact that information is stored in a [document] with an

official-sounding label is insufficient standing alone to uphold nondisclosure;" "[a]t a minimum, the [agency] must demonstrate the relationship between a record and its label and between the label and a law enforcement purpose." *Id.*

Here, Lieutenant Ceglio's Declaration explains that:

NCIS is a federal law enforcement agency that protects and defends the Department of the Navy against terrorism and foreign intelligence threats, investigates major criminal offenses, enforces the criminal laws of the Untied States and the Uniform Code of Military Justice (UCMJ), assists military command in maintaining good order and discipline, and provides law enforcement and security services to the Navy and Marine Corps on a worldwide basis.

Ceglio Decl. ¶ 2. As this statement is sufficient to establish NCIS's law enforcement duties, the question becomes whether Lieutenant Ceglio's Declaration also establishes a "rational nexus" between Navy Document Number Two, a law enforcement investigation, and one of NCIS's law enforcement duties. The Court concludes that it does.

As Lieutenant Ceglio describes, Navy Document Number Two is dated April 13, 1970 and entitled "I/National Committee for A Citizens' Commission of Inquiry Of U.S. War Crimes in Vietnam (CCI)." *Id.* ¶ 7. Navy Document Number Two was referred to NCIS for review by the FBI. *Id.* NCIS did not have an independent copy of Navy Document Number Two because "it is NCIS' routine custom and practice to destroy records of this type after five years of their creation [sic]," and Navy Document Number Two is approximately 38 years old. *Id.* Lieutenant Ceglio's Declaration explains that, "[b]ased on the document's formatting, structure and internal text, however, it has the appearance of an authentic NCIS law enforcement/counter intelligence report circa 1970." *Id.* Lieutenant Ceglio describes Navy Document Number Two as appearing to be "a record created by NCIS to be shared with the FBI to assist in a legitimate law enforcement/counter

intelligence investigation during the early 1970's time period," *id.*, and states that the document "was created by the NCIS in furtherance of its Department of Defense mandated law enforcement mission," *id.* ¶ 12.

Lieutenant Ceglio continues to note that "NCIS has a legal duty established by SECNAV INSTRUCTION 5430.107 to document and investigate allegations and evidence of violations of United States federal law," and explains that "Navy Document Number Two contains material directly relevant to a criminal investigation of suspected violations of federal and military law." *Id.* Lieutenant Ceglio then generally describes Navy Document Number Two's "internal text," explaining that it "describes the observation of meeting of several anti-war organizations in direct opposition to the United States' War in Vietnam," at which "intelligence was collected pertaining to allegation of war-crimes by United States military personnel, and statements by military deserters." *Id.* As such, Lieutenant Ceglio explains, Navy Document Number Two pertains to an investigation "directly related to two areas of exclusive federal law enforcement interest," *id.*, because "NCIS had a law enforcement duty to investigate and gather information regarding war-time atrocities," as well as "to investigate and bring military deserters to justice," *id.* ¶ 13.

In support of this assertion, Lieutenant Ceglio quotes specific portions of Navy Document Number Two that have been released to Plaintiff. In particular, he notes that the Document describes "slide projections, depicting alleged mutilations of Vietnamese . . . and two tape recordings of statements, taken in Toronto, Canada, of unidentified U.S. Army deserts who described alleged atrocities against Vietnamese civilians." *Id.* ¶ 13. Lieutenant Ceglio also notes that the Document "describes two former U.S. Army personnel, 'claiming recent service in military intelligence, [who] related accounts of torture and brutality allegedly practiced on

