**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RALPH SCHOENMAN,

    Plaintiff,

      v.

FEDERAL BUREAU OF INVESTIGATION,
*et al.*,

    Defendants.

Civil Action No. 04-2202 (CKK)

**MEMORANDUM OPINION**
(March 31, 2009)

Plaintiff, Ralph Schoenman, a political activist and author, filed the above-captioned action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974 ("Privacy Act" or "PA"), 5 U.S.C. § 552a, seeking access to an array of records pertaining to himself, Lord Bertrand Russell, and six organizations, from a total of ten different named agencies and a number of unnamed agencies to which the named agencies might refer documents for a determination as to releasability (identified as "John Doe Agencies 1-10" in Plaintiff's Complaint).  Plaintiff's Complaint named as Defendants: the Federal Bureau of Investigation ("FBI"), the Central Intelligence Agency ("CIA"), the Defense Intelligence Agency ("DIA"), the Department of the Air Force ("Air Force"), the Department of Justice ("DOJ"), the Department of the Army ("Army"), the Department of the Navy ("Navy"), the Department of State ("State Department"), the National Archives and Records Administration "NARA"), the National Security Agency ("NSA"), and John Doe Agencies 1-10.  Compl. at 1 & ¶ 13.

In a Memorandum Opinion and Order dated March 31, 2006, the Court dismissed certain

portions of Plaintiff's Complaint against Defendants CIA, NARA, NSA, Air Force, Army, and

Navy because Plaintiff either could not show that the agencies had received his FOIA/PA

requests or could not show that he had exhausted his administrative remedies as to those

agencies.  *See generally Schoenman v. FBI*, Civ. A. No. 04-2202, 2006 WL 1126813 (D.D.C.

Mar. 31, 2006).  By a Memorandum Opinion and Order dated June 5, 2006, the Court dismissed

without prejudice certain portions of Plaintiff's Complaint against the FBI and the State

Department.  *See generally Schoenman v. FBI*, Civ. A. No. 04-2202, 2006 WL 1582253 (D.D.C.

Jun. 5, 2006).  The Defendants with remaining obligations to process documents in response to

Plaintiff's request did so.  Those Defendants, along with the agencies to whom they have referred

documents for releasability determinations, have now begun moving for summary judgment, and

Plaintiff has filed cross-motions for summary judgment.[1]  This Memorandum Opinion addresses

the [73] Motion for Summary Judgment filed by the FBI and the [92] Cross-Motion for Partial

Summary Judgment filed by Plaintiff.  In addition, this Memorandum Opinion addresses

Plaintiff's recently filed [105] Motion for an Order Requiring the FBI to Provide a Complete

*Vaughn* Index, as it pertains directly to the issues raised in the parties' pending cross-motions for

summary judgment.

---

[1]This Court previously granted summary judgment in favor of Defendants as to Plaintiff's claims against the DIA, the Air Force, the Army, the Navy, and the Criminal Division of the DOJ.  *See Schoenman v. FBI*, 575 F. Supp. 2d 136 (D.D.C. 2008); *Schoenman v. FBI*, 575 F. Supp. 2d 166 (D.D.C. 2008).  In addition, the Court granted summary judgment in favor of Defendant State Department as to Plaintiff's claims against the State Department.  *See Schoenman v. FBI*, 573 F. Supp. 2d 119 (D.D.C. 2008); *Schoenman v. FBI.*, 576 F. Supp. 2d 3 (D.D.C. 2008).  The Court also granted-in-part and held-in-abeyance-in-part Defendant CIA's motion for summary judgment, and denied-in-part and held-in-abeyance-in-part Plaintiff's partial motion for summary judgment as to Plaintiff's claims against the CIA, with the remaining issues to be resolved pending supplemental briefing as to the adequacy of certain aspects of the CIA's search.  *Schoenman v. FBI*, Civ. Act. No. 04-2202, 2009 WL 763065 (D.D.C. Mar. 16, 2009).

The Court has conducted a searching review of the FBI's Preliminary *Vaughn* Index, the FBI's Motion for Summary Judgment, Plaintiff's Cross-Motion for Partial Summary Judgment/ Opposition, the FBI's Opposition/Reply, Plaintiff's Reply, the FBI's Supplemental *Vaughn* Index, Plaintiff's Motion for an Order Requiring the FBI to Provide a Complete *Vaughn* Index, Plaintiff's March 24, 2009 Notice to the Court, and the FBI's Partial Opposition to Plaintiff's Motion for an Order Requiring the FBI to Provide a Complete *Vaughn* Index, as well as the exhibits attached to those filings, the relevant statutes and case law, and the entire record herein. Based upon the foregoing, the Court shall: (1) GRANT-IN-PART the FBI's [73] Motion for Summary Judgment, finding in favor of the FBI with respect to the reasonableness of the FBI's search for responsive records; (2) DENY-IN-PART the FBI's [73] Motion for Summary Judgment and GRANT-IN-PART Plaintiff's [92] Cross-Motion for Partial Summary Judgment, with respect to the FBI's denial of Plaintiff's requests for a full fee waiver, finding that the FBI improperly denied Plaintiff's requests; and (3) GRANT Plaintiff's [105] Motion for an Order Requiring the FBI to Provide a Complete *Vaughn* Index.  Finally, in light of the Court's determination that the FBI must submit a single, comprehensive *Vaughn* index, the Court shall DENY WITHOUT PREJUDICE the parties' cross-motions as they pertain to the merits of the FBI's withholdings and Plaintiff's request that the FBI be required to reprocess all responsive documents.  The Court cannot resolve the merits of these issues until an adequate *Vaughn* index is compiled.  Upon submission of the FBI's final *Vaughn* index, the parties may re-file their cross-motions as to the merits of the FBI's withholdings, as appropriate.

## I. BACKGROUND

A.       *Plaintiff's FOIA/PA Requests*

By letters dated July 24, 2001, and July, 27, 2001, Plaintiff, through counsel, filed

FOIA/PA requests with the Paris Legal Attache and the London Legal Attache  ("Legat") of the

FBI as well as with the Los Angeles, New York City, and San Francisco Field Offices.  *See*

Second Decl. of David M. Hardy, Section Chief of the Record/Information Dissemination

Section, Records Management Division, at the FBI Headquarters ("FBIHQ") (hereinafter

"Second Hardy Decl."), submitted in support of the FBI's Motion for Summary Judgment, ¶¶ 5,

28, 41, 49, 61.[2]  Each of Plaintiff's FOIA/PA requests is identical and sought access to records

pertaining to himself, Lord Bertrand Russell, and six organizations[3]—and all records on any

confidential source or informant who supplied information on any of the foregoing subjects as

well as all "index references" to the foregoing subjects, all previous FOIA requests pertaining to

those subjects, and all records used by the FBI in its searches in response to Plaintiff's requests.

*Id.,* Ex. A[4]   In addition, Plaintiff requested a fee waiver of all duplication fees.  *See id.*

_____

[2]Hardy avers that he is the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division, at FBIHQ in Washington, D.C.  Second Hardy Decl. ¶ 1.  He explains that RIDS' mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to both the FOIA and the PA.  *Id.* ¶ 2.  Hardy submits his declarations to address the FBI's handling of Plaintiff's FOIA/PA requests, and to provide a *Vaughn* index of Plaintiff's selection of documents from which the FBI withheld information.  *Id.* ¶ 4.

[3]The six organizations are as follows:  (1) Bertrand Russell Peace Foundation; (2) Bertrand Russell Peace Foundation, New York; (3) International War Crimes Tribunal; (4) The Who Killed Kennedy Committee; (5) Bertrand Russell Research Center; and (6) Citizens Committee of Inquiry.  Second Hardy Decl., Ex. A.

[4]As an initial matter, the Court notes that the procedural facts included herein are taken primarily from the second declaration of David M. Hardy, submitted in support of the FBI's Motion for Summary Judgment.  *See* Second Hardy Decl.  The FBI has also provided, as required

*Id.*  The relevant facts concerning the FBI's response to each of Plaintiff's requests are set forth

below.

        1.     <u>Paris Legat</u>

      By letter dated July 31, 2001, the Paris Legat notified Plaintiff that it had forwarded his

request to FBIHQ.  *Id.* ¶ 6.  FBIHQ thereafter acknowledged receipt of Plaintiff's FOIA/PA

request, and advised Plaintiff that it was opening a separate request for each subject of Plaintiff's

FOIA/PA request.  *Id.* ¶¶ 6-7.  As an initial matter, the Court notes that, by Order dated June 5,

2006, it found that Plaintiff had failed to exhaust his administrative remedies as to certain

portions of his FOIA/PA request to the FBI Paris Legat and therefore dismissed without

prejudice Plaintiff's claim to the extent it concerned his request to the Paris Legat for records

relating to the Who Killed Kennedy Committee and the Citizens Commission of Inquiry.  *See*

*Schoenman v. FBI*, Civ. Act. N. 04-2202, 2008 WL 1582253, *9-12 (D.D.C. Jun. 5, 2006)

(CKK).  Accordingly, the only aspects of Plaintiff's claim against the Paris Legat that remain

relate to his request for records pertaining to himself, Lord Bertrand Russell, the Bertrand Russell

---

by Local Civil Rules 56.1 and 7(h), a Statement of Material Facts as to Which There is No
Genuine Issue; however, because that Statement generally summarizes Hardy's declaration, the
Court instead cites directly to Hardy's declaration.  *See generally* FBI Stmt.  Plaintiff has
responded to the FBI's Statement with a responsive Statement as well as a Statement of Material
Facts Not in Dispute.  *See* Pl.'s Resp. Stmt. and Pl.'s Stmt.  In his responsive Statement,
however, Plaintiff admits all of the FBI's assertions, save one, for which he states only that:
"Plaintiff is without information or knowledge sufficient to admit or deny and therefore denies
the first sentence.  The second and third sentence are denied."  *See* Pl.'s Resp. Stmt.  As
Plaintiff's sole denial is not supported by facts contradicting Hardy's declarations, the Court
accepts Hardy's sworn statements in his second declaration—which are supported by the record
of correspondence between the FBI and Plaintiff—as uncontroverted and relies upon them
herein.  As to Plaintiff's own Statement of Material Facts, Plaintiff proffers only five "factual"
assertions, three of which are not supported by citations to the record, as is required.  *See*
*generally* Pl.'s Stmt.  The Court therefore cites primarily to Hardy's second declaration for the
factual background in this case.

