# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RALPH SCHOENMAN,

   *Plaintiff*,

  v.

FEDERAL BUREAU OF
INVESTIGATION, *et al.*,

   *Defendants*.

Civil Action No. 04-02202 (CKK)

## MEMORANDUM OPINION
(January 21, 2011)

  Plaintiff Ralph Schoenman ("Schoenman"), a political activist and author, commenced

this action against a variety of named and unnamed agencies, including the Central Intelligence

Agency (the "CIA"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

the Privacy Act of 1974 (the "Privacy Act"), 5 U.S.C. § 552a, seeking an array of records

concerning himself. This Court previously granted in large part the CIA's [64] Motion for

Summary Judgment and denied in large part Schoenman's [70] Cross-Motion for Partial

Summary Judgment. However, the Court held in abeyance both motions as they pertained to a

single, discrete issue—namely, the adequacy of the CIA's search for records within two

component units of the CIA, including the propriety of the CIA's failure to produce "index

references." The parties were instructed to, and did, submit supplemental materials addressing

this discrete issue. Now, based upon those submissions, the relevant authorities, and the record

as a whole, the Court finds in the CIA's favor and shall therefore GRANT the CIA's [64] Motion

for Summary Judgment and DENY Schoenman's [70] Cross-Motion for Partial Summary

Judgment on this remaining issue.

# I. BACKGROUND

The Court assumes familiarity with its prior opinions in this action, which set forth in detail the history of this case, and shall therefore only address the factual and procedural background necessary to address the discrete issue currently before the Court.

*A.      Factual Background*

All CIA records are[1] maintained by one of the directorates or independent offices that report to the Director of Central Intelligence, which include:

- The Director of Central Intelligence Area (the "DCI Area"), which includes various independent offices reporting directly to the Director of Central Intelligence, such as the Office of Inspector General, the Office of General Counsel, and the Office of Public Affairs;

- The Directorate of Intelligence (the "DI"), which analyzes, interprets, and forecasts foreign intelligence issues and produces intelligence reports for dissemination to policymakers in the United States;

- The Directorate of Science and Technology (the "DS&T"), which creates and applies technologies for intelligence requirements and maintains records concerning foreign open source information;

- The Directorate of Operations (the "DO"), which is responsible for the clandestine collection of foreign intelligence information; and

- The Mission Support Offices (the "MSO"), which is the CIA's administrative support arm responsible for personnel and security issues, including investigations of individuals having a relationship with the CIA.

Decl. of Ralph S. DeMaio ("DeMaio Decl."), Docket No. [64-1], ¶¶ 22-27.

The CIA's Office of Information Management Services ("IMS") serves as the initial reception point for all FOIA and Privacy Act requests directed to the CIA. *Id.* ¶ 28. Upon

---

[1]  Despite the use of the present tense, the Court's description is limited to the organizational structure and record systems in existence during the period relevant to the present action.

receiving a request, IMS personnel determine which areas of the CIA reasonably might be expected to possess responsive records and forward copies of the request to those areas with instructions to search for responsive documents. *Id.* The tasked areas then conduct searches among their component parts and record systems that reasonably might be expected to have information responsive to the request. *Id.* Because they reflect and respond to the established responsibilities and needs of specific areas within the CIA, records systems vary among the CIA's component parts. *Id.* ¶ 21. As a result, the CIA's ability to retrieve information from a given records system depends upon the type of information stored in that system and the way the system is designed to retrieve information. *Id.*

On July 24, 2001, Schoenman, through counsel, submitted a request for records to the CIA under FOIA and the Privacy Act (the "Request"). *Id.* ¶ 9. Schoenman sought records pertaining to himself, all "index references," and all records used by the CIA in conducting its search for records.[3] *Id.* The CIA processed Schoenman's Request using the procedures set forth above—that is, the Request was received by IMS, reviewed by IMS personnel, and then forwarded to those areas within the CIA that were reasonably likely to have responsive records. *Id.* ¶ 34. Specifically, based upon its determination that they were the two areas within the CIA likely to possess responsive records, IMS personnel instructed the DO and the MSO to search for records responsive to Schoenman's Request. *Id.* The precise contours of those searches are discussed more fully below. *See infra* Part III.A. Meanwhile, given the nature of the missions

---

[3] Schoenman also sought records pertaining to Lord Bertrand Russell and six named organizations. DeMaio Decl. ¶ 9. The Court previously dismissed Schoenman's claims as they pertain to these records based on his failure to exhaust his administrative remedies. *See Schoenman v. Fed. Bureau of Investigation*, No. 04 Civ. 2202 (CKK), 2006 WL 1126813, at *19-20 (D.D.C. Mar. 31, 2006).

pursued by the DCI Area, the DI, and the DS&T, IMS personnel determined that those areas were not likely to have any records responsive to Schoenman's Request and therefore did not instruct those areas to search for responsive records. DeMaio Decl. ¶ 37.

