## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RALPH SCHOENMAN,

      Plaintiff,

    v.

FEDERAL BUREAU OF
INVESTIGATION, *et al.*,

      Defendants.

Civil Action No. 04-02202 (CKK)

## MEMORANDUM OPINION
(January 23, 2012)

Over seven years ago, Plaintiff Ralph Schoenman ("Schoenman"), a self-described political activist and author, commenced this action against the Central Intelligence Agency (the "CIA") and a handful of other federal agencies, citing the Freedom of Information Act ("FOIA") and the Privacy Act of 1974 ("PA") as a basis for the disclosure of a broad array of records relating to him, Lord Bertrand Russell, and several organizations. Over the years, Schoenman's claims for disclosure have been successively winnowed down by the decisions of this Court such that, today, there is only one "live" substantive issue remaining—namely, the disposition of 120 records that were referred to the CIA by the Federal Bureau of Investigation (the "FBI") for processing and a direct response to Schoenman. There are now two motions before the Court that speak to this issue: the CIA's [164] Motion for Summary Judgment and Schoenman's [166] Cross-Motion for Summary Judgment as to the FBI Records Referred to the CIA ("Cross-Motion for Summary Judgment"). Upon careful consideration of the parties' submissions, the relevant authorities, and the record as a whole, the Court shall GRANT the CIA's [164] Motion for Summary Judgment and DENY Schoenman's [166] Cross-Motion for Summary Judgment. In

addition, because no other viable claims for disclosure remain extant in this case, the Court shall

enter a final judgment, marking the final chapter in this protracted litigation.

## I.  PRELIMINARY MATTERS

Preliminarily, the Court must address two matters that, once resolved, will define the

scope of the record for the pending cross-motions for summary judgment.

### A.    *Schoenman's First Motion to Late File*

The first preliminary matter to be addressed is Schoenman's self-styled [171] Unopposed

Motion for Leave to File Reply to Defendants' Opposition to Plaintiff's Cross-Motion for

Summary Judmgment [sic] With Respect to CIA Referrals Out-of-Time ("First Motion to Late

File").  Through this motion, Schoenman seeks the Court's leave to late file two documents in

support of his Cross-Motion for Summary Judgment—specifically, a reply memorandum of

points and authorities and a declaration prepared by his wife.  Although the motion is unopposed,

the Court declines to exercise its discretion to allow Schoenman to late file.

In this case, Schoenman did not file his First Motion to Late File until August 8, 2011,

four days after his deadline to act had already expired.  *See* Scheduling & Procedures Order

("Scheduling Order"), ECF No. [162], at 4; Min. Order (June 20, 2011).  As a result, he must do

more than establish that there is "good cause" for the requested extension; he must also show that

his failure to act within the time specified was the product of "excusable neglect."  FED. R. CIV.

P. 6(b)(1); *see also* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause

and with the judge's consent.").  Schoenman has satisfied neither standard.  *See generally*

*Yesudian ex rel. U.S. v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001) (identifying the

factors that should generally be considered under the "excusable neglect" inquiry).

Honoring the parties' joint request, this Court originally set an exceedingly generous schedule for the briefing of the pending cross-motions for summary judgment. Under the default framework supplied by the Local Rules, any motion should be fully briefed somewhere between twenty-one and twenty-seven days, depending on the method(s) of service employed. *See* LCvR 7(b), (d); FED. R. CIV. P. 6(d). In this case, the Court afforded the parties, who were already intimately familiar with the contours of this case, a total of fifty-six days to brief their cross-motions for summary judgment. *See* Scheduling Order at 4. According to the schedule set by the Court, Schoenman's reply would be the last filing in the series and was due to be filed no later than July 21, 2011. *See id.*

Despite the generosity of the schedule, Schoenman, citing "developments in other cases handled by [his] counsel," previously moved this Court for a further two-week enlargement. Pl.'s Unopposed Mot. to Revise Briefing Schedule, ECF No. [165], at 1. "Very reluctantly," the Court exercised its discretion to grant Schoenman's motion, extending the briefing schedule an additional two weeks and giving him until and including August 4, 2011, at close-of-business, to file his reply papers with the Court. *See* Min. Order (June 20, 2011). But in so doing, the Court "underscore[d] that [it was] an extension of an already exceedingly generous briefing schedule" and warned Schoenman, in no uncertain terms, that "NO FURTHER EXTENSIONS [would] be granted to either party absent extraordinary circumstances." *Id.* (capitalization in original).[1]

The Court's generosity proved to be misplaced. Schoenman did not file his reply papers,

---

[1] The Court acknowledges that the CIA was subject to the same warning but nonetheless received a four-hour extension of one of its filing deadlines. *See* Min. Order (July 22, 2011). However, unlike here, the length of the CIA's delay was modest and its full duration was justified by unforeseen administrative difficulties. Furthermore, when compared to Schoenman, the CIA has not exhibited the same inability to meet the deadlines set by the Court nor demonstrated a disregard of Court-ordered deadlines.

seek an extension of time, or take any other proactive steps before the August 4, 2011 deadline expired.  Instead, he elected to allow the Court-ordered deadline to come and go without so much as a peep.  Indeed, it was not until four days later, on August 8, 2011, that Schoenman filed his First Motion to Late File.  Plainly, Schoenman did not heed this Court's prior warnings.