13

Vietnamese civilians by U.S. Army Intelligence Personnel.'" *Id.*

In addition to describing Navy Document Number Two's contents, Lieutenant Ceglio's Declaration makes explicit the "rational 'nexus between the investigation and one of [NCIS's] law enforcement duties,' and [the] connection between an . . . 'incident and possible security risk or violation of federal law.'" *Campbell*, 164 F.3d at 32 (quoting *Pratt*, 673 F.2d at 420-21). Specifically, Lieutenant Ceglio states that Navy Document Number Two "contains information relevant and necessary for a criminal investigation of the particular crimes described within it," and explains that "[t]he memorializing of such relevant information by law enforcement personnel in a law enforcement document for the purpose of aiding a criminal investigation is a core law enforcement purpose." Ceglio Decl. ¶ 13. Lieutenant Ceglio thus clearly describes NCIS's general law enforcement purpose of documenting and investigating allegations and evidence of violations of United States federal law, and explains that Navy Document Number Two contains information regarding an investigation into allegations in two areas of federal and military crimes: alleged war crimes and alleged military desertion. Accordingly, Lieutenant Ceglio's Declaration establishes the requisite link between NCIS' general law enforcement purposes and Navy Document Number Two, and meets the "rational nexus" test described in *Pratt* and *Campbell*. The Court therefore finds that Navy Document Number Two meets the threshold test for FOIA Exemption 7(C) because it was created for a law enforcement purpose.

C.       *Applying FOIA Exemption 7(C) to Navy Document Number Two*

The Court now turns to considering whether the Navy properly withheld information from Navy Document Number Two pursuant to FOIA Exemption 7(C). For purposes of FOIA Exemption 7(C), the D.C. Circuit applies a "categorical rule permitting an agency to withhold

information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003) (quoting *SafeCard*, 926 F.2d at 1206)).  The D.C. Circuit's categorical rule, however, does not mean that the names in Navy Document Number Two may be automatically withheld under FOIA Exemption 7(C). Significantly, the  D.C. Circuit also recognizes "that the privacy interest in nondisclosure of identifying information may be diminished where the individual is deceased," and has explained that "[t]he fact of death, therefore, while not requiring the release of information, is a relevant factor to be taken into account in the balancing decision whether to release information." *Schrecker*, 349 F.3d at 661 (quotation omitted).

In conducting that balancing, the Court is cognizant that "[t]he public's interest in disclosure of personnel files derives from the purpose of the [FOIA]–the preservation of 'the citizens' right to be informed about what their government is up to.'"  *Beck v. DOJ*, 997 F.2d 1489, 1492-93 (D.C. Cir. 1993) (quoting *Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (internal quotation marks omitted)).  While the FOIA's purpose "is furthered by disclosure of official information that 'sheds light on an agency's performance of its statutory duties,'" "[i]nformation that "reveals little or nothing about an agency's own conduct' does not further the statutory purpose; thus the public has no cognizable interest in the release of such information." *Id.* at 1493 (quoting *Reporters Comm.*, 489 U.S. at 773).

As noted above, the Navy's initial declarations in support of its Motion for Summary Judgment and Lieutenant Ceglio's first Declaration failed to provide any information as to whether the Navy personnel whose names were withheld from Navy Document Number Two

15

were alive or dead, and did not explain any efforts the Navy had undertaken to ascertain that information.  As this failure precluded the Court from evaluating the Navy's balancing of privacy interests versus public interests, the Court required the Navy to provide that information.  The Navy has now done so, in the form of Lieutenant Ceglio's Second Declaration.  *See* Navy Notice, Attach (Docket No. [89-2]).  Lieutenant Ceglio's Second Declaration states that "[f]ollowing the court's order of September 15, 2008, NCIS took several steps to ascertain the life/death status of the individuals whose names were withheld in the three pages in question."  Second Ceglio Decl. ¶ 4.  Under D.C. Circuit precedent, an agency invoking FOIA Exemption 7(C) must make "a reasonable effort to ascertain life status," *Schrecker*, 349 F.3d at 662, and the agency's efforts in that respect speak to the reasonableness of its response to a FOIA request, *see Davis v. DOJ*, 460 F.3d 92, 95 (D.C. Cir. 2006) (quoting *Schrecker*, 349 F.3d at 662)).  The Court therefore warns the Navy that, in the future, it is required to make efforts to ascertain an individual's life status *before* invoking a privacy interest in connection with FOIA Exemption 7(C).  Further, the Navy should do so in the first instance rather than waiting to be prompted to do so by Court Order, as an individual's life status is key to an appropriate balancing of the privacy interest and public interest required to properly invoke FOIA Exemption 7(C).