Research Center, and the Bertrand Russell Peace Foundation (including the New York office), the International War Crimes Tribunal.

a.      FOIA Request Number 947852 (Schoenman)

Plaintiff's request to the Paris Legat for records pertaining to himself was assigned FOIA Request Number 947852.  Second Hardy Decl. ¶ 7.  FBIHQ subsequently consolidated this request with Plaintiff's request to the Los Angeles Field Office ("LAFO"), discussed below.  *See infra* pp. 10-12.  Accordingly, the Court shall consider Plaintiff's challenges to this request as part of its discussion concerning the request to LAFO.

b.      FOIA Request Number 948774 (Lord Bertrand Russell)

Plaintiff's request to the Paris Legat for records pertaining to Lord Bertrand Russell Center was assigned FOIA Request Number 948772.  *Id.* ¶ 24.  FBIHQ subsequently advised Plaintiff that no records were found responsive to his request.  *Id.*  Plaintiff thereafter appealed FBIHQ's "no records" determination, which determination was subsequently affirmed by the Office of Information and Privacy ("OIP"), the entity within DOJ that adjudicates FOIA appeals of the various DOJ components.[5]  *Id.* ¶¶ 11, 25-27.

c.      FOIA Request Number 948772 (Bertrand Russell Center)

Plaintiff's request to the Paris Legat for records pertaining to the Bertrand Russell Center was assigned FOIA Request Number 948772.  Second Hardy Decl. ¶ 19.  FBIHQ subsequently advised Plaintiff that no records were found responsive to this request.  *Id.* ¶ 19. Plaintiff thereafter appealed FBIHQ's "no records" determination, which was subsequently affirmed by

---

[5]The Court notes that Plaintiff is not challenging the adequacy of the FBI's search in his cross-motion for partial summary judgment, *see generally* Pl.'s Cross-MSJ/Opp'n, Docket No. [92], and therefore the FBI's "no records" determinations are not at issue in this Memorandum Opinion.

OIP on appeal.  *Id.* ¶¶ 20-22.

                          d.        FOIA Request Number 948768 (Bertrand Russell Peace Foundation)

By letter dated August 21, 2001, FBIHQ acknowledged receipt of Plaintiff's request for records pertaining to the Bertrand Russell Peace Foundation (including specific to the New York office) and advised Plaintiff that the request had been assigned FOIA Request Number 948768. *Id.* ¶ 9.  Thereafter, FBIHQ informed Plaintiff that it had located 372 pages responsive to his request and was releasing 270 of those pages, with redactions made pursuant to FOIA Exemptions 1, 2, 3, 7(C), and 7(D).  *Id.* ¶ 10.  FBIHQ also informed Plaintiff that responsive documents had been referred to other agencies for review and direct response to Plaintiff.  *Id.*[6] Finally, FBIQ advised Plaintiff that his request for a fee waiver was denied because the FBI "concluded that [Plaintiff's] interest in these records is personal in nature and that the information pertains primarily to him," and that he had therefore been assessed duplication fees totaling $17.  *Id.* and Ex. F.

Plaintiff subsequently appealed the withholdings and denial of his fee waiver to OIP.  *Id.* ¶ 11.  Specific to the fee waiver issue, Plaintiff argued that the FBI had wrongly concluded that his interest in the records is personal in nature and that the information pertains primarily to him, noting that the request at issue relates to the Bertrand Russell Peace Foundation—not to Schoenman himself.  *Id.*, Ex. G.  In addition, Plaintiff stated that:

---

[6]Hardy notes that four documents responsive to this FOIA Request were referred to the State Department.  Second Hardy Decl. ¶ 11.  The FBI redacted certain information from one page of the referred documents pursuant to FOIA Exemption 7(C).  *Id.*  When the Department of State released the documents to Plaintiff, he was advised of his right to appeal the FBI's redactions to those documents.  *Id.*  It appears, however, that Plaintiff has not appealed the redactions made by the FBI on this referral.  *Id.*

> The materials contained in the file deal with political opposition to the war in Vietnam. The fact that the FBI compiled a rather large file in its Paris office regarding the anti-war activities of this organization certainly sheds light on the 'operations and activities' of the Government. Mr. Schoenman, a published author, intends to use these materials in a political memoir he is writing.

*Id.*

By letter dated November 18, 2003, OIP made a supplemental release of additional portions of six pages previously released to Plaintiff but affirmed all other withholdings by the FBI. *Id.* ¶ 14. In addition, OIP affirmed the FBI's denial of a fee waiver. *Id.* OIP conceded that Plaintiff had "amply demonstrated that [he] has the capacity to disseminate the requested information and that he does not appear to have an overriding commercial interest in the records." *Id.*, Ex. I. However, OIP contended that Plaintiff had not shown that disclosure of the records is likely to contribute significantly to public understanding of the operations and activities of the government and concluded that the released material largely consisted of information that would not contribute to the public understanding of the FBI's operations and activities because: (1) 200 of the 270 pages of released materials are copies of publications by the Bertrand Russell Peace Foundation and therefore originate outside of the government; (2) an additional portion of the materials contain biographical information about or public statements by persons affiliated with the Foundation; and (3) a small portion of the released material contain only administrative materials that do not include substantive content. *Id.* Accordingly, the imposition of $17.00 in duplication fees was upheld. *Id.*

    e.  FOIA Request Number 948769 (International War Crimes Tribunal)

Plaintiff's request pertaining to the International War Crimes Tribunal was assigned FOIA Request Number 948769. *Id.* ¶ 15. By letter dated November 3, 2003, FBHIQ advised

Plaintiff that 775 pages of 1,458 pages of responsive material were being released and that the

relevant withholdings had been made pursuant to FOIA Exemptions 1, 2, 3, 7(C) and 7(D).  *Id.*

¶¶ 15-16.  FBIHQ also informed Plaintiff that referrals of responsive documents had been made

to other agencies.  *Id.* ¶ 16.  Finally, FBIHQ advised Plaintiff that his request for a fee waiver was

denied because Plaintiff had "not demonstrate[d] the ability to disseminate information to the

public at large" and Plaintiff was therefore assessed duplicating fees totaling $67.50.  *Id.* & Ex.

K.

By letter dated November 8, 2003, Plaintiff appealed the FBI's withholdings and fee

wavier decision to OIP.  *Id.* ¶ 17.  Specific to the denial of his request for a fee waiver, Plaintiff

argued that the FBI's determination that he had not demonstrated his ability to disseminate the

information wrongly ignored that Plaintiff is a published author, as explained in his original

FOIA/PA request.  *Id.*, Ex. M.  In July of 2008, during the pendency of the instant litigation, OIP

finally informed Plaintiff that it had determined Plaintiff was entitled to a partial fee waiver and

reduced the duplicating fees charged by 15%, to $57.00.  *Id.* ¶ 18 and Ex. N.  Although OIP

agreed that Plaintiff does not appear to have an overriding commercial interest in the records and

that, contrary to the FBI's original statement, Plaintiff has shown that he could disseminate the

information to the public at large, it admonished Plaintiff for not providing a more particular

showing that disclosure of the records is likely to contribute significantly to public understanding

of the operations and activities of the government.  *Id.*, Ex. N.  Nonetheless, OIP reviewed the

material at issue and determined that a portion of the released records (15%) "do[es] concern the

operations or activities of the FBI," and thus found that Plaintiff is entitled to a partial fee waiver.

*Id.*  OIP determined, however, that the remaining portion of the materials (85%) consists of

information that would not contribute to the public understanding of the FBI's operations and activities. Specifically, OIP concluded that approximately 60% of the released materials do not qualify for a fee waiver because: (1) the materials contain substantive content that has been determined exempt under one or more of the FOIA Exemptions; (2) the materials are duplicates of records already released to Plaintiff; (3) the materials are repetitive of information already released to Plaintiff; and (4) the materials contain only administrative information. *Id.* In addition, approximately 25% of the released materials originate from outside the government (*e.g.*, transcript of a broadcast from Hanoi, North Vietnam, a report from the International War Crimes Tribunal, various published articles and newsletters, as well as copies of newspaper articles). *Id.* Accordingly, OIP granted only a 15% reduction of the duplication fees, thereby reducing the fees owed to $57.00. *Id.*

## 2. London Legat

By letter dated September 22, 2001, the London Legat confirmed receipt of Plaintiff's FOIA/PA request and advised Plaintiff that it was forwarding the request to FBIHQ. *Id.* ¶ 61. FBIHQ subsequently located 275 pages of responsive material and, on January 31, 2007 (*i.e.*, after this litigation had commenced), released (through OIP) 260 pages with redactions made pursuant to FOIA Exemptions 1, 2, 6, 7(C), and 7(D). *Id.* ¶ 62.

## 3. Los Angeles Field Office

Initially, the Los Angeles Field Office ("LAFO") advised Plaintiff, by letter dated August 14, 2001, that a privacy waiver or proof of death was needed before it could conduct a search for records pertaining to Lord Bertrand Russell, but that as to Plaintiff's other requests, no responsive records had been located upon initial review. *Id.* ¶ 29. Plaintiff subsequently

provided proof of death as to Lord Bertrand Russell and appealed the LAFO's "no records" determination to OIP. *Id.* ¶¶ 30-31. LAFO subsequently informed Plaintiff that it had located records regarding both Plaintiff himself and Lord Bertrand Russell and that those records were being forwarded to FBIHQ for processing. *Id.* ¶ 33. LAFO advised, however, that no responsive records as to the other subjects of his request had been located. *Id.*

On June 5, 2006, the Court dismissed without prejudice Plaintiff's claim against LAFO, to the extent it related to his request for records relating to Lord Bertrand Russell. *Schoenman v. FBI*, Civ. Act. No. 04-2202, 2006 WL 1582253, *13 (Jun. 5, 2006) (CKK). Accordingly, the only responsive records located by LAFO that remain at issue are those pertaining to Plaintiff himself, which the Court now turns to.

Plaintiff's request to LAFO for records pertaining to himself was assigned FOIA Request Number 954768. *Id.* ¶ 34. As stated above, LAFO located records regarding Plaintiff himself, and informed Plaintiff that those records were being forwarded to FBIHQ for processing. *Id.* ¶ 33. On April 26, 2005, FBIHQ informed Plaintiff that it had located 752 pages of responsive material and was releasing 552 of those pages, with redactions made pursuant to FOIA Exemptions 1, 2, 7(C) and 7(D) and PA Exemption j(2). *Id.* ¶ 37. FBIHQ also informed Plaintiff of consultations and referrals made to other agencies. *Id.* Finally, FBIHQ assessed Plaintiff $42.50 in duplication fees, which Plaintiff subsequently paid. *Id.*

FBIHQ subsequently released additional pages upon consultation with other government agencies. First, by letter dated November 29, 2005, FBIHQ informed Plaintiff that an additional three pages of responsive material was being released after consultation with the Department of the Army. *Id.* ¶ 38. Redactions were made by the FBI pursuant to FOIA Exemptions 1, 2, 6,

7(C) and 7(D) as well as PA Exemption j(2), while redactions were made by the Army pursuant to FOIA Exemption 6. *Id.* Second, by another letter dated that same day, November 29, 2005, FBIHQ advised Plaintiff that an additional 90 pages of responsive material was being released after consultation with the State Department. *Id.* ¶ 39. Redactions were made by the FBI pursuant to FOIA Exemptions 1, 2, 6, 7(C) and 7(D) as well as PA Exemption j(2), while redactions were made by the State Department pursuant to FOIA Exemptions 1 and 6. *Id.* Third and finally, by a letter sent on May 22, 2006, FBIHQ informed Plaintiff that an additional 79 pages of responsive material (out of 90 pages reviewed in consultation with that agency) were being released, with withholdings made pursuant to FOIA Exemptions 1, 2, 7(C) and 7(D). *Id.* ¶ 40.