B.    *Procedural History*

Schoenman commenced this action on December 20, 2004 against a variety of named and unnamed agencies, including the CIA. *See* Compl., Docket No. [1]. In the succeeding years, his claims have been successively winnowed down by orders of this Court. Most notably, on March 19, 2009, this Court granted in large part the CIA's [64] Motion for Summary Judgment and denied in large part Schoenman's [70] Cross-Motion for Partial Summary Judgment. *See Schoenman v. Fed. Bureau of Investigation*, No. 04 Civ. 2202 (CKK), 2009 WL 763065 (D.D.C. Mar. 19, 2009). Specifically, the Court found in the CIA's favor as follows: (a) the CIA's search for records was not inadequate on the basis that it excluded the DCI Area and the DI from the search for responsive records;[4] (b) the CIA properly invoked various exceptions to production in withholding responsive information either identified during its own search or referred to it by other agencies; (c) the CIA set forth a sufficiently particularized segregability analysis; and (d) Schoenman failed to raise a sufficiently compelling question as to the CIA's good faith such that would warrant the taking of discovery. *See generally id.* However, the Court held in abeyance the parties' cross-motions on a single, discrete issue: the adequacy of the CIA's search for records within the MSO and the DO, including the propriety of the CIA's failure to produce "index references." *See id.* at *15-18.

---

[4] Schoenman did not challenge the CIA's decision to exclude the DS&T from the search for responsive records. *Schoenman*, 2009 WL 763065, at *10 n.12.

In its prior opinion addressing the parties' respective cross-motions for summary judgment, the Court found that, while the CIA had provided some information concerning the search for records within the MSO and the DO, its description of the search—confined to two terse paragraphs—was insufficiently detailed to demonstrate compliance with the applicable legal standard. *Id.* at *15. Indeed, while the CIA "provided a lengthy description of [its] general process for complying" with requests, it did not offer any detail "as to how the DO and the MSO conducted their record searches" in this case, nor provided a description of the record systems utilized by those component units of the CIA. *Id.* at *15-16. Acknowledging that the sufficiency of the CIA's showing was a closer question than in the guiding precedents, the Court concluded that the most prudent course was to hold the issue in abeyance while the CIA provided a more expansive description of the search it conducted within the MSO and the DO. *Id.* at *16.

Meanwhile, with one exception, the Court uniformly rejected Schoenman's contentions that the CIA's search was inadequate based upon his speculation that the CIA should have produced certain documents in response to his Request. *Id.* at *16-18. The one exception pertained to Schoenman's request for "all index references," which the CIA admittedly had not produced. *Id.* at *18. Because the CIA had not offered any explanation as to why these documents were not produced, the Court instructed the CIA, in its supplemental materials, to "provide an explanation for its failure to provide 'index references' to [Schoenman], as requested.'" *Id.*

Consistent with the Court's directives, on April 10, 2009, the CIA filed supplemental materials purporting to address the Court's concerns. *See* Def.'s Notice of Filing, Docket No. [112]; Fourth Decl. of Ralph S. DiMaio ("Suppl. DeMaio Decl."), Docket No. [112-1]. On May

1, 2009, Schoenman filed his opposition and response to those supplemental materials. *See* Pl.'s

Suppl. Opp'n to Def. Central Intelligence Agency's Mot. for Summ. J. ("Pl.'s Opp'n."), Docket

No. [116]. On May 13, 2009, the CIA filed a reply. *See* Def. Central Intelligence Agency's

Reply to Pl.'s Suppl. Opp'n to Def. Central Intelligence Agency's Mot. for Summ. J. ("Def.'s

Reply"), Docket No. [117]. The matter was therefore fully briefed and ripe for adjudication.

Nevertheless, on August 15, 2009, without first seeking the Court's leave, Schoenman

filed additional materials that he contends demonstrate that the CIA failed to conduct an adequate

search for responsive records. *See* Pl.'s Notice of Filing, Docket No. [122]. On October 12,

2009, Schoenman sought the Court's leave to further supplement the record with yet more

materials that he contends bear upon the adequacy of the CIA's search for records (the "Motion

to Supplement the Record")—a motion which remains pending and is resolved herein. *See* Pl.'s

Mot. for Leave to Further Supplement His Opp'n to Def. Central Intelligence Agency's Mot. for

Summ. J. ("Pl.'s Mot. to Suppl. Mem."), Docket No. [124-1]. On October 30, 2009, the CIA

filed an opposition to Schoenman's Motion to Supplement the Record. *See* Def.'s Opp'n to Pl.'s

Mot. for Leave to Further Supplement His Opp'n to Def. Central Intelligence Agency's Mot. for

Summ. J., Docket No. [126]. On November 10, 2009, Schoenman filed a reply. *See* Reply to

Def. Central Intelligence Agency's Oppotiion [sic] to Pl.'s Mot. for Leave to Further Supplement

His Opp'n to the CIA's Mot. for Summ. J. ("Pl.'s Mot. to Suppl. Reply"), Docket No. [129].[5]

---

[5] The parties have filed a variety of notices and supplemental papers relating to this motion and other outstanding motions. For purposes of economy, the Court shall not cite to those documents here, but notes that it renders its decision today upon the parties' submissions, the attachments thereto, and the record as a whole.

## II. LEGAL STANDARD

An inadequate search for records constitutes an improper withholding under FOIA. *Budik v. Dep't of Army*, __ F. Supp. 2d __, 2010 WL 3833828, at *6 (D.D.C. Sept. 30, 2010). Where the adequacy of an agency's search is challenged, the agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). That is, an agency must show that it made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

"The adequacy of an agency's search is measured by a standard of reasonableness, and is dependent upon the circumstances of the case." *Weisberg*, 705 F.2d at 1351 (internal citation and quotation marks omitted); *accord Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27-28 (D.C. Cir. 1998). Because "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search," *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003), "the [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search," *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir.), *cert. denied*, 552 U.S. 1007 (2007). Indeed, an agency's lack of success in locating responsive records does not render the search inadequate provided the agency's supporting declarations establish its compliance with FOIA. *Budik*, 2010 WL 3833828, at *7. Nor must an agency search every record system to render its search reasonable. *Oglesby*, 920 F.2d at 68. "Rather, an agency is only required to search those record systems that are likely to turn up the information requested." *Schoenman*,

2009 WL 763065, at *11 (citing *Oglesby*, 920 F.2d at 68).  In sum, perfection is not the standard.

*Budik*, 2010 WL 3833828, at *6.  Instead, "the agency must show that it made a good faith effort

to conduct a search for the requested records, using methods which can be reasonably expected to

produce the information requested."  *Oglesby*, 920 F.2d at 68.