In his First Motion to Late File, Schoenman tenders a litany of excuses for his failure to abide by the schedule ordered by the Court.  While some of those excuses might provide a legitimate explanation why Schoenman's counsel was unable to work on this matter for a few days, or perhaps even a week, they do not satisfy the Court that a reasonably diligent attorney would be unable to prepare and file the requisite submissions in a timely manner.  Under the specified schedule, Schoenman had twenty-one days after being served with the CIA's papers to prepare and file his response—multiples more than the norm.  *See* LCvR 7(d).  Even accepting that Schoenman's counsel encountered the cited difficulties during this extended period, there was still more than ample time for a reasonably diligent attorney to prepare and file a cogent, thoughtful, and well-researched reply.  Yet the record is barren of any indication that Schoenman's counsel sought to do so.  Indeed, Schoenman's "actions in this case do not bespeak diligence or any sense of urgency at all."  *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 226 (D.C. Cir. 2011).  Upon consideration of the totality of the circumstances, the Court finds that Schoenman has failed to discharge his burden of showing that there is "good cause" for a further extension of his deadline.  FED. R. CIV. P. 6(b)(1)(A); FED. R. CIV. P. 16(b)(4).

Moreover, in his First Motion to Late File, Schoenman alleges that he "continued to believe that he could met [sic] the August 4 deadline until late on August 3rd," at which point it

4

"became clear that there was still much work to do." First Mot. to Late File at 3. In other words, by his own account, Schoenman subjectively believed as early as the day before the expiration of the Court-ordered deadline that he would be unable to meet that deadline. Despite this admission, Schoenman offers no satisfactory explanation as to why he still waited another five days, until his time to act had already expired, to petition the Court for a further extension.[2] Far from "excusable neglect," FED. R. CIV. P. 6(b)(1)(B), these circumstances evince something closer to "willful disregard" of the Court's process, BLACK'S LAW DICTIONARY 1133 (9th ed. 2009), a conclusion that is only bolstered by the fact that Schoenman had long since been on actual notice that the Court expected him to adhere to the specified schedule and was strongly disinclined to grant further extensions absent extraordinary circumstances, *see Tibbetts v. Sweetland*, No. 02-7151, 2004 WL 287123, at *1 (D.C. Cir. Feb. 3, 2004) (*per curiam*) (denying leave to file out of time where party was given a "final warning" that "[n]o further extensions" would be allowed); *Rones v. Nat'l Ass'n for the Advancement of Colored People*, 170 F.R.D. 80, 81-82 (D.D.C. 1997) (same). Under these unique circumstances, the Court finds that Schoenman has failed to establish "excusable neglect" for his failure to act within the time specified. FED. R. CIV. P. 6(b)(1)(B).

---

[2] Schoenman's representation that his counsel had a prior commitment to meet with a board member of a non-profit organization does not constitute a satisfactory explanation. First, Schoenman admits that the multi-day meeting began no earlier than the afternoon of August 4, 2011, meaning that there is no reason why he could not have acted in this matter on the evening of August 3, 2011 or the morning of August 4, 2011. Second, Schoenman states only that his counsel had to spend "much of the next three days" meeting with the board member, suggesting that his counsel had windows of opportunity to act during the meeting. Third, Schoenman concedes that the meeting was scheduled "weeks" earlier, meaning that his counsel's purported unavailability during this period was reasonably foreseeable and should have been taken into account when determining how to go about meeting the Court-ordered deadline. Fourth, and perhaps most importantly, Schoenman seems to be laboring under the misapprehension that his counsel's other commitments override his responsibilities in this litigation and as an officer of this Court. The mere existence of a prior commitment does not provide a legitimate excuse for non-compliance with the directives of this Court.