Nevertheless, upon reviewing the explanation that Lieutenant Ceglio's Second Declaration provides of the Navy's efforts to ascertain life status, the Court concludes that they are reasonable efforts.  The Court further finds, upon balancing the privacy and public interests at stake, that the Navy has properly invoked FOIA Exemption 7(C).

Lieutenant Ceglio's Second Declaration explains that "[n]ormally, NCIS uses either birth date or Social Security number to determine whether an individual is living or deceased, to the

extent either or both of these pieces of information is discernable from the file." Second Ceglio

Decl. ¶ 4. NCIS uses the birth date to apply the so-called "100-year rule," i.e., a rule that "if the

individual was born more than 100 years ago, NCIS presumes that he or she is dead and the name

is released," and may use a Social Security number to consult the list published by the Social

Security Administration of deceased persons. *Id.* The D.C. Circuit has concluded that the 100-

year rule is, as a general matter, a reasonable prophylactic presumption. *See Schrecker*, 349 F.3d

at 664-65. However, Lieutenant Ceglio states that "[t]here were no birth dates or Social Security

numbers or any other identifying information beyond the names in [Navy Document Number

Two]." Second Ceglio Decl. ¶ 4. Lieutenant Ceglio also avers that "[b]ecause of the age of

[Navy Document Number Two,] which dates from 1970, NCIS has no extant records or

knowledge regarding the individuals listed in the document beyond the contents of the document

itself." *Id.*

      According to Lieutenant Ceglio, "[o]nly two of the relevant redacted names were

presented in full." *Id.* ¶ 5. For one of those names, after the Court's September 15, 2008 Order,

NCIS conducted research on the Internet and "unearthed a New York Times obituary and

sufficient corroborating evidence to determine with a degree of certainty that the name individual

in the redacted portion is deceased. NCIS has therefore determined that this name can be released

at the present time." *Id.* The Court agrees with Navy's assessment that the previously withheld

name of the deceased individual should be released. *See Schrecker*, 349 F.3d at 661 ("the privacy

interest in nondisclosure of identifying information may be diminished where the individual is

deceased."). Lieutenant Ceglio's Second Declaration asserts that "NCIS will promptly provide

Plaintiff with a new copy of [Navy Document Number Two] with the redacted name [of the

deceased individual] now released." Second Ceglio Decl. ¶ 11. So as to ensure that Plaintiff receives the previously redacted name, the Order accompanying this Memorandum Opinion shall require the Navy to promptly provide Plaintiff with a new copy of Navy Document Number Two. The Court notes that the Navy's release of the previously withheld name of the deceased individual moots any issue with respect to that withholding.

The Court turns now to the Navy's efforts to determine the life status of the individual whose name appears in the "Made By" section of Navy Document Number Two. According to Lieutenant Ceglio, the document provides only "a last name and a first and middle initial, e.g., 'B.T. Jones,'" and the Navy's efforts to identify the individual are complicated by "the fact that the last name is a common one," and that Navy Document Number Two does not include "social security numbers or other identifying information for this individual." *Id.* ¶ 7. Lieutenant Ceglio continues to describe the efforts the Navy's general litigation division (Code 14) and NCIS undertook to find information on the individual, and states that he has "personal knowledge of NCIS and Code 14's actions." *Id.*

In particular, Lieutenant Ceglio explains that "Code 14 contacted the center that stores personnel files for former NCIS employees," including "[b]oth their Employee Line and Benefits Line . . . to see if they had any information or records based on the initials and last name of the individual," but that center was "unable to be of assistance." *Id.* ¶ 8. Further, Code 14 contacted the Office of Personnel Management (OPM), which is responsible for federal civil retired pay." *Id.* OPM indicated "that any records request would take several weeks to process," and although "Code 14 faxed an urgent request for relevant records to OPM's legal department on [September 17, 2008,] OPM has not yet responded." *Id.* Lieutenant Ceglio further avers that Code 14