### 4.    New York City Field Office

By letter dated May 21, 2002, the New York City Field Office ("NYFO") informed Plaintiff that records were located regarding Plaintiff himself and the Citizens Commission of Inquiry and that those records were being forwarded to FBIHQ for processing. *Id.* ¶ 42. No records were found responsive to the other subjects of Plaintiff's FOIA/PA request. *Id.* The Court notes it dismissed without prejudice Plaintiff's claim against NYFO for failure to exhaust administrative remedies to the extent it concerned NYFO's "no records" determination as to all subjects, save Plaintiff and the Citizens Commission of Inquiry. *See Schoenman v. FBI*, Civ. Act. No. 04-2202, 2006 WL 1582253, *14-15 (D.D.C. Jun. 5, 2006) (CKK). Accordingly, the only Plaintiff's claim as it concerns his request to NYFO for records regarding the Citizens Commission of Inquiry and himself remain at issue.

a.      FOIA Request Number 963707 (Citizens Commission of Inquiry)

By letter dated August 16, 2002, FBIHQ acknowledged receipt of Plaintiff's request

concerning the Citizens Commission of Inquiry and assigned it FOIA Request Number 963707.

*Id.* ¶ 43.  Thereafter, on March 24, 2004, FBIHQ notified Plaintiff that it had located 818 pages

of responsive materials and was releasing 736 pages to Plaintiff, with withholdings made

pursuant to FOIA Exemptions 1, 2, 7(C) and 7(D).  *Id.* ¶ 45.  FBIHQ also informed Plaintiff that

it had referred responsive materials to other agencies.  *Id.*  Finally, FBIHQ assessed Plaintiff

$63.60 in duplications fees, although it neither explicitly stated that it was denying Plaintiff's fee

waiver request nor provided a reason for doing so.  *Id.*, Ex. OO.

Plaintiff thereafter appealed the withholdings and denial of the fee waiver.  *Id.* ¶ 46.  In

July of 2008, during the pendency of the instant litigation, OIP finally informed Plaintiff that it

had determined he is entitled to a partial fee wavier and reduced the duplicating fees charged by

25%, to $47.70.  *Id.* ¶ 48 & Ex. RR.  Although OIP agreed that Plaintiff does not appear to have

an overriding commercial interest in the records and that Plaintiff has shown that he could

disseminate the information to the public at large, it admonished Plaintiff for not providing a

more particular showing that disclosure of the records is likely to contribute significantly to

public understanding of the operations and activities of the government.  *Id.*, Ex. RR.

Nonetheless, OIP reviewed the material at issue and determined that a portion of the released

records (25%) "do[es] concern the operations or activities of the FBI," and thus found that

Plaintiff is entitled to a partial fee waiver.  *Id.*  OIP determined, however, that the remaining

portion of the materials (75%) consists of information that would not contribute to the public

understanding of the FBI's operations and activities.  Specifically, OIP concluded that

13

approximately 50% of the released materials do not qualify for a fee waiver because: (1) the

materials contain substantive content that has been determined exempt under one or more of the

FOIA Exemptions; (2) the materials are duplicates of records already released to Plaintiff; (3) the

materials are repetitive of information already released to Plaintiff; and (4) the materials contain

only administrative information.  *Id.*  In addition, approximately 25% of the released materials

originate from outside the government (*e.g.*, transcript of a broadcast from Hanoi, North

Vietnam, a report from the International War Crimes Tribunal, various published articles and

newsletters, as well as copies of newspaper articles).  *Id.*  Accordingly, OIP granted only a 25%

reduction of the duplication fees, thereby reducing the fees owed to $47.70.  *Id.*

> b.      FOIA Request Number 951311-001 (Plaintiff himself)

By letter dated February 9, 2007—*i.e.*, during the instant litigation—FBIHQ (through

OIP) advised Plaintiff that it had located 102 pages of responsive materials and was releasing 94

pages, with redactions made pursuant to FOIA Exemptions 1, 2, 3, 6, 7(C) and 7(D), as well as

PA Exemption j(2).  *Id.* ¶ 63.

> 5.      San Francisco Field Office

By letter dated August 16, 2001, the FBI's San Francisco Field Office ("SFFO") advised

Plaintiff that no responsive records had been located regarding Plaintiff himself, the Bertrand

Russell Peace Foundation - New York, the Who Killed Kennedy Committee, the Bertrand

Russell Research Center and the Citizens Commission of Inquiry.  *Id.* ¶ 50.  Plaintiff thereafter

appealed this "no records" determination.  *Id.* ¶ 52.  OIP subsequently affirmed the FBI's "no

records" determination except as to the Citizens Commission of Inquiry, concerning which OIP

determined that four pages of material should be released in full to Plaintiff.  *Id*. ¶ 60.  The FBI

has not indicated that it located any additional material responsive to any of the above subjects.

As concerns Plaintiff's requests for records relating to the Bertrand Russell Foundation, the International War Crimes Tribunal, and Lord Bertrand Russell, however, SFFO advised Plaintiff that responsive records had been located and processed, as discussed below. *Id.* ¶ 50.

        a.     FOIA Request Number 190-SF-130542 (Bertrand Russell Peace Foundation)

By letter dated November 5, 2001, SFFO notified Plaintiff that 16 pages of responsive material had been located and that it was releasing to Plaintiff 16 pages, with redactions being made pursuant to FOIA Exemptions 1, 2, 7(C) and 7(D). *Id*. ¶ 53. Plaintiff thereafter appealed this determination to OIP. *Id.* ¶ 55. OIP affirmed the FBI's decision. *Id.* ¶ 60.

        b.     FOIA Request Number 190-SF-130541 (International War Crimes Tribunal)

The SFFO also notified Plaintiff on November 5, 2001, that it had located 50 pages of responsive material and that it was releasing 48 pages to Plaintiff, with redactions made pursuant to FOIA Exemptions 1, 2, 3, 7(C) and 7(D). *Id.* ¶ 54. Plaintiff thereafter appealed this determination to OIP. *Id.* ¶ 55. OIP affirmed the FBI's decision. *Id.* ¶ 60.

        c.     FOIA Request Number 190-SF-130540 (Lord Bertrand Russell)

By letter dated February 27, 2002, SFFO notified Plaintiff that it had located 21 pages of responsive material and was releasing 19 pages to Plaintiff, with redactions made pursuant to FOIA Exemptions 1, 2, 3, 7(C) and 7(D). *Id.* ¶ 57. Plaintiff thereafter appealed this determination to OIP. *Id.* ¶ 58. OIP affirmed the FBI's decision. *Id.* ¶ 60.

*B.*    *Procedural History*

Plaintiff filed the instant lawsuit on December 20, 2004. *See* Compl., Docket No. [1]. As

is relevant to the parties' cross-motions, the FBI filed a partial motion to dismiss, which the Court subsequently granted-in-part and denied-in-part. *See Schoenman v. FBI*, Civ. Act. N. 04-2202, 2008 WL 1582253, *9-12 (D.D.C. Jun. 5, 2006). As discussed above, the Court dismissed without prejudice Plaintiff's claim against the FBI to the extent it concerned: (1) his request to the Paris Legat for records relating to the Who Killed Kennedy Committee and the Citizens Commission of Inquiry; (2) his request to LAFO for records relating to Lord Bertrand Russell; and (3) his request to NYFO for records pertaining to the Bertrand Russell Peace Foundation (including the New York office), the International War Crimes Tribunal, the Who Killed Kennedy Committee, the Bertrand Russell Research Center, and Lord Bertrand Russell. *See id.* at *9-15.

In addition, the Court notes that the parties agreed to proceed with their cross-motions for summary judgment based upon a sample—to be selected by Plaintiff—of the documents withheld in full or in part by the FBI. *See* 3/21/07 Joint Status Report, Docket No. [34] at 4; 10/24/07 Joint Status Report, Docket No. [41] at 2. By letter dated October 10, 2007, Plaintiff provided the FBI with a list of 170 items to be the subject of the FBI's *Vaughn* index. *See* First Hardy Decl., Ex. A. The FBI filed its Preliminary *Vaughn* Index on June 30, 2008, Docket No. [68], and its Motion for Summary Judgment on July 29, 2008, Docket No. [73]. Plaintiff filed his Cross-Motion/Opposition on September 25, 2008. *See* Docket No. [92]. The FBI filed its Reply/Opposition on October 23, 2008, *see* Docket Nos. [97] & [98], and Plaintiff filed his Reply on November 19, 2008, *see* Docket No. [100].

Thereafter, in response to issues raised in Plaintiff's Reply, the FBI filed an unopposed motion to supplement its *Vaughn* index, *see* Docket No. [101], which the Court granted, *see*

16

12/15/08 Min. Order.  The FBI subsequently filed its supplemental *Vaughn* index on March 6,

2009.  Docket No. [103].  In response, Plaintiff filed a Motion for an Order Requiring the FBI to

Provide a Complete *Vaughn* Index, *see* Docket No. [105], as well as a Notice, submitted at the

request of the Court, clarifying the relief he currently seeks, *see* Docket No. [108].  The FBI

thereafter filed a Partial Opposition to Plaintiff's Motion for an Order Requiring the FBI to

Provide a Complete *Vaughn* Index.  *See* Docket No. [109].  Accordingly, the parties' cross-

motions for summary judgment, as well as Plaintiff's motion requesting the Court order the FBI

to submit a complete *Vaugh*n index, are now ripe for review.

## II.  LEGAL STANDARDS

*A.      FOIA*

In reviewing a motion for summary judgment under FOIA, the Court must conduct a *de*

*novo* review of the record.  *See* 5 U.S.C. § 552(a)(4)(B).  In the FOIA context, "*de novo* review

requires the Court to 'ascertain whether the agency has sustained its burden of demonstrating that

the documents requested . . . are exempt from disclosure under [] FOIA.'"  *Assassination*

*Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. DOJ*,

140 F.3d 1077, 1080 (D.C. Cir. 1998)).  Summary judgment is proper when "the pleadings, the

discovery [if any] and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists only when there is sufficient

evidence such that a reasonable juror could find for the party opposing the motion.  *Anderson v.*

*Liberty Lobby Inc.*, 477 U.S. 242, 251-52 (1986).

Under FOIA, all underlying facts and inferences are analyzed in the light most favorable

to the FOIA requester; as such, only after an agency seeking summary judgment proves that it has

fully discharged its FOIA obligations is summary judgment appropriate.  *Moore v. Aspin*, 916 F.

Supp 32, 35 (D.D.C. 1996) (citing *Weisberg v. DOJ*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).  In

opposing a motion for summary judgment, a party must offer more than conclusory statements.

*See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing

*Laningham v. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)), *aff'd* 38 Fed. Appx. 20 (D.C. Cir.

2002).  Indeed, a plaintiff pursuing an action under FOIA must establish that the agency has

improperly claimed an exemption as a matter of law or that the agency has failed to segregate and

disclose all non-exempt information in the requested documents.  *See Perry-Torres v. Dep't of*

*State*, 404 F. Supp. 2d 140, 142 (D.D.C. 2005).