On a motion for summary judgment, an agency may discharge its burden of establishing

the reasonableness of its search by submitting a "reasonably detailed affidavit" describing the

search performed and averring that all files likely to contain responsive documents were

searched.  *Id.*  The Court of Appeals for the District of Columbia Circuit has described the

agency's evidentiary burden more fully as follows:

> The affidavits of the responding agency [need not] set forth with
> meticulous documentation the details of an epic search for the
> requested records.  Rather, in the absence of countervailing evidence
> or apparent inconsistency of proof, affidavits that explain in
> reasonable detail the scope and method of the search conducted by the
> agency will suffice to demonstrate compliance with the obligations
> imposed by the FOIA.

*Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).  To be sufficiently detailed, the agency's

affidavits must at a minimum describe "what records were searched, by whom, and through what

process."  *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994).

Once an agency has made a *prima facie* showing of adequacy, the burden shifts to the

plaintiff to provide "'countervailing evidence' as to the adequacy of the agency's search."

*Iturralde*, 315 F.3d at 314.  Indeed, the plaintiff must provide evidence sufficient to raise

"substantial doubt" concerning the adequacy of the agency's search.  *Iturralde*, 315 F.3d at 314

(citing *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)).  With these

principles in mind, the Court turns to the merits of the parties' arguments.

### III. DISCUSSION

The Court's discussion proceeds in three parts: first, the Court shall explain why the CIA has carried its burden of establishing the reasonableness of its search for responsive documents within the MSO and the DO; second, the Court shall address why Schoenman's belatedly introduced arguments concerning the adequacy of the CIA's search are without merit; and third, and finally, the Court shall explain why Schoenman is not entitled to discovery from the CIA.

A.     *The CIA Has Carried its Burden of Establishing the Reasonableness of its Search for Responsive Records within the MSO and the DO*

Schoenman has challenged the adequacy of the CIA's search as it pertains to two component parts of the CIA—namely, the MSO and the DO.  In both instances, the CIA has discharged its burden of establishing the reasonableness of its search and, despite a litany of complaints, Schoenman has failed to adduce the sort of countervailing evidence that would cast substantial doubt on the adequacy of the CIA's search.

1.     The CIA Has Carried its Burden of Establishing the Reasonableness of its Search within the MSO

The MSO is the CIA's administrative support arm and is responsible for various administrative matters, including personnel resources, logistics, communications, finance, facilities, acquisitions, security, medical services, and other general support.  Suppl. DeMaio Decl. ¶ 4.  The MSO maintains records on all current and former CIA employees, as well as other individuals for whom security processing or evaluation has been required, including those individuals who come to the CIA's attention due to a counterintelligence interest.  *Id.* ¶ 5. Typically, where an individual has no past, present, or potential relationship with the agency, the MSO would not have any records pertaining to that individual.  *Id.*

The Office of Security (the "MSO/OS")—one of five separate offices within the MSO—maintains the CIA's security database containing records of security-related documents dating from the agency's inception. DeMaio Decl. ¶ 26; Suppl. DeMaio Decl. ¶ 5. In this case, once tasked by IMS with the responsibility for searching for documents responsive to Schoenman's Request, the MSO/OS "made all reasonable efforts to identify and retrieve any [responsive] records."[6] DeMaio Decl. ¶ 36. Indeed, even though Schoenman's Request did not suggest that he had any relationship with the CIA that would entail there being any responsive records, the CIA nevertheless proceeded to conduct a search for responsive records "out of an abundance of caution and in the interest of completeness." Suppl. DeMaio Decl. ¶ 5. Specifically, in September 2001, the MSO/OS conducted a thorough search for responsive records. *Id.* ¶ 6. Although the MSO/OS used Schoenman's name and variants thereof as search terms, it did not document the search terms used because the MSO/OS located no records responsive to Schoenman's Request. DeMaio Decl. ¶ 36; Suppl. DeMaio Decl. ¶ 6. In any event, on July 27, 2005, despite the results of the initial search, the MSO/OS conducted a second search of its security database, employing a broad swath of search terms including Schoenman's Social Security Number and accounting for the possibility of misspellings or incomplete information in Schoenman's name.[7] Suppl. DeMaio Decl. ¶ 6. Both searches were conducted by

---

[6] While the CIA tasked the MSO/OS with the responsibility for searching for documents responsive to Schoenman's Request, the CIA did not, in the first instance, similarly task the other four component parts of the MSO—*i.e.*, the Chief Information Officer, the Chief Financial Officer, the Chief Human Resources Officer, and Global Support—because those component parts are not reasonably likely to have records pertaining to an individual if no records are maintained by the MSO/OS. DeMaio Decl. ¶ 26; Suppl. DeMaio Decl. ¶¶ 6-7.