In short, Schoenman has failed to establish to this Court's satisfaction that there is "good cause" for the requested extension and that his failure to act within the time specified was the product of "excusable neglect." FED. R. CIV. P. 6(b)(1).  Accordingly, in an exercise of its discretion, the Court shall DENY Schoenman's [171] First Motion to Late File.[3]

B.      *Schoenman's Second Motion to Late File*

The second preliminary matter to be addressed is Schoenman's [172] Motion for Leave to File Local Rule 7(h) Statement Out-of-Time ("Second Motion to Late File"), which the CIA has opposed.  Filed on August 10, 2011, Schoenman's motion asks the Court's blessing to late file a statement of undisputed material facts, as required by Local Civil Rule 7(h).  As Schoenman concedes, his statement was due by no later than June 30, 2011, meaning that he is asking this Court permission to file one month and eleven days late.  But because Schoenman has failed to establish that there is "good cause" for the extension and that his failure to act within the time specified was the product of "excusable neglect," FED. R. CIV. P. 6(b)(1), the Court shall exercise its discretion to DENY Schoenman's [172] Second Motion to Late File.[4]

---

[3] In any event, the Court has carefully considered Schoenman's proposed submissions and finds that, even if they were timely filed, they would not warrant a different result on the pending cross-motions for summary judgment.  As a threshold matter, many of the arguments in Schoenman's proposed memorandum would be raised for the first time in reply and would be disregarded on that basis.  *See Baloch v. Norton*, 517 F. Supp. 2d 345, 348 (D.D.C. 2007) ("If the movant raises arguments for the first time in his reply to the non-movant's opposition, the court [may] either ignore those arguments . . . or provide the non-movant an opportunity to respond."), *aff'd*, 550 F.3d 1191 (D.C. Cir. 2008).  Regardless, Schoenman's arguments would fail on the merits: they are speculative, unsupported, and contradicted by all the competent evidence in the record.

[4] There are two additional, independent grounds for denying the motion.  First, although Schoenman suggests in his Second Motion to Late File that a copy of his proposed statement is attached, no such document appears on the public docket, rendering it impossible for this Court to determine whether it is even worthwhile to permit leave to late file.  *See* LCvR 5.4(c)(2) ("A person filing a document by electronic means is responsible for insuring the accuracy of the official docket entry generated by the CM-ECF software.").  Second, the CIA contends, without contradiction, that Schoenman failed to comply with the meet-and-confer requirements of Local Civil Rule 7(m) before filing his motion.  *See Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 120 (D.D.C. 2006) ("[Where] a party files a nondispositive motion without certifying its compliance with Rule 7(m), the motion will be denied.").

As an initial matter, Schoenman had an exceedingly generous one month and four days to prepare and file his Cross-Motion for Summary Judgment, including his statement of undisputed material facts. *See* Scheduling Order at 4; Min. Order (June 20, 2011). Further, he was on notice that this Court "strictly adheres" to the dictates of Local Civil Rule 7(h) and that he was expected to submit a statement of undisputed material facts. Scheduling Order at 2-3. Nonetheless, Schoenman offers a single reason for his failure to file a timely statement—namely, that he purportedly encountered "multiple [technical] problems, primarily with a malfunctioning scanner" when attempting to file on the eve of the expiration of the deadline. Second Mot. to Late File at 1. On its face, the excuse is patently insufficient. When a party is afforded a generous briefing schedule of this kind, he waits until the cusp of the deadline to begin filing at his peril. Schoenman had more than a month to prepare and submit a timely filing in connection with a relatively straightforward motion. His cursory explanation for his inability to timely file, viewed within the context of the schedule as a whole, fails to satisfy this Court that there is "good cause" for the requested extension. FED. R. CIV. P. 6(b)(1)(A). Again, this conclusion is bolstered by the fact that Schoenman was on notice that the Court expected him to adhere to the specified schedule, which had already been "very reluctantly" extended once, and that the Court was disinclined to grant further extensions "absent extraordinary circumstances." Min. Order (June 20, 2011). Far from "extraordinary," the circumstances cited by Schoenman were entirely foreseeable.

Furthermore, Schoenman has failed to establish "excusable neglect." FED. R. CIV. P. 6(b)(1)(B). After his deadline to file a statement of undisputed material facts elapsed, he waited another one month and eleven days before taking any steps to remedy his non-compliance.

Schoenman does not offer a satisfactory explanation for this extraordinary and unacceptable delay. Indeed, he concedes that the CIA effectively put him on notice of his non-compliance when it filed its opposition papers on July 21, 2011, three weeks before he filed his Second Motion to Late File. Regardless, Schoenman's ability to file a timely statement was a matter entirely within his control; he simply failed to act with reasonable diligence. And to allow Schoenman leave to late file at this advanced date would unduly prejudice the CIA. Due entirely to Schoenman's failings, the CIA crafted its opposition to Schoenman's Cross-Motion for Summary Judgment without preparing a responsive statement of material facts, for the simple reason that Schoenman had not submitted a timely statement requiring a response. As a result, granting Schoenman the requested leave would unfairly require the CIA to draft its opposition anew and would delay the resolution of this action further. *See* Pl.'s Resp. to CIA's Opp'n to Pl.'s Mot. for Leave to File Local Rule 7(h0 [sic] Stmt. Out-of-Time, ECF No. [174], at 2 (conceding that "[o]bviously there is some disadvantage to defendant's counsel in having to . . . revisit the issues raised by earlier pleadings."). On this record, viewing the totality of the circumstances, the Court finds that Schoenman has failed to establish "excusable neglect." FED. R. CIV. P. 6(b)(1)(B).