18

"contacted the president of the Association of Retired Naval Investigative Service Agents (ARNISA) to see if he or one of his organization's members knew the named individual." *Id.* This effort "was unsuccessful, although the president is talking to more members of his organization and [the Navy is] awaiting his further response." *Id.* According to Lieutenant Ceglio, "[t]here were countless deceased individuals with the same individuals and last name, and it was impossible, without further identifying information like a social security number, to discern if any of them was the named individual," because the "initial and last name combination generated too many hits on the [Navy's] database search to be of any use." *Id.* In addition, although Code 14 "ran several news searches via LEXIS-NEXIS for obituaries mentioning the last name and either the Naval Investigative Service (NIS) or [NCIS,] [t]he search yielded no helpful results." *Id.* Lieutenant Ceglio continues to explain that "NCIS searched its available personnel records and its personnel law department and could find no records regarding the named individual." *Id.* ¶ 9. In particular, "NCIS ran searches through two human resources databases used by the NCIS personnel department," but the "search yielded no positive results." *Id.* Finally, NCIS searched "the AUTO-TRACK database which a general public records database," but the "search yielded too many results with the unspecified name information to be of any use." *Id.*

As a result, Lieutenant Ceglio concludes that it was "not possible to determine whether the named individual is currently alive or dead," but the "presumption remains that he is alive." *Id.* In support of this assumption, Lieutenant Ceglio notes that Navy Document Number Two was created in April and May of 1970, such that "[t]o be more than a hundred years old presently, the individual would have had to be around 62 years of age at the time he made the report, which is improbable compared to the possibility that the individual was less than 62 years of age." *Id.*

Accordingly, Lieutenant Ceglio suggests that withholding of the name is appropriate under the 100-year rule.  *Id.*

 Lieutenant Ceglio's Declaration thus establishes that, despite exhaustive efforts (which the Court again notes were made *after* the Court's September 15, 2008 Order), the Navy has not been able to actually ascertain whether the individual who created Navy Document Number Two is alive or dead.  The Navy's apparent inability to positively identify the individual at issue based on his last name and initials may well cast doubt on its claim that the individual has a significant privacy interest in the withholding of his name.  To wit, if the Navy cannot figure out who the individual is by resort to its internal and external resources, it is unlikely that Plaintiff will be able to do so.  In the same vein, Lieutenant Ceglio's Declaration asserts that "[t]he names redacted at the bottom of page 1, 2, and 3" as well as "the lower right corner of page 3" of Navy Document Number Two were initials, and that "[w]ithout more information it was not possible to discern the status of these individuals."  *Id.* ¶ 10.  Again, if the withheld initials are insufficient to indicate the individuals' identities to the Navy, the Court questions what information Plaintiff could discern from the initials, and therefore what privacy interest is protected by withholding the initials.

 The Court nevertheless concludes that the Navy may withhold the name of the individual who created Navy Document Number Two as well as the initials contained in that document under FOIA Exemption 7(C).  Significantly, whether the individuals at issue are alive or deceased is not dispositive of the privacy interest versus public interest balancing required by FOIA Exemption 7(C).  *See Schrecker*, 349 F.3d at 661 ("The fact of death, therefore, while not requiring the release of identifying information, is a relevant factor to be taken into account in the balancing decision whether to release information.") (citation omitted).  Further, as noted above,

the D.C. Circuit applies a "categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Schrecker*, 349 F.3d at 661.  Plaintiff has not claimed that Navy Document Number Two in any way relates to an allegation of illegal activity on the part of the Navy.  Nor has Plaintiff identified a public interest in the production of the names withheld from Navy Document Number Two under FOIA Exemption 7(C).  Plaintiff's Cross-Motion for Summary Judgment as to the Five Defendants is silent on this issue, and Plaintiff does not assert a public interest in the disclosure of the withheld names in his Motion to Strike Lieutenant Ceglio's Declaration.