Congress enacted FOIA for the purpose of introducing transparency to government

activities.  *See Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984).  Congress remained sensitive,

however, to the need to achieve balance between this objective and the vulnerability of

"legitimate governmental and private interests [that] could be harmed by release of certain types

of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871,

872 (D.C. Cir. 1992); *see also Summers*, 140 F.3d at 1079.  Accordingly, FOIA provides nine

exemptions pursuant to which an agency may withhold requested information.  *See* 5 U.S.C. §§

552(a)(4)(B), (b)(1)-(9).  The agency must demonstrate the validity of any exemption that it

asserts.  *See id.*; *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) ("[c]onsistent with the

purpose of the Act, the burden is on the agency to justify withholding requested documents").  In

addition, summary judgment may be granted on the basis of the agency's accompanying

affidavits or declarations if they describe "the justifications for nondisclosure with reasonably

specific detail, demonstrate that the information withheld logically falls within the claimed

exemption, and are not controverted by either contrary evidence in the record nor evidence of

agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  These

affidavits may be submitted by an official who coordinated the search, and need not be from each

individual who participated in the search.  *See SafeCard Servs. v. Sec. & Exch. Comm'n*, 926

F.2d 1197, 1200 (D.C. Cir. 1991).

     An agency also has the burden of detailing what proportion of the information in a

document is non-exempt and how that material is dispersed throughout the document.  *Mead*

*Data Cent. Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).  Any non-exempt

information that is reasonably segregable from the requested records must be disclosed.  *Oglesby*

*v. Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996).  In addition, district courts are required to consider

segregability issues *sua sponte* even when the parties have not specifically raised such claims.

*Trans-Pac. Policing Agreement v. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

     *B.*     *Privacy Act*

     The Privacy Act of 1974 regulates the collection, maintenance, use, and dissemination of

an individual's personal information by agencies within the federal government.  *See* 5 U.S.C. §

552a(e).  The PA provides that any agency that retains a system of records "shall maintain . . .

only such information about an individual as is relevant and necessary to accomplish a purpose

of the agency required to be accomplished by statute or executive order of the President."  5

U.S.C. § 552a(e)(1).  To provide for openness and accountability, the PA ensures that "upon

request by any individual to gain access to his record or to any information pertaining to him

which is contained in the system," the agency shall provide the individual with access to review

such records.  5 U.S.C. § 552a(d)(1).  Finally, subject to certain exceptions, the Privacy Act

states that disclosure of records shall be limited. 5 U.S.C. § 552a(b) ("[n]o agency shall disclose

any record which is contained in a system of records by any means of communication to any

person, or to another agency, except pursuant to a written request by, or with the prior written

consent of, the individual to whom the record pertains").  One of these exceptions, however, is

that an agency shall disclose such records that would be required to be disclosed pursuant to

FOIA.  5 U.S.C. § 552a(b)(2).  In actions seeking documents under both FOIA and the Privacy

Act, a defendant agency must show that the information is properly subject to both FOIA and

Privacy Act exemptions.  *See Martin v. Off. of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir.

1987).

## III.  DISCUSSION

In considering the parties' cross-motions and Plaintiff's motion for an order requiring the

FBI to provide a complete *Vaughn* index, the Court first addresses Plaintiff's challenge to the

FBI's denial of his requests for a fee waiver.  The Court then turns to Plaintiff's challenges to the

adequacy of the FBI's *Vaughn* index and his request that the FBI be required to provide a

complete index, before finally considering the reasonableness of the FBI's search.

A.      *Public Interest Fee Waiver Request*

In general, "a FOIA requester must pay reasonable costs for the search, review, and

duplication of the records sought."  *Judicial Watch, Inc. v. Dep't of Transp.*, Civ. No. 02-566,

2005 WL 1606915, at *3 (D.D.C. July 7, 2005) (hereinafter "*Judicial Watch I*") (citing 5 U.S.C.

§ 552(a)(4)(A)(ii)(I)).  However, an agency must waive or reduce fees for search, review, or

duplication of documents if (1) "disclosure of the information is in the public interest because it

20

is likely to contribute significantly to public understanding of the operations or activities of the government" and (2) "is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii).  The FOIA requester bears the initial burden of proving that it meets both prongs.  *Judicial Watch I*, 2005 WL 1606915 at *3 (citing *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988)).  According to legislative history, the FOIA fee waiver provision "'is to be liberally construed in favor of waivers for noncommercial requesters.'"  *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (quoting 132 Cong. Rec. 27, 90 (1986) (Sen. Leahy)).

In reviewing an agency's determination on a fee waiver issue, a district court must apply a *de novo* standard of review and look only to the administrative record that was before the agency at the time of its decision.  5 U.S.C. § 552(a)(4)(A)(vii); *D.C. Technical Assistance Org. v. Dep't of Hous. & Urban Dev.*, 85 F. Supp. 2d 46, 48 (D.D.C. 2000).  "The record before the agency 'consists of, *inter alia*, the initial FOIA request, the agency's response, and any subsequent materials related to the administrative appeal.'" *Jarvik v. CIA*, 495 F. Supp. 2d 67, 71 (D.D.C. 2007) (quoting *Forest Guardians v. Dep't of the Interior*, 416 F.3d 1173, 1177 (10th Cir. 2005)). In addition, fee waiver requests must be made with 'reasonable specificity,' *Larson*, 843 F.2d at 1483, and contain more than 'conclusory allegations,' *Nat'l Treasury Employees Un. v. Griffin*, 811 F.2d 644, 647 (D.C. Cir. 1987).

At issue in the instant cross-motions are the FBI's determinations that Plaintiff is not entitled to a full fee waiver as requested regarding: (1) FOIA Request Number 948768 to the Paris Legat regarding the Bertrand Russell Peace Foundation; (2) FOIA Request Number 948769 to the Paris Legat regarding the International War Crimes Tribunal; and (3) FOIA Request

Number 963707 to the NYFO regarding the Citizens Commission of Inquiry.[7]  As discussed

above, Plaintiff made the identical request for a fee waiver in all three instances.  *See supra* p. 4.

The FBI ultimately concedes that Plaintiff has demonstrated that he has the capacity to

disseminate the requested information and that he does not have an overriding commercial

interest in the records, but disputes whether all of the material sought is likely to contribute

significantly to public understanding of the operations or activities of the government.  *See*

Second Hardy Decl., Exs. I, N & RR.  Specifically, as to two of the three requests at issue (FOIA

Request Numbers 948769 and 963707), the FBI granted Plaintiff a partial fee waiver (of 15% and

25% respectively), based upon its determination that only some of the material released to

Plaintiff is likely to contribute significantly to public understanding.  *See id.* ¶¶ 18, 48.  As to the

third request (FOIA Request Number 948768), the FBI determined that none of the material

released to Plaintiff is likely to contribute significantly to public understanding of the FBI's

operations and activities and therefore denied Plaintiff's request in full.  *See id.,* Ex. I.

Accordingly, the primary issue in dispute is whether the FBI (through OIP) correctly determined

that disclosure of the majority of the released materials would not significantly further public

understanding about the FBI's operations and activities.[8]

---

[7]Plaintiff is not challenging the FBI's denial of his request for a fee waiver for duplication fees relating to his FOIA/PA request to LAFO for records pertaining to himself.

[8]Given the FBI's determination that Plaintiff is entitled to a partial fee waiver in two of the three instances at issue, the Court understands that the FBI has also conceded that Plaintiff's request was adequate on its face—*i.e.*, that the only issue in dispute is whether certain released records in fact qualify for the fee waiver, not whether Plaintiff has sufficiently set forth the public interest necessary to be eligible for a fee waiver in the first place.  Although the FBI's briefing contains some language suggesting that it believes Plaintiff may have in fact failed to provide the necessary degree of "reasonable specificity" required to warrant a fee waiver in the first instance, this argument, if asserted, is puzzling in light of the FBI's determination that the Plaintiff's

Specifically, in denying Plaintiff's requests for a full fee waiver, the FBI reviewed the

information released to Plaintiff and determined that various categories of material do not qualify

for a waiver of duplication fees.  Although the percentage of the material at issue varies between

each of the three FOIA requests, the FBI uniformly identified the following categories of

information as ineligible for a waiver of duplication fees: (1) material containing substantive

content that has been determined exempt under one or more of the FOIA Exemptions; (2)

material that is repetitive of information already released to Plaintiff; (3) material that contains

only administrative information; (4) material that originates outside the government and/or is

already in the public domain; and (5) material that contains information duplicative of material

already provided to Plaintiff.  *See* Second Hardy Decl., Exs. I, N & RR.  The FBI therefore

denied Plaintiff a full waiver of duplication fees in all three instances.  *See id.*  The Court

concludes that the FBI's determination, however, is based on several flawed assumptions.

First, the FBI alleges that Plaintiff is not entitled to a fee waiver for duplication of

material that "consists of records the substantive content of which—and the very portion most

likely to be considered for a fee waiver if not exempt—has been determined to be exempt under

---

request should be granted, at least in part, in two of the three instances at issue—that is, that
Plaintiff has met his *initial* burden of identifying the public interest served in those instances.
Notably, the FBI is not arguing that the Court should find that Plaintiff's request for fee waivers
in those instances should have been denied in full.  Moreover, as the language in each of the
requests at issue is identical and as the FBI has not provided any reason for treating the language
differently between the Plaintiff's three requests, there is no support for the contention that
Plaintiff's request to the Paris Legat is sufficient on its face as to FOIA Request Number 948769
(which was partially granted), but not as to FOIA Request Number 948768 (which was denied in
full).  Accordingly, given that "uniformity in FOIA interpretations within a given agency" is a
desired goal*, see Oglesby v. Dep't of Army*, 920 F.2d 57, 64 (D.C. Cir. 1990), the Court proceeds
with the understanding that the FBI has conceded that Plaintiff's request in all three instances is
sufficiently detailed to establish eligibility as an initial matter and that the only issue in dispute is
whether certain categories of released records do not specifically qualify for the fee waiver.

one or more FOIA exemptions."  Second Hardy Decl., Ex. N at 3.  The Court agrees with

Plaintiff, however, that a requester's FOIA request "should be evaluated based on the face of the

request and the reasons given by the requestor in support of the wavier,' not on the possibility

that the records may ultimately be determined to be exempt from disclosure."  *Judicial Watch I*,

2005 WL 1606915, *5 (internal quotation marks omitted).  The Court is persuaded that "a

defendant agency cannot base a fee waiver determination upon anticipated redactions to the

requested records . . . because such a maneuver 'clearly places the cart before the horse.'"  *So.*

*Utah Wilderness Alliance v. U.S. Bureau of Land Mgmt.*, 402 F. Supp.2d 82, 90 (D.D.C. 2005)

(quoting *Project on Military Procurement v. Navy*, 710 F. Supp. 362, 367 (D.D.C. 1989); *see*

*also Judicial Watch, Inc. v. Dep't of Energy*, 310 F. Supp. 2d 271, 295 (D.D.C. 2004)

(hereinafter "*Judicial Watch II*") ("It would be contrary to the express provisions of the FOIA to

'invert the burden of proof' and force a plaintiff not only to demonstrate that it satisfies the

public interest exception analysis and is entitled to a fee waiver, but also to demonstrate that the

defendant agency's contemplated withholdings are not properly claimed."), *rev'd in part on other*

*grounds*, 412 F.3d 125 (D.C. Cir. 2005).  The FBI urges that the Court should find to the contrary

because, in this instance, the FBI has already made the withholdings in question, and the

invocation of certain FOIA Exemptions is therefore not "anticipated," as that term was used in

*Southern Utah Wilderness Alliance* and *Project on Miliary Procurement*.  FBI's Opp'n/Reply at

11.  First, this distinction is not one that courts have necessarily relied on.  *See, e.g., Judicial*

*Watch I*, 2005 WL 1606915, at *5 (rejecting agency's denial of fee waiver based on its

determination that most of the requested documents would be exempt, even though exemptions

had already been made and presented to the Court for litigation).  More importantly, however, the

fact that the withholdings in this case were made prior to the FBI's final decision on the fee

waiver request is due largely to the FBI's significant delay in ruling on Plaintiff's appeal, waiting

until July of 2008 to issue a decision as to two of the three fee waiver requests.  *See supra* pp. 9-

10, 13-14.  The Court is not persuaded that the FBI should benefit from its own delay.