[7] Apart from Schoenman's Social Security Number, these search terms included: Ralph Benedek Schoenman; Ralph B. Schoenman; Ralph Schoenman; Benedek Ralph Schoenman; Benedek R. Schoenman; Ralph Benedek* Schoenman; Bene* Schoenman; Ral* Schoenman;

trained MSO personnel who regularly conduct such searches as part of their normal responsibilities. *Id.*

Based on the foregoing, the CIA has discharged its burden of describing in reasonable detail the scope and method of the search it performed and averring that all files likely to contain documents responsive to Schoenman's Request were searched. *Perry*, 684 F.2d at 127. That the CIA's submissions could have hypothetically been more detailed—for example, in describing the number of "false hits" obtained during the course of its search—does not prevent the Court from concluding that the CIA has satisfactorily demonstrated the adequacy of its search, nor preclude a finding that summary judgment is appropriate. *See id.* ("To be sure, the descriptions of the searches could have been more detailed . . . . The arguable inadequacy of the search descriptions here is, however, no more than marginal and does not render the grant of summary judgment inappropriate."). Because the record evidences that the CIA conducted an informed, detailed, and good faith search of sources likely to reveal documents maintained by the MSO and responsive to Schoenman's Request, the Court finds that the CIA has carried its burden of establishing the reasonableness of its search within the MSO.

The CIA having discharged its burden of making out a *prima facie* showing of reasonableness, the burden shifts to Schoenman to provide "'countervailing evidence' as to the adequacy of the agency's search." *Iturralde*, 315 F.3d at 314. Schoenman tenders five principal

---

Ra* Schoenman; R* Schoenman; Ralph* Schoenman*; R* Schoenman*; * Schoenman; * Schoenman*; Ralph Shoenman; Ralph Schonman; Ralph Schoeman; Ralph Shoeman; Ralph Showman; Ralph Shoenmann; Ralph Schoe*; Ralph Shoe*; Ralph Scho*; Ralph Sho*; R* Schoenmann; R* Schoe*; R* Shoe*; R* Scho*; R* Sho*; * Shoenman; * Schonman; * Schoeman; * Shoeman; *Showman; * Schoenmann; * Schoe*; * Shoe*; * Scho*; and * Sho*. Suppl. DeMaio Decl. ¶ 6 n.3.

arguments as to why the CIA's search within the MSO/OS should be held inadequate, none of which is of any avail. The Court addresses each argument in turn.

First, Schoenman contends that the search within the MSO/OS was inadequate because the CIA did not document the search terms used in the course of its initial search in September 2001. Pl.'s Opp'n at 2. To the extent Schoenman intends to suggest that the CIA was somehow obligated to *create* a record of its search, he is mistaken. Because FOIA does not obligate agencies to create or retain documents, the CIA was not required "to provide [Schoenman] with documentation that may or may not exist but which, in any event, was created during the course of searching for records." *Schoenman*, 2009 WL 763065, at *18 (citing *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980)). To the extent Schoenman intends to suggest that the absence of detailed documentation concerning the scope of the search precludes the Court from assessing its adequacy, he is again mistaken. Even if the Court were to disregard the record evidence indicating that the MSO/OS searched its records in September 2001 using Schoenman's name and variants thereof, DeMaio Decl. ¶ 36, the precise scope of the MSO/OS's initial search is ultimately immaterial for the simple reason that the MSO/OS conducted a second search in July 2005, Suppl. DeMaio Decl. ¶ 6. In the course of its second search, the MSO/OS employed a wide range of search terms targeted to locate and identify documents responsive to Schoenman's Request and these terms, which included numerous variants of Schoenman's name and his Social Security Number, were "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351.

Second, Schoenman argues, in essence, that the adequacy of the CIA's search cannot be determined in the absence of information concerning the precise content of the MSO's

12

instructions to the MSO/OS, the number of "hits" obtained in response to particular search terms used during the course of the search, and the interplay between certain search terms.[8]  Pl.'s Opp'n at 3.  The Court reiterates that agencies are under no obligation to create or generate records in the course of discharging their obligations under FOIA and the Privacy Act and once again "declines to condone" Schoenman's veiled attempt to secure discovery as to the exhaustive details of the scope and method of the CIA's search.  *Schoenman*, 2009 WL 763065, at *18.  The sworn declarations submitted by the CIA are sufficiently detailed to establish that the agency conducted an informed search reasonably calculated to locate responsive documents, and Schoenman's speculation that his name is so common that one would expect a certain number of "hits" on a search for his name, Pl.'s Opp'n at 3, falls woefully short of the sort of evidence that would raise a "substantial doubt" as to the adequacy of the CIA's search.  *Iturralde*, 315 F.3d at 314.