In sum, Schoenman has failed to establish to this Court's satisfaction that there is "good cause" for the requested extension and that his failure to act within the time specified was the product of "excusable neglect." FED. R. CIV. P. 6(b)(1). Accordingly, in an exercise of its discretion, the Court shall DENY Schoenman's [172] Second Motion to Late File.

## II. BACKGROUND

This action is no spring chicken; it has been pending for over seven years and has seen more than its fair share of motion practice in that time.  Setting forth the full breadth of the factual and procedural background of the case is neither necessary nor desirable here.  Instead, the Court assumes familiarity with, and incorporates herein, its many prior opinions in this matter.[5]  In this section, the Court shall briefly outline the background that is most germane to the pending motions.

In July 2001, Schoenman, acting through counsel, submitted various FOIA/PA requests to several federal agencies, including the CIA and the FBI, seeking the disclosure of an array of records relating to him, Lord Bertrand Russell, and six named organizations.[6]  Subsequently, the CIA and FBI acknowledged receipt of the requests and conducted searches of their records, ultimately producing some records and withholding others in full or in part.  Unsatisfied with the agencies' response, Schoenman commenced this action in December 2004, naming the CIA, the FBI, and several other identified and unidentified federal agencies as defendants.

In the years that have followed, the issues in this action have been successively winnowed down or refined by the decisions of this Court.  Most notably for present purposes, in an opinion

[5]   *See Schoenman v. Fed. Bureau of Investigation* ("*Schoenman 2/9/11*"), 763 F. Supp. 2d 173 (D.D.C. Feb. 9, 2011); *Schoenman v. Fed. Bureau of Investigation*, 764 F. Supp. 2d 40 (D.D.C. Jan. 21, 2011); *Schoenman v. Fed. Bureau of Investigation*, 263 F.R.D. 23 (D.D.C. Nov. 9, 2009); *Schoenman v. Fed. Bureau of Investigation* ("*Schoenman 3/31/09*"), 604 F. Supp. 2d 174 (D.D.C. Mar. 31, 2009); *Schoenman v. Fed. Bureau of Investigation* ("*Schoenman 3/19/09*"), Civil Action No. 04-2202, 2009 WL 763065 (D.D.C. Mar. 19, 2009); *Schoenman v. Fed. Bureau of Investigation*, 575 F. Supp. 2d 166 (D.D.C. Sept. 22, 2008); *Schoenman v. Fed. Bureau of Investigation*, 576 F. Supp. 2d 166 (D.D.C. Sept. 15, 2008); *Schoenman v. Fed. Bureau of Investigation*, 573 F. Supp. 2d 119 (D.D.C. Sept. 1, 2008); *Schoenman v. Fed. Bureau of Investigation*, 575 F. Supp. 2d 136 (D.D.C. Aug. 25, 2008); *Schoenman v. Fed. Bureau of Investigation*, Civil Action No. 04-2202, 2006 WL 1582253 (D.D.C. June 5, 2006); *Schoenman v. Fed. Bureau of Investigation*, Civil Action No. 04-2202, 2006 WL 1126813 (D.D.C. Mar. 31, 2006).

[6]   The six organizations were the Bertrand Russell Peace Foundation; the Bertrand Russell Peace Foundation, New York; the International War Crimes Tribunal; the Who Killed Kennedy Committee; the Bertrand Russell Research Center; and the Citizens Committee of Inquiry.

dated March 31, 2009, the Court concluded that the FBI had failed to justify some of the withholding decisions it made when responding to Schoenman's requests because the *Vaughn* index[7] that it proffered in this litigation was inadequate. *Schoenman*$_{3/31/09}$, 604 F. Supp. 2d at 194-204. Finding that the infirmities in the index were sufficiently pronounced so as to prevent the Court from testing the propriety of the FBI's withholding decisions, the Court directed the FBI to prepare and submit a revised *Vaughn* index. *Id.* at 204. Thereafter, the parties agreed that the best course of action was for the FBI to reprocess the full universe of responsive documents in its possession, re-release the disclosable portions to Schoenman, and then prepare a final *Vaughn* index. *See* Joint Status Report & Proposed Briefing Schedule, ECF No. [113].