Further, to the extent that Plaintiff has attempted to identify a purported public interest in the disclosure of names withheld from documents by other Defendant agencies in this action, he has not identified the type of public interest cognizable under the FOIA.  *See* Five Defs.' MSJ Op. at 41-42, 48; *Schoenman v. FBI*, Civil Action No. 04-2202, slip op. (D.D.C. Sept. 1, 2008) at 46-47 (addressing the cross-motions for summary judgment as to the State Department); *Schoenman v. FBI*, Civil Action No. 04-2202, slip op. (D.D.C. Sept. 15, 2008) at 11-12 (addressing remaining issue regarding the State Department's motion for summary judgment).  Plaintiff generally seeks the disclosure of withheld names in order to enable him to contact the individuals at issue to confirm his accounts of his own activities during the 1960s and 1970s or to gain information as to what he perceives as government scrutiny of his activities.  *See id.*  As the Court has repeatedly concluded, however, *see id.*, the information Plaintiff seeks–including the names the Navy has withheld from Navy Document Number Two–would "reveal[] little or nothing about an agency's own conduct.'" *Beck*, 997 F.2d at 1493 (quoting *Reporters Comm.*, 489 U.S. at 773).  As such, it

21

"does not further the statutory purpose [and] the public has no cognizable interest in the release of such information." *Id.*

In short, the balancing of the privacy interest versus public interest with respect to the names withheld from Navy Document Number Two appears to be something of a zero-sum game. On the one side, to the extent that the Navy cannot determine the individuals' identities based on the information withheld, those individuals may have a diminished interest in its withholding. On the other side, Plaintiff has not demonstrated any public interest–of the type cognizable under the FOIA–in the disclosure of the withheld names. As such, the Court is guided by the fact that the D.C. Circuit applies a "categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Schrecker*, 349 F.3d at 661. As Plaintiff does not allege that the disclosure of the names "is necessary to confirm or refute compelling evidence that the agency is engaged in illegal activity"–and the Court sees no indication that is the case–the Court applies the categorical rule permitting withholding under FOIA Exemption 7(C).

Finally, Lieutenant Ceglio's Second Declaration states that the Navy has withheld the signature of the first and last name of the individual who declassified Navy Document Number Two, and "[i]nquiries within NCIS confirmed that this individual is an employee of NCIS and is still alive." Second Ceglio Decl. ¶ 6. As that individual thus has a privacy interest in the withholding of his or her name, and Plaintiff has not identified any public interest in the name's disclosure, the Court concludes that the Navy has properly invoked FOIA Exemption 7(C) with respect to the name of the individual who declassified Navy Document Number Two.

22

Notwithstanding this conclusion, the Court again notes that Lieutenant Ceglio's Second Declaration makes clear that the Navy made no efforts to ascertain the life status of the individuals whose names it withheld from Navy Document Number Two until ordered to do so by the Court. *See id.* ¶ 4.  The Court therefore cautions the Navy that, under D.C. Circuit precedent, "without confirmation that the Government took certain basic steps to ascertain whether an individual was dead or alive, [a court is] unable to say whether the Government reasonably balanced the interests in personal privacy against the public interest in the release of the information at issue." *Davis*, 460 F.3d at 98 (quoting *Schrecker v. DOJ*, 254 F.3d 162, 167 (D.C. Cir. 2001)).  In light of this precedent, agencies must take pains to ascertain life status in the first instance, i.e., in initially balancing the privacy and public interests at issue.  Further, as set forth in the Order accompanying this Memorandum Opinion, the Court shall require the Navy to supplement the record with the Court in the event that OPM or any other source is able to identify the individual who created Navy Document Number Two and/or determine whether that individual is alive or dead.[1]

## IV:  CONCLUSION

For the foregoing reasons, the Court shall GRANT the Navy's [39] Motion for Summary Judgment and DENY Plaintiff's [43] Cross-Motion for Summary Judgment with respect to the issue held in abeyance in the Court's August 25, 2008 Memorandum Opinion, i.e., the Navy's withholding of information from Navy Document Number Two.  An appropriate Order

---

[1] The Court's resolution of the cross-motions for summary judgment as to the Navy does not resolve this litigation; the parties' cross-motions for summary judgment regarding the CIA are currently pending and their cross-motions regarding the FBI are not yet ripe.

accompanies this Memorandum Opinion.

Date:   September 22, 2008


       _/s/_ _____
COLLEEN KOLLAR-KOTELLY
United States District Judge