Accordingly, the Court finds that, in this instance, the FBI improperly determined that certain

records are not qualified for a fee waiver because they contain exempt material.

Second, the FBI alleges that Plaintiff is not entitled to a fee waiver for duplication of

material that is repetitive of information already released to Plaintiff.  The D.C. Circuit, however,

has made clear that an agency may not deny a fee waiver for the copying of repetitive, non-

duplicative material.  *Campbell v. DOJ*, 164 F.3d 20, 36 (D.C. Cir. 1998).  "A scholar has a

strong interest in reviewing each repetition of a given topic within a file or set of files to explore

the nuances and assess the manner in which the government handled the information."  *Id.*

Accordingly, the Court concludes that the FBI improperly determined that certain records are not

qualified for a fee waiver because they contain repetitive material.[9]

Third, the FBI alleges that Plaintiff is not entitled to a fee waiver for duplication of

---

[9]Although the DOJ's own regulations provide that "[t]he disclosure of information that already is in the public domain, in either a duplicative or a substantially identical form, would not be as likely to contribute to such understanding where nothing new would be added to the public's understanding," 28 C.F.R. § 16.11(k)(2)(ii), this Circuit does not defer to an agency's interpretation of the FOIA fee waiver provision, *Tax Analysts v. IRS*, 117 F.3d 607, 613 (D.C. Cir. 1997) (declaring that "we will not defer to an agency's view of FOIA's meaning . . . [because] the meaning of FOIA should be the same no matter which agency is asked to produce its records") (citations omitted)); *see also Judicial Watch v. Rossotti*, 326 F.3d 1309, 1313 (D.C. Cir. 2003) ("we emphasize that we owe no particular deference to the IRS's interpretation of FOIA").  Accordingly, where, as here, the agency's regulations contradict established precedent in this Circuit, the Court is bound to apply the D.C. Circuit's case law—not the agency's own regulation.

certain pages that contain only administrative information.  To the contrary, however, the D.C.

Circuit has observed that "the presence of administrative material within files that also contain

substantive documents does not justify charging fees for copying the non-substantive clutter." *Id.*

"The fee wavier provisions implicitly assume that valuable government information tends not to

be free standing . . . [and] Congress presumably did not intend agencies to pick through

responsive records to determine the percentage of the record that contains interesting morsels and

to deem the remainder of the records irrelevant to public understanding." *Id.*  Accordingly, the

"more plausible reading of the statute is that once a given record is deemed to contain

information warranting a wavier, all of the related pages within that record that are responsive to

the FOIA request fall under the waiver even if each individual page would not independently

qualify." *Id.*[10]

Fourth, the FBI alleges that Plaintiff is not entitled to a fee waiver for duplication of

material that originates outside the government, such as various published newspaper articles and

newsletters, copies of publications produced by the organizations at issue, transcripts of a North

Vietnamese radio broadcast, as well as public statements made by members of the target

organizations, to name a few examples.  Because the information originates, not from the FBI,

but from outside the government, the FBI urges the Court to categorically find that the

information cannot contribute significantly to the understanding of the FBI's operations and

activities.  Plaintiff counters that a categorical rule rendering all documents originating from

---

[10]Although the D.C. Circuit left open the possibility that "[a] different standard might
apply to records or files that are uncommonly large or that contain only a few substantive
documents relative to the volume of administrative information," *Campbell*, 164 F.3d at 36, n.
16, the FBI has not argued that either situation applies here nor does the Court find that the files
at issue are uncommonly large or contain relatively little substantive information.

outside the government is illogical and that in this case, the materials do show what information was targeted by the FBI in its investigations and how such information was collected.  *See* Pl.'s Reply at 9-10.

The Court ultimately agrees with Plaintiff, as the FBI has not directed the Court to any persuasive legal support for its position that all documents originating from outside the government are categorically ineligible for a fee waiver, and the Court finds that such a rule would be in contravention of Congress' mandate that the FOIA's fee waiver provisions should be liberally construed in favor of fee waivers, *see Citizens for Responsibility and Ethics in Washington v. Dep't of Health and Human Servs.*, 481 F. Supp. 2d 99, 113 (D.D.C. 2006).  As support for its assertion, the FBI cites to three cases, each of which the Court finds inapposite to the situation at hand.  First, the FBI cites to *Brown v. Patent and Trademark Off.*, 445 F. Supp. 2d 1347, 1358-59 (M.D. Fla. 2006), in which the plaintiff filed a FOIA request seeking a copy of the log kept of all lawsuits that had been brought against the agency since a certain date.  The court determined that "[l]awsuit allegations brought against the USPTO are not related to the USPTO's identifiable operations and activities in a clear and direct manner."  *Id.* at 1359.  A listing of lawsuits brought by third-parties against a government agency is, however, a far cry from material that, although produced by a third-party, was specifically gathered and selected by the FBI.  The Court is unpersuaded that this decision has particular relevance to the material at hand, or that the case supports a categorical rule that material originating from outside the government cannot aid public understanding as to governmental activities.  Second, the FBI cites to *Judicial Watch, Inc. v. Reno*, No. Civ. A. 00-0723, 2001 WL 1902811, *10 (D.D.C. Mar. 20, 2001), in which the court upheld the DOJ's denial of a fee waiver for reproduction of letters

27

written by the public to the agency concerning its handling of the Elian Gonzales matter, finding

that "the letters themselves do not shed any light on the operations and activities of the

government." *Id.*  Again, however, the Court is unpersuaded that unsolicited letters from third-

parties to a government agency are comparable to the materials at issue in this case, which were

directly targeted and collected by the FBI.  Nor does the Court agree that the decision supports a

categorical rule denying a fee waiver for material originating from outside the government.

Finally, the FBI cites to *S.A. Ludsin & Co. v. SBA*, No. Civ. A. 96-2146, 1997 WL 337469, *5

(S.D.N.Y. Jun. 19, 1997), in which the court upheld the denial of a fee waiver for duplication

fees relating to records appraising the value of the agency property.  As the subject matter did not

concern the operations and activities of the agency, the court determined the materials did not

qualify for a fee waiver.  *Id.*  The FBI does not explain how the materials at issue are similar to

appraisals of government property, nor can the Court see a logical connection between property

appraisals and the materials at issue here.  Put simply, none of the cases cited by the FBI support

its claim that a blanket denial of a fee waiver request is appropriate based solely on the fact that

the materials did not originate from the government itself.

  To the contrary, the fact that released material includes various newspapers or brochures

originating from third-parties does not necessarily preclude an agency from granting a fee waiver.

*Cf. Campbell*, 164 F.3d at 36 ("[T]he fact that FBI work-product incorporates publicly available

information does not detract from its value independent of the source material."); *Ctr. for

Reprocess Advocacy, Inc. v. Dep't of Health and Human Servs.*, 577 F. Supp. 2d 221, 240

(D.D.C. 2008) (conclusion that information sought concerned activities and operations

undertaken by the government "is not altered by fact that some of the released documents were

brochures and pamphlets submitted by private parties"). In this case, the materials at issue were

collected by the FBI *because* they originate from third-party entities and individuals—*i.e.*, the

very organizations and individuals the FBI was investigating. The Court is persuaded that, in this

instance, information targeted and collected by the FBI as part of its investigations into the

"peace/anti-war movement of the 1960's," *see* Third Hardy Decl. ¶ 15, can provide insight into

the manner in which the FBI conducted its investigations of these various organizations and

entities. *Cf. Ctr. for Medicare Advocacy*, 577 F. Supp. 2d at 240-41 (finding that third-party

material solicited by an agency "can therefore provide insight on the operations and factors under

consideration by the agency"). Nor does "the mere fact that material is in the public domain []

justify denying a fee wavier; only material that has met a threshold level of public dissemination

will not further 'public understanding' within the meaning of the fee waiver provisions."

*Campbell*, 164 F.3d at 37. Accordingly, the Court finds that, in this instance, the FBI improperly

determined that certain records are not qualified for a fee waiver solely because they contain

material originating from outside the government.

Finally, the FBI alleges that Plaintiff is not entitled to a fee waiver for reproduction of

material that contains information duplicative of material already provided to Plaintiff. Although

the D.C. Circuit has suggested that denial of a fee waiver for copying duplicate documents may

be legitimate, *see Campbell*, 164 F.3d at 37, n.17, the Court is not persuaded that the presence of

duplicate materials justifies the denial of a fee waiver in this instance. As the D.C. Circuit

observed in that same case:

> Congress presumably did not intend agencies to pick through responsive records to
> determine the percentage of the record that contains interesting morsels and to deem
> the remainder of the record irrelevant to public understanding. The more plausible
> reading of the statute is that once a given record is deemed to contain information

warranting a waiver, all of the related pages within that record that are responsive to the FOIA request fall under the waiver even if each individual page would not independently qualify.

*Id.* at 36.  Here, the FBI did just what the D.C. Circuit stated Congress did not intend—*i.e.*, conducted a page-by-page review of the materials at issue, picking through the records and determining which particular pages did and did not qualify for a fee waiver.  The Court has already found that the majority of those determinations are based on false assumptions.

Accordingly, the FBI wrongly concluded that most of the material at issue does not qualify for a fee waiver, and, given that conclusion, the Court does not agree that the mere presence of some duplicative materials justifies a denial of Plaintiff's request for a complete fee waiver in this instance.  Although an agency may be justified in parsing through the materials when the records are "uncommonly large" or contain only a few substantive documents comparative to the overall volume, *see id.* at 36, n.16, the materials at issue in each of these three requests are neither unusually voluminous nor do they contain only a few substantive documents (particularly given the Court's rejection of the FBI's reasoning as to the other categories of materials above).  As the legislative history of the 1986 FOIA amendments make clear, the amended fee waiver provisions should be liberally construed in favor of fee waivers.  *See Citizens for Responsibility and Ethics in Washington*, 481 F. Supp. 2d at 113.  Accordingly, "[t]he plaintiff's fee waiver request should have been evaluated based on the potential contribution the requested information would have on the public's understanding," and not on the possibility that some of the documents may have been duplicative.  *See Ctr. for Medicare Advocacy,* 577 F. Supp. 2d at 240.  The Court therefore denies Defendant FBI's Motion for Summary Judgment and grants Plaintiff's Cross-Motion for Summary Judgment as to the FBI's denial of Plaintiff's fee waiver requests, and finds that

Plaintiff is entitled to a complete fee waiver as to FOIA Request Numbers 948768, 948769, and 963707.[11]

> B.     The FBI's Vaughn Index is Inadequate

Plaintiff next challenges the adequacy of the FBI's *Vaughn* index.  Before turning to the substance of Plaintiff's arguments, however, the Court first pauses to clarify the relief Plaintiff seeks at this juncture—an issue that has been complicated by the FBI's recent supplementation of its *Vaughn* index.  Plaintiff, in his motion for partial summary judgment, initially argued that the error rate evidenced in the sample *Vaughn* index demonstrates that the FBI likely made similar errors in the processing of non-sample documents, and that the FBI must therefore be required to reprocess all responsive documents.  This argument was based solely on the number of errors evidenced in the FBI's preliminary *Vaughn* index.  *See* Pl.'s Cross-MSJ/Opp'n at 15-16.