Third, Schoenman challenges the CIA's decision to task only the MSO/OS—and not the other four offices within the MSO—with the responsibility for conducting a search for records responsive to his Request.  Pl.'s Opp'n at 3-4.  In its sworn declarations, the CIA explains that the MSO, as the administrative support arm of the CIA, maintains records on individuals with whom the CIA has some sort of past or present relationship.  Suppl. DeMaio Decl. ¶¶ 4-5.  In particular, the security database maintained by the MSO/OS contains security-related records, dating from the inception of the CIA, concerning current and former CIA employees and

---

[8]  Schoenman suggests that "it is not entirely clear that [his] name and social security number were independently on [sic] conjunctively searched."  Pl.'s Opp'n at 3.  To the contrary, the record is clear that the MSO/OS's search extended to "any records containing [Schoenman's] name *or* social security number."  Suppl. DeMaio Decl. ¶ 6 (emphasis added).

individuals for whom some sort of security processing or evaluation has been required, including individuals who come to the CIA's attention due to a counterintelligence interest. *Id.* ¶ 5. Unsurprisingly, where the CIA has no relationship with a given individual, the MSO typically will have no records concerning that individual. *Id.* Similarly, where the MSO/OS has no records concerning an individual in its security database, it is unlikely that there will be records for that individual anywhere else in the MSO. *Id.* ¶ 7. Accordingly, despite Schoenman's personal belief to the contrary, the CIA has explained in a sufficiently detailed and non-conclusory manner that it determined, based on function of the MSO and the nature of the records maintained by the MSO/OS *vis-à-vis* the MSO as a whole, that the other component parts of the MSO—*i.e.* the Chief Information Officer, the Chief Financial Officer, the Chief Human Resources Officer, and Global Support—are not reasonably likely to have records pertaining to an individual where there are no records for that individual in the security database maintained by the MSO/OS. DeMaio Decl. ¶ 26; Suppl. DeMaio Decl. ¶¶ 6-7. It is by now well-established that an agency is not required to search every record system for responsive documents, *Oglesby*, 920 F.2d at 68, and here the CIA has explained in sufficient, if less than perfect, detail the reasons behind "its determination that the record systems searched are the only ones likely to include responsive records," *Schoenman*, 2009 WL 763065, at *11. Indeed, although Schoenman has never adduced any competent evidence that he presently has, or had in the past, the sort of relationship that might entail generating documents within the MSO, the CIA nevertheless proceeded to conduct a search for responsive records within the MSO "out of an abundance of caution and in the interest of completeness." Suppl. DeMaio Decl. ¶ 5.

Fourth, and in a similar vein, Schoenman suggests that the CIA has failed to adduce

sufficient information concerning the precise contents of the MSO/OS electronic database such that would allow the Court to assess whether or not another MSO component part would likely maintain responsive records. Pl.'s Opp'n at 4-5. The Court disagrees. As set forth in greater detail elsewhere, the CIA has discharged its burden of providing reasonable—not exhaustive—detail concerning the scope and the method of its search and it has averred that all sources reasonably likely to contain information responsive to Schoenman's Request have been searched. The deficiency in the CIA's description of its search, if any, is no more than marginal and "does not render the grant of summary judgment inappropriate." *Perry*, 684 F.2d at 127.

Fifth, and finally, Schoenman complains that "[i]t is unclear whether the [MSO/OS] search is based on one or more than one electronic databases." Pl.'s Opp'n at 4. Here, Schoenman's complaint is predicated upon a typographical error in the sworn declarations submitted by the CIA; the CIA has since mooted Schoenman's argument by clarifying that the MSO/OS's search was limited to a single electronic database—*i.e.*, the electronic database that contains records of security-related documents dating from the agency's inception. Def.'s Reply at 7 n.4. In any event, the CIA has identified with sufficient particularity which record systems were reasonably likely to turn up information responsive to Schoenman's Request and has described its search with respect to those systems with enough detail to permit this Court to assess the adequacy of the search. *Oglesby*, 920 F.2d at 68.

To be sure, the CIA's description of its search hypothetically could have been more detailed, but the law requires not an exhaustive or meticulous account of the agency's search, but merely a reasonably detailed one. *Perry*, 684 F.2d at 127. Perfection is not now, and never has been, the relevant standard. The record evidences that the CIA conducted an informed, detailed,

and good faith search of sources likely to reveal documents maintained by the MSO and responsive to Schoenman's Request, and because Schoenman has adduced no countervailing evidence that would raise a "substantial doubt" as to the adequacy of the CIA's search, *Iturralde*, 315 F.3d at 314, the Court finds that there is no genuine issue as to the reasonableness of the CIA's search within the MSO. Accordingly, the Court shall GRANT the CIA's [64] Motion for Summary Judgment and DENY Schoenman's [70] Cross-Motion for Partial Summary Judgment as they pertain to the adequacy of the CIA's search for records within the MSO.

2.  The CIA Has Carried its Burden of Establishing the Reasonableness of its Search within the DO

Within the CIA, the DO is responsible for the clandestine collection of foreign intelligence information from human sources. DeMaio Decl. ¶ 23; Suppl. DeMaio Decl. ¶ 8. Its records system contains information concerning persons or entities that are of foreign intelligence or counterintelligence interest to the CIA and other agencies in the United States. DeMaio Decl. ¶ 23; Suppl. DeMaio Decl. ¶ 8. The DO maintains an electronic database that contains the records under the DO's control, which includes some of the CIA's most sensitive operational information. Suppl. DeMaio Decl. ¶ 9. Because the public disclosure of the specific organization and search capabilities of the electronic database could put the information contained in the database at risk, the structure of the database is treated as an intelligence method and is protected from public disclosure. *Id.* ¶ 10. Nevertheless, the CIA explains that the database can be searched for personal names as indexed into specific fields—that is, if a name is not indexed into one of these fields, it is not retrievable. *Id.* At the same time, provided it appears in a searchable field, a name need not appear in the title or subject line of a document in order to retrieve responsive information. *Id.* Moreover, the database groups names and accounts