In the course of reprocessing the 3,987 pages of responsive records in its possession, the FBI encountered a number of CIA-originating documents. Def.'s Stmt. of Material Facts as to Which There Is No Genuine Dispute, ECF No. [164], ¶ 3.[8] Rather than handling the records itself, the FBI elected to refer a total of 120 documents to the CIA for processing and a direct response to Schoenman. *Id.* The CIA subsequently reviewed those documents and, on January 21, 2010, provided Schoenman the disclosable portions thereof, ultimately releasing 101 documents in part (a total of 288 pages) and withholding 19 documents in full (a total of 52 pages). *Id.* ¶ 4. As grounds for its decision to withhold certain information, the CIA relied upon FOIA Exemptions 1, 3, and 6, and PA Exemptions (j)(1) and (k)(1). *Id.* ¶ 5.

---

[7] The reference is to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974), in which the United States Court of Appeals for the District of Columbia Circuit held that agencies should generally prepare an itemized index correlating withheld information with a specific exemption and the justification for non-disclosure.

[8] Even though he was warned that this Court "strictly adheres" to Local Civil Rule 7(h), Scheduling Order at 2, Schoenman nonetheless failed to file a timely counter-statement of material facts responding to the CIA's statement. The Court exercises its discretion to treat the uncontroverted facts identified by the CIA in its statement as admitted. *See* LCvR 7(h)(1); Scheduling Order at 2-3.

While this action was focused on requests directed to agencies other than the CIA, Schoenman's counsel lost track of the records produced by the CIA. *See* Joint Status Report, ECF No. [157], at 2 n.1. Accordingly, on February 25, 2011, the CIA re-released the disclosable portions of the records to Schoenman. Decl. of Elizabeth Anne Culver, Information Review Officer, National Clandestine Service, Central Intelligence Agency ("Culver Decl."), ECF No. [164-1], ¶ 5. Thereafter, Schoenman selected a sample of 31 documents (a total of 86 pages) that, by mutual agreement, would be the subject of the CIA's *Vaughn* index and the parties' anticipated briefing. *See* Joint Status Report, ECF No. [163], at 1. The parties then proceeded to brief the pending cross-motions for summary judgment. *See* Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s [164] Mem."), ECF No. [164]; Pl.'s Mem. of P. & A. in Supp. of Pl.'s Cross-Mot. for Summ. J. With Respect to FBI Docs. Referred to the CIA and in Opp'n to Def.'s Mot. for Summ. J., ECF No. [166]; Def.'s Opp'n to Pl.'s Cross-Mot. for Summ. J. and Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF No. [169]. As set forth above, Schoenman failed to file a timely reply in support of his Cross-Motion for Summary Judgment.

The pending motions are now fully briefed and ripe for a decision. In an exercise of its discretion, the Court finds that holding oral argument on the motions would not assist the Court in rendering its decision. *See* LCvR 7(f).

### III. LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted). However, Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and

private interests could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (*en banc*) (quotation marks and citation omitted), *cert. denied*, 507 U.S. 984 (1993).  To this end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for categories of material." *Milner v. Dep't of Navy*, __ U.S. __, 131 S. Ct. 1259, 1261-62 (2011).  Despite such exemptions, "disclosure, not secrecy, is the dominant objective of the act." *Rose*, 425 U.S. at 361.  For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 131 S. Ct. at 1262 (quotation marks and citations omitted).

When presented with a motion for summary judgment in this context, the district court must conduct a "de novo" review of the record, 5 U.S.C. § 552(a)(4)(B), which "requires the court to ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure," *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quotation marks and citation omitted).  "Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents," *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993), and only after an agency has proven that "it has fully discharged its disclosure obligations" is summary judgment appropriate, *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).  In ascertaining whether the agency has met its burden, the district court may rely upon agency affidavits or declarations.  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within

12

the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted).  In other words, "[u]ncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted).  Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  With these principles in mind, the Court turns to the merits of the parties' cross-motions for summary judgment.

## IV.  DISCUSSION

The CIA's [164] Motion for Summary Judgment and Schoenman's [166] Cross-Motion for Summary Judgment both speak to the same issue—namely, the propriety of the CIA's withholding decisions with respect to the 120 documents that were referred to the CIA by the FBI for processing and a direct response to Schoenman.  Of these 120 documents, the CIA ultimately released 101 documents to Schoenman in part (a total of 288 pages) and withheld 19 documents in full (a total of 52 pages).  To justify its withholding decisions under FOIA,[9] the CIA now relies

---

[9]  Consistent with the approach he has taken throughout this case, *see, e.g., Schoenman 3/19/09*, 2009 WL 763065, at *19, Schoenman does not dispute the CIA's reliance on PA Exemptions (j)(1) and (k)(1) as a basis for non-disclosure under that statute, *see* Def.'s [164] Mem. at 7.  In this Circuit, "it is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citation omitted), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004); *accord Lewis v. District of Columbia*, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011).  Schoenman was alerted to this principle long before he filed his opposition to the CIA's Motion for Summary Judgment.  *See* Scheduling Order ¶ 3(c).  Based on Schoenman's failure to respond, the Court exercises its discretion to treat the CIA's argument as conceded.