As discussed in more detail below, however, the parties subsequently determined that several categories of documents that Plaintiff had intended to be included in the *Vaughn* index had in fact, been omitted from the index.  *See infra* pp. 42-43.  Accordingly, the parties agreed, with the consent of the Court, that the FBI would file a supplementary *Vaughn* index addressing those documents that had been excluded from the preliminary index.  *See* Docket No. [101].  Significantly, in filing its supplemental *Vaughn* index, the FBI acknowledged that it had located additional responsive records, but did not include all such documents in the supplemental *Vaughn* index.  *See id.*  In response, Plaintiff filed a motion requesting that the Court require the

---

[11]Given the Court's resolution of this issue in favor of Plaintiff on the basis that the FBI wrongly concluded that certain categories of material are ineligible for a fee waiver in this instance, the Court need not resolve Plaintiff's alternative argument that OIP may not base its decision on appeal affirming a denial of a fee waiver request on grounds not previously raised to the requester.  *See* Pl.'s Cross-MSJ/Opp'n at 11.

FBI to provide Plaintiff with a complete *Vaughn* index that included all additional material

addressed in the supplemental *Vaughn* index, arguing that he was unable to adequately address

the merits of the FBI's response to his FOIA/PA requests without a complete *Vaughn* index that

includes all documents at issue.  *See* Pl.'s Mot. for Complete Vaughn Index, Docket No. [105].

Given that Plaintiff's motion for an order requiring the FBI to provide a complete *Vaughn* index

appeared to request relief that conflicted with the relief initially sought in his motion for partial

summary judgment—*i.e.*, an order requiring the FBI to reprocess all responsive records—the

Court requested that Plaintiff clarify the precise relief he seeks at this juncture in the litigation.

*See* 3/20/09 Min. Order.  Specifically, the Court requested that Plaintiff clarify whether he

currently seeks: (1) an order requiring the FBI to re-submit a complete *Vaughn* index that

includes and addresses all material Plaintiff intended to be included in the sample index; or (2)

an order requiring the FBI to reprocess all responsive records.  3/20/09 Min. Order.  As ordered,

Plaintiff subsequently filed a Notice, in which he advised the Court that, because "[t]he merits of

the parties' pending cross-motions for summary judgment cannot be fully addressed until all

records selected for the *Vaughn* index have either been *vaughned* or disclosed," Plaintiff

presently seeks an order requiring the FBI to provide a full and complete *Vaughn* index.  *See*

Pl.'s Notice, Docket No. [108].

The FBI thereafter filed a partial opposition to Plaintiff's motion for an order requiring

the FBI to provide a complete *Vaughn* index.  *See* FBI's Partial Opp'n, Docket No. [109].  The

FBI asserted that, although it does not oppose filing a third *Vaughn* index to address the

remaining documents at issue, it does oppose Plaintiff's request to re-submit an index for

documents already addressed in the FBI's previous submissions.  *Id.* at 1-2.  With this

understanding of the unique procedural posture of this case, the Court now turns to the merits of the parties' arguments as set forth in both their cross-motions for summary judgment and briefing regarding Plaintiff's request for a complete *Vaughn* index.

Ultimately, the Court concludes that the *Vaughn* index submitted by the FBI is utterly inadequate. As is explained in great detail below, the FBI has failed to provide a single, comprehensive *Vaughn* index that accounts for all sample documents Plaintiff intended to be included in the index and that adequately explains the FBI's withholdings. The Court shall therefore require the FBI to re-submit a single, comprehensive *Vaughn* index that sufficiently permits both the Court and Plaintiff to evaluate the FBI's responses to Plaintiff's FOIA/PA requests. The Court firmly rejects the FBI's request that it be permitted to submit yet another supplementation to its *Vaughn* index. As is made abundantly clear below, the piecemeal nature of the FBI's submissions in this case has unnecessarily confused and complicated the matters at hand. Perhaps a further supplementation of the *Vaughn* index would be permissible if the Court's only concern with the FBI's *Vaughn* index was its failure to include the additional documents at issue. But, as explained below, the FBI's previously submitted indices are wholly inadequate and further piecemeal submissions cannot resolve the Court's concerns with the FBI's *Vaughn* index. Accordingly, the Court shall grant Plaintiff's motion for an order requiring Plaintiff to re-submit a single, comprehensive *Vaughn* index.[12]

Moreover, the Court agrees that, until the FBI provides a final *Vaughn* index, neither the

_____

[12]The Court notes that it does not intend to preclude the FBI from providing any additional released documents to Plaintiff in a piecemeal fashion—*i.e.*, the FBI may continue to release the documents as they are reviewed and processed by the relevant agencies.

Court nor Plaintiff is in a position to evaluate the validity of the FBI's withholdings or to

properly assess whether the FBI must reprocess all responsive records.  Accordingly, the Court

shall deny without prejudice the parties' cross-motions for summary judgment as to the

reprocessing of all responsive records and the validity of the FBI's withholdings.  Upon

submission of the FBI's final *Vaughn* index, the parties may, if appropriate, re-file their cross-

motions for summary judgment as to these discrete issues.

<ol start="1">
<li>Legal Standard for Adequacy of <u><em>Vaughn</em> Index</u></li>
</ol>

"Because of its unique evidentiary configuration, the typical FOIA case 'distorts the

traditional adversary nature of our legal system's form of dispute resolution.'"  *Judicial Watch,*

*Inc. v. FDA*, 449 F.3d 141, 145-46 (D.C. Cir. 2006) (hereinafter "*Judicial Watch III*") (quoting

*King v. DOJ*, 830 F.2d 210, 218 (D.C. Cir. 1987)).  "When a party submits a FOIA request, it

faces an 'asymmetrical distribution of knowledge' where the agency alone possesses, reviews,

discloses, and withholds the subject matter of the request."  *Id.* (quoting *King*, 830 F.2d at 218).

Accordingly, the FOIA places the burden on the agency to establish its right to withhold

information under one of the enumerated FOIA Exemptions.  *Id.*  An agency may do so through

producing a *Vaughn* index, which is an affidavit that indexes and specifically describes withheld

or redacted documents and explains why each withheld record is exempt from disclosure.  *King*,

830 F.2d at 219.  The index thus helps restore the normal adversarial balance by "forc[ing] the

government to analyze carefully any material withheld," thereby enabling "the trial court to fulfill

its duty of ruling on the applicability of the exemption" and enabling "the adversary system to

operate by giving the requester as much information as possible, on the basis of which he can

present his case to the trial court."  *Keys v. DOJ*, 830 F.2d 337, 349 (D.C. Cir. 1987) (internal

quotation marks and citation omitted).

As the D.C. Circuit has made clear, "it is the function, not the form, of the index that is important." *Id.* "Any measure will adequately aid a court if it 'provide[s] a relatively detailed justification, specifically identif[ies] the reasons why a particular exemption is relevant and correlat[es] those claims with the particular part of a withheld document to which they apply.'" *Judicial Watch III*, 449 F.3d at 146 (quoting *Mead Data*, 566 F.2d at 251). While there is no set form for a *Vaughn* index, the D.C. Circuit has noted three important elements for an adequate *Vaughn* index: (1) the index should be one document that is complete in itself, (2) the index must adequately describe the withheld documents or deletions, (3) the index must state the particular FOIA exemption, and explain why the exemption applies. *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

As is particularly relevant here, "[r]epresentative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved." *Bonner v. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991). "Representative sampling allows the court and the parties to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a *Vaughn* index or an *in camera* inspection. If the sample is well-chosen, a court can, with some confidence, 'extrapolate its conclusions from the representative sample to the larger group of withheld materials.'" *Id.* (quoting *Fensterwald v. CIA*, 443 F. Supp. 667, 669 (D.D.C.1977)); *see also Meeropol v. Meese*, 790 F.2d 942, 958 (D.C. Cir. 1986). However, the D.C. Circuit has cautioned that "the technique will yield satisfactory results only if . . . the documents in the sample are treated in a consistent manner." *Bonner*, 928 F.2d at 1151.

35

2.      Adequacy of the FBI's *Vaughn* Index

The FBI's *Vaughn* index is, in a word, inadequate.  As explained above, the parties

agreed to proceed with their cross-motions for summary judgment based upon a

sample—selected by Plaintiff—of the documents withheld in full or in part by the FBI.  *See*

3/21/07 Joint Status Report, Docket No. [34] at 4; 10/24/07 Joint Status Report, Docket No. [41]

at 2.  On June 30, 2008, the FBI filed what it characterized as its preliminary *Vaughn* index,

which consists of: (1) Hardy's first declaration, in which he explains the general coded format

employed in the index; and (2) 200-plus pages of redacted material previously released to

Plaintiff (*i.e.*, the material selected by Plaintiff for inclusion in the index, per the parties'

agreement).  *See* Prelim. *Vaughn* Index, Docket No. [68].  The FBI did not, however, provide any

comprehensive listing of the pages included in the preliminary *Vaughn* index nor correlate the

documents provided in the preliminary *Vaughn* index with the documents selected by Plaintiff.

Accordingly, there was no way to independently confirm that all of the documents selected by

Plaintiff are, in fact, included in the index, absent a page-by-page review of the documents in

conjunction with the Plaintiff's original letter indicating which documents had been selected for

inclusion in the index.  Compounding this difficulty is the fact that, although the majority of the

material in the preliminary *Vaughn* index is bates stamped, a minority of the pages are not

numbered and the index itself often skips several pages without explanation (*e.g.*, the index skips

from document numbered "S-69" to document numbered "S-75" with no indication of what

pages are not included or why such pages have been omitted).  As will be discussed in greater

detail below, it is now evident that the FBI had, in fact, inadvertently omitted documents from

the preliminary *Vaugn* index—a fact that was not immediately apparent, however, due largely to

36

the index's unstructured organization.

In filing the preliminary *Vaughn* index, the FBI explained that it would be providing a "final and complete" *Vaughn* index with its motion for summary judgment.  *See id.,* Att. 1 (Notice of Filing).  When the FBI filed its Motion on July 29, 2008, however, it did not provide a comprehensive index as promised.  Rather, the FBI provided the Court with a second declaration from Hardy, which merely refers back to and incorporates the preliminary *Vaughn* index.  *See* Second Hardy Decl.  The Court may have perhaps overlooked the FBI's failure to provide a single, comprehensive index, as is required under *Founding Church of Scientology*, so long as the documents together fulfilled the necessary functions of a *Vaughn* index—that is, "enable[d] the court and the opposing party to understand the withheld information in order to address the merits of the claimed exemption."  *Judicial Watch III*, 449 F.3d at 150.  The FBI's *Vaughn* index, however, fails to do so for several reasons.