automatically for variations or errors in spelling.  *Id.*

The CIA avers that, once tasked by IMS with the responsibility for searching for documents responsive to Schoenman's Request, the DO "made all reasonable efforts to identify and retrieve any [responsive] records."  DeMaio Decl. ¶ 35.  Specifically, the task was assigned to a trained officer who routinely conducts searches within the DO's electronic database, who searched for records using Schoenman's first and last name, and variations thereof.  DeMaio Decl. ¶ 35; Suppl. DeMaio Decl. ¶¶ 9, 11.  The universe of records searched included so-called "exempt operational files," which are excluded from searches where, unlike here, the request does not fall within the ambit of the Privacy Act.  Suppl. DeMaio Decl. ¶ 12.  Ultimately, the DO located a total of five responsive documents, each of which was withheld in its entirety.  DeMaio Decl. ¶ 35; Suppl. DeMaio Decl. ¶ 11.  The Court previously upheld the withholding of these five documents in full.  *See Schoenman*, 2009 WL 763065, at *19-25.

Here too, the CIA has discharged its burden of describing in reasonable detail the scope and method of the search it performed and averring that all files likely to contain documents responsive to Schoenman's Request were searched.  *Perry*, 684 F.2d at 127.  The record permits but one conclusion—the CIA's search within the DO was "reasonably calculated to uncover all relevant documents."  *Weisberg*, 705 F.2d at 1351.  Because the record evidences that the CIA conducted an informed, detailed, and good faith search of sources likely to reveal documents maintained by the DO and responsive to Schoenman's Request, the burden shifts to Schoenman to provide "'countervailing evidence' as to the adequacy of the agency's search."  *Iturralde*, 315 F.3d at 314.  Schoenman tenders two principal arguments as to why the CIA's search within the DO should be held inadequate, neither of which is of any avail.  The Court addresses each

argument in turn.

First, Schoenman speculates that the DO's electronic database is not designed to allow for full-text searches of all DO records, but rather is confined to more discrete indexed, field-based searches. Pl.'s Opp'n at 5. Similarly, without any support in the record, Schoenman periodically conjectures that certain information may not be indexed in a searchable field. *Id.* at 5-6. Understandably, Schoenman may have his own ideas as to how the CIA should organize its records, but the CIA is under no obligation to reorganize its files to satisfy Schoenman's Request, *McGehee v. Cent. Intelligence Agency*, 697 F.2d 1095, 1100 (D.C. Cir. 1983), and imposing Schoenman's preferences upon the CIA would extend far beyond the sort of reasonable efforts required of agencies in responding to validly lodged requests under FOIA and the Privacy Act, *Landmark Legal Found. v. Envtl. Prot. Agency*, 272 F. Supp. 2d 59, 63 (D.D.C. 2003).

Second, and in a similar vein, Schoenman poses a variety of questions about the specific details of the organization and contents of the DO's electronic database. Asserting, without any citation to competent record evidence, that the DO is "known for . . . decentralized filing systems" and that the DO's component parts maintain "chron" or "chronological" files, "registry" files, and so-called "soft" files, Schoenman asks whether these types of documents are maintained in the DO's database and whether such information appears in a searchable field. Pl.'s Opp'n at 5-6. Schoenman is simply mistaken that, "[u]ntil these questions have been addressed, the CIA cannot show that its search efforts have been adequate." *Id.* at 6. Notwithstanding the questions conjured by Schoenman, the CIA has discharged its burden of providing reasonable—not exhaustive—detail concerning the scope and method of its search and it has averred that all sources within the DO reasonably likely to contain information responsive

to Schoenman's Request have been searched. Indeed, the sworn declarations submitted by the CIA indicate that the single electronic database searched in this case "collectively[] contains the CIA's records under the control of the DO." Suppl. DeMaio Decl. ¶ 9. Despite Schoenman's unsupported conjecture to the contrary, the Court finds that there is no genuine issue as to the reasonableness of the CIA's search as it pertains to the DO. Viewed from a slightly different perspective, Schoenman's questions are akin to requests for discovery, but discovery is unavailable where, as here, the agency's declarations are sufficiently detailed. *Wolf v. Cent. Intelligence Agency*, 569 F. Supp. 2d 1, 9-10 (D.D.C. 2008).

In short, the record evidences that the CIA conducted an informed, detailed, and good faith search of sources likely to reveal documents maintained by the DO and responsive to Schoenman's Request, and because Schoenman has adduced no countervailing evidence that would raise a "substantial doubt" as to the adequacy of the CIA's search, *Iturralde*, 315 F.3d at 314, the Court finds that there is no genuine issue as to the reasonableness of the CIA's search within the DO. Accordingly, the Court shall GRANT the CIA's [64] Motion for Summary Judgment and DENY Schoenman's [70] Cross-Motion for Partial Summary Judgment as they pertain to the adequacy of the CIA's search for records within the DO.

3. Schoenman's Allegations as to "Missing Records" Do Not Undermine the Adequacy of the CIA's Search for Records

When it last had the opportunity to address the parties' cross-motions for summary judgment, the Court, with one exception, uniformly rejected Schoenman's contentions that the CIA's search for records responsive to his Request was inadequate based upon his speculation that the CIA should have produced certain "missing records." *Schoenman*, 2009 WL 763065, at *16-18. The single exception pertained to Schoenman's request for "all index references," which

19

the CIA admittedly had not produced. *Id.* at *18. Since the CIA had not offered any explanation as to why these documents were not produced, the Court instructed the CIA to submit supplemental materials "provid[ing] an explanation for its failure to provide 'index references' to [Schoenman], as requested.'" *Id.* As instructed, the CIA has explained why the documents were not produced, and the Court is satisfied with its explanation.