13

upon FOIA Exemptions 1 and 3[10]—two of the tools that the United States Supreme Court has recognized are available to agencies to "shield national security information and other sensitive materials" from public disclosure. *Milner*, 131 S. Ct. at 1271. The Court finds the CIA has met its burden of demonstrating to the Court's satisfaction that the claimed exemptions apply to the information withheld.

      A.     *The CIA Has Properly Invoked Exemption 1*

      Exemption 1 applies to materials that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). In this case, the CIA relies upon Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009), which prescribes a uniform system for classifying and safeguarding national security information. To show that it has properly withheld information on this basis, the CIA must show both that the information was classified pursuant to the proper procedures and that the withheld information substantively falls within the scope of Executive Order 13,526. *See Salisbury v. United States*, 690 F.2d 966, 971-72 (D.C. Cir. 1982) (analyzing a predecessor to Executive Order 13,526). Stated somewhat differently:

> Information can be properly classified under Executive Order 13526 if four requirements are met: (1) an original classification authority classifies the information; (2) the United States Government owns, produces, or controls the information; (3) the information falls within one or more of eight protected categories listed in section 1.4 of the Executive Order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in a specified level of damage

 

---

[10] Originally, the CIA also relied upon FOIA Exemption 6 as a basis for non-disclosure, but "[t]he CIA is no longer asserting Exemption 6 to protect any withheld information because Exemptions 1 and/or 3 also [purportedly] fully protect all such information." Def.'s [164] Mem. at 6 n.4.

to the national security, and the original classification authority is able
to identify or describe the damage.

*Am. Civil Liberties Union v. Dep't of Justice*, __ F. Supp. 2d __, 2011 WL 4005324, at *14

(D.D.C. Sept. 9, 2011) (citing Executive Order 13,526 § 1.1(a)).

Elizabeth Anne Culver ("Culver"), the Information Review Officer for the CIA's

National Clandestine Service, holds original classification and declassification authority. Culver

Decl. ¶¶ 12-13. She reviewed the documents at issue with respect to the pending cross-motions

for summary judgment and determined that they are owned, produced by, and under the control

of the United States Government. *Id.* ¶ 14. She explains in considerable detail that the

information withheld by the CIA includes, among other things, (a) information that would reveal

the identities of human and foreign intelligence service sources; (b) information pertaining to

source relationships that the CIA has forged with foreign intelligence services and liaisons; and

(c) information pertaining to the CIA's foreign intelligence activities and methods. *See id.* ¶¶ 24-

51; Second Decl. of Elizabeth Anne Culver, Information Review Officer, National Clandestine

Service, Central Intelligence Agency ("Suppl. Culver Decl."), ECF No. [169-1], ¶¶ 2-5. Further,

she explains, again in considerable detail, that the disclosure of such information would cause

damage or serious damage to national security because, among other things, (a) foreign

intelligence services and others who have interests at odds with the United States could use the

information to thwart national policies and programs and to detect, penetrate, counter, and

evaluate the CIA's activities; (b) the revelation of the CIA's intelligence activities in a particular

country or with a foreign liaison service could, even after the passage of time, harm the United

States' relationship with that country or result in countermeasures; and (c) the disclosure of the

identities of intelligence sources could hamper the CIA's ability to maintain current intelligence

sources and develop other intelligence sources in the future.  *See* Culver Decl. ¶¶ 24-51; Suppl.

Culver Decl. ¶ 4.  In short,  Culver explains why the information withheld in this case is properly

classified as "confidential" or "secret" under Executive Order 13,526, which protects, among

other things, "foreign government information," "intelligence activities (including covert action),

intelligence sources or methods, or cryptology," and "foreign relations or foreign activities of the

United States, including confidential sources."  Executive Order 13,526 § 1.4(b)-(d).