Most significantly, Hardy's second declaration provides no functional description of the materials withheld, other than referencing the Court and Plaintiff back to the redacted versions of the material provided in the preliminary *Vaughn* index.  Although the D.C. Circuit has approved the use of similarly structured *Vaughn* indices, in which an agency submits copies of the redacted materials in coded format supplemented by agency affidavits, the Circuit has cautioned that agencies must keep in mind the functional purpose of the *Vaughn* index, as discussed above. *See id.* at 146-47, 150.  Indeed, as the D.C. Circuit observed in evaluating a similarly-structured *Vaughn* index:

> Utilization of reproductions of material released to supply contextual information about material withheld is clearly permissible, but caution should be exercised in resorting to this method of description. Such a system is only as good as its results,

and the vital result must be an adequate representation of context which, when combined with descriptions of deletions, enables de novo review of the propriety of withholding. In the present case, the system is inadequate because we are left with no contextual description for documents or substantial portions of documents withheld in their entirety, an impermissible result as long as revelation of the context would not itself harm the national security.

*King*, 830 F.2d at 221.

Here, however, the *Vaughn* index does not uniformly provide sufficient contextual information about the material withheld. First, where the FBI has withheld documents in their entirety, the *Vaughn* index fails to provide any description of such documents. For example, Hardy explains that certain pages have been withheld in their entirety pursuant to FOIA Exemption 1 because they contain information classified "secret" by a foreign government. *See* Second Hardy Decl. ¶ 90. But these pages are not included in the preliminary *Vaughn* index (as they are withheld in full), and Hardy's second declaration does not provide any functional description of the documents themselves. *See id.* Accordingly, both the Court and Plaintiff are left without sufficient information to determine whether the material is properly withheld in full or whether reasonably segregable portions of non-exempt information could be released.

Second, even where information has been only partially withheld, such that the FBI has provided a partially redacted document for reference, the released text of the documents does not always provide sufficient context to evaluate the withheld material. For example, Hardy explains that the FBI has withheld material from pages 78, 79, and 80 of the preliminary *Vaughn* index[13]

---

[13]As will be discussed below, the FBI later explains that the bates stamped numbers used in the preliminary *Vaughn* index do not necessarily correspond with the bates stamped numbers used in Hardy's second declaration. *See infra* pp. 39-41. Here, it is apparent upon review of the pages at issue that the FBI in fact meant pages 77, 78, and 79 of the preliminary *Vaughn* index, as page 80 does not indicate that any material has been withheld pursuant to FOIA Exemption 1.

pursuant to FOIA Exemption 1 because the material contains information naming intelligence components of a specific foreign government and/or information provided by those components. *See* Second Hardy Decl. ¶ 88.  Reference to those pages, however, shows only that large swaths of information have been withheld.  *See* Prelim. *Vaughn* Index, "S-77 through S-79."  Indeed, pages 78 and 79 contain no substantive unredacted information at all.  *See id.*  Accordingly, mere reference to the documents does not, in this instance, provide the Court or Plaintiff with sufficient information as to the actual material withheld.  Nor can the Court determine whether any reasonably segregable portions of non-exempt information could be released.

On top of the FBI's failure to adequately describe the documents at issue, the FBI also acknowledges in its Motion for Summary Judgment that, in re-reviewing the sample documents for preparation of the *Vaughn* index, the FBI determined that portions of 25 pages of previously released material had been improperly redacted, and that such materials must therefore be re-released to Plaintiff with the correct withholdings.  *See* FBI's MSJ at 10.  Significantly, despite admitting that it had invoked improper FOIA exemptions in the first instance, the FBI does not provide any explanation in its opening memorandum as to why the original redactions were incorrect.  *See id.*

Indeed, it was Plaintiff, rather than the FBI, who first provided the Court with information regarding the nature of the re-released material at issue.  In his Cross-Motion, Plaintiff describes several examples of the material that the FBI had originally redacted in error and which was re-released to Plaintiff.  *See* Pl.'s Cross-MSJ/Opp'n at 15-17.  For example, Plaintiff explains that

---

*See* Prelim. *Vaughn* Index, "S-77 through S-79."

in some of the documents re-released by the FBI, the FBI had changed its withholdings to release

the names of people listed in published pamphlets or who were listed as public speakers at public

events. *Id.* at 16. As another example, Plaintiff notes that the FBI re-released a document in

which it had originally withheld Plaintiff's own name from release. *Id.* Finally, in perhaps the

most puzzling incident, Plaintiff explains that the FBI re-released a document that had originally

been provided to Plaintiff with almost all information redacted, save for two lines of text in the

middle of the document; when the FBI re-released the document to Plaintiff, however, it released

the entire document, but for the two lines that had initially been released and which are now

redacted. *Id.*

It was only after Plaintiff highlighted these errors that the FBI made any attempt to

explain its reasons for re-releasing additional portions of the 25 pages of material discussed

above. Specifically, in filing its Opposition/Reply, the FBI attached a third declaration by Hardy,

in which Hardy avers that the FBI "conducted additional research of third-party names which

appeared in the documents, and concluded that certain of these individuals were either deceased

or were attendees at large conventions or meetings, and as a result, disclosure would not violate

their personal privacy." Third Hardy Decl. ¶ 6. Significantly, however, Hardy does not explain

why this information was not previously available or whether further research would be likely to

uncover additional improper redactions of third-party names in other documents. In addition,

Hardy does not offer any explanation or discussion of the other specific mistakes and

inconsistencies identified by Plaintiff as examples in his Cross-Motion/Opposition (*i.e.*,

withholding errors that did not relate to third-party names).

Finally, on top of these errors, Hardy's third declaration highlights several additional

40

mistakes and inconsistencies. First, Hardy admits that the FBI also made several additional errors in its original redactions (*i.e.*, over and above those identified in the 25 pages of re-released material), *see* Third Hardy Decl. ¶ 18, n. 5 & 6, but again fails to adequately explain why the original redactions were in error. For example, Hardy states that, "[a]fter further review, it has also been determined that [FOIA Exemption 7(D)] no longer applies to Bates stamped page 13," but he proffers no explanation as to why that exemption no longer applies. *See id.*, ¶ 18, n. 6. Second, Hardy admits that the FBI had inadvertently omitted certain documents from the justification portion of his second declaration and that the FBI has been unable to locate several bates stamped pages that are listed in Hardy's second declaration. *See id.*, ¶ 18, n. 7, n. 8. Third, Hardy explains that "technological and administrative glitches" in processing the responsive documents created discrepancies between the bates numbers in the redacted documents produced to Plaintiff (and which were included in the preliminary *Vaughn* index), and the bates numbers in the version of the documents relied upon by Hardy in his second declaration. *See* Third Hardy Decl. ¶ 18 & n. 4. As a result, the bates numbers used on the documents in the preliminary *Vaughn* index do not necessarily correspond to the bates numbers referenced in Hardy's second declaration. *See id.* In other words, when Hardy explains in his second declaration that information is withheld from, for example, page 39 of the preliminary *Vaughn* index pursuant to FOIA Exemption 7(D), he in fact is referencing page 32 of the preliminary *Vaughn* index. *See id.* ¶ 18. In an apparent effort to address this issue, Hardy provides a chart in his third declaration that correlates the bates numbers used in the preliminary *Vaughn* index with those used in his second declaration. *See id.* The problem with this chart, however, is twofold. First, Hardy provides this information only for those documents for which withholdings were made pursuant

to FOIA Exemption 7(D).  *See id.*  No similar information is provided for withholdings made

pursuant to the other FOIA Exemptions, such that the Court has no way of knowing what

documents the FBI is in fact referring to in the second Hardy declaration when it discusses other

FOIA Exemptions.  Second, in order to use the FBI's *Vaughn* index, the Court must cross-

reference the preliminary *Vaughn* index with Hardy's second and third declarations—and even

then the Court cannot be sure it is referencing the correct documents.  That is, rather than

resubmit a comprehensive and correctly labeled *Vaughn* index, the FBI merely provides yet

another supplemental declaration, improperly shifting the burden of sorting through the abundant

inconsistencies in the FBI's submissions to the Court and Plaintiff.

     As confusing as the FBI's pleadings are at this point, the situation deteriorates further still

when Plaintiff files his Reply and (belatedly) advises the FBI that not all of the documents he had

selected for inclusion in the *Vaughn* index are, in fact, included in the preliminary *Vaughn* index.

Pl.'s Reply at 15-16.  Plaintiff identifies several categories of documents that he intended to be

included in the index, but which were not.  *See id.*  For example, Plaintiff notes that the FBI

included copies of the outside of various envelopes in its preliminary *Vaughn* index, but that

Plaintiff had actually intended the FBI to include—not the envelopes themselves (which do not

contain any redacted information)—but rather the classified enclosures contained *inside* the

envelopes.  *See id.* at 15 (referencing pages S-131, S-164, and S-175 in the preliminary *Vaughn*

index).

     In response, the FBI filed an unopposed motion to supplement its *Vaughn* index, in which

the FBI acknowledged that certain documents were not included in the preliminary *Vaughn* index

as Plaintiff had apparently intended.[14]  *See* FBI's Unopposed Mot. to Supplement *Vaughn* Index,

Docket No. [101].  The FBI asserts, however, that the fault lies with Plaintiff, because he did not

initially make clear what documents he wanted included in the sample *Vaughn* index, waiting

until his Reply to clarify his intentions.  *Id.* at 2-3.  Although fault for this misunderstanding may

lie with both parties, the Court emphasizes that it should have been immediately apparent to the

FBI that something was amiss when it included copies of envelopes (and other material) in its

preliminary *Vaughn* index that contain no redacted material—as it makes little sense to include a

fully released document in a *Vaughn* index, which purpose is to explain withholdings made in

documents that have been redacted pursuant to various FOIA Exemptions.  Ultimately, the

FBI—not Plaintiff—has the burden of producing an adequate *Vaughn* index, and the FBI would

have been better served to have proactively resolved any potential miscommunications over the

sample content *prior* to submission of the index to the Court.

Nonetheless, because the parties agreed that the preliminary *Vaughn* index excludes

certain documents that Plaintiff had intended be included, the Court permitted the FBI to file a

corrected index, which was subsequently filed on March 6, 2009, along with Hardy's fifth

declaration.  *See* FBI's Supplemental *Vaughn* Index, Docket No. [103].  Significantly, in so

doing, the FBI informed the Court that it had reviewed 255 pages of material responsive to

Plaintiff's request.  Fifth Hardy Decl. ¶ 5.  Of those 255 pages, Hardy explains that the FBI had

decided to: (1) release to Plaintiff an additional 92 pages, out of which 21 pages were released in

---

[14]The Court notes that, in addition to those documents noted by Plaintiff, the FBI also indicates that it discovered, upon its own review, that an additional "12 pages were [also] unintentionally omitted from its *Vaughn* index."  Fourth Hardy Decl. ¶ 13.

full and 71 pages were released in part with information withheld pursuant to FOIA Exemptions

1, 6, 7(C) and 7(D); (2) withhold one page in its entirety; (3) refer three pages to another

government agency for direct response to Plaintiff; and (4) refer 159 pages to other government

agencies for consultation.  *Id.*  The Court is particularly troubled by this belated announcement

that—months after the principal briefing on the parties' cross-motions was completed—a

substantial amount of material is now being released with redactions to Plaintiff and/or referred

to other agencies for processing.  More troubling still is the FBI's failure to adequately explain

why the additional material is just now being processed and released.  For example, it appears

that the FBI determined that some of this material should be released because it is no longer

properly classified as "Top Secret."  *See* Fifth Hardy Decl. ¶¶ 8, 9.  Hardy does not explain,

however, the reasons for the FBI's determination that the information is no longer properly

withheld under FOIA or assure the Court that other documents reviewed do not contain similar

classification errors.