Whereas physical indices or hard copy search records were used before the agency transitioned to electronic records, all the relevant records in this action have been consolidated into electronic databases. Suppl. DeMaio Decl. ¶ 16. Hence, the record systems at issue here were both electronic databases, meaning that, where the subject of a search is an individual, the searching officer simply enters the individual's name (or variants thereof) in the electronic database rather than using physical or hard copy search records. *Id.* ¶ 14. Accordingly, the CIA credibly explains that it "did not provide any 'index references' to [Schoenman] because of the simple fact that none exist." *Id.* ¶ 13. Simply put, Schoenman's unsupported allegation that the CIA's explanation lacks credibility and his speculation that such documents simply *must* exist does not suffice. Pl.'s Opp'n at 6-7. As Schoenman has been consistently reminded by this Court, his personal "conjecture 'is hardly proof that such documents exist.'" *Schoenman*, 2009 WL 763065, at *12 (citing *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1120 (D.C. Cir. 2007)); *see also Steinberg*, 23 F.3d at 552 ("mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search.").

    B.    *Schoenman's Belatedly Introduced Arguments Concerning the Adequacy of the CIA's Search Are Without Merit*

Despite the fact that this Court clearly limited supplemental briefing on the parties' cross-motions for summary judgment to a single, discrete issue—*i.e.*, the adequacy of the CIA's search

within the MSO and the DO, including the propriety of the CIA's non-production of "index references"—Schoenman injects three additional issues into his supplemental papers.

First, Schoenman suggests that there are "several examples outside th is [sic] case where CIA searches have proved not to produce relevant records." Pl.'s Opp'n at 7. In support, he submits a declaration executed by his own counsel in September 2002 in connection with an unrelated FOIA action (and therefore long before the parties' initial round of briefing on their cross-motions for summary judgment) and a four-paragraph declaration from Professor David Kaiser outlining in bare and unilluminating terms an unrelated FOIA request he submitted to the CIA over twenty years ago. *See* Decl. of James H. Lesar, Docket No. [116-3]; Decl. of David Kaiser, Docket No. [116-5]. Suffice it to say, neither declaration has any bearing upon the reasonableness of the CIA's search for documents responsive to Schoenman's Request in this action, nor even remotely approximates the sort of countervailing evidence that would raise a "substantial doubt" as to the adequacy of the CIA's search for records in the instant case.[9]

Second, long after the parties had already completed the permitted supplemental briefing and without first seeking the Court's leave, Schoenman submitted additional materials that he claims "bear on issues regarding the failure of the CIA to demonstrate that it has conducted an adequate search for records"—namely, (a) a declaration from Professor G. Robert Blakey submitted in an unrelated FOIA action in which Professor Blakey outlines his personal belief that certain CIA records at issue in that action must have been destroyed, and (b) a decades-old

_____

[9] The Court pauses to emphasize that, despite Schoenman's consistent efforts to draw the attention elsewhere, the only question properly before this Court is the propriety of the CIA's response to Schoenman's FOIA Request; the Court shall not permit this action to devolve into multiple mini-trials concerning factual allegations pertaining to separate FOIA requests that are, frankly, irrelevant to the present action.

memorandum originating with the National Security Agency (the "NSA") that mentions Schoenman and is listed as having been directed to Richard Helms, then the Director of Central Intelligence, and Vice Admiral Rufus L. Taylor, ostensibly of the CIA.  Pl.'s Notice of Filing at 1-2; *see also* Aff. of Professor G. Robert Blakey, Docket No. [122-2]; Ex. from Oglesby Case, Docket No. [122-1].  Neither document undermines the reasonableness of the CIA's search. Professor Blakey's declaration, like the two documents just discussed, simply has no bearing upon the CIA's search for documents in the instant case and falls woefully short of the sort of countervailing evidence that would raise a "substantial doubt" as to the adequacy of the CIA's search for records here.  The same holds true for the NSA memorandum; even assuming, *arguendo*, that the memorandum was sent to and at some point retained by the CIA, "the [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search."[10] *Boyd*, 475 F.3d at 391.  The CIA's supporting declarations establish its compliance with FOIA, and no more is required under these circumstances.  *Budik*, 2010 WL 3833828, at *7.

---

[10]  Nor does Schoenman ever adequately explain how a memorandum prepared by the NSA unequivocally evidences "that *the CIA* . . . [was] involved in extensive surveillance against Schoenman," documented such surveillance, and therefore must have additional documents responsive to Schoenman's Request.  Pl.'s Notice of Filing at 2 (emphasis added).  In any event, even if it had been timely tendered, the memorandum would not, as Schoenman appears to suggest, come remotely close to justifying revisiting the Court's prior determination that the CIA's search for records was reasonable even though it excluded the DCI Area and the DI from its search for responsive records.  *See id.* at 2-3.  As set forth in the Court's prior opinion, "the CIA has explained in a reasonably detailed and nonconclusory manner that it determined, based on the respective functions of each directorate, that only the DO and the MSO were likely to contain responsive material and neither the DI [n]or the DCI Area was likely to have responsive records."  *Schoenman*, 2009 WL 763065, at *11.  The same holds true for the DS&T, which Schoenman notably elected not to include as part of his challenge to the sufficiency of the CIA's search on the parties' first round of briefing.  *Id.* at *10 n.12.  The CIA has explained in sufficient detail why the DS&T, which is responsible for creating and applying technologies to fulfill intelligence requirements, was not likely to have responsive records.  DeMaio Decl. ¶¶ 24, 34.