The Court is mindful of its responsibility to conduct a "de novo" review of the record.  5

U.S.C. § 552(a)(4)(B).  Nonetheless, in recognition that courts are generally ill-equipped to

second-guess an agency's opinion in the national security context, "the government's burden is a

light one."  *Am. Civil Liberties Union*, 628 F.3d at 624.  In this context, the district court "must

accord substantial weight to an agency's affidavit concerning the details of the classified status of

the disputed record," keeping in mind "that any affidavit or agency statement will always be

speculative to some extent, in the sense that it describes potential future harm."  *Id.* at 619

(quotation marks, notations, and citations omitted).  In the end, "an agency's justification for

invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Larson v. Dep't of

State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. Cent. Intelligence Agency*, 473 F.3d

370, 374-75 (D.C. Cir. 2007)).  In this case, according substantial weight and deference to

Culver's declarations, the Court finds that it is both plausible and logical that the disclosure of

the information withheld by the CIA "reasonably could be expected to result in damage to the

national security."  Executive Order 13,526 § 1.1(a)(4).[11]  "[F]inding no evidence in the record to

---

[11]  Courts in this Circuit have routinely found similar information to be protected from disclosure under Exemption 1.  *See, e.g.*, *Larson*, 565 F.3d at 863-64; *Krikorian v. Dep't of State*, 984 F.2d 461, 464-65 (D.C. Cir. 1993); *Am. Civil Liberties Union*, 2011 WL 4005324, at *14-17; *Int'l Counsel Bureau v. U.S. Cent. Intelligence Agency*, 774 F. Supp. 2d 262, 267-73 (D.D.C. 2011); *Morley v. U.S. Cent. Intelligence Agency*, 699 F. Supp. 2d

support the opposition conclusion, no further investigation is required," *Am. Civil Liberties Union*, 628 F.3d at 625, and the Court's inquiry is at an end.

Schoenman's arguments to the contrary are disjointed and often difficult to follow.  More importantly, they are wholly unpersuasive.  Many of them are mere restatements of arguments already raised and rejected at earlier points in this litigation.  Regardless, the arguments are so lacking in merit that they command little or no extended attention here.  Five examples will illustrate the point.

First, Schoenman raises a series of complaints with the CIA's proffered *Vaughn* index, but despite the numerosity of his complaints, they are unavailing.  Considering the CIA's submissions collectively, including Culver's declarations, the *Vaughn* index, and the partial production to Schoenman, the CIA has proffered more than enough information to "identify the records referenced and understand the basic reasoning behind the claimed exemptions."  *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1123 (D.C. Cir. 2007).  In this case, the CIA's submissions provide sufficient information to test the applicability of the exemptions relied upon without going so far as disclosing protected information.  For this reason, the Court declines Schoenman's invitation to review the records at issue *in camera*.

Second, Schoenman launches a broadside attack on Culver's description of the harm that could be expected to flow from the disclosure of the information withheld, but in so doing he fails to give sufficient credence to the axiom that, in this particular context, "any affidavit or agency statement will always be speculative to some extent, in the sense that it describes

---

244, 252-53 (D.D.C. 2010); *Am. Civil Liberties Union v. Dep't of Def.*, 664 F. Supp. 2d 72, 76-78 (D.D.C. 2009), *aff'd*, 628 F.3d 612 (D.C. Cir. 2011); *see also Schoenman*[3/19/09], 2009 WL 763065, at *20-23 (finding, earlier in this action, that the CIA established the applicability of Exemption 1 to national security information).

potential future harm." *Am. Civil Liberties Union*, 628 F.3d at 619 (quotation marks and citations omitted).  Suffice it to say that the Court has conducted a searching review of Culver's declarations, the CIA's *Vaughn* index, and the partial production to Schoenman, and is satisfied that it is both plausible and logical that the disclosure of the information withheld "reasonably could be expected to result in damage to the national security."  Executive Order 13,526 § 1.1(a)(4).

Third, the Court appreciates that Schoenman has his own opinion as to the magnitude of the national security interests implicated by the information captured by his FOIA requests, but he once again fails to recognize that "[t]he applicable legal standard . . . is clear and 'allocates to the [g]overnment the responsibility for evaluating the harms associated with public disclosure, and neither the proponent of disclosure nor the district court is free to substitute its own policy judgments for those of the Executive.'"  *Schoenman*$_{2/9/11}$, 763 F. Supp. 2d at 195 (quoting *Alsawam v. Obama*, 764 F. Supp. 2d 11, 19 (D.D.C. 2011)).  In this context, "little proof or explanation is required beyond a plausible assertion that information is properly classified," *Morley*, 508 F.3d at 1126, and the CIA has discharged that burden, even when one accounts for the passage of time and political changes intervening since the underlying materials first came into existence.

Fourth, Schoenman contends that continued non-disclosure of the information withheld by the CIA is inappropriate because an unspecified universe of information relating in some way to his FOIA requests has purportedly made its way into the public domain.  However, to prevail on this prior disclosure theory, Schoenman bears the burden of establishing that "the specific information sought . . . [entered] in the public domain by official disclosure," *Am. Civil Liberties*

18

*Union*, 628 F.3d at 21 (citation and emphasis omitted), and his generalized argument falls considerably short of meeting that burden.

Fifth, Schoenman intimates that the CIA's insistence upon maintaining the classification of the information at issue is calculated to hide past or present government improprieties. Though his submissions "recount[] a litany of allegedly suspicious circumstances," they "lack[] any substantiation." *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 41 (D.C. Cir. 2011). Like similar allegations that he has tendered in this litigation, Schoenman's suggestion that the CIA's "determinations . . . are designed to conceal illicit conduct are speculative, unsupported, and contradicted by all the evidence in the record." *Schoenman*$_{2/9/11}$, 763 F. Supp. 2d at 195-96.

The Court has carefully considered Schoenman's remaining arguments and finds them to be without merit.  The Court concludes that the CIA has discharged its burden of establishing that it has properly invoked Exemption 1 in this case.

B. *The CIA Has Properly Invoked Exemption 3*

Exemption 3 applies to materials that are "specifically exempted from disclosure by statute."  5 U.S.C. § 552(b)(3).  In other words, Exemption 3 incorporates the protections afforded by other statutes shielding records from public disclosure.  In this case, the CIA invokes two statutes: (1) a provision of the National Security Act of 1947 requiring the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure," 50 U.S.C. § 403-1(i)(1); and (2) a provision of the Central Intelligence Agency Act of 1949 requiring the protection of "intelligence sources and methods from unauthorized disclosure" and exempting the CIA from any law that requires "the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the [CIA]," *id.* §

403g.  Pursuant to the National Security Act, the CIA withheld information about classified intelligence sources and methods, including information pertaining to human and foreign intelligence service sources, covert installations, dissemination-control markings, and technical intelligence collection.  Culver Decl. ¶¶ 55-56.  Pursuant to the Central Intelligence Agency Act, the CIA withheld information about its foreign intelligence collection activities, the names of its employees, personal identifiers, official titles, file numbers, and internal organizational data.  *Id.* ¶¶ 57-58.

When it comes to Exemption 3, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage."  *Morley*, 508 F.3d at 1126 (quotation marks and citation omitted).  It is well-established that both of the provisions relied upon by the CIA in this case fall within the ambit of Exemption 3.  *See, e.g.*, *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 349 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980); *Subh v. Cent. Intelligence Agency*, 760 F. Supp. 2d 66, 70 (D.D.C. 2011); *Schoenman*[3/19/09], 2009 WL 763065, at *24.  Upon a searching review, the Court finds that Culver's declarations, the CIA's *Vaughn* index, and the CIA's partial production provide a sufficiently detailed explanation as to why the information withheld from Schoenman falls within the universe of information protected from public disclosure by the National Security Act and the Central Intelligence Agency Act.  Taking into account the "special deference owed to agency affidavits on national security matters," the Court is satisfied that the CIA has met its burden of establishing the applicability of Exemption 3 to the withheld information.  Schoenman's arguments to the contrary, which are either discussed above or are otherwise devoid of merit, simply do not counsel in favor of a different result.

C.     *The CIA Has Discharged its Burden of Establishing that It Has Disclosed All Reasonably Segregable Portions of the Responsive Records*

Even when an agency may properly withhold a responsive record under one of FOIA's enumerated exemptions, it nevertheless must disclose any non-exempt information that is "reasonably segregable." 5 U.S.C. § 552(b). The question of segregability is by necessity subjective and context-specific, turning upon the nature of the document in question and the information contained therein. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). An agency need not, for instance, "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Id.* at 269 n.54. Ultimately, to discharge its burden before the district court, the agency "must provide a reasonably detailed justification rather than conclusory statements to support its claim that the non-exempt material in a document is not reasonably segregable." *Id.*

In this case, Culver's declarations describe how the CIA carefully reviewed and released all reasonably segregable information, which included conducting a line-by-line review of each document in an attempt to identify and release non-exempt portions of each document. Culver Decl. ¶¶ 59-60; Suppl. Culver Decl. ¶¶ 2-5. Based upon this description and a searching review of the documents that the CIA has withheld only in part, the Court finds that the CIA has adequately demonstrated, in reasonable and non-conclusory terms, that all non-exempt material has either been disclosed to Schoenman or is not reasonably segregable.

## V.  CONCLUSION

The Court has considered the remaining arguments tendered by Schoenman and

concludes that they are without merit.  Therefore, and for the reasons set forth above, the Court

shall DENY Schoenman's [171] First Motion to Late File, DENY Schoenman's [172] Second

Motion to Late File, GRANT the CIA's [164] Motion for Summary Judgment, and DENY

Schoenman's [166] Cross-Motion for Summary Judgment.  In addition, because no other claims

for disclosure remain extant, the Court shall enter a final judgment marking the end of this case.

An appropriate Order accompanies this Memorandum Opinion.

Date:   January 23, 2012

                                      /s/
                               **COLLEEN KOLLAR-KOTELLY**
                               United States District Judge