Although the release of so much additional material, without adequate explanation, is the

most troubling development, other examples of worrisome inconsistencies abound in Hardy's

fifth declaration.  For example, according to Hardy's fifth declaration, the FBI has now released

ten additional pages of material (labeled pages "S2-181 through S2-190") related to document S-

91 (otherwise referred to as document number 42), which was originally included in the

preliminary *Vaughn* index.  *See* Fifth Hardy Decl. ¶ 6.  In turn, reference to the preliminary

*Vaughn* index demonstrates that S-91 is a "delete sheet" that was originally provided to Plaintiff

to advise him that one page of information is being withheld by the FBI pursuant to FOIA

Exemption 1.  *See* Prelim. *Vaughn* Index (S-91).  Given that S-91 originally indicated that only

one underlying page of information was withheld, the fact that the FBI has now released an additional ten pages of material that it asserts relate to this document—without explanation—is concerning.

As a final note on the FBI's supplemental *Vaughn* index, the Court observes that the index, in its "final and complete" form, is spread out over five separate filings.  In an apparent effort to aid the Court and Plaintiff, Hardy's fifth declaration provides yet another chart correlating the bates stamped page numbers as used in the preliminary *Vaughn* index with those used in the March 6, 2009 supplemental *Vaughn* index, and with the documents originally selected by Plaintiff for inclusion in the *Vaughn* index.  *See id.* ¶¶ 6, 12.  Accordingly, in order to fully utilize the FBI's index, the Court and Plaintiff must gather all five declarations, the preliminary *Vaughn* index and the correlation charts provided by Hardy as well as Plaintiff's initial letter to the FBI listing out which documents he wanted included in the *Vaughn* index, and then attempt to ascertain what documents the FBI refers to in its discussions.  It is not, however, the Court's duty to sift through multiple filings and inconsistent bates stamped documents in order to determine what information the FBI withheld and why.  The FBI's suggestion that it provide yet another piecemeal supplementation of its *Vaughn* index is simply unacceptable. Rather, the FOIA places the burden on the agency to establish its right to withhold information under one of the enumerated FOIA exemptions.  *Judicial Watch III,* 449 F.3d at 145-46.  "While the court understands that these requirements are an administrative burden on the agency, any lesser standard of compliance would not satisfy this circuit's requirements and FOIA's policy 'in favor of the fullest possible disclosure of government records.'"  *Campaign for Responsible Transplantation v. Fed. Drug Admin.*, 219 F. Supp. 2d 106, 116 (D.D.C. 2002) (quoting

45

*Founding Church of Scientology*, 603 F.2d at 949).  The Court need not burden itself further

cataloging the litany of unexplained inconsistencies and errors evidenced in the FBI's filings and

*Vaughn* index, as the point is clear—the index is wholly inadequate and riddled with countless

examples of mistakes and other incongruities.

Accordingly, the Court shall grant Plaintiff's motion and shall require the FBI to provide

both the Court and Plaintiff with a single, comprehensive *Vaughn* index that complies with this

Court's Memorandum Opinion and, in particular, the guidelines set forth below.  In addition, in

light of the Court's determination that the FBI must provide a complete *Vaughn* index before

either the Court or Plaintiff can properly evaluate the FBI's withholdings and its processing of

the sample records, the Court shall deny without prejudice the parties' cross-motions as they

pertain to the merits of the FBI's withholdings and Plaintiff's request that the FBI be required to

reprocess all responsive documents.  Finally, the parties are required to meet and confer and

submit a joint status report, by no later than April 17, 2009, suggesting a schedule for the FBI's

submission of a final *Vaughn* index and, as appropriate, for the subsequent filing of dispositive

motions with respect to the merits of the FBI's withholdings.

> 3.     Information to be Included in the FBI's *Vaughn* Index

Although the Court does not reach the merits of the FBI's withholdings in light of the

disposition of the current cross-motions, the Court notes several issues that the FBI is advised to

consider when submitting its final *Vaughn* index.  First, the FBI's final *Vaughn* index must fully

account for all sample documents at issue and must include all documents in a single,

comprehensive index that is complete in itself.  *See Founding Church of Scientology*, 603 F.2d at

949.  To the extent any confusion remains over the exact documents that Plaintiff intends to be

included in the *Vaughn* index, the parties are advised to confer prior to the submission of a final

*Vaughn* index to ensure that all documents are, in fact, accounted for in the index.  The index

must also adequately describe the withheld documents or deletions, as well as state the particular

FOIA exemption, and explain why the exemption applies.  *Id.*

Second, the final *Vaughn* index must adequately explain all inconsistencies and errors

identified in the processing of the sample documents.  In particular, for any documents that are a

part of the representative sample and that were originally withheld but have since been released

(whether in part or in whole), the FBI "should explain why the once withheld portions were

excised at the time of the agency's initial review."  *See Bonner v. Dep't of State*, 928 F.2d 1148,

1153 (D.C. Cir. 1991).

Third, as this Court has previously explained, "[u]nder D.C. Circuit precedent, an agency

invoking FOIA Exemption 7(C) [or Exemption 6] must make 'a reasonable effort to ascertain life

status,' and the agency's efforts in that respect speak to the reasonableness of its response to a

FOIA request."  *Schoenman v. FBI*, 575 F. Supp. 2d 166, 177 (D.D.C. 2008) (quoting *Schrecker*

*v. DOJ,* 349 F.3d 657, 662 (D.C. Cir. 2003) (hereinafter "*Schrecker II*")); *see also Schoenman v.*

*FBI*, 576 F. Supp. 2d 3, 10 (D.D.C. 2008) (agency "is required to make efforts to ascertain an

individual's life status before invoking a privacy interest in connection with FOIA Exemptions 6

and 7(C)").  Indeed, although the FBI's *Vaughn* index currently does not speak to this issue, the

FBI apparently concedes the life status of an individual is relevant, given the fact that it re-

released portions of materials based upon its conclusion, after additional research, "that certain of

these individuals were [] deceased . . ., and as a result, disclosure would not violate their personal

privacy."  Third Hardy Decl. ¶ 6.  Accordingly, the Court advises the FBI that it must, in the

future, address its efforts to ascertain "life status" in invoking FOIA Exemptions 6 and 7(C).[15]

Fourth, as the FBI acknowledges, in order to invoke FOIA Exemption 7, it must first demonstrate that the records at issue were compiled for law enforcement purposes. *See Schoenman v. FBI*, 575 F. Supp. 2d 166, 174 (D.D.C. 2008) (CKK). Admittedly, where an agency "specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference." *Campbell*, 164 F.3d at 32. Nevertheless, the "deferential" standard of review that the Court applies to this determination is not "vacuous." *Id.* Instead, the agency's declarations "must establish a rational 'nexus between the investigation and one of the agency's law enforcement duties,' and a connection between an 'individual or incident and possible security risk or violation of federal law.'" *Id.* (quoting *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1981)). As the D.C. Circuit explained in *Campbell*, "[t]he fact that information is stored in a [document] with an official-sounding label is insufficient standing alone to uphold nondisclosure;" "[a]t a minimum, the [agency] must demonstrate the relationship between a record and its label and between the label and a law enforcement purpose." *Id.* The Court thus advises that, although it has provided some explanation as to this threshold question, the FBI would benefit from a more detailed explanation in line with D.C. Circuit case law.

Fifth and finally, the Court notes that, despite Plaintiff's repeated requests for a complete accounting of all material referred to other agencies for response, the FBI has not yet accounted for all referred material. Although the FBI submitted an accounting in Hardy's third declaration,

---

[15]By contrast, so long as an agency amply explains its reasoning, an agency may redact the identity of an individual under FOIA Exemptions 1 and 7(d) regardless of whether the individual is alive. *See Schrecker I*, 14 F. Supp. 2d at 118; *see also Schrecker II*, 254 F.3d at 376.

the accounting does not indicate when the referrals were made, what documents were referred, and what documents have not yet been processed. *See* Third Hardy Decl. ¶¶ 8-12. Accordingly, the FBI must provide a complete accounting of all referrals made and indicate whether all documents so referred have been processed and released to Plaintiff, as appropriate.

      C.     *The Reasonableness of the FBI's Search*

      Finally, the FBI, in its Motion for Summary Judgment, also moves for summary judgment as to the adequacy of its search, arguing that the FBI conducted a reasonable search for responsive records. *See* Def.'s MSJ at 11-13. Plaintiff has not responded to this argument in either his Cross-Motion for Partial Summary Judgment or his Reply, nor has Plaintiff otherwise disputed the adequacy of the FBI's search. *See generally* Pl.'s Cross-MSJ/Opp'n; Pl.'s Reply. Plaintiff has therefore conceded the issue. *Franklin v. Potter*, __ F.2d ___, Civ. Act. No. 07-1205, 2009 Wl 533071, *13 (D.D.C. Mar. 24, 2009) (treating defendant's argument in motion for summary judgment as conceded where plaintiff failed to address in his response); *Hopkins v. Women's Div., General Bd. of Global Ministries,* 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd* 98 Fed. Appx. 8 (D.C. Cir. 2004). Accordingly, the Court shall grant the FBI's motion for summary judgment with respect to the reasonableness of the FBI's search.

## IV.  CONCLUSION

      For the reasons set forth above, the Court shall: (1) GRANT-IN-PART the FBI's [73] Motion for Summary Judgment, finding in favor of the FBI with respect to the reasonableness of

the FBI's search for responsive records; (2) DENY-IN-PART the FBI's [73] Motion for

Summary Judgment and GRANT-IN-PART Plaintiff's [92] Cross-Motion for Partial Summary

Judgment with respect to the FBI's denial of Plaintiff's requests for a full fee waiver, finding in

favor of Plaintiff that the FBI improperly denied his fee waiver requests; and (3) GRANT

Plaintiff's [105] Motion for an Order Requiring the FBI to Provide a Complete *Vaughn* Index.

The FBI is therefore required to submit a final and complete *Vaughn* index that accounts for all

documents in the sample identified by Plaintiff and that fully complies with this Memorandum

Opinion.  In addition, in light of the Court's determination that the FBI must submit a single,

comprehensive *Vaughn* index, the Court shall DENY WITHOUT PREJUDICE the parties'

cross-motions as they pertain to the merits of the FBI's withholdings and Plaintiff's request that

the FBI be required to reprocess all responsive documents.  The Court cannot resolve the merits

of these issues until an adequate *Vaughn* index is compiled.  Upon submission of the FBI's final

*Vaughn* index, the parties may re-file their cross-motions as to the merits of the FBI's

withholdings, as appropriate.  Accordingly, the parties are required to meet and confer and

submit a joint status report, by no later than April 17, 2009, suggesting a schedule for submission

of a final *Vaughn* index and, as appropriate, for the filing of dispositive motions with respect to

the merits of the FBI's withholdings.

Date:   March 31, 2009

                                             */s/*_____
                                             COLLEEN KOLLAR-KOTELLY
                                             United States District Judge