Third, once again long after the parties had already completed the limited supplemental briefing permitted by the Court, Schoenman filed his Motion to Supplement the Record in light of the referral of certain documents by the Federal Bureau of Investigation (the "FBI") to the CIA for purposes of FOIA processing. *See generally* Pl.'s Mot. to Suppl. Mem. Schoenman posits that the CIA's "failure to locate and account for these records during its search of its files raises troubling questions about the nature and extent of the CIA's search." *Id.* at 2. The 119 documents at issue—first referred to the CIA on July 6, 2009—consist of documents that originated with the CIA. Decl. of Dennis J. Argall ("Argall Decl."), Docket No. [126-1], ¶ 6 & Ex. B.[11] Of the 119 documents, only 6 pertain to Schoenman himself. *Id.* The remaining 113 pertain to Lord Bertrand Russell, the International War Crimes Tribunal, the Bertrand Russell Peace Foundation, and the Citizens Commission of Inquiry. *Id.*

Schoenman focuses on the six documents, consisting of fourteen pages, that pertain to him personally. According the Schoenman, "[t]he obvious question which must be asked is how the CIA's search managed to overlook each and every one of the documents which the FBI identified as requiring a referral to the CIA when it conducted its own search for records on Schoenman[.]" Pl.'s Mot. to Suppl. Reply at 2. Schoenman speculates that "[i]t would appear that the CIA's search may have been formulated in some way, or the CIA's record systems structure [sic] in some way, which enabled this to happen." *Id.* However, consistent with the guiding principle that the adequacy of a FOIA search is not determined "by the fruits of the search," *Iturralde*, 315 F.3d at 315, "the [mere] fact that a particular document was not found

---

[11] Additionally, the FBI forwarded another 145 documents that originated with the FBI but contained information concerning the CIA. Argall Decl. Ex. B.

does not demonstrate the inadequacy of a search," *Boyd*, 475 F.3d at 391. The CIA is correct that it is not duty-bound to account for documents which a requester has in some way identified, provided it has made a diligent search for documents in those places where they might be expected to be found. *See Iturralde*, 315 F.3d at 315 ("After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them."). Here, the record evidences that the CIA conducted an informed, detailed, and good faith search of sources likely to reveal documents responsive to Schoenman's Request, and Schoenman's reliance on these 6 documents simply falls far short of raising the "substantial doubt" required to undermine the CIA's *prima facie* case of reasonableness. *Id.* at 314.

Schoenman does not dispute that the remaining 113 documents referred to the CIA by the FBI relate not to him personally, but rather to Lord Bertrand Russell and various organizations. Pl.'s Mot. to Suppl. Reply at 2. Nor does he dispute that the Court previously dismissed his claims as they pertain to these records based on his failure to exhaust his administrative remedies. *See Schoenman*, 2006 WL 1126813, at *19-20. Rather, he speculates that, because he was "a very active principal in each of these organizations," "[i]t is to be expected that a search under his name for all records in CIA files would result in some hits on records which pertained to these other subjects." Pl.'s Mot. to Suppl. Reply at 3. However, as Schoenman has been reminded time and time again, "mere speculation that as [of] yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search." *Steinberg*, 23 F.3d at 552. Indeed, an agency's lack of success in locating responsive records does not render the search inadequate provided the agency's supporting declarations establish its compliance with FOIA. Again, the record here evidences that the CIA conducted an informed, detailed, and

24

good faith search of sources likely to reveal documents maintained by the CIA and responsive to Schoenman's Request for records pertaining to him personally. In addition, because Schoenman has adduced no countervailing evidence that would raise a "substantial doubt" as to the adequacy of the CIA's search, *Iturralde*, 315 F.3d at 314, the Court finds that there is no genuine issue as to the reasonableness of the CIA's search. Accordingly, while the Court shall GRANT Schoenman's [124] Motion to Supplement the Record, it nevertheless reaches the same conclusion as to the parties' respective cross-motions for summary judgment.

### C.    *Schoenman is Not Entitled to Discovery*

As he has on multiple occasions in this action, Schoenman again requests that discovery be had to address the adequacy of the CIA's search. Pl.'s Opp'n at 2. However, where, as here, the agency's declarations are sufficiently detailed and the district court is satisfied that no factual dispute remains, discovery should be denied. *Wolf*, 569 F. Supp. 2d at 9-10. Because Schoenman has failed to raise substantial, or even colorable, doubt concerning the adequacy or good faith of the CIA's search, *Iturralde*, 315 F.3d at 314, the Court shall once again DENY Schoenman's request for discovery.

### IV.  CONCLUSION

The Court has considered the remaining arguments tendered by the parties and has concluded that they are without merit. Therefore, and for the reasons set forth above, the Court shall GRANT Schoenman's [124] Motion to Supplement the Record, but nevertheless GRANT the CIA's [64] Motion for Summary Judgment and DENY Schoenman's [70] Cross-Motion for Partial Summary Judgment as they pertain to the adequacy of the CIA's search for records within the MSO and the DO, including the propriety of the CIA's failure to produce "index references."

Furthermore, the Court shall DENY Schoenman's request for discovery. An appropriate Order accompanies this Memorandum Opinion.

Date:   January 21, 2011

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge